| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT | **Hearing date: September 16, 2020** |
| EASTERN DISTRICT OF NEW YORK | **@ 10:00 am** |

-------------------------------------------------------X
In re:

    LUCKY STAR-DEER PARK                 Case No: 820-72403-reg
    MEZZ LLC,

                Debtor.
-------------------------------------------------------X
In re:

    FLUSHING LANDMARK REALTY      Case No: 820-72404-reg
    MEZZ LLC,

                Debtor.
-------------------------------------------------------X
In re:

    VICTORIA TOWERS DEVELOPMENT   Case No: 820-72405-reg
    MEZZ CORP.,

                Debtor.
-------------------------------------------------------X
In re:

    MYINT KYAW, a/k/a                     Case No: 820-72407-reg
    JEFFREY WU,

                Debtor.                Chapter 11
-------------------------------------------------------X

## OBJECTION TO THE PROPOSED RETENTION OF WEINBERG, GROSS & PERGAMENT LLP AS ATTORNEYS FOR THE DEBTORS

TO:    THE HONORABLE ROBERT E. GROSSMAN,
         UNITED STATES BANKRUPTCY JUDGE:

         William K. Harrington, the United States Trustee for Region 2 ("United States Trustee") in furtherance of his duties and responsibilities set forth in 28 U.S.C. § 586(a)(3) and (5) does hereby file this objection to the proposed applications retaining the Law Office of Weinberg Gross & Pergament LLP ("WG&P"), as counsel in above referenced debtors' cases.

1

## PRELIMINARY STATEMENT

The above referenced debtors filed their respective voluntary chapter 11 petition in July 2020 by WG&P.   Upon information and belief, Myint Kyaw, a/k/a Jeffrey Wu ("Wu") is the guarantor of the indebtedness incurred by Lucky Star-Deer Park Mezz LLC ("Lucky Star"), Flushing Landmark Realty Mezz LLC ("Flushing") and Victoria Towers Development Mezz Corp. ("Victoria") (collectively, the "Corporate Debtors").  Wu owns one-half of the stock interest of the Corporate Debtors.  Neither the debtors nor WG&P disclosed in the retention applications and other documents that Wu paid WG&P the pre-petition retainers on behalf of the Corporate Debtors.  In fact, WG&P's 2016(b) statements in the Corporate Debtors indicate that the non-filing spouse paid the pre-petition retainers.  It was discovered at the 341 meeting when Wu testified that he had personally paid $6,000 on behalf of each of the Corporate Debtors to WG&P.  Since Wu failed to file a "Lar Dan" affidavit, it is unclear whether Wu intends to file a claim against each of the Corporate Debtors for the pre-petition retainers paid to WG&P.  Since Wu is a co-obligor for the liabilities of the Corporate Debtors, it appears that Counsel cannot provide legal representation to one debtor without violating the attorney-client privilege of the other debtors or compromising the integrity of its legal representation of the other debtors.  In addition, in the event the Corporate Debtors have claims against Wu, WG&P would be unable to represent the interests of the Corporate Debtors without violating his fiduciary responsibilities to Wu.  Absent full disclosure of Wu's interests and his business relationships in the Corporate Debtors as well as the other business entities, Counsel's simultaneous representation of the Corporate Debtors and Wu may present an actual conflict of interest as defined under 11 U.S.C.

§101(14), which is prejudicial to the creditors of all of the debtors' estates. Furthermore, Wu's lack of disclosure in light of Counsel's intent to simultaneously represent multiple debtors fails to provide adequate information from which to ascertain whether proposed Counsel has a disqualifying adverse interest under 11 U.S.C. §327. In light of the foregoing, the United States Trustee objects to the proposed retention of WG&P in all of the Debtors' cases.

## BACKGROUND

1. On July 8, 2020, the Corporate Debtors and Wu (collectively the "Debtors") commenced their respective proceedings by filing voluntary chapter 11 petitions **(Dkt. # 1).**

2. Upon information and belief, the sole asset of the Corporate Debtors is the stock interest of the entities that own and operate real properties ("Assets"). Wu and the non-filing spouse are the shareholders of the Corporate Debtors. Upon information and belief, the Assets were pledged to Landmark Portfolio Mezz LLC ("Landmark") as collateral to secure financing which was guaranteed by Wu personally.

