UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

In Re:

Myint Kyaw a/k/a Jeffrey Wu,

                     Debtor.

--------------------------------------------------------X

RETURN DATE:    NOVEMBER 4, 2020
TIME:                10:00 A.M.

Chapter 11

Case No. 20-72407-A736

Objection

        Debtor and Debtor-in-Possession Myint Kyaw a/k/a Jeffrey Wu ("Debtor" or "Mr.

Wu"), by his attorneys, Weinberg, Gross & Pergament LLP, as and for his Objection to the

application submitted by Landmark Portfolio Mezz LLC ("Secured Creditor" or "Mezz Lender"),

"seeking the entry of an Order granting the Mezz Lender relief from the automatic stay pursuant

to Section 362(d)(l) or (d)(2) of title 11 of the United States Code (the "Bankruptcy Code"), and

waiving the fourteen (14) day stay imposed by Bankruptcy Rule 4001(a)(3), to continue and

complete a pre-petition Article 9 foreclosure sale of the Debtor's pledged 100% stock interest in

an entity known as Queen Elizabeth Realty Corp.," responds as follows:

        1.      On July 8, 2020, Mr. Wu filed a voluntary petition for relief under Chapter

11 of the Bankruptcy Code.

        2.      Pursuant to sections 1107 and 1108 of the Bankruptcy Code, Mr. Wu is

continuing to manage his properties and affairs as debtor-in-possession.

        3.      No trustee, examiner or committee of creditors has been appointed or

formed in this case.

        4.      Mr. Wu operates several businesses in the construction and management of

real property and also owns and manages other businesses, including supermarkets and restaurants.

Mr. Wu has continued to operate those businesses.

5.     Simultaneously with the filing of the above-captioned case, Mr. Wu also caused to be filed three (3) additional bankruptcy cases.[1] Similar to Mr. Wu, the Other Debtors filed their cases to stay the UCC Article 9 sale of their respective membership interests in the real properties.  Prior to the commencement of the Mezz Borrowers' cases, an auction sale of the Debtor's and the Other Debtors' membership interests had been scheduled by an Order of the New York State Supreme Court.

6.     On October 30, 2020, the corporations owning the real properties filed Chapter 11 petitions to place the Debtor's assets before the Court.  As noted in the Application, the Secured Creditor holds a security interest in, among other things, the Debtor's 100% stock interest in an entity known as Queen Elizabeth Realty Corp. ("QERC").  QERC will be filing its Chapter 11 petition on or before November 3, 2020.

7.     On or about December 29, 2017, the Mezz Borrowers executed a promissory note acknowledging an obligation to repay the Secured Creditor the sum of $15.3 million ("Mezz Loan").

8.     As security for the Mezz Loan, certain pledges of stock were made, including Mr. Wu's interest in QERC, which owns the Elizabeth Street Unit. (Application, ¶ 8.) One of the Debtor's companies operates a supermarket and is a tenant of QERC.

9.     The Secured Creditor contends that despite being valued at between $25 Million and $28 Million, there is no equity in the Elizabeth Street Unit since the property is encumbered by a mortgage in the principal sum of $19.85 million and there has been a decrease

---

[1] The related cases are *Flushing Landmark Realty Mezz LLC*, Case No. 820-72404-A736; *Lucky Star-Deer Park Mezz LLC*, Case No. 820-72403-A736; and *Victoria Towers Development Mezz Corp.*, Case No. 820-72405-A736.  For the purposes of this Objection, *Queen Elizabeth Realty Corp., Lucky Star-Deer Park Mezz LLC*, and *Victoria Towers Development Mezz Corp.*, may be referred to as the "Other Debtors."  Mr. Wu and the Other Debtors may be referred to as the "Mezz Borrowers."

in value of the property presumably due to COVID-19. (Application, ¶ 9.) However, there is no evidence that the value has declined nor any evidence of QERC's value.

10.    Based on its analysis, the Secured Creditor has concluded "that the Debtor has no legitimate ability to refinance the mezzanine debt (currently more than $24 million with interest and fees), not to mention the suffocating mortgage debt of the senior mortgagee, 41-60 Main Street LLC (the "Senior Lender"), which holds a first mortgage lien on most of the underlying real property comprising the Landmark Portfolio to secure a principal debt of $142 million." (Application, ¶ 8.)

11.    It is the Debtor's understanding that the Secured Creditor and Senior Lender are related entities. It is also the Debtor's understanding that the Secured Creditor and Senior Lender made the loans under a "loan to own" strategy.

