UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

In Re:                                          Chapter 11

Myint Kyaw a/k/a Jeffrey Wu,                    Case No. 820-72407-A736

        Debtor.

---------------------------------------------------------X

## <u>DEBTOR'S DISCLOSURE STATEMENT</u>

Dated: April 8, 2021

                    Weinberg, Gross & Pergament LLP
                    400 Garden City Plaza, Suite 403
                    Garden City, New York 11530
                    (516) 877-2424

                    Attorneys for the Debtor and Debtor-in-Possession

**THIS PROPOSED DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF NEW YORK UNDER SECTION 1125(b) OF THE BANKRUPTCY CODE FOR USE IN THE SOLICITATION OF ACCEPTANCES OF THE PLAN DESCRIBED HEREIN. ACCORDINGLY, THE FILING AND DISTRIBUTION OF THIS PROPOSED DISCLOSURE STATEMENT IS NOT INTENDED, AND SHOULD NOT BE CONSTRUED, AS A SOLICITATION OF ACCEPTANCES OF SUCH PLAN. THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON FOR ANY PURPOSE BEFORE A DETERMINATION BY THE BANKRUPTCY COURT THAT HIS DISCLSOURE STATEMENT CONTAINS "ADEQUATE INFORMATION" WITHIN THE MEANING OF SECTION 1125(a) OF THE BANKRUPTCY CODE.**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

In Re:                                          Chapter 11

Myint Kyaw a/k/a Jeffrey Wu,                    Case No. 820-72407-A736

            Debtor.

-------------------------------------------------------X

## DISCLOSURE STATEMENT

      Myint Kyaw a/k/a Jeffrey Wu ("Wu" or "Debtor"), Debtor and Debtor-in-Possession, submits this Disclosure Statement ("Disclosure Statement") to all creditors and parties in interest pursuant to Section 1125 of Title 11, United States Code ("Bankruptcy Code"), in order to disclose information important and necessary for a reasonably informed decision for each party in interest respecting their right to vote on, or otherwise participate in, confirmation proceedings concerning the Debtor's Plan of Reorganization dated April 8, 2021 (the "Plan"), filed with the United States Bankruptcy Court for the Eastern District of New York. (A copy of the Plan is attached to this Disclosure Statement as Exhibit "A," and the terms and definitions contained in the Plan are incorporated herein by reference.)

      The purpose of this Disclosure Statement is to set forth sufficient information regarding (i) the history of the Debtor, (ii) the filing of this bankruptcy case, (iii) the Plan and the alternatives to the Plan, (iv) the claims of claimants and to assist them in making an informed decision with respect to the Plan, and (v) to assist the parties in making an informed decision as to whether the Plan complies with the requirements of the Bankruptcy Code.

      The summary of the Plan contained in this Disclosure Statement should not be relied upon solely for voting purposes. Parties in interest are urged to read the Plan carefully, and are further

urged to consult with counsel in order to understand the Plan fully. The Plan, if confirmed, is a legally

binding document.

NO STATEMENTS, INFORMATION OR REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY AS TO ITS FUTURE BUSINESS OPERATIONS, PROFITS OR FINANCIAL CONDITIONS) ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS THE COURT MAY DEEM APPROPRIATE. THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. THIS DISCLOSURE STATEMENT WAS COMPILED FROM INFORMATION OBTAINED FROM THE BOOKS AND RECORDS OF THE DEBTOR AND GREAT EFFORT WAS MADE TO INSURE ITS ACCURACY.

THE ADEQUACY OF THIS DISCLOSURE STATEMENT WAS SUBJECT TO A HEARING IN THE BANKRUPTCY COURT ON _____, 2021. PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE, THE BANKRUPTCY COURT DETERMINED THAT THE INFORMATION CONTAINED HEREIN IS OF THE KIND, AND SUFFICIENTLY DETAILED, TO ENABLE A HYPOTHETICAL, REASONABLE TYPICAL INVESTOR TO MAKE AN INFORMED JUDGMENT WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. HOWEVER, THE BANKRUPTCY COURT'S DETERMINATION ON THE ADEQUACY OF THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED AS APPROVAL OR ENDORSEMENT AS TO THE FAIRNESS OR MERITS OF THE PLAN BY THE BANKRUPTCY COURT.

