UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

RETURN DATE:    JUNE 09, 2021
TIME:    10:00 A.M.

--------------------------------------------------------X

In Re:

Myint Kyaw a/k/a Jeffrey Wu,

          Debtor.

Chapter 11

Case No. 20-72407-A736

Objection

--------------------------------------------------------X

      Debtor and Debtor-in-Possession Myint Kyaw a/k/a Jeffrey Wu ("Debtor" or "Mr. Wu"), by his attorneys, Weinberg, Gross & Pergament LLP, as and for his Objection in response to the Order to Show Cause of June 2, 2021, responds as follows:

      1.     On July 8, 2020 the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and remained in possession and management of his properties and affairs.

      2.     The Debtor filed his bankruptcy petition as an emergency petition as one of the Debtor's secured creditors, Landmark Portfolio Mezz LLC had scheduled a Uniform Commercial Code sale of the Debtor's stock in his real property entities, including Queen Elizabeth Realty Corp. ("QERC").

      3.     Immediately after the filing of the petition, the Debtor started to gather the information and documents necessary to complete his schedules and Statement of Financial Affairs.

      4.     At no time in that process did the Debtor intend to mislead the Court, the United States Trustee or his creditors. The process to complete those schedules and Statement of Financial Affairs was complex and difficult due to the numerous corporations that Mr. Wu had owned and managed over his twenty five (25) year business career. These complications led to

clarifications being filed with the Office of the United States Trustee and amendments to the schedules and Statement of Financial Affairs.

5.      The Debtor initially thought that his business management staff could prepare the monthly operating reports without the assistance of an outside accountant. After the United States Trustee raised questions concerning the methodology utilized, Mr. Wu retained Joseph Broderick CPA as his accountant and Mr. Broderick is familiar with monthly operating reports as he has provided those for Trustees in Chapter 11 cases and as an accountant for chapter 7 trustees and is thus familiar with the monthly operating reports and the requirements of the Office of the United States Trustee.

6.      The Debtor provided unrestricted access to all books and records to Mr. Broderick and provided all information as requested to prepare the monthly operating reports. Mr. Broderick reviewed the initially filed operating reports and prepared amended operating reports to conform, in all respects, with the Office of the United States Trustee's guidelines.

7.      Those efforts resulted in corrections being made which answered the questions that were raised by the Office of the United States Trustee.

8.      The Office of the United States Trustee conversed with Mr. Broderick and determined that a meeting would be conducted after the amended operating reports were filed so all questions could be answered by Mr. Broderick and where necessary, by Mr. Wu.

9.      The Debtor had entered into a Stipulation with its secured creditors providing for the filing of the Disclosure Statement and Plan of Reorganization by April 9, 2021 and those documents were filed prior to Mr. Broderick completing the amendments of the monthly operating reports and thus, many questions raised by the Office of the United States Trustee had not yet been addressed.

10.     The issues raised by the United States Trustee were then explained in the amended operating reports and specifically, a separate special schedule was provided with the operating reports which explained the bills that were being paid by the Debtor directly, by his wife in total or partially, or by one of Mr. Wu's companies, which are not in Chapter 11.

11.     Mr. Wu operates companies which are not in Chapter 11.

12.     Mr. Wu operates four (4) supermarkets and many of the debts that are owed by Mr. Wu relate to those supermarkets.

13.     Thus, the schedules explained which party paid the bill and what the bill related. The vast majority of the issues related to household expenses as the Debtor lives in the home with his wife, Veronica Wu, and their three (3) children.

14.     The amended operating reports with complete schedules were filed with the Clerk of the United States Bankruptcy Court and provided to the Office of the United States Trustee on June 4, 2021 and June 8, 2021.

15.     The balance sheets filed with the monthly operating reports and with the amended operating reports, identified each of the companies in which Mr. Wu has an ownership interest and to the best of the accountant's ability, disclosed debts due and owing related to the corporations. There are complications as some of the debt is owed by Mr. Wu's multiple entities, including 41-60 Main Street LLC.

