UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                                          Chapter 11

Myint Kyaw a/k/a Jeffrey Wu,                                  820-72407-REG

                                                    Debtor.
------------------------------------------------------------x

**JOINT MOTION OF THE INDIVIDUAL DEBTOR AND THE MEZZ LENDER
SEEKING APPROVAL OF A FINAL STIPULATION OF SETTLEMENT
RESOLVING THE CLAIMS OF THE MEZZ LENDER**

TO:   **HON. ROBERT E. GROSSMAN
       UNITED STATES BANKRUPTCY JUDGE**

Myint Kyaw a/k/a Jeffrey Wu (the "Individual Debtor") by his attorneys, Weinberg, Gross & Pergament, LLP and Landmark Portfolio Mezz LLC (the "Mezz Lender") by its attorneys, Goldberg Weprin Finkel Goldstein LLC, respectfully submit this joint motion (the "Motion") seeking the entry of an Order pursuant to Bankruptcy Rule 9019(a) approving the attached Final Stipulation of Settlement annexed hereto as Exhibit "A" (the "Settlement") relating to the claims of Landmark Portfolio Mezz LLC (the "Mezz Lender"), represents as follows:

### PRELIMINARY STATEMENT

1.   The Mezz Lender is one of the largest (if not largest) direct creditor of the Individual Debtor, having filed a claim of almost $24 million, which is secured by, *inter alia*, an exclusive pledge of the Debtor's 100% stock interest in Queen Elizabeth Realty Corp. ("QERC"), which owns the commercial condominium unit at 68-80 Elizabeth Street, New York, NY (the "Chinatown Property"). The Chinatown Property not only retains significant equity of at least $10 million or more, but also constitutes one of the Individual Debtor's most important business locations where he conducts supermarket operations that cannot be easily replaced or

1

substituted.  Besides the pledge of the QERC stock, the Mezz Lender also holds a pledge of the Individual Debtor's membership interests in the other corporate Debtors.

2.      Given these economic rights and entitlements, the Individual Debtor has pursued extensive negotiations with the Mezz Lender throughout the Chapter 11 cases and recently reached a final agreement, as embodied in the Settlement, providing for, *inter alia,* a discounted total cash payment of $18 million to the Mezz Lender on account of its pre-petition secured claim in the sum of $23,948,785.05.  The Settlement further provides that this discounted payment shall be funded either through a refinancing of the Individual Debtor's personal assets or a partial liquidation of the Debtor's stock interest in a REIT known as GJJ Reit Inc. (the "REIT") held by the Debtor through his affiliate, VWU 888 LLC.

3.      While it is anticipated that the Settlement will be incorporated under a plan of reorganization (assuming the Individual Debtor receives a satisfactory report from the Examiner), the Individual Debtor and Mezz Lender are also moving for separate Bankruptcy Court approval of the Settlement under Bankruptcy Rule 9019(a).  If approved by the Bankruptcy Court, the Settlement shall be binding and effective even if the Individual Debtor ultimately fails to confirm a plan of reorganization.

4.      Because the Mezz Lender holds significant secured claims on multiple assets, it is entitled to extensive adequate protection.  The granting of a pledge of the Individual Debtor's interest in the REIT is a means of providing an alternate payment arrangements for the Settlement in the event the anticipated refinancing does not materialize.  As such, the pledge of the Individual Debtor's interest in the REIT constitutes replacement collateral or the indubitable equivalent of additional collateral under 11 U.S.C. §361 for the Debtor's continued use,

possession and ownership of the Chinatown Property, plus all other properties subject to the Mezz Lender's multiple pledges.

## BACKGROUND

5.      The Individual Debtor is a real estate owner and operator, with a number of varied business interests, who filed an individual Chapter 11 case on July 8, 2020.  The bankruptcy was done to prevent an imminent UCC Article 9 foreclosure sale of the Individual Debtor's various stock and membership interests, which was scheduled by the Mezz Lender after the state court refused to stay the auction.