3. Upon information and belief, Landmark commenced a UCC foreclosure action against the Assets, which precipitated the Corporate Debtors' bankruptcy filings.

4. Upon information and belief, Wu is the owner and shareholder of many companies that operate Asian supermarkets throughout the United States. Wu also owns companies that sell and rent both residential and commercial real properties.

5. WG&P is the Debtors' proposed counsel who filed the bankruptcy petitions. WG&P's 2016(b) statements in the Corporate Debtors indicate the non-filing spouse paid the

pre-petition retainers on behalf of the Corporate Debtors.

6.      On August 17, 2020, the initial meeting of creditors pursuant to 11 U.S.C. §341(a) ("341 Meeting") for the Debtors' cases was held. At the 341 Meeting, Wu testified that the Corporate Debtors had not generated any income and the expenses had been paid by the real estate companies that the Corporate Debtors own. Wu further testified that he had personally paid the $6,000 pre-petition retainer on behalf of each of the Corporate Debtors to WG&P.

7.      On August 17, 2020, WG&P filed its proposed retention applications in each of the Debtors' cases. Despite Wu's testimony at the 341 Meeting, WG&P failed to disclose Wu's payment of the pre-petition retainers on behalf of the Corporate Debtors in the applications. Furthermore, Wu did not file any "Lar Dan" affidavits regarding the treatment of the retainers paid to WG&P.

## OBJECTION

### I. A Conflict of Interest May Exist Which Disqualifies WG&P From Representing the Debtor.

*A.    General Standard*

8.      Section 327(a) of the Bankruptcy Code permits a debtor in possession to employ professionals of its choice to represent the estate during a bankruptcy proceeding with court approval. *In re Project Orange Associates, LLC*; 431 B.R. 363, 369 (Bankr. S.D.N.Y. 2010); *citing In re Worldcom, Inc.*, 311 B.R. 151, 163 (Bankr. S.D.N.Y. 1004). 11 U.S.C.§327(a) states, in part, that:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, . . . or other professional persons, that do not hold or represent an interest adverse to the estate, and that are

> disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Under Section 327(a), the prospective professional must be a disinterested party and must not have any interest adverse to the debtor's estate. The Bankruptcy Code further defines the term of "disinterested person" under 11 U.S.C. §101(14C) as a person that –

> does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason

The disinterestedness standard under Section 327(a) is a safeguard to assure 'that the professionals' service presents no conflict of interest." *In re Vouzianas*, 259 F.3d 103, 107 (2nd Cir. 2001); *see also In re Vebeliunas*, 231 B.R. 181, 191 (Bankr. S.D.N.Y. 1999) (even the appearance of a conflict is to be avoided).

9.  "The 'materially adverse' standard incorporated in the disinterestedness test and the 'interest adverse to the estate' language in section 327(a) overlap . . . and form a single test to judge conflicts of interest." *In re Granite Partners, L.P.*, 219 B.R. 22. 23 (Bankr. S.D.N.Y. 1998) (citations omitted); *In re Leslie Fay Companies, Inc.*, 175 B. R. at 532 (quoting *In re Martin*, 817 F.2d 175, 181 (1st Cir. 1987) )"[T]he twin requirements of disinterestedness and lack of adversity telescope into a single hallmark."). Section 327(a)'s prohibition of "[a]n interest adverse to the estate" has been construed strictly, and operates as a 'catch-all clause,' *Vebeliunas*, 231 B.R. at 191 n.10, 191-12, where any doubt will result in disqualification. See *In re Angelika Films 57th Inc.*, 227 B.R. 29, 39 (Bankr. S.D.N.Y. 1998).

10. Although the term "adverse interest" is not defined in the Bankruptcy Code, the Second Circuit has held that:

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute

5

>in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.