12.    "Boiled to its basics, the loan to own strategy is a method of investing by a distressed investor — frequently a private equity or hedge fund — that acquires the secured debt of a borrower at a discount (often deep) with the hope of either being paid at par or using the par value of the secured debt to acquire the company." https://www.natlawreview.com/article/attacks-loan-to-own-strategies-continue

13.    Effectively, the Secured Creditor and Senior Lender are seeking to wrestle control of the underlying real properties for their own benefit in an effort to deprive Mr. Wu, the Mezz Borrowers and the underlying real property companies ("Obligors") from making an attempt to satisfy or refinance the loan for the benefit of the creditors of all of the Obligors. The Secured Creditor has not provided any evidence as to the value of the real properties as Mr. Wu asserts that they may have a value greater than the sums owed to the Secured Creditor and Senior Lender.

14.    The Secured Creditor states that "[i]f the Debtor was truly serious about restructuring the Landmark Portfolio, he would have filed petitions for the fee owner entities to bring the properties directly before this Court so a refinance or sale could be realistically considered." (Application, ¶ 11.) Putting aside the Secured Creditor's supposition, Mr. Wu disagrees with the conclusion.

15.    Mr. Wu was exploring various avenues, including the filing of bankruptcy petitions for the real property companies. However, Mr. Wu was hoping to avoid such action. Mr. Wu has completed his analysis and has filed Chapter 11 petitions for the real estate companies and a petition for QERC will be filed on or before November 3, 2020.

16.    The Secured Creditor asserts that Mr. Wu is operating at a deficit and therefore that "is reason alone to vacate the automatic stay." (Application, ¶ 14.)

17.    Mr. Wu's monthly income and expenses do not impact whether he and the various entities have assets that could be used to secure the necessary financing. However, Mr. Wu requires some breathing space to get that accomplished. Mr. Wu has already received a financing proposal that may lead to a Chapter 11 plan in his case.

A.    Secured Creditor is Not Entitled to Relief From the
      Automatic Stay Under 11 U.S.C. § 362(d)(1)

18.    As noted by this Court, "[t]he filing of a bankruptcy petition operates as an automatic stay of a wide range of actions against a debtor and/or the debtor's property. 11 U.S.C. § 362(a). The stay is 'applicable to all entities,' Id., and it is 'intended to protect the debtor and property of the estate.'" *Bethpage Fed. Credit Union v. Town of Huntington (In re Joe's Friendly Serv. & Son, Inc.)*, 2019 Bankr. LEXIS 880, at *30 (Bankr. E.D.N.Y. Mar. 21, 2019)

19.    The Secured Creditor also contends that cause exists to vacate the automatic stay under 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not define the phrase "for cause." (Application, pp. 8-11.)

20.    The decision to grant relief from the automatic stay under 11 U.S.C. § 362(d)(1) is within the discretion of the bankruptcy judge. *See In re Fischer*, 202 B.R. 341, 354 (E.D.N.Y. 1996).

21.    When deciding whether cause has been shown, "the court must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied." *In re Ramkaran*, 315 B.R. 361, 364 (D.Md. 2004) *quoting In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992).

22.    In determining whether "cause" exists to vacate the stay to continue the prosecution of prepetition litigation, courts consider the following factors:

> (1) whether relief would result in a partial or complete resolution of the issues,
> (2) the lack of any connection with or interference with the bankruptcy case,
> (3) whether the other proceeding involves the debtor as a fiduciary,
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action,
> (5) whether the debtor's insurer has assumed full responsibility for defending the action,
> (6) whether the action primarily involves third parties,
> (7) whether litigation in another forum would prejudice the interests of other creditors,
> (8) whether the judgment claim arising from the other action is subject to equitable subordination,
> (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor,
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation,
> (11) whether the parties are ready for trial in the other proceeding and

(12) the impact of the stay on the parties and the balance of harms. *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990); See *In re Meena, Inc.*, 2018 Bankr. LEXIS 3427, at *33 (Bankr. E.D.N.Y. Nov. 6, 2018)

23.    Mr. Wu understands that, as noted by this Court, "'[c]ause' is not defined in the Code, however, courts in the Second Circuit have recognized it to be 'a broad and flexible concept that must be determined on a case by case basis.'" *In re McWolle Dev. Corp.*, 2018 Bankr. LEXIS 3899, at *5 (Bankr. E.D.N.Y. Dec. 10, 2018).

24.    Under section 362(d)(1), the Secured Creditor bears the initial burden of showing "cause" to lift the stay. *In re Mazzeo*, 167 F.3d 139, 143 (2d Cir. 1999). "If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *Sonnax*, 907 F.2d at 1285.

25.    Mr. Wu contends that the Secured Creditor cannot establish cause.

26.    Factor (1) - whether relief would result in a partial or complete resolution of the issues weighs against vacating the stay. If the stay was lifted, the Secured Creditor would still be a secured creditor in the related cases and may have a deficiency claim here.