Claimants in Classes 7 and 8 are impaired. Only claimants in Classes 7 and 8 are

entitled to vote on the Plan.

Except as described below, the Plan may be confirmed only if accepted by each impaired class of claimants entitled to vote thereon. The Bankruptcy Code defines "acceptance" as acceptance by holders of a majority in number and two-thirds (2/3) of the total dollar amount of the claims in each class actually voting in the class. Any voting class of claimants that fails to accept the Plan will be deemed to have rejected the Plan.

Annexed hereto and accompanying this Disclosure Statement are copies of the following:

i.      The Plan (Exhibit "A");

ii.     An income statement reflecting the Debtor's income and expenses from August 1, 2020 through February 28, 2021 (Exhibit "B");

iii.    A balance sheet of the Debtor as of February 28, 2021 (Exhibit "C");

iv.     A liquidation analysis of the Debtor as of February 28, 2021 (Exhibit "D");

v.      Financial projections for the Debtor for 2022 (Exhibit "E");

vi.     The Means Test as of February 28, 2021 (Exhibit "F").

The financial information contained in this Disclosure Statement and the annexed Schedules were prepared by the Debtor based on the Debtor's books and records. All efforts have been made to assure that the information contained is accurate.

The Bankruptcy Court will set a date by which the ballots for the acceptance or rejection of the Plan are required to be submitted in writing by the holders of all classes of claims that are impaired under the Plan. Creditors may vote on the Plan, after this Disclosure Statement shall be approved by the Bankruptcy Court, by completing and mailing the ballot to Weinberg, Gross & Pergament LLP, 400 Garden City Plaza, Suite 403, Garden City, New York 11530, (516) 877-2424, Attention: Marc A. Pergament, Esq.

3

1.    <u>Explanation of Chapter 11</u>.

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code.  Under Chapter 11, a debtor seeks to reorganize its business and financial affairs.

On July 8, 2020 ("Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtor has managed his affairs as a Debtor-in-Possession under Sections 1107 and 1108 of the Bankruptcy Code.  These sections of the Bankruptcy Code permit a Chapter 11 debtor to continue to operate as a debtor within the structure of Chapter 11.

2.    <u>Formulation and Confirmation of a Plan of Reorganization</u>.

The formulation and confirmation of a plan of reorganization is the principal purpose of a Chapter 11 case.  A plan sets forth the means of satisfying or discharging the holders of claims and interests in a Chapter 11 Debtor.  Chapter 11 does not require that each holder of a claim vote in favor of a plan in order for a Bankruptcy Court to approve a plan.  If any class of claimants is impaired by a plan, the plan must be accepted by at least one "impaired" class of claims.  A claim that will not be repaid in full or as to which legal rights are altered, or an interest that is adversely affected, is deemed impaired.  The holder of an impaired claim or interest is entitled to vote to accept or reject a plan of reorganization if the claim or interest has been allowed under Section 502 of the Bankruptcy Code, or temporarily allowed for voting purposes under Rule 3018 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").  Acceptance by a class must be by a majority in number and two-thirds of the dollar amounts of the total claims or interests actually voting in the class.

3.    <u>Creditors Rights Under § 1129(a)</u>.

The Bankruptcy Abuse Prevention and Consumer Protect Act of 2005 added Bankruptcy Code Section 1129(a)(15) which created additional requirements with respect to the confirmation of a chapter 11 plan in the case of an individual debtor.  Bankruptcy Code section

1129(a)(15) reads in pertinent part:

> [I]n the case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to confirmation of the plan -
>
> (A) the value as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claims;
>
> or
> (B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payment whichever is longer.

All unsecured creditors have a right to object to the Debtor's plan of reorganization. Should an unsecured creditor object to confirmation of the Debtor's plan of reorganization, an individual's chapter 11 plan may only be confirmed if the plan pays unsecured creditors one hundred (100%) percent of their claims, or devotes five years of the Debtor's projected disposable income to the payment of the unsecured creditors.