16.     For instance, Mr. Wu, through a holding company, operates two (2) supermarkets in Massachusetts, which assets are encumbered by a Judgment obtained, pre-petition, by Haymarket Corporation and Chang & Son. That Judgment is in the sum of $7,000,000.00, which is greater than the value of the assets of each of those supermarkets.

17.    Further, Mr. Wu owns an interest in a supermarket in Flushing, New York, and the stock of that entity is owned by Hong Kong Holding Corp., which is Mr. Wu's holding company that holds the stock in his supermarkets.

18.    The value of the Flushing supermarket is in dispute as there is a pending litigation commenced by the landlord seeking to evict the supermarket for failure to pay the full rent since March 2020 as the lease for that real property includes the supermarket operated by Mr. Wu's company as well as unrelated subtenants and those subtenants have not paid rent since March 2020 due to the pandemic. Some of those subtenants operated small restaurants and were prohibited from operating under the Order of the Governor of the State of New York and only recently re-opened.

19.    The United States Trustee raised questions concerning a Trust formed in 2012 known as the Wu Family Gift Trust of 2012 (the "Trust"). That Trust was created in 2012 and the assets placed into that Trust were provided in 2012 and no additional assets have been transferred to that Trust since its formation in 2012. Mr. Gene Greenfest, former partner of Anchin, Block & Anchin is one of the Trustees and he has represented in writing to the Office of the United States Trustee that no additional assets were provided by Mr. Wu or anyone else for placement in that Trust since its formation in 2012.

20.    The bank statements for that Trust for 2020 were provided to the Office of the United States Trustee with a copy of the Trust Agreement, which had been previously provided.

21.    The Debtor has made substantial progress in the past ten (10) months negotiating with the creditors who are creditors of both Mr. Wu and who are secured creditors of his various entities.

22.     Those resolutions would hopefully result in the confirmation of plans of reorganization in each of the related real estate companies as well as Mr. Wu's personal case as they are all interconnected. The interconnection is due in part to the large tax ramifications that are present as Mr. Wu had refinanced some of his assets over the past ten (10) years to fund his renovation and construction related to Victoria Towers Development Corp., which is a 61,0000 square foot condominium and Flushing Landmark Realty Corp., which is a commercial real estate building in Flushing, New York.

23.     Mr. Wu also owns one hundred (100%) percent interest in Queen Elizabeth Realty Corp., which is a condominium in New York City on Elizabeth Street and from that space he operates a supermarket that has been operated by him for many, many years. The debt owed to Bank of America with respect to that real property is approximately $20,500,000.00 and that mortgage matured in August 2020. Mr. Wu desires to retain that real property by refinancing the debt as a sale of the asset will result in a capital gains tax of approximately $9,000,000.00. The stock in Queen Elizabeth Realty Corp. is pledged to Landmark Portfolio Mezz Corp. The new lender who has agreed to lend $21,000,000.00 to satisfy Bank of America is requiring the consent of Landmark Portfolio Mezz Corp. to that refinancing and that could not have been accomplished until a resolution was reached with Landmark Portfolio Mezz Corp. That resolution was recently concluded and the Debtor has now received a term sheet to provide the funds necessary to satisfy Bank of America and separate term sheet to raise the funds necessary to satisfy Landmark Portfolio Mezz Corp. at a reduced amount upon confirmation of a plan. With respect to Flushing Landmark Realty Corp., that real property is secured by a mortgage granted to 41-60 Main Street LLC and the total amount owed to 41-60 Main Street LLC is approximately $150,000,000.00 and the debt is securitized by the real property owned by Lucky Star-Deer Park Realty Corp. The

5

capital gains basis for Flushing Landmark Realty Corp. is approximately $20,000,000.00 and the capital gains basis for Lucky Star-Deer Park Realty Corp. is approximately 10,000,000.00. Thus, upon the sale of either of those real properties, large capital gains taxes would be incurred.

24.    The Debtor is in the process of refinancing of those real properties with a new lender, which will allow for the completion of the development of each of those real properties, and then permit the sale of the real property and satisfaction of both the secured debt and all of the capital gains taxes that will be owed.

25.    The Court previously noted at status conferences that there was large tax ramifications, and that, without even knowing the details, the Court's knowledge was spot on.