6.      The Mezz Lender's claim arises out of a loan in the principal amount of $15.3 million which went into default quickly after origination and has accrued substantial default interest and other charges since April of 2018.  Shortly after the Individual Debtor's Chapter 11 filing, the Mezz Lender filed a proof of claim in the sum of $23,948,785.05 secured by various interests.  In bankruptcy, the Individual Debtor has recognized the validity of the Mezz Lender's secured claim in the context of a preliminary stipulation addressing a pending motion filed by the Mezz Lender to vacate the automatic stay as it relates to the QERC stock and Chinatown Property.  (*See,* ECF No. 67).

7.      The preliminary stipulation duly recognized the pledge of the QERC stock securing, in part, the Mezz Lender's pre-petition indebtedness of $23,948,785.05.    The preliminary stipulation also granted certain interim adequate protection payments of $40,000 per month, and set a framework for the filing of a potential creditor's plan.  The motion to approve the preliminary settlement was filed on March 8, 2021 (ECF No. 152) and has been adjourned in view of the recent and intervening appointment of the Examiner (ECF No. 231).

8.      During the pendency of the Examiner's investigation, the Individual Debtor and Mezz Lender have continued negotiations, which were expanded to achieve a final resolution of the claims.   Mindful of the impending report, the Individual Debtor and Mezz Lender have selected a return date to consider the Settlement after the expected receipt of the Examiner's report, which hopefully will be satisfactory to allow the Chapter 11 cases to move forward toward confirmation.

## LEGAL AUTHORITY FOR APPROVAL OF SETTLEMENTS PURSUANT TO BANKRUPTCY RULE 9019(b)

9.      Compromises and settlements are integral to the bankruptcy process. *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968) *reh'g denied,* 391 U.S. 909 (1968), *citing Case v. Los Angeles Lumber Products Co.,* 308 U.S. 106, 130 (1939). The structure and provisions of the Bankruptcy Code promote negotiation and settlement for the benefit of creditors in accordance with "the policy of the law generally [which is] to encourage settlements." *In re Jackson Brewing Co.,* 624 F.2d 599 (5th Cir. 1980). Resolution of claims through settlement furthers the goal of bankruptcy administration to liquidate estate assets as rapidly as possible "consistent with obtaining the best of fruitless litigation." *In re Carla Leather, Inc.,* 44 B.R. 457, 471 (Bankr. S.D.N.Y. 1984) *aff'd,* 50 B.R. 764 (S.D.N.Y. 1985).

10.     The United States Court of Appeals for the Second Circuit has stated that the responsibility of the Judge is "not to decide the numerous questions of law and fact raised by appellants, but rather to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir. 1983), *cert denied sub. nom. Cossoff v. Rodman,* 464 U.S. 822 (1983).

11.    Indeed, the proposed settlement need not be ideal, but merely above the lowest point in the range of reasonableness under the circumstances. *See, W.T. Grant, supra,* 699 F.2d at 613-614.  This concept of a "range of reasonableness" recognizes "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent to taking any litigation to completion.  *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972).

12.    In deciding whether a settlement should be approved, courts in the Second Circuit have considered the so-called *Iridium* factors:

  i.    the balance between the litigation's possibility of success and the settlement's future benefits;
  ii.    the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment;
  iii.    the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;
  iv.    whether other parties in interest support the settlement;
  v.    the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement;
  vi.    the nature and breadth of releases to be obtained by officers and directors; and
  vii.    the extent to which the settlement is the product of arm's length bargaining.

*In re Iridium Operating LLC,* 478 F.3d 452, 462 (2d Cir. 2007)(interior quotations removed). *See, also, City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974); *In re Ionosphere Clubs* 156 B.R. 414, 426 (S.D.N.Y. 1993).

13.    The proposed Settlement comfortably meets the *Iridium* standard of reasonableness.  The Settlement addresses a number of the issues that could derail the Individual Debtor's ability to confirm a plan, while providing a significant discounted payoff to the Individual Debtor, which is beneficial to the overall interests of the estate.  The Settlement was negotiated in good faith by experienced counsel who each made accommodations to the other.