*In re Enron* 2002 WL 32034346, \*8 (Bankr. S.D.N.Y. May 23, 2002) citing *In re Caldor, Inc.*, 193 B.R. 165, 171 (Bankr. S.D.N.Y. 1996) (quoting *Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 623 (2d Cir. 1999)).  The Court in *In re Enron* 2002 WL 32034346\*8 further states, "[S]tated another way, if it is plausible that the representation of another interest may cause the professional to act any differently than they would without that other representation, then that professional would have a conflict and an interest adverse to the estate warranting disqualification."  *See In re Leslie Fay Cos., Inc.*, 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994)."  Adverse interests may include "economic and personal interests of an attorney." *See In re Mercury*, 280 B.R. 35, 54 (Bankr. S.D.N.Y. 2002).  "Generally stated, the adverse interest test is objective and excludes any interests of relationship, however, slight, that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules."  *In re Project Orange Associates, LLC*, 431 B.R. at 370, *citing In re Granite Partners*, 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998). When the retention of professionals is approved under Section 327, the Court must assure that the professionals must be able to fulfill their fiduciary responsibilities.  *See In re Leslie Fay Cos.*, 175 B.R. 525, 532 (Bankr. S.D.N.Y. 1994).  Therefore, "even where section 327(c)[1] is applicable, if a court determines that there is an actual conflict of interest following an objection from the U.S. Trustee or a creditor the court

---

[1] 11 U.S.C. 327(c) states:

>In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

must disapprove the employment." *In re Project Orange Associates, LLC*, 431 at 371.

B.     *Representation of Wu May Render WG&P Not Disinterested Under the Definition of 11 U.S.C. §101(14)*

11.     Not only is Wu a 50 percent shareholder of the Corporate Debtors, he is also the guarantor of the indebtedness to Landmark. Wu also owns one-half interest in the underlying entities that own and operate businesses for the Corporate Debtors. Upon information and belief, Wu created the Corporate Debtors as a financing vehicle to obtain loans from Landmark. At the 341 Meeting, Wu was unable to explain how the loans from Landmark were spent.

12.     Wu also owns interests in a number of Asian supermarkets and real estate throughout the United States. It is unclear at this time whether Wu's ownership interests in other business entities would create an adverse interest to the Corporate Debtors' estates.

13.     Wu testified at the 341 Meeting that he paid the pre-petition retainers of $6,000 for each of the Corporate Debtors from his personal funds. However, none of these payments were disclosed in either WG&P's retention applications or the Corporate Debtors' SOFA. In fact, WG&P's 2016(b) statements filed in the Corporate Debtors cases state that the retainers were paid by "Ioc Men IP," the non-filing spouse.

14.     Moreover, $32,000 ($6,000 for the each of the three Corporate Debtors and $14,000 paid in connections with Wu's personal case) is a significant sum of money. It is highly unlikely that Wu was mistaken when he testified at the 341 Meeting that he paid WG&P. Therefore, Wu's testimony contradicts WG&P's representation in its 2016(b) disclosure.

15.     Lastly, given Wu's financial disclosure in his schedules, it is inconceivable that

Wu would have $32,000 of his personal funds to pay WG&P prior to the petition date.

16.     Because WG&P's retention application fails fully disclose the inter-relationships of Wu and Wu's businesses, the interests of Wu and the Corporate Debtors, WG&P applications create questions concerning how to evaluate WG&P's request to simultaneously represent Wu and the Corporate Debtors.

17.     WG&P's proposed dual representation of both the Corporate Debtors and Wu may create an actual, disqualifying conflict of interest. If WG&P pledges its undivided loyalty to Wu and in the event that Wu's interest diverges from the Corporate Debtors' interests, what would WG&P do to protect both the interests of Wu's estate versus the Corporate Debtors' estates. While WG&P seeks to take on the attorney-client relationship with Wu, it is unclear how WG&P can simultaneously fulfill its fiduciary duties and its ethical obligations to the Corporate Debtors when it confronts issues directly affecting Wu.