27.    Notably, Factor (2) - the lack of any connection with or interference with the bankruptcy case, and (7) - whether litigation in another forum would prejudice the interests of other creditors weighs against vacating the automatic stay.

28.    If the stay is lifted, the Secured Creditor would effectively take control of the QERC stock and prevent the reorganization of QERC.

29.    Further, Mr. Wu would be deprived of the opportunity to use the asset as part of a refinancing package coupled with other assets for the benefit of his creditors.

Undoubtedly, Mr. Wu's creditors would be prejudiced if the Secured Creditor could foreclose on the stock of QERC and take control of the underlying real property.

30.     Factor (3) - whether the other proceeding involves the debtor as a fiduciary, (5) - whether the debtor's insurer has assumed full responsibility for defending the action, (8) - whether the judgment claim arising from the other action is subject to equitable subordination, and (9) - whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor are not applicable.

31.     Factor (4) - whether a specialized tribunal with the necessary expertise has been established to hear the cause of action and (10) - whether the interests of judicial economy and the expeditious and economical resolution of litigation and, does not evidence cause to vacate the stay because the Secured Creditor's claims, if any, will need to be determined by this Court.

32.     None of these factors weigh strongly in favor or against permitting the foreclosure proceeding to move forward. Accordingly, this Court need not consider the factors. *See Burger Boys, Inc. v. S. St. Seaport Ltd. P'ship*, 183 B.R. 682, 688 (S.D.N.Y. 1994).

B.     Secured Creditor is Not Entitled to Relief From the
       the Automatic Stay Under 11 U.S.C. § 362(d)(2)

33.     The Secured Creditor contends that Mr. Wu has acted in bad faith and relies on a number of factors. (Application, ¶ 29, 30.)

34.     Relief from the automatic stay may be granted with respect to real property, where: (A) the Debtor does not have any equity in the Property; and (B) the real property is not necessary to effective reorganization. 11 U.S.C. § 362(d)(2) (emphasis added) (Lexis, 2020).

35.     This Court has noted that "courts in this Circuit have found that 'cause' exists when a petition is filed in bad faith." *Meena, Inc.*, 2018 Bankr. LEXIS 3427, at *27.

36.     This Court in In re East End Development, 491 B.R. 633, 641 (Bankr. E.D.N.Y. 2013) noted that "[t]he Second Circuit Court of Appeals has stated that in order to establish that reorganization is futile, the moving party has the burden of proof that 'from the date of filing the debtor has no reasonable probability of emerging from the bankruptcy proceeding and no realistic chance of reorganizing.'" *quoting* C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship), 113 F.3d at 1310.

37.     When a creditor requests relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2), the reviewing court must engage in a two-part analysis. "Section 362(d)(2) is written in the conjunctive; both (A) and (B) must be satisfied before a court may grant relief from the automatic stay under this subsection." *In re YL West 87th Holdings I LLC*, 423 B.R. 421, 427 (Bankr.S.D.N.Y. 2010).

38.     The first prong of the analysis requires the court to determine whether any equity exists in the subject property held as collateral for the creditor's claim.

39.     The test for determining equity under the first part of Section 362(d)(2) involves a comparison between the total liens against the property and the property's current value. *In re Indian Palms Associates, Ltd.*, 61 F.3d 197, 206 (3d Cir. 1995).

40.     If it is shown that there is a lack of equity in the property, the court must make a secondary determination of whether the property is necessary for an effective reorganization. 11 U.S.C. § 362(d)(2)(B) (Lexis, 2020).

41.     With regard to the second prong, the Debtor must establish that the Property is necessary to an effective reorganization. *See In re 18 RVC, LLC*, 485 B.R. 492, 495 (Bankr. E.D.N.Y. 2012).

42.    Secured Creditor contends that "[t]he lack of equity in the Queen Elizabeth Stock is also a proper ground for relief under Section 362(d)(2) when combined with evidence that the Queen Elizabeth Stock is not necessary for an effective reorganization." (Application, ¶ 43.) However, there is no basis for the conclusion that Mr. Wu's stock interest "is not necessary for an effective reorganization." The value of QERC and the Debtor's supermarket must be determined, but the Debtor asserts that QERC is a key component to an effective reorganization as the value of QERC and the supermarket must be considered.

43.    For the reasons herein, including those regarding the comfort order and the alternative relief should be denied.

Dated: Garden City, New York
       October 30, 2020

Weinberg, Gross & Pergament LLP
Attorneys for Debtor and
Debtor-in-Possession Myint Kyaw
a/k/a Jeffrey Wu

By:    _____
       Marc A. Pergament
       400 Garden City Plaza, Suite 403
       Garden City, New York 11530
       (516) 877-2424

9