The Debtor's calculation of current monthly income is $22,201.06.

The Debtor's calculation of monthly expenses is $22,070.95.

The Debtor's calculation of projected monthly disposable income is $130.11. *See* Exhibit "F".

The Debtor believes that the expenses used to calculate the Debtor's projected disposable income are "reasonably necessary to be expended for the support and maintenance of the Debtor and the Debtor's dependents and, therefore, the payments proposed under the Plan will result in a distribution to the unsecured creditors which is equal to or greater than that which would be required under § 1325(b)(2).

IF AN UNSECURED CREDITOR DOES NOT OBJECT TO CONFIRMATION OF THE DEBTOR'S PLAN OF REORGANIZATION, THE RIGHTS UNDER § 1129(A)(15) ARE WAIVED. ALL UNSECURED CREDITORS SHOULD DISCUSS THEIR RIGHTS WITH THEIR RESPECTIVE ATTORNEY.

THE FAILURE BY AN UNSECURED CREDITOR TO OBJECT TO THE CONFIRMATION OF THE DEBTOR'S PLAN OF REORGANIZATION MAY RESULT IN THE COURT CONFIRMING THE PLAN WITHOUT SATISFYING THE REQUIREMENTS OF SECTION 1129(A)(15). ALL UNSECURED CREDITORS SHOULD DISCUSS THEIR RIGHTS WITH THEIR RESPECTIVE ATTORNEY.

4.    Events Leading to Formulation of Debtor's Plan.

Mr. Wu directly and indirectly owns interest in several diverse businesses. Those businesses are principally his ownership and management of supermarkets located in New York City, Massachusetts and Philadelphia and his ownership and management of several commercial real property entities that are also in Chapter 11 cases pending before this Court. Mr. Wu had spent substantial funds over the last several years building a residential condominium in Flushing, New York known as Victoria Towers, which consists of 61,000 square feet of principally residential space. Its Chapter 11 case is pending in this Court and is known as Victoria Towers Development Corp., Case No. 820-73303-A736.

Mr. Wu indirectly owns one hundred (100%) percent of the stock in Flushing Landmark, which is a commercial property in Flushing, New York, which is substantially rented, but has substantial debt owed to 41-60 Main Street LLC. That Chapter 11 case is known as Flushing Landmark Realty LLC, Case No. 820-73302-A736.

Mr. Wu also owns one hundred (100%) percent of the stock of an entity known as Queen Elizabeth Realty Corp., which owns condominium space in a building located at 80 Elizabeth Street in Manhattan in which one of his supermarkets operates and the other tenant in the condominium space is an unrelated pharmacy. That Chapter 11 case is known as Queen Elizabeth Realty Corp., Case No. 820-73327-A736.

Mr. Wu also owns indirectly one hundred (100%) percent of a commercial building and vacant real property in Deer Park, New York known as Lucky Star. That Chapter 11 case is known as Lucky Star-Deer Park Realty LLC, Case No. 820-73301-A736.

With respect to these real properties, Mr. Wu had entered into financing arrangements with lenders who in certain instances were high risk lenders whose loan agreements charged substantial interest, with a default interest rate of twenty-four (24%) percent per annum. Mr. Wu's entities found themselves in default and thus, were charged interest at the default rate for the last several years.

In June 2020, Landmark Portfolio Mezz LLC, which has a pledge of Mr. Wu's stock in Queen Elizabeth Realty Corp. and his stock in Flushing Landmark Realty Mezz LLC, Lucky Star Deer Park Mezz LLC and Victoria Towers Development Mezz Corp., had commenced a foreclosure proceeding under the Uniform Commercial Code. The sale pursuant to the notice issued by Landmark Portfolio Mezz LLC would result in a stock foreclosure sale on July 8, 2020 and thus, Mr. Wu filed his Chapter 11 proceeding to prevent the foreclosure of his stock interest in Queen Elizabeth Realty Corp. Flushing Landmark Realty Mezz LLC, Lucky Star Deer Park Mezz LLC, and Victoria Towers Development Mezz Corp. also filed Chapter 11 petitions on July 8, 2020 to stay the stock foreclosure sale.