26.    The efforts over the last ten (10) months has thus been to resolve with all creditors in the best interest of all creditors of the various estates, including Mr. Wu's estate.

27.    Separate and apart, Mr. Wu also has a tax obligation to the Internal Revenue Service that is subject to a tax protest wherein the Debtor is represented by DLA Piper.

28.    The Debtor was successful pre-petition in reducing that tax obligation by approximately $2,400,000.00 and the tax appeal is in the appeal stage with the Internal Revenue Service and a determination cannot be predicted. That tax dispute relates to issues related to the import of loss carry forwards.

29.    The Debtor's Disclosure Statement and Plan of Reorganization that were filed were effectively in the beginning of the negotiations with the creditors  and settlements had not been finalized. The Debtor and his creditors had agreed to adjourn the hearing for approval of the Disclosure Statement as the creditors understood that changes were needed after negotiations were concluded.

30.     Mr. Wu had sought financing since the inception of the case but that process was complicated, to some degree, by the pandemic as appraisals could not be updated until there was a lifting of the restrictions and the process accelerated in or about January 2021 as the Debtor moved forward to restructure and finance some of the assets, and at the same time negotiate the sale of others, including Victoria Towers Development Corp.

31.     That negotiation has taken several steps forward as American Chengyi, a secured lender in second position on to Victoria Towers Development Corp. recently retained new counsel and that counsel has spent, to the best of my knowledge, the last forty five (45) days reviewing the file and the loan documents and related documents of both their client and of Sanford Partners, which holds the first lien as well as 41-60 Main Street LLC, which holds a second lien on certain units in the Victoria Towers Development Corp. condominium.

32.     Settlement discussions have been continuing between the parties and although a restructure has not yet been agreed upon, the parties are moving towards that goal and unfortunately, Sanford Partners was disappointed that it was not concluded but it could not have been concluded until American Chengyi was part of that process, and it has now become engaged.

33.     The Debtor believes that he has provided the Court, the United States Trustee, and the creditors with the information and documents requested and has been working with those creditors with minimal judicial intervention to provide the full disclosure of the information and documents requested. He would then provide an amended disclosure statement and amended plan of reorganization that would lead to a successful outcome for creditors. Conversion of his case would probably result in a worse result for his creditors.

34.    The complexities of Mr. Wu's business interests has made this process a longer process than usual but because significant progress has been made, it is requested this Court give the Debtor sufficient time to conclude those negotiations.

35.    As explained above, the Debtor is close to concluding a resolution with Haymarket and Chang & Son, which is a $7,000,000.00 creditor in his individual case, and has also resolved with Harary Group, which had commenced an adversary proceeding to deny discharge as well had asserted a Proof of Claim in the sum of $7,000,000.00. Those settlements will be incorporated in an amended plan of reorganization.

36.    The case is at a very sensitive time due to those negotiations with the secured creditors as the Debtor is attempting to minimize, if not eliminate, the deficiency claims of the secured creditors who are owed substantial funds. The efforts to refinance certain real properties and sell Victoria Towers Development Corp. is the key component of those plans and the Debtor believes he needs an additional seventy five (75) days to conclude those negotiations and arrange for the necessary financing upon Court approval. Upon the sale of Victoria Towers Development Corp., and refinancing of QERC's real property, and sale or refinancing of Flushing Landmark Realty Corp. and Lucky Star-Deer Park Realty Corp. will result in a fair distribution to the unsecured creditors.

37.     For the reasons set forth herein, it is requested that this Honorable Court deny its own Order to Show Cause to convert this case to Chapter 7 as the conversion would not be in the best interest of all the creditors of Mr. Wu's Estate nor the creditors of the related entities.

Dated: Garden City, New York
      June 8, 2021

                                    Weinberg, Gross & Pergament LLP
                                    Attorneys for Debtor and Debtor-in-Possession
                                    Myint Kyaw a/k/a Jeffrey Wu

By:                                 
                                    Marc A. Pergament
                                    400 Garden City Plaza, Suite 403
                                    Garden City, New York  11530
                                    (516) 877-2424