14.     The Settlement also allows the opportunity for the Individual Debtor to reach other settlements with other creditors.  Considering that the Individual Debtor has no defense to the Mezz Lender's claims, the only question is the value of the Mezz Lender's various security interests, which could involve protracted hearings with attendant costs and risk.  All of this is avoided by the Settlement, and, thus, each of the *Iridium* factors supports a finding that the Settlement should be readily approved.

### III. <u>CONCLUSION</u>

For all of the reasons set forth herein, the Settlement should be approved.

Dated: Garden City, New York
      September 3, 2021

Dated: New York, New York
      September 3, 2021


Weinberg, Gross & Pergament, LLP
Attorneys for the Debtor
400 Garden City Plaza, Suite 403
Garden City, New York 11530
(516) 877-2424
mpergament@wgplaw.com

Goldberg Weprin Finkel Goldstein, LLP
Attorneys for the Mezz Lender
1501 Broadway – 22nd Floor
New York, New York 10036
(212) 221-5700
knash@gwfglaw.com


By:     /s/ Marc A. Pergament, Esq.

By:     /s/ Kevin J. Nash, Esq.

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                              Chapter 11

Myint Kyaw a/k/a Jeffrey Wu,                        820-72407-REG

                                    Debtor.
------------------------------------------------------------x

### STIPULATION RELATING TO TREATMENT OF THE CLAIM OF LANDMARK PORTFOLIO MEZZ LLC FOR PURPOSES OF THE INDIVIDUAL DEBTOR'S CHAPTER 11 PLAN, AS AMENDED

**WHEREAS**, Myint Kyaw a/k/a Jeffrey Wu (the "Individual Debtor") filed a voluntary petition under Chapter 11 of the United States Bankruptcy Court on July 8, 2020 (the "Petition Date"), and thereafter has continued in possession and management of his assets as a debtor-in-possession; and

**WHEREAS**, Landmark Portfolio Mezz LLC (the "Mezz Lender") is one of the Individual Debtor's largest creditors having provided the Debtor with a mezzanine loan in the principal sum of $15,300,000, which has been in default since April of 2018; and

**WHEREAS**, the Mezz Lender filed respective proofs of secured claim against the Debtor and other affiliated entities in the total sum of $23,948,785.05 as of the Petition Date (the "Claim"); and

**WHEREAS**, among other things, the Claim is secured by a pledge of the Debtor's 100% stock interest (the "QERC Stock") in a corporation known as Queen Elizabeth Realty Corp. ("QERC") which owns the commercial condominium located at 68-80 Elizabeth Street, New York, New York (the "Elizabeth Street Unit") and

**WHEREAS**, among the Individual Debtor's other assets is a stake in a publicly registered real estate trust known as GTJ REIT, Inc., held by the Debtor through VWU888 LLC; and

1

**WHEREAS**, the Mezz Lender previously moved to vacate the automatic stay pursuant to 11 U.S.C. §362(d) to complete a U.C.C. Article 9 foreclosure sale of the QERC Stock (ECF No. 67) (the "Lift Stay Motion"); and

**WHEREAS**, the Lift Stay Motion has been adjourned and carried from time to time pending the Court's approval of a proposed interim stipulation originally dated March 8, 2021 and renoticed for July 14, 2021 (the "Interim Stipulation"); and

**WHEREAS**, the Court recently appointed an Examiner to provide an investigation concerning the Debtor's financial affairs; and

**WHEREAS**, prior to the appointment of the Examiner, the Individual Debtor filed a Chapter 11 Plan of Reorganization dated April 8, 2021 (ECF #173), which provided for treatment of the Mezz Lender's Claim; and

**WHEREAS**, the Mezz Lender objected to the Individual Debtor's disclosure statement due to, *inter alia*, the unacceptable treatment of the Claim; and

**WHEREAS**, the Individual Debtor and the Mezz Lender (collectively, the "Parties") have now reached an agreement regarding a consensual treatment of the Mezz Lender's Claim to be incorporated as part of an Amended Plan of Reorganization (the "Amended Plan") to be filed by the Individual Debtor upon the terms and conditions set forth herein;