18.     To authorize professionals' retention under §327, the Court must assure that the professionals are able to fulfill their fiduciary responsibility. *Leslie Fay, supra*, 175 B.R. at 532. In the present case, certain facts evidence that WG&P cannot assure the Court and the creditors that WG&P can fulfill its fiduciary responsibility as counsel for all of the Corporate Debtors. Specifically, WG&P's apparently false representation concerning whether the source of the pre-petition retainer was the non-filing spouse, or Wu, and the open question as to whether Wu intends to file a claim against the Corporate Debtors for the paid retainers, are at a minimum issues requiring additional disclosure. But, more pointedly, to achieve a successful reorganization, the Corporate Debtors must defend all legal actions taken by their creditors at the expense of the guarantor of the underlying loans. For WG&P to fulfill its obligations as Wu's

counsel, WG&P must advise Wu to act contrary to the interests of the Corporate Debtors. Conversely, if WG&P advises Wu not to take actions against Corporate Debtors, WG&P fails to fulfill its fiduciary obligation Wu.  Not only is WG&P, no longer disinterested, but it is submitted that WG&P may have an actual and a disabling conflict of interest which renders WG&P disqualified under §327 from continuing its representation of the Debtors in this bankruptcy proceeding.

C. *Dual Representations of Wu and the Corporate Debtors May Cause Adverse Interest to All of the Debtors' Estates, Which Precludes it From Retention under §327(a)*

19. Without accurately disclosing the source of retainers paid on behalf of the Corporate Debtors, WG&P's loyalty to the Corporate Debtors' estate is in question.  It is unknown whether WG&P and Wu have other undisclosed separate fee arrangements.

20. An adverse interest is one which would cause a professional to act differently. *Leslie Fay, supra*., 175 B.R. at 533, or where there is any economic interest that would tend to lessen the value of the bankruptcy estate or create an actual or potential dispute with the estate as a rival claimant; or a predisposition or bias against the estate.  *Granite Partners, supra* 219 B.R. at 33.

21. Because in some instances, a conflict waiver does not trump the mandatory provisions of professional conduct under section 327(a) ( *See In re Granite Partners, L.P.*, 219 B.R. at 34 finding that despite a conflict waiver, a proposed professional must still comply with the disinterestedness requirement under § 327); *In re Perry,* 194 B.R. 875, 800 (E.D. Cal. 1996), even if both the Corporate Debtors and Wu consent to waive the conflict, WG&P must still satisfy the statutory requirements of §327(a) to be retained as general counsel.

22.     The United States Trustee submits that the conflicts herein are sufficient to satisfy the standard enunciated by the Court in *Project Orange*, which found a disqualifying conflict even if that conflict only "faintly colored the independence and impartial attitude" required of counsel.  See *In re Project Orange Associates, LLC*, 431 at 370.  In short, it does not appear that WG&P is capable of fulfilling its fiduciary responsibilities to the Corporate Debtors' estates because of either its current and/or future "economic or personal interests" with Wu.

### Conclusion

23.     Section 327(a) requires that for professionals to be retained by the estate, they must not represent an interest adverse to the estate and must be disinterested persons.  The facts presented in the cases at bar show WG&P may not be a disinterested party under the definition of 11 U.S.C. §101(14) and may represent an interest of one estate that is adverse to the other estates.  Wu, one of the Debtors here, is both the shareholder of the Corporate Debtors and the guarantor of the Corporate Debtors' debts owed to Landmark.  Wu testified at the 341 meeting that he personally paid WG&P's pre-petition retainers for the Debtors.  However, WG&P misstated in its 2016(b) statements that the non-filing spouse paid the retainers on behalf of the Corporate Debtors.  Furthermore, WG&P failed to provide any information about the source of payment of the retainers received in its retention applications.  Because WG&P established an attorney-client relationship with Wu, WG&P cannot properly advise the Corporate Debtors regarding claims they may have against Wu.  Therefore, when the Court reviews the standards set forth in §327(a) regarding retention of general bankruptcy counsel, in the present case, WG&P is not a disinterested party under the definition of 11 U.S.C. §101(14) and holds an interest adverse to the Corporate Debtors' estates as a result of its simultaneous dual

representation. Accordingly, WG&P must be disqualified as counsel for both Wu and the Corporate Debtors.

WHEREFORE, the United States Trustee requests that the Court sustain his objections, deny the retention applications and grant other relief as the Court deems appropriate.

Dated: Central Islip, New York
       September 4, 2020

                            WILLIAM K. HARRINGTON
                            United States Trustee
                            Region 2

                            ***/S/ Stan Y. Yang***
                            Stan Y. Yang
                            Trial Attorney

                            560 Federal Plaza
                            Central Islip, New York 11722
                            (631) 715-7800

.