5.    Funding for the Debtor's Plan.

The funds necessary to make payments to creditors under the Plan shall be generated by the Debtor from Mr. Wu's earnings from his businesses. The Debtor will not obtain the discharge of his debts until all payments are made to allowed creditors under this Plan.

6.    Information Regarding Debtor.

The detailed background leading to Mr. Wu's bankruptcy is set forth above.

7.    Debtor-in-Possession Period.

As explained above, Mr. Wu filed his Chapter 11 bankruptcy proceeding to prevent the foreclosure sale of his stock in his four (4) real estate entities and those entities subsequently filed Chapter 11 petitions in this Court on or about October 30, 2020. Those real estate entities are represented by independent counsel and specifically, The Kantrow Law Group.

During the Chapter 11 period, Mr. Wu has made his required payments on the mortgages on his residence located at 60 Overlook Road, Locust Valley, New York 11560-1304 ("Residence").

Chapter 11 disclosures statements and proposed plans of reorganization in the real estate cases of Victoria Towers Development Corp., Flushing Landmark Realty LLC, Lucky Star-Deer Park Realty LLC and Queen Elizabeth Realty Corp. are also being filed and hearings on the approval of their Disclosure Statements will be scheduled by the Court.

8.    Post Confirmation Operation of the Debtor.

The Debtor hopes that with resolution with his creditors under his Plan that he will be able to focus his energies on his varied business interests. Mr. Wu believes that he will be able to generate the necessary funds to make the payments under the Plan.

a.    <u>Insider Transactions</u>.

Since the filing of the Petition, there have been no loan transactions between the Debtor and any insider.

b.    <u>Pending Litigation</u>

Other than the litigation that was pending prepetition against the Debtor as the guarantor to the lenders, there is one (1) adversary proceeding pending in this Court where creditor Harary Group is seeking to deny Mr. Wu's discharge.  Mr. Wu has answered the Complaint denying liability in all respects and the parties have exchanged document discovery and are in the process of scheduling depositions.  It is Mr. Wu's intention to file a motion for summary judgment as there is no factual or legal basis for the claims that have been asserted by the Harary Group in that adversary proceeding.

9.    <u>Preference and Other Claims Under 11 U.S.C. Sections 544(b), 547, 548, 549 and 550 as Assets of the Estate</u>.

After a review of the Debtor's books and records by the Debtor, pursuant to Section 547 of the Bankruptcy Code, the Debtor believes that there were no preferential payments made within ninety (90) days of the commencement of this case.  Further, the Debtor believes that there are no claims against insiders or other entities under 11 U.S.C. §§544(b), 547, 548, 549 and 550, or applicable state law.

10.    <u>Summary of the Plan</u>.

The following is a summary of certain provisions of the Plan. The following is not a complete restatement of the Plan and it is qualified in its entirety by the provisions of the Plan. Because the Plan deals with legal concepts and incorporates the provisions and requirements of

the Bankruptcy Code, you may wish to consult with your attorney in making a decision regarding your vote with respect to the Plan.

      a.      <u>Classification of Claims and Interests.</u>

A claim is in a particular class only to the extent that the claim qualifies within the description of that class and is in a different class to the extent that the remainder of the claim qualifies within the description of the different class.

All Allowed Administrative Claims will be paid in cash, in full, in such amounts as are incurred in the ordinary course of business by the Debtor or in such amounts as such Administrative Claims (such as professionals) are allowed by the Court:

      (1)      On the Effective Date; or

      (2)      As may be agreed to by the Claimants and the Debtor.

The Debtor's counsel, Weinberg, Gross & Pergament LLP will seek the sum of approximately One Hundred Fifty Thousand Dollars and 00/100 ($150,000.00) for representation of the Debtor and the Debtor's accountant, Joseph Broderick, CPA will seek the sum of approximately $20,000.00 for his preparation of the Debtor's monthly operating reports.

There are no other Administrative Claims other than accrued, but not due, quarterly fees to the Office of the United States Trustee and expenses that are being paid in the normal course. The United States Trustee's fees will continue to be incurred until the Court's entry of a Final Decree or an order closing the case.