**NOW, therefore, it is STIPULATED AND AGREED as follows:**

2

1.  <u>Effective Date</u>. This stipulation is subject to approval by the Bankruptcy Court pursuant to Bankruptcy Rule 9019(a) as a settlement of claims against the Debtor (the "<u>9019 Motion</u>"). The parties shall seek Bankruptcy Court approval pending submission of the Examiner's Report regarding the Debtor's financial and business affairs, with a return date on the 9019 Motion to be made after September 13, 2021 following the filing of the Examiner's Report. If and when approved by the Bankruptcy Court, this Stipulation shall then become immediately effective (the "<u>Effective Date</u>"), whereupon this Stipulation shall then be incorporated as part of the Debtor's Amended Plan regarding the agreed treatment of the Mezz Lender's Claim. If this Stipulation is not approved by the Bankruptcy Court, then the Mezz Lender shall have all of its rights and remedies to continue to seek payment of the Claim and may pursue the Lift Stay Motion.

2.  <u>Stipulated Reduced Amount</u>. On or after the Effective Date, and for purposes of the Amended Plan (and expressly subject to the timely confirmation thereof as an express condition precedent), the Mezz Lender shall reduce the Claim and accept a discounted lump sum pay-off in the total amount of $18 million including principal, all accrued interest and fees (the "<u>Reduced Claim</u>"). In the event that the Individual Debtor fails to timely pay the Reduced Claim in full prior to the Payment Deadline, defined below, then the reduction in the Claim provided herein shall be null and void, and the Mezz Lender shall be entitled to assert the full amount of the Claim, plus all accrued and allowed interest, fees and expenses and exercise all of its rights and remedies in bankruptcy.

3.  <u>Timing of the Payment</u>. The Individual Debtor shall confirm its Amended Plan and fund the $18 million payment to the Mezz Lender all on or before November 30, 2021 (the "<u>Payment Deadline</u>"). Following the Effective Date, the Mezz Lender agrees to support

confirmation and vote to accept the Amended Plan incorporating this Stipulation relating to treatment of the Mezz Lender's Claim.

4.    Pledge of the REIT Stock. The Claim shall be additionally secured by the Debtor's granting to the Mezz Lender hereunder a first lien, security interest and pledge of the Individual Debtor's otherwise unencumbered interest in GTJ REIT, Inc. (with appropriate powers and endorsements), whether held directly or indirectly through VWU888 LLC (collectively, the "REIT Interest") to the extent of the sum of $18 million (priced at the time of liquidation) net of all taxes, selling costs, and expenses. As of the Effective Date, this pledge and lien and security interest shall have priority over any other liens, rights or interests in and to the REIT Interest to the extent of the net sum of $18 million (priced at the time of liquidation) except for any pre-existing liens. Notwithstanding the foregoing, the Mezz Lender shall continue to retain all of its lien and security rights concerning the QERC Stock pending the timely and full payment of the Reduced Claim. All of the payments made hereunder shall be allocated to satisfy in whole or part the Mezz Lender's Claim, secured by the QERC Stock and its claim and lien of the related Chapter 11 cases. As a consequence, the payments received by the Mezz Lender under this Stipulation shall not be subject to the rights of the Debtor's other creditors, including the senior mortgage lender.

5.    Method of Payment. The Individual Debtor shall pay the Reduced Claim in full in immediately available funds prior to the Payment Deadline, pursuant to wire instructions to the IOLA account of Goldberg Weprin Finkel Goldstein LLP as counsel for the Mezz Lender (the "Cash Payment"). In the event that the Cash Payment is not timely and fully made, then immediately upon the expiration of the Payment Deadline, the Mezz Lender, in its sole option, and whether or not the Amended Plan is confirmed, may exercise all of its rights to liquidate the pledge of Debtor's REIT Interest, whereupon the net proceeds thereof to the extent of $18 million (priced

4

at the time of liquidation) shall be applied as an alternative source of payment of the Reduced Claim. To the extent that the Mezz Lender exercises this option and causes the Reduced Claim to be paid in full, then the Debtor shall not be obligated for the balance of the Claim. Conversely, if the Mezz Lender does not exercise its option or is prevented from doing so, then the Mezz Lender shall be entitled to seek recovery for the full amount of the Claim plus accrued interest and fees and may pursue the UCC Article 9 foreclosure sale of the QERC Stock.