There is a pre-petition priority tax claim of the Internal Revenue Service in the sum of $3,126,568.50. Prior to the bankruptcy, Mr. Wu was disputing the claim through the services of DLA Piper and the Debtor is applying for the retention of DLA Piper to continue the tax protest. As of the

10

Petition Date, DLA Piper had persuaded the Internal Revenue Service to reduce its claim by approximately $2,400,000.00.

      i.      Class 1. Class 1, which is unimpaired, consists of the Allowed Secured Claim of Bank of America in the sum of $3,122,587.90, and it holds the first mortgage with respect to the Debtor's Residence. The Debtor is current on the mortgage obligation and it will continue to be paid under the terms of the mortgage note and mortgage with monthly payments of $21,950.00. The last payment due under the mortgage is May 2033. Bank of America shall retain its mortgage.

      ii.      Class 2. Class 2, which is unimpaired, consists of the secured claim of Bank of America in the sum of $1,131,885.15 and it holds a second mortgage on the Debtor's Residence. The Debtor has made the payments under the mortgage and note and was not in default at the time of the bankruptcy filing. The Debtor will continue to make monthly payments of $7,776.00 per month in accordance with the mortgage and mortgage note. The last payment due under the mortgage is August 2027. Bank of America shall retain its mortgage.

      iii.      Class 3. Class 3, which is unimpaired, consists of the secured claim of Wells Fargo Bank with respect to the Debtor's Residence. The amount of the claim is $56,951.95 and the debt is secured by a lien on the Debtor's Residence. The Debtor is making monthly payments in the sum of $1,522.00 in accordance with the note and will continue to make those payments. The value of the Residence is in excess of the debt and the Debtor will thus continue to make the payments in accordance with the note. The last payment is due in March 2025. Wells Fargo Bank shall retain its lien with respect to the Residence.

      iv.      Class 4. Class 4, which is unimpaired, consists of the secured claim of Alliant Credit Union with respect to the Debtor's 2014 Audi. The amount of the claim is $23,506.49 and the debt is secured by a lien on the Debtor's vehicle. The Debtor is making monthly payments in the sum

of $1,143.00 in accordance with the note and will continue to make those payments. The value of the Vehicle is in excess of the debt and the Debtor will thus continue to make the payments in accordance with the note. The last payment is due on May 17, 2023. Alliant Credit Union shall retain its lien with respect to the Vehicle.

    v.  Class 5. Class 5, which is unimpaired, consists of the secured claim of Alliant Credit Union with respect to the Debtor's 2015 Rolls Royce Wraith. The amount of the claim is $92,133.56 and the debt is secured by a lien on the Debtor's Vehicle. The Debtor is making monthly payments in the sum of $2,094.46 in accordance with the note and will continue to make those payments. The value of the Vehicle is in excess of the debt and the Debtor will thus continue to make the payments in accordance with the note. The last payment is due on August 17, 2024. Alliant Credit Union shall retain its lien with respect to the Vehicle.

    vi.  Class 6. Class 6, consists of the secured claim of Xizhu Bai which arose from a pre-petition settlement agreement with the Debtor. Mr. Bai holds a Judgment in the sum of $9,003,675.72, which is a lien on the Debtor's Residence. The Debtor's Residence has a value of $6,400,000.00 and the amount of Mr. Bai's security interest in the Residence, will be subject to a hearing before the Court, as the Bank of America's mortgages and Wells Fargo's mortgage are ahead of Mr. Bai's judgment. Mr. Bai's secured claim, after determination by the Court, will be paid in sixty (60) monthly payments commencing on the Effective Date. The balance of Mr. Bai's claim will be deemed unsecured and included in Class 8.