6.    <u>Mutual Release by Parties.</u>  Except for all of the obligations set forth herein, and solely conditioned upon the timely payment in full of the amounts due hereunder, the Mezz Lender (together with its officers, directors and shareholders) on the one hand, and the Individual Debtor (together with its affiliates) on the other hand, shall then be deemed to release and discharge the other from any claims, demands, rights, actions and causes of action which were or could be asserted of every kind or nature, whether at law or in equity, that each of them now has, claims to have, or has had, at any time against the other. In the interim, however, the mutual release provisions shall not become effective.

7.    <u>Other Provisions.</u>

a.    <u>Interim Stipulation</u>. To the extent approved, the Interim Stipulation shall remain in full force and effect through the Payment Deadline, and shall thereafter be deemed to have expired.

b.    <u>Reservation of Rights</u>. Pending the Effective Date, the parties hereto reserve all of their respective rights, claims, remedies, and defenses, and nothing contained herein shall be deemed a waiver or relinquishment of same.

c.    <u>Counterparts</u>. This Stipulation may be signed in counterparts and by electronic signature.

d.    <u>Waiver</u>. No failure or delay by a party to insist upon the strict performance of any term, condition or covenant of this Stipulation, or to exercise any right, power or remedy hereunder shall constitute a waiver of the same or any other term of this Stipulation or preclude such party from enforcing or exercising the same or any such other term, condition, covenant, right, power or remedy at any later time.

e.    <u>Authority.</u> Each Party warrants that he or it is authorized to enter into and perform the terms of this Stipulation.

f.    <u>Validity</u>. This Stipulation constitutes a valid and binding agreement and contains valid and binding obligations of each Party and their successors and assigns, enforceable in accordance with its respective terms.

g.    <u>Entire Agreement</u>; This Stipulation constitutes the entire agreement and understanding between the parties with respect to the subject of this Stipulation and shall supersede all prior written and oral agreements concerning the subject matter hereof. Each Party declares and represents that no promise, inducement, or agreement not herein expressed has been made to the other Party, neither Party is relying on any matter outside of this Stipulation to enter into this Stipulation, that this Stipulation contains the entire terms of the settlement between the Parties, that each Party has had the opportunity to consult with an attorney of his or its choice, and that each Party has read the terms of this Stipulation, understands them, and accepts them of such Party's own free will. This Stipulation may not be amended, modified or otherwise changed in any respect whatsoever except by writing duly executed by the parties, and approved by the Bankruptcy Court.

h.    <u>No presumption Against Drafter</u>. The Parties have jointly prepared this Stipulation and agreed to the use of the particular language of the provisions of this Stipulation. Any question of doubtful interpretation will not be resolved by any rule of interpretation providing for interpretation against the Party who causes an uncertainty to exist or against the draftsman, nor will the language of this Stipulation be construed for or against any Party. In this Stipulation, (a) section headings are included for convenience of reference only and will not affect the construction of this Stipulation; (b) words in the singular will be held to include the plural and vice versa; (c) words of one gender will be held to include the other genders as the context requires; (d) the terms "hereof," "herein," "hereunder," "hereto" and "herewith" and words of similar import will, unless otherwise stated, be construed to refer to this Stipulation and not to any particular provision of this Stipulation; (e) the word "including" and words of similar import will mean "including, without limitation" unless otherwise specified; and (f) the word "or" will not be exclusive.

i.    <u>Retention of Jurisdiction</u>. Following the Effective Date, the Bankruptcy Court shall retain jurisdiction to determine any disputes arising hereunder.

Dated: New York, NY
       August **31**, 2021

Goldberg Weprin Finkel Goldstein LLP
*Attorneys for Landmark Portfolio Mezz LLC*
1501 Broadway, 22nd Floor
New York, NY 10036

By: _____
       Kevin J. Nash, Esq.


Weinberg, Gross & Pergament LLP
*Attorneys for Myint Kyaw a/k/a Jeffrey Wu*
400 Garden City Plaza
Garden City, New York  11530

By: _____
       Marc A. Pergament, Esq.