    vii.  Class 7. Class 7, which is unimpaired in an amount to be determined, consists of the Allowed Secured Claim of Landmark Portfolio Mezz LLC, which has filed a secured claim in the sum of $15,700,000.00, plus accrued interest. Landmark Portfolio Mezz LLC had obtained the pledge of Mr. Wu's stock in Queen Elizabeth Realty Corp. and a pledge of the stock in the related

mezzanine companies, which own the real property known as Flushing Landmark, Victoria Towers and Lucky Star-Deer Park. The Debtor is proposing to pay Landmark Portfolio Mezz LLC the sum of $15,000,000.00 in full satisfaction of its lien and claim and the funds will be generated from the sale and/or refinance of Lucky Star-Deer Park LLC and/or Queen Elizabeth Realty Corp.

       viii.    Class 8.  Class 8, which is impaired, consists of the Allowed Unsecured Claims. There are ten (10) claims asserted in the aggregate of $236,670,578.10. Most of these claims will be substantially reduced or expunged upon the sale or refinance of the real properties in the related Chapter 11 cases. The amount of distribution cannot be determined at this time, but will be at least $10,000,000.00. The Allowed Unsecured Claims, include those claims of judgment creditors, which have filed judgment liens on the Debtor's Residence and those claims will be reclassified at least in part as general unsecured claims, and upon payment under the terms of the Plan, the judgment liens shall be extinguished.

       The Plan provides for a ratification and exculpation of the Debtor's actions in this Chapter 11 case and in proposing the Plan. The ratification and exculpation clauses provide releases of claims against the Debtor and his representatives, except for gross negligence or willful misconduct.

11.    <u>Voting and Confirmation Procedures</u>.

       In order for a Plan to be confirmed, various statutory conditions must be satisfied, including (i) acceptance of a Plan by at least one impaired class entitled to vote on the Plan; (ii) provision for payment of distribution to each claimant of money and/or property of equal value to what the claimant would have received in a Chapter 7 liquidation; and (iii) a finding by a Court that it is feasible.

a.   Procedure for Filing Proofs of Claim.

The Plan provides that claims will be paid by the Debtor only if evidenced by a timely proof of claim that is allowed by the Court pursuant to Section 502 of the Bankruptcy Code or found to be undisputed or otherwise listed in the Debtor's schedules as undisputed, non-contingent and liquidated. The Court has issued an Order directing all claimants whose claims are either not scheduled as due by the Debtor or are scheduled as disputed, contingent or unliquidated, to file a proof of claim on or before December 18, 2020 ("bar date").

b.   Who May Vote.

Under the Bankruptcy Code, pursuant to Sections 502(a) and 1126(a), a claimant is entitled to vote on a Plan of Reorganization or file an objection only if either (i) its claim has been scheduled by the Debtor and is not scheduled as disputed, contingent or unliquidated, or (ii) it has filed the proof of claim on or before the last date set by Court. As earlier set forth, in this case, December 18, 2020 was the last date for filing proofs of claim.

A claimant's vote may be disregarded if the Court determines that the claimant's acceptance or rejection of a Plan was not solicited or procured in accordance with the provisions of the Bankruptcy Code.

Only holders of claims and interests that are impaired under a Plan are entitled to vote on acceptance or rejection of the Plan. Generally, Section 1124 of the Bankruptcy Code provides that a class of claims or interests is considered impaired unless a Plan does not alter the legal, equitable and contractual rights of the holder of each claim or interest in the Class.

In this case, claimants in Classes 7 and 8 are entitled to vote and their votes will be solicited.

c.    Voting Procedures.

The Debtor is seeking the acceptance of holders of claims in Classes 7 and 8.  A ballot will be sent when this Disclosure Statement is approved by the Bankruptcy Court.  Each holder of an allowed claim in Classes 7 and 8 may vote on the Plan by then completing, dating and signing the ballot and filing the ballot as set forth below.

i.    Solicitation Period.

In order to be counted, a ballot must be received no later than the date set by the Court.  The Court approved this Disclosure Statement on _____, 2021 and has permitted the Debtor to solicit acceptances to their Plan.

Allowed claim holders' ballots must be received on or prior to _____, 2021.  Said ballots shall be sent to the following address:  Weinberg, Gross & Pergament LLP, 400 Garden City Plaza, Suite 403, Garden City, New York 11530, Attention:  Marc A. Pergament, Esq.

ii.    A ballot will be enclosed for each holder of claims eligible to vote on the Plan which will serve as a ballot for indicating acceptance or rejection of the Plan pursuant to the requirements of Sections 502 and 1126 of the Bankruptcy Code and Bankruptcy Rule 3018(c).  If you did not receive a ballot with this Disclosure Statement, when approved, you are not eligible to vote on the Plan.  If you have any questions concerning voting procedures, contact Marc A. Pergament, Esq. at (516) 877-2424.

iii.    Objection to Claims.

The Debtor has the right to object to claims.  The Debtor will file objections to claims within sixty (60) days of the Effective Date.

d.    Confirmation of the Plan.

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:

i.    <u>Confirmation Hearing.</u>

Section 1128 of the Bankruptcy Code requires the Court after notice, to hold a hearing on the confirmation of a Plan. The Court scheduled _____ as the date for the confirmation hearing for this case. The hearing on confirmation of the Plan will be conducted at the United States Bankruptcy Court for the Eastern District of New York, Alfonse M. D'Amato United States Courthouse, 290 Federal Plaza, Room 860, Central Islip, New York. Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to the confirmation of the Plan, regardless of whether it is entitled to vote.

ii.    <u>Objections to Confirmation.</u>

In the event the Bankruptcy Court approves this Disclosure Statement and pursuant to an appropriate court order, a party in interest may serve written objections to the confirmation of the Plan and file said written objection with the Clerk of the Bankruptcy Court, Alfonse M. D'Amato United States Courthouse, 290 Federal Plaza, P. O. Box 9013, Central Islip, New York 11722-9013 and serve a copy upon counsel for the Debtor and the Office of the United States Trustee, Alfonse M. D'Amato United States Courthouse, 560 Federal Plaza, Central Islip, New York  11722, Attention: Stan Yang, Esq.

Objections to confirmation of the Plan are made pursuant to Bankruptcy Rule 3020(b) and are governed by Bankruptcy Rule 9014 and as set forth in the Order approving this Disclosure Statement. UNLESS AN OBJECTION TO CONFIRMATION SHALL BE FILED AND SERVED IN A TIMELY MANNER, IT MAY NOT BE CONSIDERED BY THE COURT.

iii.    <u>Requirements for the Confirmation of the Plan</u>.

At the confirmation hearing, the Court will determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied, in which event the Court will enter an order confirming the Plan. The requirements include:

(1)    With respect to each impaired class of claims, each holder of an allowed claim in the class has either accepted the Plan or receives under a Plan, property of a value, as of the effective date, that is not less than the amount the holder would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.

To determine if a Plan is in the best interest of each class, the probable results of a Chapter 7 liquidation must be compared with a result proposed under the Plan. Annexed as Exhibit "D" to this Disclosure Statement is a liquidation analysis of the Debtor as of February 28, 2021, which establishes that the impaired claimants are receiving, under the Plan, property of value, as of the Effective Date, greater than the amount the holders would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code or they agreed to accept the Debtor's proposed distribution.

(2)    <u>Feasibility of the Plan</u>. In order for a Plan to be confirmed, a Court must determine that a further reorganization or subsequent liquidation of the Debtor is not likely to result following confirmation of a Plan. Annexed to this Disclosure Statement as Exhibit "E" is a financial projection for the Debtor's income and expenses subsequent to the Effective Date which, the Debtor believes, clearly establishes that the test of feasibility has been met as the projections are based on the Debtor's monthly operating reports and the operations of Mr. Wu's businesses.

(3)    <u>Acceptance or Rejection by Impaired Classes</u>. Section 1129(a) of the Bankruptcy Code generally requires that each impaired class must accept the Plan by the requisite

votes for confirmation to occur. A class of impaired claims will have accepted a Plan if, of the holders

in the class actually voting, at least two-thirds in dollar amount and more than one-half in number of

allowed claims, cast an affirmative vote. The vote of any person can be disqualified pursuant to

Section 1126(e) of the Bankruptcy Code.

          (4)    Conclusion. The Debtor believes the Plan satisfies all statutory

requirements of Chapter 11 of the Bankruptcy Code, including the "feasibility" requirement.

12.    Tax Consequences.

          The Debtor has not researched the Federal Income Tax consequences of the Plan

for holders of claims and interest based upon the Internal Revenue Code of 1954, as amended, the

Treasury Regulations promulgated thereunder, traditional authority, and current administrative

rules and practice. The Debtor has not requested a ruling from the Internal Revenue Service with

respect to these matters. Accordingly, no assurance can be given to the interpretation by the

Internal Revenue Service. Further, the Federal Income Tax consequences to any particular

claimant or interest holder may be affected by matters not discussed herein. There also may be

state, local or foreign tax considerations applicable to each claimant or holder of an interest. EACH

CLAIMANT AND HOLDER OF AN INTEREST IS URGED TO CONSULT ITS OWN TAX

ADVISOR AS TO THE CONSEQUENCES OF THE PLAN UNDER FEDERAL AND

APPLICABLE STATE, LOCAL AND FOREIGN TAX LAWS.

13.    Alternatives to the Plan.

          The Debtor believes that the Plan affords holders of claims the potential for the

greatest realization of value for their claims that is feasible under the circumstances.

          The Debtor is unaware of any reorganization proposal which is available other than

the proposal contained in the Plan. For the reasons noted above, the Debtor believes it is in the best

interest of their creditors, or that creditors will not receive as much or more in a Chapter 7 or Chapter 11 liquidation of his assets as is available to them under the Plan.

THE DEBTOR BELIEVES THAT CONFIRMATION AND IMPLEMENTATION OF THIS PLAN IS PREFERABLE TO ANY OF THE ALTERNATIVES EXPLORED BECAUSE IT MAY PROVIDE A GREATER RECOVERY TO ALL HOLDERS OF CLAIMS AND INTERESTS THAN THOSE AVAILABLE IF THE PLAN IS NOT CONFIRMED. IN ADDITION, OTHER ALTERNATIVES MAY INVOLVE SIGNIFICANT DELAY, UNCERTAINTY AND SUBSTANTIAL ADDITIONAL COSTS OF ADMINISTRATION WITH NO CERTAINTY OF A BETTER RESULT. ACCORDINGLY, THE DEBTOR URGES YOU TO VOTE IN FAVOR OF THE PLAN.

Dated: Garden City, New York
     April 8, 2021

                      Weinberg, Gross & Pergament LLP
                      Attorneys for Debtor and Debtor-In-Possession

          By:    _____

                      Marc A. Pergament
                      400 Garden City Plaza, Suite 403
                      Garden City, New York 11530
                      (516) 877-2424

Dated: Locust Valley, New York
     April 8, 2021

                      _____

                      Myint Kyaw a/k/a Jeffrey Wu

interest of their creditors, or that creditors will not receive as much or more in a Chapter 7 or Chapter 11 liquidation of his assets as is available to them under the Plan.

THE DEBTOR BELIEVES THAT CONFIRMATION AND IMPLEMENTATION OF THIS PLAN IS PREFERABLE TO ANY OF THE ALTERNATIVES EXPLORED BECAUSE IT MAY PROVIDE A GREATER RECOVERY TO ALL HOLDERS OF CLAIMS AND INTERESTS THAN THOSE AVAILABLE IF THE PLAN IS NOT CONFIRMED. IN ADDITION, OTHER ALTERNATIVES MAY INVOLVE SIGNIFICANT DELAY, UNCERTAINTY AND SUBSTANTIAL ADDITIONAL COSTS OF ADMINISTRATION WITH NO CERTAINTY OF A BETTER RESULT. ACCORDINGLY, THE DEBTOR URGES YOU TO VOTE IN FAVOR OF THE PLAN.

Dated: Garden City, New York
      April 8, 2021

                                      Weinberg, Gross & Pergament LLP
                                      Attorneys for Debtor and Debtor-In-Possession

             By:    /s/  Marc A. Pergament
                   Marc A. Pergament
                   400 Garden City Plaza, Suite 403
                   Garden City, New York 11530
                   (516) 877-2424

Dated: Locust Valley, New York
      April 8, 2021

                                      Myint Kyaw a/k/a Jeffrey Wu