**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
**In re:**

**MYINT KYAW a/k/a,**                                    **Chapter 11**

**JEFFREY WU,**                                          **Case No. 820-72407 (REG)[1]**

                                    **Debtor.**
-------------------------------------------------------------------X


# EXAMINER'S FIRST INTERIM REPORT


**Robert S. Rosenfeld**
*Examiner*
**RSR CONSULTING, LLC**
**49 Roy Avenue**
**Massapequa, NY  11758**
**Telephone:  (516) 308-3505**


**Dated:  September 7, 2021**

─────────────────────────

[1] Related cases:  Lucky Star-Deep Park LLC (Case No. 8-20-73301-reg), Lucky Star-Deer Park Mezz LLC (Case No. 8-20-72403-reg), Flushing Landmark Realty LLC (Case No. 8-20-73302-reg), Flushing Landmark Realty Mezz LLC (Case No, 8-20-72404-reg), Victoria Towers Development LLC (Case No. 8-20-73303-reg), Victoria Towers Development Mezz Corp. (Case No. 8-20-72405-reg), and Queen Elizabeth Realty Corp. (Case No. 8-20-73327-reg).

**EXAMINER'S STATEMENT OF REPORT**

**TO THE HONORABLE ROBERT E. GROSSMAN,**
**UNITED STATES BANKRUPTCY JUDGE:**

Pursuant to Court Order, dated June 17, 2021 [Doc. 234], I, Robert S. Rosenfeld, the Examiner (the "Examiner") of the bankruptcy estate of Myint Kyaw a/k/a Jeffrey Wu (the "<u>Debtor</u>") respectfully submits this preliminary report (the "Report") of his investigation into the financial status and affairs of the Debtor (the "Investigation").

September 7, 2021

/s/ *Robert S. Rosenfeld*
_____
Robert S. Rosenfeld
 Examiner

# Table of Contents

**I.  INTRODUCTION AND EXECUTIVE SUMMARY** ................................................... **1**

    A.    Introduction .......................................................................................... 1

    B.    Preliminary General Observations .......................................................... 3

    C.    Overview of the Examiner Appointment and Investigation ................................. 7

    D.    The UST's Questions Regarding the Debtor's MORs............................. 9

    E.    The Debtor's Income, Expenses & Personal Assets............................. 10

    F.    The Debtor's Business Interests............................................................. 12

    G.    The Debtor's Other Interests / Investments ......................................... 14

    H.    The Debtor's Trusts ............................................................................... 15

    I.    Cash Analysis........................................................................................ 16

    J.    Issues Identified for Further Investigation ............................................ 18

    K.    Preliminary Conclusions and Next Steps.............................................. 24

**II.  BACKGROUND**............................................................................................. **26**

    A.    Commencement of Chapter 11 Case...................................................... 26

    B.    UST Objection to Disclosure Statement ................................................ 27

    C.    Order to Show Cause ............................................................................ 27

    D.    Appointment of Examiner...................................................................... 27

        1.  Scope of Examination ..................................................................... 28

        2.  Retention of Professionals .............................................................. 28

**III. INVESTIGATION AND PREPARATION OF PRELIMINARY REPORT** .......... **29**

    A.    Examiner's Work Plan .......................................................................... 29

    B.    Discovery Conducted in Furtherance of Investigation ......................... 29

        1.  Meetings with the United States Trustee ......................................... 30

        2.  Meetings with the Debtor and Parties of Interest............................ 30

        3.  Document Collection and Review .................................................. 35

**IV. FINDINGS RELATING TO THE FINANCIAL STATUS OF THE DEBTOR..... 40**

    A.    Debtor and Affiliates Accounting and Books and Records ................................ 40

        1.  Key Accounting Personnel ......................................................... 40

        2.  Accounting Firms and Professionals ............................................ 42

        3.  Accounting Software ................................................................. 43

    B.    Preparation of Bankruptcy Reporting ................................................. 44

    C.    Review of UST's Questions Related to the Debtor's MORs............................. 46

        1.  Procedures Performed by Examiner ............................................. 47

        2.  Review of Debtor's Responses to UST Questions ......................... 49

    D.    Analysis of Debtor's Living Expenses and Funding Sources............................. 59

        1.  Debtor's Schedules ................................................................. 60

        2.  Analysis and Discussions with Debtor ......................................... 63

        3.  The Debtor's Income .............................................................. 64

        4.  The Debtor's Expenses ............................................................ 67

        5.  Estimated Pro-Forma Monthly Run Rate ..................................... 70

    E.    Personal Assets (Home/F&F/Autos, etc.)........................................... 70

        1.  Debtor's Schedules ................................................................. 71

        2.  Marital vs. Pre-Marital Assets .................................................. 76

    F.    Business Interests................................................................. 78

        1.  Overview................................................................. 78

        2.  List of Entities............................................................. 80

        3.  Summaries of Active Business Entities ......................................... 81

        4.  Intercompany Account Analysis............................................... 107

        5.  Review of Distribution Account .............................................. 109

    G.    Other Assets ................................................................. 116

        1.  GTJ Realty LP REIT............................................................. 116

        2.  Trusts................................................................. 121

H.  Transactions Between Debtor and Affiliates ...................................................... 133

**V.  CASH ACTIVITY** ................................................................................................. **136**

A.  Bank Statement Review and Analysis ................................................................. 136

B.  Debtor and Spouse Banking Information ............................................................ 137

**VI. OTHER** ........................................................................................................................ **145**

A.  IRS Audit 2015 – 2017 ....................................................................................... 145

B.  Other Parties (Brother; siblings) ........................................................................ 145

**VII. EXHIBITS** ................................................................................................................. **148**

A.  Document Tracker ............................................................................................... 148

B.  Broderick Responses to UST Questions .............................................................. 148

C.  Chart of UST Questions / Broderick Responses / RSR Comments ..................... 148

D.  Master Business Entity Organizational Chart ..................................................... 148

E.  Business Entity Sub-Organizational Charts (prepared by Debtor) ...................... 148

F.  Business Entity Key Information ......................................................................... 148

G.  REIT Distributions .............................................................................................. 148

H.  Distribution Account Analysis ............................................................................ 148

I.  2012 Gift Tax Return .......................................................................................... 148

J.  Family Trust Beneficiary Acknowledgement Letter ........................................... 148

K.  Family Trust Activity 2013 – March 2021 .......................................................... 148

L.  Greenfest Letter Re: No Interaction with Debtor ............................................... 148

M.  Family Trust Bank Account Activity .................................................................. 148

N.  Summary of Bank Information Received to Date ................................................ 148

## I.  INTRODUCTION AND EXECUTIVE SUMMARY

### A.  Introduction

This preliminary Report addresses the work performed by the Examiner and his professionals to date.[2]  The Debtor has continued to produce documents during the preparation of this Report and while we have attempted to incorporate any recently received material information, it is possible that certain information recently provided by the Debtor was not reviewed or incorporated into the Report.  A challenge we faced was to find a way to prepare this Report in a digestible format given the scope of the appointment was very broad, the Debtor has many business interests and entities, there is a complex web of transactions and issues surrounding the Debtor and his interests and there was no single party (including the Debtor himself) who has complete knowledge of his and his companies' financial affairs.  Despite efforts to streamline it, the Report is still very large and contains a tremendous amount of information.

The Preliminary General Observations section to follow, is intended to provide a high-level overview of what the Examiner has learned about the Debtor, how the Debtor has historically managed both his personal financial affairs and his many business interests, how he has conducted himself as a debtor-in-possession and throughout the course of this Investigation and highlight issues that should be investigated further and addressed in any final report.  Each issue raised in the Preliminary General Observations section as requiring further investigation is discussed in more detail in the body of the Report.

---

[2] Neither this Report nor the associated Investigation constitutes an audit by the Examiner or the Examiner's retained professionals.  While the amounts reflected in this Report are believed to be correct, neither the Examiner nor the Examiner's retained professionals express an opinion or any other form of assurance thereon. This Report is intended solely for the use of the Court and the parties in interest in the Debtor's bankruptcy case and is not to be used for any other purpose.

The rest of Part I of the Report summarizes the background to the Examiner's appointment, highlights of the Office of the United States Trustee (the "UST") questioning of the Debtor's financial affairs and reporting insufficiencies, the Debtor's income, expenses, personal assets and business and investment interests, the trusts he established and his cash transactions and, in the final section of this Part I (Section K) the Examiner's suggestion for next steps for continuing the Investigation.

Part II briefly provides more detail about the events leading to the Examiner's appointment.

Part III briefly summarizes how the Examiner conducted his investigation thus far (his work plan).

Part IV could be characterized as the meat of the Report, providing detailed analyses of the Debtor's financial accounting methods (or lack thereof), his bankruptcy reporting, his responses to the UST's full list of questions, an analysis of his living expenses and sources of revenue to pay for such expenses, the scope of his personal assets, his business and other assets, trusts set up by the Debtor and his spouse, and the transactions between and among the Debtor and his affiliates, including cash transfers.

As the Examiner's investigation is still ongoing and many areas of review and analysis remain, the observations reflected in this Report are preliminary and may be subject to change if we receive further and more complete information.

## B.  Preliminary General Observations

The Debtor has historically owned and operated a vast business empire involving a significant number of real estate, supermarket and other businesses, but ran those business without any centralized management, accounting, controls or reporting structure that would ordinarily be expected for an enterprise of such size and breadth.  The Debtor frequently transferred funds (at many instances, large sums) between entities (from entities that had cash to entities that needed cash) and between the entities and his and his spouse's personal bank accounts.  The Debtor accounted for such movements through various types of transactions including loans, equity distributions/contributions, due to/due from intercompany accounts, and other types of receivable and payable accounts.  The transfers and accounting for them were done in a manner that appeared to present no consistent pattern or rationale.

The Debtor's vast business empire funded a lavish lifestyle for the Debtor and his family, but other than the over-leveraged jointly owned primary luxury residence in Lattingtown, New York and a number of leveraged high-end luxury vehicles, the Debtor reports surprisingly little in personal assets as compared to his historical levels of wealth.  The Debtor has stated at one point he had a net worth in excess of $200 million[3].  In addition to his house and luxury vehicles, he had a personal jet, and owned businesses throughout the country.  Many of his income producing assets were leveraged carrying high debt service requirements that ultimately cut off available funds to support his living expenses.  The business interests that were not leveraged (i.e., his supermarket entities) were unprofitable (and ultimately closed).  Where they did

---

[3] The most recent personal financial statement provided by the Debtor was as of March 31, 2015 and indicated a net worth of approximately $202 million.

generate available cash, these businesses supported funding for vehicle loan payments, food, health benefits and other living expenses for the Debtor and his family.  As discussed below, there is still work to perform in the investigation, and there may be unaccounted for personal assets that may warrant further review.

The Examiner's Investigation reveals open questions about the sharing of living expenses between the Debtor and his spouse which, much like the management of his businesses, shows no discernible logical pattern[4] and there remain open questions regarding what have been described as "pre-marital" assets allegedly wholly owned by the Debtor's spouse.

Given the Debtor's decades-long largely unstructured business practices, the Debtor has clearly had a difficult time transitioning to operating as a debtor-in-possession in compliance with the Bankruptcy Code and Rules, particularly with the proper reporting.  The UST correctly labelled the Debtor's reporting as incomplete, inaccurate and confusing, which required the Debtor to revise and amend both his Schedule of Assets and Liabilities and Statement of Financial Affairs (the "Schedules") and Monthly Operating Reports ("MORs") several times.   In many cases, explanations offered by the Debtor in response to questions posed suggest a lack of understanding of the bankruptcy process and/or lax attention to compliance with rules.  This failure to comply with the rules may in part be a result of the Debtor having not retained the level of professional support and advice needed to properly manage his estate given the complexities and historical shortcomings in how he conducted his financial affairs.   In the Examiner's experience, if this case were a business rather than an individual bankruptcy case, given the

---

[4] The Debtor has, however, been reporting a cumulative due to/due from spouse account in his MORs.

number of business entities involved and the complexities of assets, debt structures and intercompany transactions, the Debtor almost certainly would have retained an experienced financial advisor or chief restructuring officer to assist with both required reporting and properly navigating the bankruptcy process.[5]

The Debtor has cooperated with the Examiner's Investigation to date, making himself and other parties available for multiple interviews, and they have worked diligently to provide a large number of requested documents (to the extent the information requested by the Examiner was available).

While the Investigation has uncovered a number of questionable items that may warrant further investigation (all described in detail in Section J, below), the Examiner cannot yet determine if these items reflect fraud or other intentional misconduct or if they are the result of the Debtor simply continuing his historical lax and unstructured financial management and his lack of knowledge of the bankruptcy laws and rules associated with being a debtor in possession in Chapter 11.

The questionable items discussed in detail in Section J, below include:

(a) the Debtor's failure to adequately disclose and significantly under-reported the net value of, and failure to report income from, his interest in GTJ Realty, LP, an asset worth more than $71 million;

---

[5] The Debtor did retain Joseph Broderick, CPA in February 2021 to amend/correct previously filed MORs and to prepare the MORs going forward, but the Examiner understands that the information provided to Mr. Broderick was limited to high level financial information with no detailed underlying support or corroborating explanations or documents to allow Mr. Broderick to independently validate or confirm the completeness of the information.

(b) post-petition transfers of estate funds to a trust to pay life insurance premiums on policies where the Debtor neither owns nor is the beneficiary of the policies;

(c) a series of wire transfers from Hong Kong Distribution Corporation, a wholly owned entity of the Debtor, totaling $286,100 were transferred into the Debtor's spouse's individual bank account during the post-petition period from August 7, 2020 through April 20, 2021 and reported as equity distributions in the general ledger where she has no ownership interest in the entity;

(d) a $110,000 wire deposited into that same  bank account on July 8, 2020, the Debtor's petition date, from WUMAC, Inc., an entity owned 50% by the Debtor (in which his spouse has no ownership interest) and a corresponding $110,000 wire from the Debtor's spouse's bank account to Hong Kong Distribution Corp.,[6] a non-debtor business entity that is wholly owned by the Debtor;

(e) a $150,000 wire deposited into a bank account of Hong Kong Distribution Corporation on September 17, 2020, recorded as an equity contribution that was attributable to the Debtor's spouse and purportedly related to a refund from failed refinancing efforts of the Debtor;

---

[6] Hong Kong Distribution Corp. is a corporation organized in California and operating out of a location in Maspeth, NY with bank accounts located at the City of Industry, CA branch of Evertrust Bank and the Flushing, NY branch of Preferred Bank.

(f) the Debtor's failure to report an interest in GTJ REIT, Inc., with a value in excess of $109,000, in his Schedules or MORs;[7] and

(g) deposits in the amounts of $50,000 and $200,000 made on August 5, 2020 and August 6, 2020, respectively recorded as equity contributions on the books of Hong Kong Distribution Corporation with the notation on entity's books for the $200,000 deposit stating "*From hays trust acct refund to boss family*".

### C.  Overview of the Examiner's Appointment and Investigation

On June 15, 2021, the Court entered an Order directing the UST to appoint one independent examiner pursuant to 11 U.S.C. 1104(c) [Doc. 231].   On June 17, 2021, the UST filed an Application For Order Approving Appointment of Examiner [Doc. 233] naming Robert Rosenfeld as the Examiner.  On June 17, 2021 (the ("Appointment Date"), the Court entered its Order Approving the UST's Appointment of Examiner (the "Appointment Order") [Doc. 234].

The facts and circumstances leading to the appointment of the Examiner in this case are discussed in more detail in Part II (the Background section of this Report) but generally resulted from issues raised by the UST regarding the Debtor's Chapter 11 case, including reporting irregularities and inconsistencies and in the Debtor's Schedules and MORs not making sense (balance sheets not balancing, lack of information/transparency, etc.), concerns regarding seemingly unauthorized payments made by the Debtor's spouse on behalf on the Debtor and

---

[7] The Debtor amended his Schedules again in August 2021 to add the GTJ REIT, Inc. shares after being questioned about the interest by the Examiner.

concerns that assets applicable to the bankruptcy may be hidden by the Debtor internationally or through the trusts and associated businesses.

Upon appointment in this case, the Examiner was charged with investigating the issues that were raised in the Appointment Order, specifically:

*investigate, promptly and in a cost effective manner:*

(i)     *the financial state of the Debtor, his affiliates and entities controlled by the Debtor;*

(ii)     *any insider transactions impacting the Debtor's financial state;*

(iii)   *any transactions with or by affiliates or entities controlled by the Debtor and his affiliates impacting the Debtor's financial state; and*

(iv)     *otherwise perform the duties of an examiner set forth in 11 U.S.C. 1106(a)(3) and (a)(4) of the Bankruptcy Code*

To assist the Examiner in conducting the Investigation, and with the Court's approval, the Examiner retained Cullen and Dykman LLP ("C&D") as counsel and RSR Consulting, LLC ("RSR") as financial consultants.

The Examiner commenced the Investigation promptly following his appointment on June 17, 2021, with assistance from RSR and limited involvement (to date) of C&D.   The Examiner and RSR focused this initial phase of work on getting their arms around the entire financial structure of the Debtor and his business interests.  Based on initial meetings with the Debtor and various parties with knowledge of the Debtor's assets, income, business interests and operations, and the review of documents to date, the initial impression of the Debtor's financial structure and organization is that it

8

involves a number of people that "know a little bit about a lot" and other people that "know a lot about a little," but to date, no single person has been identified that has the complete picture of the Debtor's history and factual background.   The Debtor and Debtor's counsel had indicated they would provide "a full chronological history of the Debtor and his business interests" along with relevant documents and agreements as a roadmap to assist the Examiner with the investigation, but to date that has not been received.[8]   The Examiner was able, however, through his interviews and his and his professionals' initial review of documents received to date, to gain a preliminary understanding of the Debtor and his financial interests, including his many business interests, investments and trusts and how the entities relate to the Debtor's, overall financial picture.  The initial review identified and/or clarified areas to further investigate, additional documents to review and additional parties to interview.

### D.  The UST's Questions Regarding the Debtor's MORs

The UST's June 9, 2021 letter to the Court contained a list of approximately 96 questions related to the MORs filed from July 2020 through March 2021.  The UST's questions primarily addressed items related to the Debtor's (i) cash receipts and disbursements / bank statements and (ii) the Debtor's reported statements of operations and balance sheet.   The Examiner and RSR reviewed the questions raised by the UST and discussed these questions with the Debtor and his accountant, Joe Broderick.  The Debtor and Mr. Broderick provided answers to many of the questions but in a number of instances backup documentation requested by and

---

[8] This is not intended to imply that there is any stalling going on, because we recognize how large a task it would be for even the Debtor and his professionals to create an accurate and comprehensive description of the financial structure and history of the Debtor and his various interests.

provided to the Examiner was insufficient to support the answers given.[9]  Generally, the amounts in question were not material given the size of the Debtor's estate; however, the discrepancies raised questions as to the propriety of some transactions and concerns over how the MORs have been prepared.  Given the fact that the MORs and Schedules have been amended several times and the documentation to support the amounts and other information is sometimes missing or inconsistent with the information reported, the accuracy and transparency of the MORs remains suspect.

See **Section IV. C.** of report for further analysis and detail discussion of the UST's questions and the Debtor's responses.

**E.  The Debtor's Income, Expenses & Personal Assets**

As questioned by the UST, the income as reported by the Debtor on the Schedules does not appear to support the living expenses associated with his lifestyle.   Schedules I and J, reflecting the Debtor's projected income and expenses were amended several times.  In analyzing the Debtor's actual expenses as reported in the MORs, RSR attempted to calculate the Debtor's actual living expense "run rate" and identify the sources of income to cover those expenses.

Since the petition date, the Debtor's "run rate" monthly expenses of approximately $28,500 have been funded through a number of sources  including (i.) payroll received from

---

[9] Mr. Broderick in many instances was not provided with supporting detail or backup documentation from the Debtor and in some instances the Examiner was advised such backup documentation did not exist.

managing his supermarket interests; (ii.) non-interest-bearing financing received from his spouse through her payment of bills and expenses on behalf of the Debtor;  (iii.) payments made by the Debtor's wholly owned affiliate, Hong Kong Distribution Corp. to the Debtor's vehicle finance companies for auto loans; (iv.) payments made by other affiliates of the Debtor relating to certain expenses incurred by the Debtor and his family, such as health insurance, phone bills and gasoline; and (v.) miscellaneous other collections from various sources including income tax refunds, a $60,000 payment from Isshindou Japanese Ramen Inc. (a former tenant in the food court of one of the Debtor's supermarkets), insurance claims, a car sale and other smaller sources. It also appears that certain expenses may not have been paid when due.

See **Section IV. D** of this report for further discussion and analysis of the Debtor's income and expenses.

The Examiner and RSR reviewed the Debtor's personal assets as reported on the Bankruptcy Schedules, and in the MORs.  As questioned by the UST, the Debtor's reported assets also do not appear to be reflective of the Debtor's level of perceived wealth and high lifestyle.

The Debtor has indicated to the Examiner that his spouse claims certain "pre-marital" and other assets, including significant furnishings in the jointly owned Lattingtown residence, that are part of the Debtor's bankruptcy estate.  A more detailed discussion of the Debtor's assets is contained in **Section IV. E,** of this report.

**F.  The Debtor's Business Interests**

The Debtor's business interests currently include twenty-five  active entities including entities related to real estate businesses, supermarket businesses and other businesses / business investments.   For the most part, the Debtor's business interests do not appear to generate significant profits or cashflow.  While the real estate businesses are significantly leveraged, the supermarket businesses do not have secured debt.  The supermarkets appear to be internally financed through the utilization of intercompany loans and payables between the entities.

**Section IV. F.** of this report contains discussions of each business entity and, to the extent available, a summary of each entity's financial statements for the years 2018-2020. **Exhibit D** is a master business entity organizational chart prepared by RSR.  **Exhibit E** contains various business entity sub-organizational charts prepared by the Debtor and provided to the Examiner.  **Exhibit F** contains a table summarizing key information regarding the Debtor's business entities known to the Examiner as of the time of this report.

To date, the Debtor has not filed required reports under Bankruptcy Rule 2015.3 regarding his non-debtor business holdings which limits transparency as to his overall business operations.[10]   The Debtor has provided the Examiner with copies of the QuickBooks files for

---

[10] Bankruptcy Rule 2015.3 requires the Debtor to "file periodic financial reports of the value, operations and profitability of each entity that is not a publicly traded corporation or a debtor in a case under title 11, and in which the estate holds a substantial or controlling interest."  These reports are to be filed at the inception of the case and at least every six months thereafter, using Official Form 26.  The Debtor recently indicated to the Examiner that he is seeking to retain the firm of Giambalvo, Stalzer & Company CPAs, P.C. to prepare and file the Rule 2015.3 reports for the non-debtor entities.

most of the Debtor's active business entities.   A preliminary review of the businesses' books and records reflect an ongoing pattern of transferring cash back and forth to each other as well as between the Debtor and his spouse to support cash needs at any given time.   While many of the cash transfers are direct between entities, the Debtor also appears to have utilized a wholly owned distribution company (Hong Kong Distribution Corporation) as a repository for centralizing cash, and inventory purchasing and re-distributing to entities as needed.

The Examiner has also noted cash transfers recorded in the books of Hong Kong Distribution Corporation as equity distributions and contributions which appear to reflect transfers made to/from other entities on behalf of Debtor and not necessarily directly to/from the Debtor. The Examiner has raised questions as to the source and use of funds from certain of the Debtor's interests and is awaiting responses from the Debtor.  See **Sections IV. F. 4 & 5** of this report for a more detailed analysis of the noted cash movements.

The Examiner has not yet assessed the value of the Debtor's interest in any of the business entities.  Significant additional analysis is required to assess the various equity contribution / distribution accounts, shareholder loans to/from the entities, due to/ due from or AP/AR accounts and other cash and non-cash transactions related to the Debtor as well as the complex web of intercompany transactions and loans among the business entities in order to determine what, if any, value there is to the Debtor's interests in the business entities and if such value, if any, is realizable.

**G. The Debtor's Other Interests / Investments**

The Debtor owns a 22.2% interest in a GTJ Realty, LP, acquired in 2013, but the original source of the capital used to acquire this interest traces back to a prior investment originally made in 1999. This interest is by far currently the Debtor's most valuable asset, both in terms of net value after liens and cashflow generation. The Debtor holds his interest in GTJ Realty, LP through VWU888, LLC, a wholly owned entity set up for the purposes of borrowing against the GTJ Realty, LP interest. Based upon the independently determined NAV as of December 31, 2020, the Debtor's interest in GTJ Realty, LP is worth in excess of $71 million. The Debtor's interests in GTJ Realty, LP has also generated approximately $15.4 million in cash distributions from 2015 through June 2021 which the Debtor used to support his lifestyle and business interests. Neither the value or income from GTJ Realty, LP were clearly identified on the Debtor's schedules or in the MORs.

In 2019 the Debtor pledged his interest in VWU888, LLC to Zee Bridge Capital to secure a $5.4 million loan. (The Debtor claims he mistakenly pledged the entire interest instead of only an amount sufficient to cover the amount borrowed.). VWU888, LLC is the borrower and the loans are guaranteed by the Debtor and his spouse. As part of this financing, the distributions from GTJ Realty, LP were directed to be paid to an affiliate of Zee Bridge Capital to cover the debt service. Initially, Zee Bridge Capital transferred the GTJ Realty distributions to the Debtor for a short period. Upon filing of the bankruptcy petition, Zee Bridge Capital began withholding all of the GTJ Realty, LP distributions to pay down the loan, eliminating the Debtor's major source of income to support his lifestyle and other business interests. As discussed below, the Wu Family 2012 Gift Trust (discussed below) holds a separate 2.8% interest in GTJ Realty, LP.

See **Section IV. G. 1.** of this Report for further discussion and analysis of the Debtor's REIT interests.

To date the Debtor's MORs have not included nor disclosed the significant income from the GTJ Realty distributions. Although the income passed through from the Debtor's wholly owned entity, VWU888, that income is currently being withheld and applied against the Zee Bridge Capital debt. The Debtor should report this income in his income statement included in the MORs from distributions paid by GTJ Realty, LP that inure to the benefit of the Debtor. Further, the payments being applied by Zee Bridge Capital to its outstanding loan balance should be disclosed in the Debtor's periodic reporting to the Court. The Examiner has discussed this issue with the Debtor and Mr. Broderick.

**H.  The Debtor's Trusts**

The Debtor is the grantor on two separate trusts:

- The Wu Family 2012 Gift Trust;
- The Jeffrey Wu Irrevocable Insurance Trust #1;

In addition, the Debtor's spouse is the grantor on the following trust:

- The Veronica Wu Irrevocable Insurance Trust

The Wu Family 2012 Gift Trust was established on December 28, 2012, as part of estate planning strategy for Debtor. The Trust is managed by a single third-party trustee, Gene Greenfest, a partner in the accounting firm Anchin Block & Anchin, LLP ("Anchin"). On December 29, 2012, the Debtor transferred 10% of his interests in two entities that were the predecessors to his interests in the GTJ Realty, LP REIT. The Trust appears to be operating

completely separately from the Debtor and the trustee has indicated that, to his knowledge, the Debtor does not have any involvement or interaction with the cash activity of the trust.

The two insurance trusts were established in 2006 and 2007 for the Debtor and his spouse, also as part of their estate planning strategy.   Various insurance policies were purchased by the trusts and the policies list the respective trusts as the owners and beneficiaries.   To fund the premiums, the Debtor and spouse would periodically transfer funds to the insurance trusts.   We understand that in 2012, the Debtor's insurance trust surrendered the policies it held, generating funds totaling approximately $2mm which were used to pay down liabilities related to the Debtor's investment in an aircraft.    The Debtor continued to transfer funds from estate assets during the post-petition period to his insurance trust to pay premiums, which had no benefit to the estate since the trust is both the owner and beneficiary of the policies.    The policies and premiums were disclosed on the Debtor's Schedules.   The Debtor indicated he did not realize that the premiums should not be paid from estate assets, stopped the transfers in June 2021 and indicated an intention for his spouse to repay the approximate $66k to the Estate.  **See section IV. G. 2.** of this report for analysis of the Debtor's trusts.

The Examiner will have further discussions with the Debtor and the Debtor's spouse with respect to the timing and source of funds for the repayment of the $66k in post-petition transfers to the Jeffrey Wu Insurance Trust.

## I.   Cash Analysis

The Examiner and RSR have performed a preliminary review of bank statements for the Debtor, the Debtor's various entities and the Debtor's spouse.  While bank statements have been

provided for many of the accounts at this juncture, there appears to be gaps, with certain check copies missing for the Debtor and spouse bank accounts, minimal amount of deposit slips and no wire and ACH transfer confirmations provided.

Based on this preliminary review, it appears many transactions between or among the Debtor, his spouse and his non-debtor companies ran through Debtor's individual accounts, his spouse's individual accounts, and their joint accounts without any consistent pattern or logic that could be identified.  In particular, there appear to be transactions relating to the Debtor's business and non-debtor business entities running through his spouse's individual account, where the Debtor's spouse has no ownership interest in the business entity.

The preliminary analysis of cash activity to date is not complete and, at this juncture, it is not possible to ascertain who benefitted on a net basis from the myriad of cash transactions.   The Examiner and RSR are still in the process of analyzing the cash accounts and discussing the questions raised with the Debtor.  The identification of issues or questions at this point of the investigation regarding cash transactions at the Debtor's non-debtor business entities do not necessarily indicate wrong-doing by the Debtor or identify the Debtor's intent.  Significant additional work would be required to complete this analysis. The Examiner also has questions with respect to what restrictions, if any, does the Debtor's personal bankruptcy impose on cash activity or other property transfers at the Debtor's non-debtor business entities.   The Examiner consulted with counsel on this issue and was advised that there is nothing in the Bankruptcy Code that requires a debtor to obtain court approval for out-of-the-ordinary use and transfers of property by non-debtor affiliates, but suggested that the Court may look to Sections 105(a) and 1107(a) of the Bankruptcy Code to place limits and/or conditions on the rights and powers of a

debtor-in-possession, or use any significant mismanagement of his affiliates as a basis to find that one of the enumerated  examples of cause for conversion in Section 1112(b)(4) exist.[11]  Significant additional work would be required to complete this analysis.

See **Part IV.** of this Report for further discussion of the specific transactions identified and the Examiner's analysis to date regarding the cash activity.

## J.   Issues Identified for Further Investigation

As highlighted above, there were several issues identified by the Examiner that warrant further analysis and/or discussion with the Debtor

1. In 2019, the Debtor transferred an interest in GTJ Realty LP worth over $71 million to an entity called WMU888 in connection with receiving a $5.4 million loan from Zee Bridge Capital.  The Debtor claims he pledged only a portion of the interest to Zee Bridge Capital, yet he also claims the loan documents suggest the entire amount was pledged.  The Debtor provided minimal and otherwise

---

[11] Section 105(a) allows a court to issue any order necessary or appropriate to carry out the provisions of the Bankruptcy Code and section 1107(a) affords a debtor-in-possession the rights and powers of a trustee subject to any "limitation or conditions as the court prescribes."  Presumably, to the extent the Court finds that the Debtor's exercise of management powers over non-debtor affiliates negatively impacts the value of the Debtor's interests in those affiliates, such as by permitting the affiliates to make the prepetition and post-petition transfers as described in this Report, the court could impose a requirement for court approval before significant or out of the ordinary transactions may occur at the affiliate level.  If the detriment to the estate was egregious, such mismanagement of affiliates could certainly cause "substantial or continuing loss to or diminution of the estate," or constitute "gross mismanagement of the estate" or similar cause not enumerated in Section 1104(b)(4)'s non-exclusive list.  If sufficient cause exists for conversion, whether due to the detrimental effect of affiliate transactions, unauthorized transactions by the Debtor himself, or insufficient disclosure and reporting, Section 1112(b)(2) does give the Court discretion to refrain from converting the case if "unusual circumstances" establish that doing so is not in the best interests of creditors and the estate.  Presumably, a factor the Court could consider in such analysis, is whether there are any conditions or limitations on the Debtor's rights and powers, such as appointing a chief restructuring officer to assure appropriate disclosure and reporting and/or requiring court approval for certain affiliate transactions, that could contribute to a finding of such unusual circumstances.

incomplete disclosure relating to his investment in GTJ Realty, LP as well as a clear trail as to the Debtor's estate's interest and value in the investment. The Debtor's Schedules lacked adequate disclosure and no values for this asset, that were otherwise readily available. In addition, the MORs reported incorrect net values for the interests in the REIT that indicated significant underreporting of values. As a result, this may lead to the Court, the UST and creditors not having an adequate portrayal of the Debtor's assets. As a further lack of disclosure by the Debtor, the MORs did not include pass-through income relating to significant distributions from GTJ Realty, LP that are allocable to the Debtor through his wholly owned entity, WMU888. The withholding of distributions by Zee Bridge Capital as payments against the Zee Bridge Capital debt may require disclosure and considered payments of the Debtor's estate if the debt was deemed owed by the Debtor. If that is determined to be the case, then such payments should be included in the Debtor's MORs and subject to the UST fee.

2. The Debtor improperly listed three insurance policies on Schedule A/B which are not owned by the Debtor or property of the Debtor's estate. Based upon information from the Debtor, the Jeffrey Wu Irrevocable Insurance Trust is both the owner and beneficiary of the three policies. Further, the Debtor made post-petition transfers to the Insurance Trust to fund premium policies on the policies. Since the filing through June 2021, the Debtor had funded a total of $65,620 in life insurance policy premiums for which the Debtor's estate is receiving no value or benefit. The Debtor has indicated that, until May 2021, he was unaware that he should not be making the payments, he was advised by counsel to include the

policies on schedule A/B, that the average monthly premium payments of

$29,644.93 were disclosed as an expense on Schedule J and that while the UST

questioned other expenses listed on schedule J, the life insurance premiums were

not questioned.   The Debtor further advised that his spouse is seeking loans from

family members to repay these $65,620 to the estate

3.   A series of wire transfers from Hong Kong Distribution Corporation, a wholly

owned entity of the Debtor, totaling $286,100 were deposited into the Debtor's

spouse's account #6264 during the post-petition period from August 7, 2020

through April 20, 2021.  These transfers were recorded as distributions on the

books of Hong Kong Distribution Corporation.  On July 9, 2020, the day after the

petition date, the Debtor's spouse wired $110,000 from her bank account #6264 to

Hong Kong Distribution Corporation and this transaction was reflected as a

contribution by the Debtor on the books of this entity.  Further, On July 8, 2020,

the petition date, a $110,000 wire was deposited into the same spouse's bank

account (#6264).  The source of that wire came from WUMAC, Inc., an entity

owned 50% by the Debtor (the Debtor's spouse has no ownership).  The Debtor

asserts that these transactions between his spouse and Hong Kong Distribution

Corporation relate to "loans" made by her to the entity and repayments of such

loans.  The transactions were not recorded as loans on the books of the business

entity but were rather reflected as distributions.  "Distributions" is an equity

account attributable to the owner of a company. Further, the Debtor stated that

there were no documents supporting a loan between his spouse and the business

entity.

4.  The Debtor asserts that the funds transferred to the Debtor's spouse during the post-petition period were used to support the Debtor's living expenses.  In effect, the Debtor initially directed funds that he was the beneficial owner of to be deposited into his spouse's bank account (at or shortly after the bankruptcy filing), she then deposited those funds into the business entity, and then the business entity than transferred the funds back to her individual bank account post-petition.  The impact of all these transactions was to provide funding by his spouse to support the Debtor's share of living expenses.  These transactions indicate that the Debtor is directing funds that would otherwise be assets of the Debtor's estate to his non-debtor business interests through the use of his spouses individually owned bank account.

5.  The Debtor holds interests directly and indirectly related to GTJ Realty, LP and GTJ REIT, Inc.  With respect to the direct interests held in GTJ REIT, Inc., the Debtor did not previously disclose an interest valued at over $109,000 in his schedules or the MORs.  The Examiner pieced together his ownership interest through review of dividend income and approached the Debtor about this asset. The Debtor could not provide an answer as to why it was not previously reported or how he even acquired the asset.

6.  A wire transfer deposit of $70,000 was received from the Debtor's sister, Katherine Wu on March 31, 2020.  The Debtor stated that Ms. Wu advanced the Debtor these funds in connection with the purchase that the Debtor made for

personal protection equipment ("PPE") for his supermarket interests.  The Examiner could not trace how this money was transferred to the supermarkets for these PPE items or how the funds were accounted for as a loan.  Subsequently, the Examiner identified four payments made to Ms. Wu totaling $60,012, paid out of Hong Kong Distribution Corporation between July 15, 2020 and October 15, 2020 (during the Debtor's post-petition period).  These repayments were reflected as distributions for the benefit of the Debtor on the books of Hong Kong Distribution Corporation.  The distribution account represents funds that would generally be paid to owners of an entity were re-directed to the Debtor's sister, post-petition.

7. The Examiner identified two deposits in the amounts of $50,000 and $200,000 made on August 5, 2020 and August 6, 2020, respectively that were recorded as equity contributions on the books of Hong Kong Distribution Corporation. The $50,000 deposit included a reference to "Wire from Hays Trust Account" and the $200,000 deposit included a reference as "From hays trust acct refund to boss family."  The Examiner requested an explanation and support for these transactions and why these funds were not deposited to the Debtor.   No information has been provided yet.

There were also two entries totaling $60,000 reported as "Cash paid" in this entity's general ledger on December 31, 2020.  The two entries were reflected as contributions to an equity account on the books of Hong Kong Distribution Corporation.  One of the entries stated "Cash from boss" in the memo field in the

accounting ledger.  The Debtor stated that these entries  represented repayments of existing Hong Kong Distribution Corporation accounts payable and should not have been recorded in the entities distribution account The Debtor stated that the descriptions written in the general ledger entries were mistakes.  The Debtor very recently provided some detail supporting invoices for these transactions.  The Examiner still requires time to review the information provided.

8.  The Debtor's spouse owns a building structure on the land adjacent to the Debtor's primary residence.  The Debtor asserts that this house is owned by his spouse outside of the bankruptcy estate.

9.  The Debtor's home insurance policy includes riders that cover personal contents ($6,868,000) and Valuable articles -Fine Arts ($500,000).  Excluding the primary residence and automobiles, the Debtor did not list personal assets at these levels. The Debtor stated that after consulting with his insurance carrier, these coverages are determined based on a percentage of the dwelling replacement cost.  The Debtor stated that the carrier advised that this coverage limit increased substantially in recent years as the replacement value for the home increased substantially due to increased prices of lumber, copper and other building products.  The percentage applied in the Debtor's homeowner's policy is 40%, which the carrier indicated is the minimum coverage level.  The Examiner did note a 20 year old boat included on the insurance policy.  The Debtor stated that the boat was purchased by his spouse within the past two years and did not view

this as an asset of the Debtor's estate.  This item was not included on the Debtor's Schedules.

## K.  Preliminary Conclusions and Next Steps

This Report is an interim one, and any analyses, observations or conclusions herein are preliminary in nature and subject to further review and revision.  The Examiner welcomes responses and relevant information from the Debtor and other parties in interest regarding anything in this Report or which any such party in interest believes should be analyzed by the Examiner and/or addressed in any future report.   As discussed above, the Examiner has significant additional work to do with respect to many of the areas addressed in this report.

The Examiner and RSR have had to spend significant time and resources to date in performing diligence and preparing this Report.  The amount of time spent was due to the substantial list of issues, including those identified by the UST, the deficiencies and numerous amendments to the Debtor's Schedules and MORs, the number of the Debtor's business interests and the complex web of intercompany transactions, and the lack of any centralized repository of documentation or knowledge base regarding the Debtor and his business interests.

The Examiner and RSR have spent significant time and resources to date in performing diligence and preparing this interim report.   In performing the diligence and preparing this report, the Examiner has identified a number of issues including those highlighted above, with respect to purpose, intent and propriety which would require significant additional time and effort to potentially arrive at any definitive conclusions – and it is possible that in some instances no definitive conclusions can be drawn no matter how much additional diligence is pursued.

While not a part of the scope of the investigation or this report, the Debtor and Debtor's counsel have advised that they are progressing with various settlement negotiations which, if completed, will allow for the Debtor and the Debtor's affiliated business Debtors to satisfy in full all claims against the Debtor and the related entities in chapter 11 (other than those claims subject to voluntary reduction or modification under the settlement agreements).   The Examiner has no specific knowledge of the nature of the alleged settlement negotiations or the terms of the Debtor's to be proposed Plans.

At this juncture, the Examiner believes the Court must weigh, on the one hand, the valid concerns of the UST about the Debtor's shortcomings, the time and cost to be expended in furthering the Examiner's investigation and the potential further time and cost that would be expended by a court appointed trustee against, on the other hand, the credibility of the Debtor's recently stated intent to put forth and confirm 100% plans for his own case and each of his affiliated debtor cases, and the likelihood of those plans being confirmed.  Unless directed not to do so, the Examiner intends to proceed with the investigation (to the point of reasonableness given the Court's directive regarding cost-efficiency) to attempt to provide more clarity as to whether the issues identified by the UST and/or the Examiner (or additional issues potentially to be identified) are significant enough to warrant the appointment of a trustee to take over

administration of the Debtor's estate, or short of that, whether other controls should be put in place, such as the Debtor's retention of an experienced chief restructuring officer. [12]

## II.  BACKGROUND

### A.  Commencement of Chapter 11 Case

On July 8, 2020, the Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (Case No. 8-20-72407-reg) along with voluntary petitions for the Debtor's wholly owned entities Lucky Star-Deer Park Mezz LLC (Case No. 8-20-72403-reg), Flushing Landmark Realty Mezz LLC (Case No, 8-20-72404-reg), and Victoria Towers Development Mezz Corp. (Case No. 8-20-72405-reg).

On October 30, 2020 the following entities also filed voluntary petition for relief under chapter 11 of the United States Bankruptcy Code:  Lucky Star-Deep Park LLC (Case No. 8-20-73301-reg), a wholly owned subsidiary of Lucky Star-Deer Park Mezz LLC, Flushing Landmark Realty LLC (Case No. 8-20-73302-reg), a wholly owned subsidiary of Flushing Landmark Realty Mezz LLC and Victoria Towers Development LLC (Case No. 8-20-73303-reg), a wholly owned subsidiary of Victoria Towers Development Mezz Corp.

---

[12] It is beyond the scope of the Examiner's role for him to opine on whether the Debtor should remain a debtor-in- possession and, if so permitted, what protections should be put in place to assure he is able to comply with all post-petition requirements and to act as a true fiduciary advancing the best interests of the estate and its creditors.

On November 3, 2020, Queen Elizabeth Realty Corp., another entity wholly owned by the Debtor also filed voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (Case No. 8-20-73327-reg).

## B.  UST Objection to Disclosure Statement

The Debtor filed a Disclosure Statement on April 9, 2021 [Doc. 173].  The UST filed objections to the Disclosure Statement on May 19, 2021 [Doc. 193] raising, among other issues, concerns regarding the inability to reconcile the information in the Disclosure Statement with the Debtor's financial disclosures in his Schedules or his MORs.

## C.  Order to Show Cause

On June 2, 2021, the Bankruptcy Court entered an Order to Show Cause why the Debtor's case should not be converted to a case under Chapter 7 for cause pursuant to 11 U.S.C. § 1112(b)(1) [Doc. 208].

On June 9, 2021, the Office of the United States Trustee filed a letter to Judge Grossman asserting that the Debtor's failure to fulfill his fiduciary duties constitutes cause warranted the conversion of this chapter 11 case to one under chapter 7 of the Bankruptcy Code [Doc. 229].

## D.  Appointment of Examiner

On June 15, 2021, the Court entered an Order directing the UST to appoint one independent examiner pursuant to 11 U.S.C. 1104(c) [Doc. 231].

On June 17, 2021, the UST filed an Application For Order Approving Appointment of Examiner [Doc. 233].

On June 18, 2021, (the ("Appointment Date") the Court entered its Order Approving the United States Trustees Appointment of Examiner (the "Appointment Order") [Doc. 234].

## 1.   Scope of Examination

Upon appointment in this case, the Examiner was charged with investigating the issues that were raised in the Appointment Order.  Specifically, the Order provided for the following areas to be the subject of the Examiner's investigation:

Investigate, promptly and in a cost effective manner:

(i)    the financial state of the Debtor, his affiliates and entities controlled by the Debtor;

(ii)    any insider transactions impacting the Debtor's financial state;

(iii)   any transactions with or by affiliates or entities controlled by the Debtor and his affiliates impacting the Debtor's financial state; and

(iv)   otherwise perform the duties of an examiner set forth in 11 U.S.C. 1106(a)(3) and (a)(4) of the Bankruptcy Code.

## 2.   Retention of Professionals

On June 23, 2021, the Examiner filed an Application for an Order under Bankruptcy Code Section 327 and Bankruptcy Rule 2014 Authorizing Examiner to Retain and Employ RSR Consulting, LLC ("RSR") as Financial Consultants to the Examiner as of the Appointment Date [Doc. 235].

On June 23, 2021, the Examiner filed an Application for an Order under Bankruptcy Code Section 327 and Bankruptcy Rule 2014 Authorizing Examiner to Retain and Employ Cullen and Dykman LLP as Counsel to the Examiner as of the Appointment Date [Doc. 236].

On June 23, 2021, the Court entered Orders authorizing the Retention and Employment of Cullen & Dykman LLP as Counsel to the Examiner [Doc. 237] and RSR as Financial Consultants to the Examiner [Doc. 238].

## III.  INVESTIGATION AND PREPARATION OF PRELIMINARY REPORT

### A.  Examiner's Work Plan

Promptly following the Appointment Date, with the assistance of his retained professionals, the Examiner began investigating the Debtor and his affiliates, including approximately 45 business entities which the debtor owns, controls or has an interest in as well as several trusts for which the Debtor is or was the Grantor.

Based upon preliminary discussions with the Office of the United Sates Trustee and other parties the following initial work plan was developed:

    i.    Analyze the organizational structure and financial status of the Debtor, his business interests and assets;

    ii.    Review cash and asset transfers between the Debtor and his affiliates and how they impacted the Debtor's financial status;

    iii.    Address the many questions raised by the US Trustee's office in connection with the Debtor's filed Monthly Operating Reports; and

    iv.    Identify and review any other issues that come to light during the examination.

### B.  Discovery Conducted in Furtherance of Investigation

Following the Appointment Date, the Examiner and his representatives started gathering information to gain familiarity with the background and facts of the case through available

information in Pacer, internet searches and document requests, and by arranging various meetings and interviews.

### 1.  Meetings with the United States Trustee

A major component of the Investigation was to address the questions posed by the UST relating to the MORs, and other areas of concern raised by the UST.  Since the Appointment Date, the Examiner held several teleconferences and Zoom meetings with Stan Yang, Trial Attorney and John Gervais, Bankruptcy Analyst for the UST.   The primary concerns for the US Trustee were that (i) several items on the MORs did not make sense (balance sheets not balancing, lack of information/transparency, etc.), (ii.) there appeared to be unauthorized payments made by the Debtor's spouse on behalf on the Debtor, and (iii) assets applicable to the bankruptcy may be hidden by the Debtor internationally or through the Trusts and associated businesses.  The Examiner has been responsive to all UST requests for updates on the investigation.

### 2.  Meetings with the Debtor and Parties of Interest

Based on the information available, in addition to meeting with the Debtor, the Examiner determined that it would be useful to speak with the Debtor's internal financial personnel and outside financial and legal professionals, and other parties in interest.  The Examiner held in person, phone and zoom meetings with the Debtor; Joseph Broderick (CPA retained to assist with bankruptcy reporting); Louis Miu (tax preparer for the Debtor's affiliated supermarkets); Gene Greenfest (Trustee to Wu Family 2012 Gift Trust, and CPA responsible for tax preparation for the Debtor's personal tax returns and real estate affiliate tax returns); Marc Pergament (Debtor's counsel); and Fred Kantrow (Counsel to affiliated business debtors).  The Examiner

also had discussions with counsel to two of the Debtor's major creditors, Margarita Ginzburg (counsel to Xizhu Bai[13]) and Scott Levine of the firm Moritt Hock Hamroff LLP (counsel to American Chengyi Investment Management Group Inc.)

## Meetings with the Debtor

On July 1, 2021, the Examiner and RSR held an initial in-person meeting with Jeffrey Wu and his son, Jeffrey Wu Jr.  The purpose of the meeting was to gain an understanding of the Debtor's background, his business interests, and the circumstances leading up to the filling of the case. In addition, the Examiner concentrated on learning who were the key information holders regarding the real estate entities, supermarkets, and the various trusts. The Debtor and his son provided background to the case, answering questions, and stating that they will do what they can to provide the necessary support to answer the Examiner's questions.  Following the initial meeting, the Examiner held additional in-person, teleconference and Zoom meetings with Debtor and his son, Jeffrey Wu, Jr..

## Meetings with Joseph Broderick

Following the initial meeting with the Debtor, the Examiner held an in-person interview with Joseph Broderick, the Debtor's court approved accountant who was responsible for assisting with the preparation of the Debtor and affiliated debtors' MORs. The initial meeting focused on Mr. Broderick's role in the case, scope of work for the Debtor, information he utilized in connection with the preparation of MORs, and the individuals he has been in contact

---

[13] Based on court appearances, the Examiner understand Mr. Ginzburg represents Xizho Bai; but also noted that she filed a proof of claim in the Debtor's proceeding on behalf of Sanford Avenue Partners LLC.

with, in connection with the MORs. The Examiner held a subsequent zoom meeting, additional phone discussions and email communications with Mr. Broderick.

**Tax Return Preparation Firms**

The Debtor utilizes primarily two outside tax preparers: Anchin, for the Debtor's personal, real estate affiliates, and trusts' tax returns and Miu & Co for the Debtor's supermarket affiliates' tax returns.  A list of the tax preparer by entity, as well as the tax returns that were made available to the Examiner can be found in section III A 2 of this report, below.

i.  **Meeting with Gene Greenfest**

On July 7, 2021, the Examiner held an initial phone call interview with Gene Greenfest who is a retired Partner at Anchin but still is affiliated with the firm as a consultant to retain relationships with certain clients.  Mr. Greenfest remains as the main point of contact for the firm's relationship with the Debtor.  Mr. Greenfest has been the relationship partner from Anchin on the Debtor's account since approximately 1998. Since that time Anchin has been preparing the Debtor's personal and select business tax returns (primarily real estate entities) and Mr. Greenfest is also the Trustee for the Wu Family 2012 Gift Trust and a former alternate Trustee of the Veronica Wu Irrevocable Insurance Trust.  Mr. Greenfest provided insight into the various companies that the Debtor owned, how the various Trusts came into formation, background on the real estate acquisitions and eventual rollup into the GTJ REIT, and the ongoing audit from the IRS.

ii.      **Meeting with Louis Miu – Miu & Company, CPA's**

On July 7, 2021, the Examiner had an initial phone interview with Louis Miu, partner

from Miu & Company CPA's.  Miu & Company is the tax preparer for the Debtor's affiliated

supermarket entities. Mr. Miu and his firm have prepared the tax returns for the Debtor's

supermarket entities for the past fifteen years.  The Examiner had several calls with Mr. Miu

after the initial meeting to discuss questions on the Debtor's business affiliates' tax returns.


**Meeting with Richard Tang**

On July 15, 2021, the Examiner and his financial consultants met with Richard Tang, an

accounting and financial employee of the Debtor (through various of the Debtor's business

entities from time to time).  Mr. Tang first began working with the Debtor in 1999.  In 2013, Mr.

Tang left due to health reasons and returned to work in mid-2015 on a part-time basis.   Mr. Tang

currently serves as the controller of the real estate entities and has a part-time employee (Angela)

who helps with the day-to-day financial management of the real estate entities (collects rents,

pays expenses, manages third party contractors (cleaning, HVAC, etc.) and handles resident

issues.   Mr. Tang also handled the accounting for the supermarket entities before he left in 2013.

The accounting for the supermarket entities is now being handled by another employee, Sherry

Xu.


Mr. Tang maintains the books and records for the Debtor's real estate entities using

QuickBooks accounting software and since the bankruptcy filing, maintains the books for the

Debtor as well.   Mr. Tang provides the monthly cash receipts and disbursements information

and monthly P&Ls and Balance Sheets from QuickBooks to Joseph Broderick for the

preparation of the MORs.  The QuickBooks files for the supermarket entities are maintained by

Sherry Xu.

## Meeting With Marc Pergament & Fred Kantrow

The Examiner and RSR held a videoconference with Marc Pergament and Fred Kantrow who provided an overview of the Debtor's history and business entities, the events leading up to the bankruptcy filings for the Debtor and for his affiliated debtor real estate entities as well as their thoughts on the Debtor's post-petition activities and the events leading up to the appointment of the Examiner.    While not the primary focus of the meeting, Mr. Pergament and Mr. Kantrow also indicated that they were finalizing settlements with all the Debtor's major creditors which would allow for the 100% repayment of the Debtor's remaining creditors.

## Possible Additional Meetings

In addition, the Examiner has identified other individuals that may have relevant information pertinent to the Examination who may be interviewed in the future.  Through the ongoing review of the documents received to date and further interviews with parties identified to date, the Examiner may identify other parties to interview.  The chart below is preliminary and additional names may be added.

| Individual | Role | Firm |
|---|---|---|
| Veronica Wu | Debtor's Spouse | |
| Sherry Xu | "In-House" Accounting - Supermarket Entities | |
| Thomas Peng | Tax Return Prep - Hong Kong Distribution Corp. | Twanmoh Peng & Associates |
| Lewis Wu | Debtor's Brother | |
| Paul Cooper | Former "partner" w/ Debtor 100 William Street / Baker Portfolio / GTJ Realty LP | GTJ REIT, Inc. |
| Louis Sheinker | Former "partner" w/ Debtor 100 William Street / Baker Portfolio / GTJ Realty LP | GTJ REIT, Inc. |
| Larry Linkman | Creditor w/ Lien on Debtor's REIT Interests | Zee Bridge Capital |
| Christine McGuiness | Debtor's former counsel - R/E Transactions | Schiff Hardin LLP |
| Fred Huang | Former President - United International Bank | United International Bank |

### 3.  Document Collection and Review

Information Requests

It became clear that the understanding of the Debtor's various entities was an important component to the understanding the Debtor's overall financial picture.  To begin the process, the Examiner and RSR downloaded pertinent information from Pacer (Petitions, MORs, Schedules, etc.). While only the Debtor and 7 of his entities have filed for bankruptcy, there were dozens of other active and inactive entities that that the Debtor owned or controlled over the course of his career.

In advance of the initial meeting with the Debtor, on June 24, 2021, the Examiner sent a preliminary document request list to help facilitate a more productive discussion.

After initial meetings with the Debtor and other parties and the initial review of information received from various sources, the Examiner identified five primary areas for information gathering: (a) the Debtor, (b) Debtor's spouse, (c) the Debtor's business interests and investments, (d) personal assets and (e) the Debtor created trusts (i.e., Wu Family 2012 Gift Trust and two Insurance Trusts).

On July 2, 2021, the Examiner sent a comprehensive preliminary document request list the Debtor and his representatives with the expectation that additional requests would follow based on further review of the documents.  The July 2nd information request list template formed the basis of tracking and managing the information flow between the Debtor and the Examiner (the "Document Tracker").  A current copy of the Document Tracker is attached as **Exhibit A.**

The following is a sample of the documents requested from the Debtor or his representatives:

a.  A list of bank accounts (active and inactive) maintained by the Debtor and Spouse and all bank statements related to those accounts post-petition and for 2 years prior to bankruptcy filing. Please include statements on all electronic wallets if available (PayPal, Venmo, etc.). Detailed receipts and disbursement registers including the payee and payor for all transactions (Wire, ACH, etc.). Also, all canceled checks, deposits, reconciliations, and checkbook registers

b.  Copies of all life insurance policies, most recent annual policy statements and premium notices

c.  Spouse's list of all personal property (Real Estate, art, jewelry, furniture, etc.) that is separate from the Debtor

d.  All accounting software data files for the Debtor and all entities affiliated with the Debtor

e.  Agreements, documentation, and explanations related to entities that had interest in properties contributed that were eventually contributed to GTJ REIT (100 William Street, Lighthouse entities, etc.)

f.  Form 4549 - IRS Audit Findings

g.  Closing documentation for all inactive entities, including any closing statements indicating the transfers of funds

h.  Chronology/background for Debtor and his interests

i.  Various questions relating to financial transactions obtained through the Debtor's QuickBooks files

The Debtor was asked to provide information on a rolling basis as it became available. And to upload it electronically to a secure remote data site on RSR's ShareFile system. As expected, the receipt and review of documents being produced to the Examiner led to additional questions and document requests. The Document Tracker was updated in real time to reflect which requested documents had been received, and which follow up questions and additional document requests were outstanding and was sent to the Debtor at least several time a week. The Examiner and RSR also held weekly calls with the Debtor to discuss the status of outstanding information requests and open questions to be answered.

Since the Debtor's information is not centralized and is stored in various locations, different parties assisted in providing the documents for the Debtor. As a result, the Examiner and RSR had weekly and at times more frequent meetings and communications with the Debtor and various other parties to follow up on timing of delivery. Some of the documents were not in the Debtor's possession, but rather located at law firms which the Debtor no longer retained. At times, there were delays in getting all the pieces needed to understand the documentation/history of particular entities, assets or issues, which have led to delays in certain areas of the Examiner investigation.

**Tracking of Document Flow Process**

The ShareFile system provides a private and secure data room which stores all of the Debtor related information received. The Examiner has complete control on who can view, download, and upload in each of the folders. The only individuals with full access to the data room are the

Examiner, RSR and C&D.  The Debtor's access is restricted to only upload and view capabilities.

All files are organized in individually numbered and titled folders that relate to the request on the information request list sent to the debtor. While certain files may be downloaded by the Examiner or his professionals for ease of access, the ShareFile data room is the central repository that contains all documents provided by the Debtor or his representatives.  No document is deleted and only the Examiner and RSR can delete files, regardless of who made the original upload.

As of August 20, 2021, there are 4,566 files corresponding to the Debtor and his business interests that have been uploaded into the data room by the Debtor's son, Jeffrey Wu Jr. The chart below summarizes the number of files uploaded to the data room on a weekly basis during the course of the Examiner's investigation.

| Weekly Period | Uploads per Period | Percent of Total |
|---|---|---|
| 7/06/21 - 7/11/21 | 148 | 3% |
| 7/12/21 - 7/18/21 | 475 | 10% |
| 7/19/21 - 7/25/21 | 625 | 14% |
| 7/26/21 - 8/01/21 | 2,098 | 46% |
| 8/02/21 - 8/08/21 | 949 | 21% |
| 8/09/21 - 8/15/21 | 238 | 5% |
| 8/16/21- 8/22/21 | 33 | 1% |
| **Total Uploads** | **4,566** | **100%** |

As an additional precaution that no information in the data room was overlooked, the Debtor periodically sends back the information request list that has the items marked as completed and notes/comments on a weekly basis (primarily on Friday of each week). The Debtor's file is then compared to the Examiner's copy of the request list to confirm that all files uploaded by the

Debtor have been accounted for. The comments and notes are integrated on the Document Tracker in a separate column marked as "Debtor Comments".

As noted above, while most requests are communicated through the updated Document Tracker provided frequently to the Debtor, the Examiner and his representation regularly communicate directly with the Debtor and his team to expedite information flow (all requests are tracked on the information request list).

**<u>Files from Rivkin Radler</u>**

Based on discussions with the Debtor, the Examiner was notified that there are a significant number of files and records from the Debtor's real estate transactions that are maintained with his former law firm, Rivkin Radler LLP ("Rivkin").   On July 21, 2021, Debtor's counsel reached out to Rivkin and requested all files relating to the Debtor be sent to the Examiner.   On July 26, 2021, the Examiner received a link to Rivkin's data room with over 1,900 PDFs, totaling over 18,000 pages.  None of the pdf files were titled in a manner that provided any indication as to the contents of each file.   The Examiner is in the process of prioritizing document review and analysis based on the information received to date.

**<u> Other Research</u>**

As an additional source of information in his assessment of the Debtor, the Examiner directed his counsel perform a search on WestLaw People Map$^{©}$ and People Result$^{©}$ for Myint Kyaw, Myint J Kyaw, Myint Kyaw and New York, Jeffrey Wu, Jeffrey Wu and New York, Ioc H Ip (Debtor's spouse), and Heng I Ioc (Debtor's spouse), and Veronica Wu yielding 1,328

results.  A search was also performed on Company Investigator$^{©}$ based on the inputs of Myint Kyaw, Jeffrey Wu, and Veronica Wu (Debtor's spouse) yielding 618 results.

The Company Investigator queries primarily looked to see if any companies had the Debtor or his spouse listed as officers or owners in any entities other than those presented to the Examiner while the People Result and PeopleMap queries can be used to identify potential undisclosed assets, outstanding litigation, and liens of Debtor or his Spouse.

Based on his initial review, the Examiner then segregated the search results into 3 buckets; those appearing to clearly related to the Debtor, and those appearing unrelated to the Debtor and those where it was unclear, requiring further investigation.  RSR is in the process of analyzing an summarizing the results and evaluating the next steps to perform with this data.

## IV.  FINDINGS RELATING TO THE FINANCIAL STATUS OF THE DEBTOR

### A.  Debtor and Affiliates Accounting and Books and Records

### 1.  Key Accounting Personnel

The Debtor and his business affiliates accounting departments are generally segregated along industry lines and in some cases on an individual entity by entity basis.  There is no centralized accounting department or chief financial officer or Controller for all the entities, but rather certain key financial personnel handle the accounting for the different entities, including the Debtor and his spouse.  Due to the non-existence of a centralized financial officer, the overall knowledge of the business entities is limited to the accounting personnel that work on each specific entity.  The organization's accounting and reporting is handled at two offices, both located at 133-38 Sanford Avenue, Flushing, NY 11355.  One office handles the accounting for the real estate entities and the other office handles the accounting for the supermarkets.

The most senior accounting person within the Debtor's organization is Richard Tang, who currently fulfills the role of controller for the real estate entities and historically assisted with the Debtor and his spouse's personal tax returns.  Mr. Tang also assisted with the Debtor's and affiliated debtors' Schedules and MORs.  Mr. Tang currently works part-time in his roles with the Debtor and affiliated entities.  Mr. Tang joined the Debtor's organization in 1999 as a controller for the Debtor's previously owned wholesale and import distribution business, Mon Chong Loon Trading Corp.  Subsequently, at or around 2004, Mr. Tang started handling the accounting oversight for the supermarket entities until 2013, when he left the organization due to illness.  Mr. Tang subsequently returned in 2015 to assist in accounting and reporting primarily for the real estate entities and the Debtor's personal tax returns.  Mr. Tang informed the Examiner that he is included in the payroll of Victoria Realty Group, however, he also stated that he may have been on Flushing Landmark's payroll at the time of the bankruptcy filing.  As mentioned above, Mr. Tang has one part-time employee working under him to assists with the real estate entities, whose primary role is to collect rent, pay expenses and respond to matters from the tenants and third-party contractors.

In connection with the supermarket line of businesses, Sherry Xu performs a similar function as described for Mr. Tang and is included in the payroll for Hong Kong Distribution Corp.  The supermarkets utilize a point-of-sale system that reports the sales activity at the local stores and transfers that operating data to the home office where Ms. Xu maintains the accounting.  The information is then recorded in each entity's accounting software program. The Debtor informed the Examiner that historically, the supermarket entities would often pay cash for purchases of goods to take advantage of discounts on purchase costs.  Through the date of

this report, we have not yet interviewed Ms. Xu or managers at the local stores to confirm her role within accounting and reporting process and the cash management process at the store level.

## 2. Accounting Firms and Professionals

The Debtor and his business interests have historically employed the following accounting firms to provide tax and accounting services to the Debtor and his business interests:

| Firm Name | Lead Partner | Services Provided | Entities |
|---|---|---|---|
| **Anchin Block & Anchin LLP** | Gene Greenfest | Tax return preparation | Debtor, Real Estate related entities, 2012 Wu Family Trust |
| | Gene Greenfest | Trustee Services | 2012 Wu Family Trust; Jeffrey Wu and Veronica Wu Life Insurance Trusts |
| **Miu & Co.** | Louis Miu | Tax return preparation | Mostly supermarket entities located in New York, Massachusetts, and Pennsylvania |
| **Twanmoh, Peng & Assoc.** | Thomas Peng | Tax return preparation | California supermarket entity; Hong Kong Distribution Corp. |
| **Joseph A. Broderick, CPA** | Joseph Broderick | Monthly Operating Reports | Debtor and Debtor Business entities |

With the exception of preparation of tax returns, the Debtor and his business interests have not engaged any accounting firms within the past 10 years to perform audits or any other level of attestation services that would provide a higher level of assurance on the Debtor or his business interests' financial statements. The Debtor's accounting professionals (referred to above) have never prepared or reviewed any personal financial statements for the Debtor.

The Debtor recently informed the Examiner that Anchin, the accounting firm that was responsible for the Debtor's tax returns individually and for his real estate interests has resigned in connection with preparing tax returns for the Debtor or his interests currently in bankruptcy. The Debtor is seeking to engage alternative accountants to prepare his post-petition tax returns.

### 3.  Accounting Software

The Debtor's business affiliates utilize QuickBooks as its primary accounting and reporting software program for most of the business entities and the Debtor's post-petition reporting for the monthly operating reports.  Historically, both Mr. Tang and Ms. Xu would perform the periodic reporting for the entities through QuickBooks and then provide financial information to the outside accountants to assist in the preparation of the annual tax returns for each entity.  The Debtor started utilizing QuickBooks for his post-petition accounting only.  Prior to the bankruptcy filing, the Debtor did not maintain his personal financial reporting on QuickBooks, or any other accounting software platform.  In order to efficiently examine the Debtor's books and records the Examiner believed it was important to obtain the QuickBooks data files from the Debtor as part of the Examination.

**Description of QuickBooks Files Received**

The Debtor provided twenty QuickBooks data files for the Debtor's affiliated business entities and one QuickBooks data file for the Debtor's post-petition financial activity.  The QuickBooks data files are useful in that they provide a history of all the transactions for the entities for a significant time period.  Such data includes bank and cash account history, account activity, general ledgers, financial statements and journal entries.  Moreover, the QuickBooks reporting was a major source of financial information the Debtor's accountants used in preparation of the businesses tax returns and the Debtor's MOR reporting.  The Debtor stated that the QuickBooks files were reviewed and adjusted, where needed, by the entities' outside accountants through 2020.  The 2021 financial data included in QuickBooks has not yet been reconciled internally or reviewed by the outside accountants and remain subject to adjustment.

Upon receipt of the QuickBooks data files, the Examiner downloaded the files into a QuickBooks software program and then converted select accounting modules contained within QuickBooks into excel files.   It is beneficial to utilize excel as a program for efficiently analyzing and summarizing data and creating database analysis. The Examiner selected the following types of reports, accounting books for analyzing in Excel:  (i.) Income Statements; (ii.) Balance Sheets; (iii.) Statements of Cash Flow; (iv.) General Ledgers; and (v.) account detail for selected balance sheet and P&L accounts.

The Debtor provided the following data files for all the entities that use QuickBooks for accounting and reporting, which includes most of the Debtor's currently active or recently inactive entities:

| Debtor | QuickBooks Files Rec'd. | Supermarket Entities | QuickBooks Files Rec'd. |
|---|---|---|---|
| Jeffrey Wu - Post Petition Activity | X | Hong Kong Distribution Corp. | X |
| | | Hong Kong Supermarket of Allston LLC | X |
| **Real Estate Entities** | | Hong Kong Management of Allston LLC | X |
| 130 Bowery LLC | X | Hong Kong Supermarket of Malden LLC | X |
| Lucky Star-Deer Park Mezz LLC | X | Hong Kong Supermarket of Pennsylvania Inc. | X |
| Lucky Star-Deer Park LLC | X | Hong Kong Supermarket of Hester Street Corp. | X |
| Victoria Towers Development Mezz Corp. | X | Hong Kong Supermarket of Elmhurst | X |
| Victoria Towers Development Corp. | X | Super HK Supermarket of Flushing LP | |
| Queen Elizabeth Realty Corp. | X | Hong Kong Supermarket of Flushing Inc. | X |
| Wu Towers LLC | X | Hong Kong Supermarket Holding Corp. | |
| Wu Towers Mezz LLC | X | | |
| Victoria Realty Group LLC | X | **Other Entities** | |
| Flushing Landmark Realty Mezz LLC | X | Wu's Enterprises LLC | |
| Flushing Landmark Realty LLC | X | VWU888 LLC | |
| Hong Kong Plaza Management Corp. | X | GTJ Realty LP (REIT) | |
| Crown Mansion LLC | | WuMac Inc. | |

## B.  Preparation of Bankruptcy Reporting

In connection with the Debtor's required bankruptcy reporting, Richard Tang provided financial information to the Debtor's counsel in preparation of the Schedules and also prepared the initial MORs for the period July 2020 through March 2021.  The Debtor and his counsel stated that Mr. Tang had no prior bankruptcy reporting experience prior to the Debtor's filing.

Not surprisingly, the Debtor's bankruptcy schedules had gaps in information and contained inconsistencies as noted by the UST.

On February 24, 2020, the Debtor retained Joseph A. Broderick, P.C. to assist the Debtor in maintaining his books and records and to prepare his MORs on a go-forward basis. It is the Examiner's understanding that Mr. Broderick has many years of experience assisting debtors with bankruptcy reporting. Mr. Broderick was also tasked with revising and amending the MORs that had been previously filed with the Court. The Debtor, with the assistance of Richard Tang and Mr. Broderick, amended and restated the MORs for the period of July 2020 through March 2021 to try to correct the inconsistencies and gaps in information. The MORs from July 2020 through March 2021 were amended and re-filed, in some instances multiple times. Starting with the April 2021 MOR, and through the latest MOR filed as of the date of this report, June 2021, the MORS were prepared by Mr. Broderick and filed without any subsequent amendments.

The Examiner's initial and continued document requests to the Debtor included the preparation of financial information on his non-debtor affiliated entities required under Bankruptcy Rule 2015.3.[14] The Examiner requested on several occasions if the required forms (Official Form 26) were filed with the Court. The Debtor and his representatives stated they

---

[14] Bankruptcy Rule 2015.3 requires the Debtor to "file periodic financial reports of the value, operations and profitability of each entity that is not a publicly traded corporation or a debtor in a case under title 11, and in which the estate holds a substantial or controlling interest." These reports are to be filed at the inception of the case and at least every six months thereafter, using Official Form 26. The Debtor recently indicated to the Examiner that he is seeking to retain the firm of Giambalvo, Stalzer & Company CPAs, P.C. to prepare and file the Rule 2015.3 reports for the non-debtor entities

were unaware of this reporting requirement. After the Examiner brought this requirement to their attention, the Debtor sought to retain a professional firm to assist in the preparation of those reports.

## C. Review of UST's Questions Related to the Debtor's MORs

In connection with the objection filed by the UST to the Debtor's Disclosure Statement and the Courts Order to Show Cause, on June 9, 2021 the UST filed a letter with the Court outlining several areas of concern relating to the Debtor's reporting of transactions in the MORs. The letter included an attachment that contained a list of approximately 96 questions related to the MORs filed from July 2020 through March 2021.  The UST's questions primarily addressed items related to the Debtor's (i.) cash receipts and disbursements / bank statements and (ii.) the Debtor's reported statements of operations and balance sheet.

After conferring with the UST, the Examiner understands UST's main concerns included, but were not limited to (i.) a lack of transparency related to the Debtor's sources of available cash and assets; (ii.) potential non-reporting of assets that could be used to pay creditors; (iii.) assets belonging to the Debtor that may have shifted to other parties, including the Debtor's spouse; (iv.) trusts maintained outside of the Debtor's creditors' reach; and (v.) incorrect or intentional misrepresentation of the Debtor's statutorily required reporting to the Court through MORs and Schedules.

The UST requested the Examiner to perform a full investigation into the Debtor's financial affairs including all the Debtor's business interests and assets, transactions occurring

during the post-petition and pre-petition periods, and attempt to address the UST's concerns outlined above.

## 1. Procedures Performed by Examiner

The Examiner approached the first phase of the Examination through review of the UST's list of questions to the MORs; discussions with the UST's office; review of MORs and underlying data provided by the Debtor; and interviews with the Debtor and his representatives.

The Examiner and RSR reviewed the approximately 96 questions posed by the UST.  The questions were sorted by month and by section of the MOR –

(i)      Bank Statements, and

(ii)     Statement of Operations and Balance Sheet

RSR reviewed the original and the amended MORs for the period from July 2020 through March 2021.  The Examiner and RSR discussed the UST's questions with Stan Yang, Trial Attorney for the UST and John Gervais, Bankruptcy Analyst for the UST.  Mr. Gervais was the primary person from the UST that developed the questions that formed the basis for the list attached to the UST's objection.  The UST representatives also explained their concerns regarding the Debtor holding undisclosed assets internationally and the possibility of the Debtor moving funds surreptitiously through intercompany transactions and accounts of family members.

The Examiner and RSR met twice with Mr. Broderick on July 1, 2021 and July 28, 2021.  At the initial meeting, Mr. Broderick provided background to his role with the Debtor, the procedures he performed and that he tried to provide responses to the UST's questions.   During

this conversation he described his involvement solely to assist the Debtor in preparing amended and corrected MORs for previously issued reports and MORs going forward.  Mr. Broderick said he was not involved with the preparation of the Debtor's Schedules or any amendments to the Schedules that had been filed.

Mr. Broderick's activities were limited to receiving the data from Mr. Tang in the form of summary reports and using that data to properly prepare the amended MORs.  Mr. Tang provided a monthly download from QuickBooks in PDF format of the Debtor's cash receipts and disbursements and financial statements without underlying detail for deposits and disbursements (i.e. no detail register was provided payee or payor information or copies of deposit slips, cancelled checks or wire transfer information) or the Debtor's QuickBooks datafiles.  However, Mr. Broderick conferred with Mr. Tang from time to time if he had any questions on the information provided for the preparation of the MORs.

Mr. Broderick stated that a large part of his role was making sense of the balance sheets that did not balance, investment valuations that kept changing, and other areas of the MORs that needed addressing.  He also tried to clarify the transactions between the Debtor and his spouse. Mr. Broderick explained that since certain expenditures were being paid by the Debtor's spouse or others on behalf of the Debtor, the cash payment of the expenditure was not disbursed out of the Debtor's bank account, but the expense was recorded on the Debtor's Income Statement. Most of these types of expenses related to household living expenses where the Debtor's spouse made a payment on behalf of the Debtor's share of the expense (i.e., 50% sharing allocation). As result, this caused the balance sheet to "not balance".  Mr. Broderick stated that the way to balance this difference was to record the non-Debtor payments made on behalf of the Debtor in a

"Due to" account on the Debtor's balance sheet.   Mr. Broderick stated that he did not receive or analyze the any detail surrounding the sharing of expenses between the Debtor and his spouse or the allocation between loan interest and principal payments.

It appears to the Examiner that Mr. Broderick served the role of assisting the Debtor in reporting the information received from Mr. Tang in the proper format for the MORs to the Court.  Mr. Broderick did not perform attest type services in his role as he did not corroborate or validate, nor was he provided   the underlying data that was being reported.  As a result, any information provided in the filings is based on Mr. Broderick's best knowledge as to what was told to him by the Debtor, Mr. Tang or the Debtor's representatives.

Mr. Broderick stated that he tried to provide responses to the UST's office to the points listed in the UST's objections, but the UST declined to speak with him (a copy of e-mail exchange was provided to the Examiner).  Mr. Broderick stated that it appears that some of the questions from the UST are based on the original MORs filed rather than the amended MORs that Mr. Broderick helped prepare.  During the initial meeting with Mr. Broderick, the Examiner requested responses in writing to the US Trustee questions.  The Examiner's review and analysis of the UST's questions and Mr. Broderick's responses are set forth below.

## 2.   Review of Debtor's Responses to UST Questions

On July 7, 2021, Mr.  Broderick provided responses to the questions previously raised by the UST.  A copy of Mr. Broderick's responses is included in **Exhibit B.**   Mr. Broderick believes that many of the questions raised by the UST's office were resolved through the amended MORs. Accordingly, many of Mr. Broderick's responses were tailored toward

referencing the amended MORs for resolution of certain questions.   It appears that at least several questions posed by the UST were resolved by the amendment of the relevant MORs.

After reviewing Mr. Broderick's responses and the original and amended version MORs, the Examiner created a table lining up the US Trustee's questions with Mr. Broderick's responses and the Examiner's observations regarding each question and response.  This table was used as a guide for the subsequent meetings with Mr. Broderick and the Debtor and his representatives.  The table is included in **Exhibit C** to this report.

Following are selected responses to the UST questions the Examiner is highlighting for the Court's benefit.  The Examiner's observations are based on review of the information provided and interviews with Mr. Broderick.   These items are only meant to provide a sample of selected items and not intended to preclude review of the full list of items listed in **Exhibit C.**

UST Question:

*July 2020 MOR:  Distribution income of $7,605.69 was not reported on MOR with any bank statements filed.*

Mr. Broderick Response:

The $7,605.59 was a distribution from Hong Kong Distribution Corp. (a non-Debtor entity owned 100% by the Debtor) that paid the following bills directly to the creditors: (i) Audi payment:  $2,593.23; (ii) Rolls Royce payment:  $2,094.46; (iii) Bentley payment:  $2,918.00 (Total:  $7,605.69). These payments were applied against outstanding loan principal and interest.

Discussion:

The Debtor confirmed that car loan payments made post-petition are being made by Hong Kong Distribution Corp. and is being booked as a distribution to the Debtor and the cash does not show in any Debtor bank account because the payments are being made directly by the company to the creditors.  Mr. Broderick explained his reporting methodology is to reflect the principal portion of the payment as a distribution from Hong Kong Distribution Corp. to the Debtor's equity account and the interest portion to the Debtor's P&L as an interest expense.  The aggregate disbursement of $7,605.69 is shown as an "Estate Disbursement Made By Outside Sources" in the Cash Receipts And Disbursements section of the Amended July 2020 MOR filed on June 1, 2021.  The Examiner requested confirmation of the car loan payments and copies of the car loan statements.  The Debtor provided a number of car loan statements on August 3, 2021, however the only one pertinent to this particular question is a copy of the TD Bank statement for July 2021 showing the $2,918.00 Bentley payment being received and applied to the loan balance.

UST Question:

*December 2020 MOR:  $54,300 was paid for Life Insurance Premium for the Jeffrey Wu Irrevocable Insurance Trust. Much more than the past few months payments of around $1,400 (see note for August 2020).*

Mr. Broderick Response:

Mr. Broderick claims no knowledge related to the monthly insurance payments of approximately $1,400 per month as well as the $54,300 insurance payment made in December 2020.

Discussion:

The Debtor explained that the payments in question were made by mistake, and he should not have made those payments.   The UST informed the Examiner that he asked the Debtor's counsel how the Debtor intended to make the insurance payments listed in the Schedules based on his limited cash resources.   The UST stated the Debtor's counsel stated the premium payments would be made by the Debtor's brother, Lewis Wu.   The Debtor said that "that does not reflect reality and Marc Pergament should not have said that."   The Examiner notes that Lewis Wu is a Trustee on the Life Insurance Trusts which may be the basis for the Debtor's counsel's statement.

The Examiner also notes that the Debtor's bankruptcy estate is not a beneficiary of and has no interest in the policies held in the Life Insurance Trusts and questions the propriety of the Debtor continuing to make transfers to the Trusts to cover premiums on a post-petition basis, whether $54,300 or $1,400. RSR requested policy statements and premium notices and evidence of any cash value to these policies.

UST Question:

*November 2020 MOR:  $60,000 received from Isshindou Japanese Ramen Inc. ("Isshindou"), Ramen restaurant located in the Super 88 Market Food Court in Boston, MA. Marked on the balance sheet as Due to Insiders - Isshindou under Other Current Liabilities.*

Mr. Broderick's Response:

Mr. Broderick responded that he had no knowledge of the transaction.

Discussion:

The Examiner and RSR engaged in multiple discussions with the Debtor and his advisors regarding the $60,000 receipt in November 2020 and the Debtor's response and Mr. Tang's responses were not consistent.   Mr. Tang explained that, upon seeing the incoming deposit and no receivable, loan or other "due from" account relating to Isshindou, booked the entry as a loan from a "friend" in the amount of $60,000 that needed to be paid back and that's why it shows as a due to insider on the balance sheet.   Richard Tang further noted that the $60,000 loan from a "friend" was made for the debtor to be able to pay $54,300 in premiums to keep a life insurance policy from lapsing.

The Debtor stated that Mr. Tang's explanation was not correct and stated that that the $60,000 receipt from the Ramen shop was a payment back to the debtor for payments that the debtor made to the Ramen shop to pay for repairs/maintenance items in order to address inspection and regulatory demands from local authorities ($30,000) and also for loss revenue ($30,000).  The Debtor further noted that there should not be a liability booked on the balance sheet for this transaction.

RSR noted that the two stories are inconsistent and engaged in further discussions with the Debtor's son in an attempt to reconcile the differing explanations.  As a result of that conversation, the Examiner understands that the $60,000 is a settlement by the owners of Isshindou relating to the Debtor's contribution of equipment for leasehold improvements to the space leased by Isshindou and for unpaid rent during the Covid period.   As discussed in the section pertaining to the Debtor's business interests, Honk Kong Supermarket of Allston, LLC held the master lease at the 1 Brighton Ave., Allston, MA location.  Hong Kong Supermarkets of

Allston, LLC sub-let a portion of the space to Hong Kong Management of Allston, LLLC which converted the space to a food court and sub-let to various third-party retail food store operators. The owners of Isshindou approached the Debtor 4-5 years ago about opening a Raman shop in the food court, but lacked the capital to start the business.   The Debtor contributed fixtures and equipment from another entity that he owned to make the leasehold improvements to the space – which were essentially "fixtures" to the real estate.  During the Covid pandemic, Isshindou allegedly obtained PPP loans and then abandoned the space, ceasing to pay rent.  The owners of Isshindou personally guaranteed the lease to Hong Kong Management of Allston, LLC.  The Debtor alleged that the owners of Isshindou improperly used the PPP loan proceeds for personal purposes and sought to pursue the owners under their personal guarantee of the lease.  In response, allegedly to keep their personal use of the PPP funds for personal uses from being disclosed in a publicly filed complaint, the owners and the Debtor agreed to a lump sum $60,000 payment to settle all obligations under the lease and reimbursement for the cost of the leasehold improvements and to cancel the remainder of the lease.

It is the Examiner's understanding that the check was made payable to the Debtor directly and thus deposited into the DIP account, however it is unclear if the $60,000 was booked as a repayment to Hong Kong Management of Allston, LLC as the lessor and a distribution from Hong Kong Management of Allston LLC to the Debtor.

While there is no documentation to support the transactions described above, the Examiner believes the explanation to at least be plausible versus the prior inconsistent responses provided and to the extent true, agrees that there should be no "due to" liability reflected on the Debtor's balance sheet.

<u>UST Question:</u>

*October 2020 MOR:  The following Operating Expenses were not reported on the MORs as disbursements and have no record of anyone else paying them for Jeffrey Wu:*

- *Auto Insurance for $1,775.03*

- *Bank Charges for $13.25*

- *Finance Charge of $475.26*

- *Home Owners Insurance for $2,447.98*

- *Payroll Taxes for $1,951.20. Unclear as to why Debtor paying more than individual and employer contributions for payroll taxes.*

- *Interest Mortgage for $2,914.29. 24.2% of Mortgage payments made for October ($12,062.55).*

- *Professional Fees of $20,035.85. Unclear if this was applied to a retainer. Balance for the Professional Retainer on the balance sheet is $0.00 (same as last month).*

Note:  This Question is posed by the UST with respect to each MOR from July 2020 through March 2021 detailing the specific operating expenses noted each month as detailed in the table in **Exhibit C**.  October 2020 is included here as a representative sample.

<u>Mr. Broderick's Response:</u>

- The following expenses were paid by the Debtor's spouse.

    Auto insurance:  $1,775.03

    Homeowner's insurance:  $2,447.98

    Bank charge is from acct# 7978:  $13.25

- The mortgage interest is the portion of the payment that was applied to interest.

- The professional fees of $20,035.85 is an accrual that was added to the prior month's liability and now totals $33,607.20.

- The finance charge of $475.26 is the interest portion of the automobile loan payment. Payroll taxes of $1,951.20 is the employee's withholding taxes.

Discussion:

Some of this goes to the sharing of household expenses between the Debtor and his non-debtor spouse.  Joseph Broderick explained the reporting of insider payments (spouse) on behalf of the Debtor as an expense to the Debtor's P&L for the Debtor's portion of the expense (usually 50%) and the recording of "due to spouse" entry on the liability side of the balance sheet. Broderick further explained that from time to time, Debtor makes household expense payments on behalf of his spouse and that in those situations, the liability balance in the "due to spouse" account is reduced.

MOR Questions that Require Further Investigation:

While Joseph Broderick provided some answers and many items were explained at a high-level during the meeting with the Debtor, Jeffrey Wu, Jr., and Richard Tang on 7/29/2021, a number of items are still pending further information as detailed in the table in Exhibit C.  In addition, in the course of addressing the UST's questions the Examiner and RSR identified additional questions which the Debtor has been asked to respond to.  Below is a list of some of the most relevant questions that require further investigation:

(i)     There was a $35,000 transfer identified on the Debtor's bank account at Chase (account #7978) made on July 8, 2020, the petition date. The Debtor explained that payment was for a lease payment on the Super HK of El Monte Inc. (a currently

inactive entity) supermarket in California that was losing money.  The Debtor sold the store to a supermarket operator (or manager) and as part of the agreement to pay past due rent, the Debtor had to pay $35,000 monthly until July 2020.  The payment on July 8, 2020, was the last payment related to this transaction.  A deeper understanding of this transaction is required, as well as a full reconciliation of pre-petition transfers made to this creditor.

(ii)    On the petition date, there were several payments to credit cards (American Express and Discover).  When asked about how credit card payments are being made, the Debtor said that all credit cards were closed due to the petition.  RSR requested information confirming closure of these accounts.  The Debtor's spouse, however, still has credit cards and payments are being made from her bank accounts for her monthly credit card billing statements.  A better understanding of the post-petition credit card transactions and payments made on the Debtor's spouse's credit card accounts and how it relates to payments made on behalf of the Debtor is required.

(iii)   The Debtor and Jeffrey Wu, Jr. said they hired Property Tax Busters Inc. as their professional to grieve real estate taxes on the primary residence.  The Debtor further explained that these services were provided pre-petition, but the tax relief benefit and related fee that the Debtor paid impacted the post-petition period.  The Debtor acknowledged that this payment should not have been made without Court approval.  RSR reviewed the invoice and related retention information provided information regarding the hiring and payment of Property Tax Busters Inc.  A deeper understanding of this transaction is required, as well as the full cost/benefit analysis to the estate.

(iv)    Combining the larger $54,300 life insurance payment made by the Debtor in December 2020 with the monthly payments of approximately $1,400 made between August 2020 and May 2021, a total of $65,620 has been paid towards life insurance policies owned by the Jeffrey Wu Irrevocable Insurance Trust.  RSR observed, through bank statements, that there were movement of funds between Debtor and spouse accounts before the actual payments were made.  These transactions require further investigation and reconciliation to understand the actual amounts paid and how funds were moved before the payment.  RSR also requested policy statements and notices to augment the analysis and these documents have not been received as of the date of this report.

(v)    Based on the information and invoices received, RSR was not able to fully reconcile some of the Debtor's monthly utility expenses.  RSR received certain invoices, but there were instances in which the invoices did not fully match the amounts being reported in the MORs.  There are many reasons why this could happen, such as timing of certain payment or an incomplete set of invoices.  The differences observed by RSR were not large, but if a full reconciliation of expenses is required, further investigation should be made regarding the Debtor's utility expenses.

(vi)    Based on information disclosed on the Debtor's MORs and documentation received regarding the Debtor's mortgages, further analysis and reconciliation is required to fully reconcile the payments made by the Debtor and his spouse.  There are large fluctuations in monthly payments and in sources of funds.  Certain months are paid by the Debtor, others by his spouse and in some instances, no payments are observed. A thorough reconciliation between the Debtor's and spouse's bank accounts,

mortgage statements and balance sheet account due to/due from insider is required for a full understanding of the mortgage expenses.

(vii)    Regarding the $15,214.82 payment made for property taxes in January 2021, the Debtor explained this is related to the issuance of a bank check and that is the reason why the bank statement shows a withdrawal without specification as to property or payee information.  The documentation provided does not reconcile to a payment of $15,214.82; therefore, further information would be required to better understand this transaction.

## D.  Analysis of Debtor's Living Expenses and Funding Sources

Questions have been raised regarding the Debtor's ability to support his monthly living expenses with his monthly income as reported on Schedules I and J as filed with the Court.   The Debtor continues to maintain his luxury residence in Lattingtown and multiple luxury vehicles, each with relatively high carrying costs including finance costs, real estate taxes, insurance, maintenance, utilities and other household expenses, but initially reported limited sources of income to cover the expenses associated with his and his family's lifestyle.  In response to these questions, the Examiner and RSR attempted to analyze the Debtor's living expenses and the sources of available funds to support his lifestyle.

The Examiner and RSR initially reviewed and analyzed the Debtor's Schedules and MORs to understand what the Debtor reported as monthly income and expenses in terms of categories, amounts and sources and uses of funds, then analyzed information received from the Debtor through the document request process and held multiple telephonic discussions with the Debtor and his representatives to review the information and issues.   As discussed below, it

became apparent that the Debtor's monthly expenses were not accurately portrayed on the Schedules.  The Debtor and his spouse have been attempting to manage the timing and sources of funds for payment of his individual, her individual and their joint expense obligations, but the approach has been inconsistent and somewhat haphazard.  RSR noted varied payment patterns including (i.) the Debtor paying for certain of his own expenses, (ii.) the Debtor's spouse paying expenses on behalf of the Debtor, (iii.) the Debtor paying expenses on behalf of his spouse, (iv.) certain expenses being paid by various businesses owned by the Debtor and (v.) some instances where expenses appear to have not been paid when due.   The balancing mechanism between the Debtor and his spouse appears to be an "Amounts Due to Insiders" account established on the books of the Debtor and as reported on the Debtor's MORs, to track the running balance of how much the Debtor owes to his spouse (on a net basis) for her paying of expenses on his behalf.

## 1.  Debtor's Schedules

RSR initially reviewed Schedules I and J and the historical "actual" reporting of income and expenses as reported in the MORs.  This analysis was complicated by the fact that the Debtor amended his Schedules and the MORs on several occasions and in some instances, by material amounts.   RSR attempted to understand the reasons for these amendments as well as the underlying explanation and support for the numbers presented by, among other procedures, reviewing the actual amounts incurred in the MORs to try and determine a normalized "run rate" monthly cash flow for the Debtor.

The following summary of Schedules I and J as filed and amended through the date of this report[15] provides context as to the changes to Schedules I and J made with each amendment filed are highlighted in grey.

| Description | | Original Schedule Docket 32 8/11/2020 Monthly Amount | | Docket 50 9/10/2020 Monthly Amount | | Docket 108 10/29/2020 Monthly Amount |
|---|---|---|---|---|---|---|
| **Schedule I: Debtor Income** | | | | | | |
| Part | | | | | | |
| 2 | 4.1 Debtor Gross Income | $ | 8,233 | $ | 8,233 | $ 8,170 |
| 2 | 4.2 Spouse Gross Income | $ | 5,446 | $ | 5,446 | $ 5,446 |
| 2 | 6.1 Debtor Payroll Deductions | $ | 1,797 | $ | 1,797 | $ 415 |
| 2 | 6.2 Spouse Payroll Deductions | $ | - | $ | - | $ - |
| 2 | 7.1 Debtor Monthly Take Home Pay | $ | 6,436 | $ | 6,436 | $ 7,755 |
| 2 | 7.2 Spouse Monthly Take Home Pay | $ | 5,446 | $ | 5,446 | $ 5,446 |
| 2 | 8.b Debtor Interest and Dividends | | N/A | $ | 150,567 | $ - |
| 2 | 8.b Spouse Interest and Dividends | | N/A | $ | - | $ - |
| **2** | **12 Total Monthly Income** | **$** | **11,882** | **$** | **162,449** | **$ 13,201** |
| **Schedule J: Debtor Expenses** | | | | | | |
| Part | | | | | | |
| 2 | 4 Home Ownership (Mortgage) | $ | 15,000 | $ | 15,000 | $ 15,000 |
| 2 | 4.a Real Estate Taxes | $ | 7,866 | $ | 7,866 | $ 7,866 |
| 2 | 5 Additional Mortgage | $ | 1,500 | $ | 1,500 | $ 1,500 |
| 2 | 6 Utilities | $ | 1,750 | $ | 1,750 | $ 1,750 |
| 2 | 7 Food and Housekeeping Supplies | $ | 3,000 | $ | 3,000 | $ 1,500 |
| 2 | 8 Childcare and Children's Education Cost | $ | 18,000 | $ | 18,000 | $ 3,500 |
| 2 | 9 Clothing Laundry and Dry Cleaning | $ | 250 | $ | 250 | $ 250 |
| 2 | 10 Personal Care Products and Services | $ | 500 | $ | 500 | $ 500 |
| 2 | 11 Medical and Dental Expenses | $ | 500 | $ | 500 | $ 500 |
| 2 | 12 Transportation (includes gas, maintenance) | $ | 750 | $ | 750 | $ 750 |
| 2 | 13 Entertainment, Clubs, Recreation, Magazines, Books | $ | 500 | $ | 500 | $ 500 |
| 2 | 14 Charitable Contributions | $ | 3,000 | $ | 3,000 | $ - |
| 2 | 15.a Life Insurance | $ | 29,645 | $ | 29,645 | $ 29,645 |
| 2 | 15.b Health Insurance | $ | - | $ | - | $ - |
| 2 | 15.c Vehicle Insurance | $ | 2,482 | $ | 2,482 | $ 2,482 |
| 2 | 15.d Other Insurance | $ | - | $ | - | $ - |
| 2 | 16 Taxes | $ | - | $ | - | $ - |
| 2 | 17 Car Installments / Lease Payments | $ | - | $ | - | $ - |
| 2 | 18 Alimony, Maintenance, Support | $ | - | $ | - | $ - |
| 2 | 19 Other Payments to Support Those Living With You | $ | - | $ | - | $ - |
| 2 | 20 Other Real Property Expenses | $ | 1,000 | $ | 1,000 | $ 1,000 |
| 2 | 21 Other: Tuition and education | $ | 22,500 | $ | 22,500 | $ - |
| **2** | **22 Total Monthly Expenses** | **$** | **108,243** | **$** | **108,243** | **$ 66,743** |
| **2** | **23 Monthly Net Income** | **$** | **(96,361)** | **$** | **54,206** | **$ (53,542)** |

---

[15] Although there were different amendments filed related to the Bankruptcy Schedules, the only amendments to Schedules I and J occurred on September 10, 2020 [DKT #50] and on October 29, 2020 [Dkt #108].

The amendment filed on September 10, 2020, adjusted Schedule I to increase the interest and dividends monthly income by $150,567, resulting in the reported monthly net income increasing from a negative $96k to a positive $54k.  The Debtor advised that this amount related to the addition of the Debtor's estimated monthly distribution from GTJ Realty, LP. The amendment filed on October 29,2020 slightly adjusted the Debtor's gross payroll income and removed the interest and dividends income amount previously added in the prior amendment.  The Debtor explained that the income from GTJ Realty, LP was removed because the secured lender (Zee Bridge Capital) to the pass-through entity that receives the distributions from GTJ Realty, LP (VWU888, LLC) is withholding these payments and applying them to pay down the secured loan.   Since the distributions are currently not accessible by the Debtor, the Debtor believed it was appropriate to remove the amount from his Schedules.

The October 29th amended Schedules also reduced Childcare and Children's monthly education cost from $18,000 to $3,500 and Other Tuition and Education costs from $22,500 to $0.   The revisions in the October 29 amendment resulted in a revised reported monthly income of $13k revised monthly expenses of $67k and a monthly net deficit of $53k.  The Debtor explained some of the expense amounts were initially unintentionally overstated due to his lack of knowledge of how to fill out bankruptcy forms.

In further analyzing the Debtor's expenses, RSR noted payments for premiums on life insurance policies that are owned by the Jeffrey Wu Irrevocable Insurance Trust.  Monthly expenses of $29,645 related to life insurance was initially reported on Schedule J and not changed by any of the amendments.  Since the petition date through June 2021, the total payments made to the Trust for premiums was $65,620, including one large payment of $54,300

relating to a policy which the Debtor advised has since lapsed and monthly payments of approximately $1,400 made to the trust for premiums on another policy that the Debtor has represented is still in force.   Since the insurance policies are held by a trust outside the Debtor's estate, there does not appear to be any benefit to the Debtor's estate for the premiums paid.  The Debtor has indicated his spouse intends to reimburse the estate for these payments.

Excluding the life insurance premiums, the Debtor's total monthly average expenses as reported on Schedule J are approximately $37k.  Based on a review of the Debtor's MORs as discussed below the Debtor's actual average monthly living expenses are approximately $30k.

## 2.  Analysis and Discussions with Debtor

Below is a summary of the Debtor's income and living expenses based on the Debtor's MORs filed from the petition date through June 2021, as amended.  This summary shows the monthly average that can be compared to the Debtor's filed Schedules I and J.

| Debtor Income | Monthly Average | Debtor Expenses | Monthly Average |
|---|---|---|---|
| Net Payroll | 13,710 | Vehicles | 5,618 |
| Distribution from HK Distribution Corp. | 5,486 | Vehicle Insurance | 2,003 |
| Isshindou Payment | 5,000 | Homeowners' Insurance | 2,195 |
| Insurance Claims | 1,841 | Life Insurance | 5,468 |
| Dividends | 174 | Mortgages | 8,461 |
| Transfers and Others | 95 | Utilities | 1,031 |
| Car sale | 667 | Household Expenses | 1,602 |
| Spouse Contribution | 10,752 | Professional Fees (Prop Tax Buster) | 586 |
| Offset by Contribution to Spouse | (7,443) | Taxes (RE Tax, State Tax) | 1,860 |
| State Tax Refunds | 3,451 | US Trustee Fees | 271 |
| Offset by Tax Refunds Allocated to Spouse | (1,726) | Transfer to Weinberg Escrow Account | 667 |
| Economic Stimulus | 683 | Other | 2 |
| Offset by Stimulus Allocated to Spouse | (342) | | |
| **Total** | **32,348** | **Total** | **29,762** |
| | | **Net Income:** | **2,586** |

*Note: exclude payments of Preferred Bank Notes for calculation of Debtor-only living expenses.*

### 3. The Debtor's Income

Based on discussions with the Debtor and his representatives and review of documents received, the Debtor is supporting himself and his family from the following sources:

(i)      payroll received from managing his supermarket interests

(ii)     non-interest-bearing funding received from his spouse through the Debtor's spouse's payment of bills and expenses on behalf of the Debtor

(iii)    payments made by the Debtor's wholly owned affiliate, Hong Kong Distribution Corp. to the Debtor's vehicle finance companies for auto loans

(iv)     payments made by other affiliates of the Debtor relating to certain expenses incurred by the Debtor and his family, such as health insurance, phone bills and gasoline; and

(v)      miscellaneous other collections from various sources including income tax refunds, ta $60,000 payment from Isshindou Japanese Ramen Inc., insurance claims, a car sale, and other smaller sources.

The following is a more detailed discussion on these sources of funds.

**Wage Income from Supermarket Entities** - The Debtor receives payroll checks from the following of his supermarket entities: Hong Kong Supermarket of Flushing, LP, Hong Kong Supermarket of Allston, LLC, Hong Kong Supermarket of Malden, LLC, and Hong Kong Distribution Corp.  The average monthly net payroll (after payroll taxes) received by the Debtor since the petition date through June 2021 is $13,710 per month, as compared to the amount reported on the Debtor's Schedule I of $7,755.  The Debtor explained that at the beginning of the Chapter 11 case, he believed he only needed $7,000 to $8,000 from his supermarket paychecks to support himself during the proceedings.  As disclosed in the MORs, the average monthly net payroll checks received from July 2020 through October 2020 was $6,000.  Starting in

64

November 2020, the Debtor concluded that he needed more funds to support himself and his family and increased his payroll to provide for an average of approximately $17,500 per month for the period of November 2020 through June 2021.  Also note that on Schedule I, the debtor also discloses $5,446 of net pay to be received by his spouse.  Based on the Debtor's MORs, RSR observed that the Debtor is not benefitting directly from his spouse's net payroll receipts.  In fact, amounts paid by his spouse for the benefit of the Debtor are charged back through the Amounts Due to Insider account in the balance sheet.

**Expense Payments By / Income from the Debtor's Spouse** - The Debtor's spouse provides funding to the Debtor through the payment of joint living expenses.  These shared bills are split 50% / 50%, and when the entire amount is paid by the Debtor's spouse, the "Amounts Due to Insider" account is increased on the Debtor's balance sheet for his 50% share.   RSR noted that there are times where the Debtor has also paid bills on behalf of his spouse.  In those instances, the amount paid by the Debtor reduces the "Amounts Due to Insider" account liability.  As of June 30, 2021, the balance of the Amounts Due to Insiders account was $42,880.  The Debtor also advised that certain expenses paid by his spouse are not charged to the Debtor such as landscaping and maintenance for the Debtor's Lattingtown residence, which is jointly owned.

**Expense Payments By / Income from Hong Kong Distribution Corp.** - The Debtor also receives funding of some expenses from Hong Kong Distribution Corp. (the Debtor is the sole shareholder), which regularly makes approximately $5,500 per month in loan payments on two of the Debtor's vehicles.  The payments made to the auto finance companies are recorded as equity distributions on the books of Hong Kong Distribution Corp.

65

**Expense Payments By / Income From Other Supermarket Entities** - Several of the Debtor's supermarket entities (Hong Kong Supermarket of Flushing, LP, Hong Kong Supermarket of Allston, LLC, Hong Kong Supermarket of Malden, LLC, and Hong Kong Supermarket of Hester Street) provide funding to the Debtor and his family by paying certain expenses to third party providers on behalf of the Debtor and his family.  Not all these expenses are covered or disclosed in the Debtor's MORs, therefore RSR does not have an accounting for all of the benefits received from this funding source.  RSR noted a line item entitled "household expenses" listed in the MOR which includes mostly groceries and household products that has averaged approximately $2,000 / month and the Debtor stated that health insurance costs of approximately $3,500 per family member per month are paid through the supermarket entities (not reported on the MORs).

**Other Income Sources** - The last source of funding to the Debtor has been through ad-hoc collections from miscellaneous sources.  These collections included:  payment of $60,000 from the Isshindou Japanese Ramen Inc.; a $22,097 collection on insurance claims related to the total loss of one of the vehicles (BMW X7); $8,000 in proceeds from the sale of a 2011 Land Rover Range Rover; and state tax refund collections of $41,402. The state tax refund collection was allocated 50% to the Debtor's spouse, with 100% of the cash going to the Debtor, resulting in an increase in the Amounts Due to Insider account on the Debtor's balance sheet.  Thus, the net benefit to the Debtor for the state tax refund is 50%, or $20,706.

As discussed above, historically the Debtor received significant quarterly distributions from his indirect interest in GTJ Realty LP.  the Debtor stated that historically he would receive approximately $2 million annually from that investment and more recently h would have

received almost $2.4 million.  Since Zee Bridge Capital has blocked all distributions being paid to the Debtor and used the funds distributed from GTJ Realty LP to pay down its loan, it is reasonable that the Debtor would not reflect this investment as a current funding source. However, the Examiner has discussed with Mr. Broderick whether the Debtor should report the payment to the lender on the Debtor's MORs as a collection and payment to him, even though the funds do not run through the estate's bank accounts.  At minimum, these funds should be accounted for on the Debtor's MORs for disclosure purposes.

### 4.  The Debtor's Expenses

RSR also reviewed and analyzed the Debtor's living expenses reported in the MORs, discussed with the Debtor and reviewed and analyzed supporting documentation provided to the Examiner through the information request process.

**Vehicle Loans** – The Debtor reported no vehicle loan installment payments in Schedule J.  However, the MORs reflect auto loan payments totaling $5,618 per month which are paid directly by Hong Kong Distribution Corp. on behalf of the Debtor.

**Vehicle Insurance** – Monthly vehicle insurance was estimated at $2,482 in Schedule J. A monthly average of $2,003 is reported on the MORs, except for July and August 2020 which show no payments.  Vehicle insurance has been paid by the Debtor's spouse since the petition date and added to the Debtor's "Amounts Due to Insiders" account.

**Homeowner's Insurance** – the Debtor's policy covers the Lattingtown residence, contents, valuables, articles, automobiles, and watercraft.  The Debtor reported $0 in monthly

expense relating to homeowner's insurance in Schedule J, but the MORs reflect average monthly premiums expense of $2,195 (except in the July and August 2020 MORs where no premium payments are shown).

**Life insurance** – The Debtor's expenses reported in Schedule J estimated monthly expenses of $29,645 related to life insurance.  As discussed above, the Debtor's MORs reflect $1,415 per month in premiums paid for one policy and a one-time payment of $54,300 in December 2020 for another policy other.  One policy has lapsed in June 2021 and the Debtor representatives stated that the remaining policy will not be paid out of the estate funds.  A third policy is still active, but premiums were not reported as having been paid by the Debtor or on behalf of the Debtor.  The Examiner has requested information from the Debtor to clarify if the premiums for the third policy are being deducted from the policy's cash value.  Since June 2021, no payments to life insurance policies were paid out of the Debtor's accounts and, going forward, the Debtor represented that no payments would be made by the Debtor's estate but instead will being paid by his spouse and not added to the Amounts Due to Insiders account balance.

**Mortgages** – The Debtor reported monthly mortgage payments of $15,000 in Schedule J. Through February 2021, the MORs showed an average of $8,726 in monthly mortgage payments and approximately $3,400 per month since March 2021.  It is unclear based on the information presented in the MORs if the mortgages are being fully paid, and how the amount is being calculated.   In June 2021, no mortgage expense was allocated to the Debtor and no mortgage payments were observed as being made from his spouse's account.  Further investigation is needed to understand the mortgage payments.

**Utilities** – The Debtor projected monthly utility expenses of $1,750 in Schedule J.  The Debtor's MORs reflect an average of $1,031 per month, sometimes paid by the Debtor and sometimes paid by his spouse. Due to the small amounts, the Examiner has not investigated this further.

**Household expenses** – The Debtor represented that he and his family generally make use of groceries obtained from the Debtor's supermarket stores as necessary.  A monthly average of $2,000 is shown as an expense in the MORs with no cash use reported.

**Professional Fees** – Retained professionals are expensed under the reorganization items in the Debtor's Income Statement.  Prior to the petition date, the Debtor hired Property Tax Busters Inc. to seek a reduction in the property taxes on the Lattingtown residence.    Between December 2020 and March 2021, the Debtor paid approximately $14,000 to Property Tax Busters Inc., without Court approval.  The Debtor stated that he did not know payments for these types of professionals were required to be authorized by the Court.  50% of the vendor's fees were allocated to the Debtor and 50% to his spouse.

**Real Estate Taxes** – The Debtor estimated monthly real estate taxes of $7,866 in Schedule J (approximately $94k annually).  This does not align with the Debtor's MORs which report $28,682 in property tax expenses incurred since the petition date, $21,953 of which was allocated to the Debtor and $6,729 to his spouse.  The appraisal dated March 15, 2021, reflects estimated annual real estate taxes at $71,156.  As of now, it is unclear what the actual real estate taxes are or if they are in arrears.

**Transfer to Weinberg Escrow Account** – The Debtor sold his 2011 Range Rover for $8,000 without Court approval.  The Debtor claims lack of knowledge of the bankruptcy process. Since the transaction had been concluded, the Debtor deposited the $8,000 into escrow with his bankruptcy counsel.

## 5.  Estimated Pro-Forma Monthly Run Rate

Based on RSR's analysis, the Debtor appears to have a pro forma monthly net loss of approximately $2,000 which could easily be covered by increases to any one or more of his funding sources.  Questions remain relating to the some of the Debtor's larger expenses such as mortgage and real estate tax payments.  The following is a high-level summary of a pro forma monthly run rate P&L for the Debtor.  The amounts are for illustrative purposes only.

| Debtor Income | | | Debtor Expenses | | |
|---|---|---|---|---|---|
| Net Payroll | $ | 17,560 | Vehicles | $ | 5,600 |
| Distribution from HK Distribution Corp. | | 5,600 | Vehicle Insurance | | 2,400 |
| Isshindou Payment | | | Homeowners' Insurance | | 2,650 |
| Insurance Claims | | | Life Insurance | | - |
| Dividends | | | Mortgages | | 8,000 |
| Transfers and Others | | | Utilities | | 1,200 |
| Car sale | | | Household Expenses | | 2,000 |
| Spouse Contribution | | 10,752 | Professional Fees (Prop Tax Buster) | | - |
| Offset by Contribution to Spouse | | (7,443) | Taxes (RE Tax, State Tax) | | 6,430 |
| State Tax Refunds | | | US Trustee Fees | | 250 |
| Offset by Tax Refunds Allocated to Spouse | | | Transfer to Weinberg Escrow Account | | - |
| Economic Stimulus | | | Other | | - |
| Offset by Stimulus Allocated to Spouse | | | | | |
| **Total** | **$** | **26,469** | **Total** | **$** | **28,530** |
| | | | **Net Income:** | **$** | **(2,061)** |

*Note: exclude payments of Preferred Bank Notes for calculation of Debtor-only living expenses.*

## E.  Personal Assets (Home/F&F/Autos, etc.)

The Examiner reviewed the Debtor's personal assets represented as comprising his bankruptcy estate including a review of the Debtor's bankruptcy schedules filed with the Court

and additional information gathered through the document request process discussed above as well as through interviews with various parties.

## 1. Debtor's Schedules

On August 11, 2020, the Debtor filed his Bankruptcy Schedules with the Court [Dkt 32]. Excluded from this filing was schedule D and E/F pertaining to the Debtor's creditors.  As it relates to the Debtor's assets, the Examiner and RSR reviewed Schedule A/B Property ("Schedule A/B") which purportedly represented detailed information on the Debtor's assets as of the petition date.

Schedule A/B disclosed assets with estimated current values totaling $8,905,018, comprised of (i)  a single-family home property ($8,000,000) located in Lattingtown, New York[16]; (ii) six vehicles ($328,800); (iii) household and belongings ($28,250); and (iv) various financial assets ($546,968) including (a) a 401(k) account ($296,629), (b) the cash value from a life insurance policy with Minnesota Life ($226,025)[17] and (c) a TD Ameritrade account ($21,614).  As discussed in the Trusts section below, the Examiner understands that the Minnesota Life policy is owned by the Jeffrey Wu Irrevocable Insurance Trust.

Schedule A/B has subsequently been amended three times and as of the date of this report, the following assets have been added to the Debtor's asset list:  (i.) two vehicles (a leased

---

[16] Schedule A/B indicates "at least one of the debtors and another" own an interest in the property.

[17] This policy is owned by the Jeffrey Wu Irrevocable Insurance Trust

vehicle valued at $0 and an owned vehicle valued at $43,000); (ii.) four bank accounts (three accounts maintained at Preferred Bank totaling $1,557,274 and one account maintained at Capital One Bank totaling $3,394); (iii.) one contingent and unliquidated malpractice lawsuit ($18,600,000) and (iv) the Debtor's interest in GTJ REIT Inc. ($109,506)[18].

The Debtor and the Debtor's representatives explained that the three Preferred Bank accounts totaling $1,557,274 were not initially reported because the accounts were pledged as security to two Preferred Bank secured notes totaling $1,499,849 (Case 8-20-72407, Claim 12-1 filed 11/24/20).  The Obligor on both notes was Super HK HG LLC, a currently inactive entity, and the Debtor provided personal guarantees on both notes.  The Debtor further explained that, at the time of the filing of the petition, he believed the funds in these accounts belonged to Preferred Bank.  On May 11, 2021, Preferred Bank obtained Court approval to exercise its rights of setoff.   The secured notes were paid in full form the proceeds of the accounts and the remaining balance of approximately $47,000 is available to the Debtor's estate.

As a result, as of the latest amendment to Schedule A/B on August 10, 2021, the Debtor represented that his total assets as of the petition date was $29,218,192, including a legal malpractice claim of $18,600,000 against a former counsel of the Debtor[19].    The table below compares Schedule A/B as originally filed and as of August 10, 2021.

---

[18] The disclosure in the entity entitled GTJ REIT, Inc. occurred after the appointment of the Examiner. This interest represents shares in the public part of the REIT and is separate from the Debtor's interests in GTJ Realty, LP.

[19] The Examiner has not yet looked into the nature of this malpractice claim.  It is believed to be related to representation of the Debtor in connection with his prior interests in certain commercial aircraft.

| Part | Item | Description | Original Schedule 8/11/2020 | Amendment 5 8/10/2021 |
|------|------|-------------|---------------------------:|----------------------:|
| 1 | 1.1 | Single Family Home | $ 8,000,000 | $ 8,000,000 |
| **Total Part 1** | | | **$ 8,000,000** | **$ 8,000,000** |
| 2 | 3.1 | 2009 Porsche Cayenne | $ 15,800 | $ 15,800 |
| 2 | 3.2 | 2011 Land Rover | $ 13,000 | $ 13,000 |
| 2 | 3.3 | 2014 Audi RS | $ 70,000 | $ 70,000 |
| 2 | 3.4 | 2015 Rolls Royce Wraith | $ 120,000 | $ 120,000 |
| 2 | 3.5 | 2016 Land Rover Range Rover | $ 50,000 | $ 50,000 |
| 2 | 3.6 | 2010 Bentley Continental | $ 60,000 | $ 60,000 |
| 2 | 3.7 | 2019 BMW X7 (Lease) | N/A | $ - |
| 2 | 3.8 | 2015 Land Rover Range Rover | N/A | $ 43,000 |
| 2 | 4 | Watercraft | No | No |
| **Total Part 2** | | | **$ 328,800** | **$ 371,800** |
| 3 | 6 | Household Goods and Furnishings | $ 20,000 | $ 20,000 |
| 3 | 7 | Televisions, Video | $ 3,000 | $ 3,000 |
| 3 | 8 | Various Paintings | $ 2,000 | $ 2,000 |
| 3 | 11 | Clothing | $ 250 | $ 250 |
| 3 | 12 | Watches, Rings | $ 3,000 | $ 3,000 |
| **Total Part 3** | | | **$ 28,250** | **$ 28,250** |
| 4 | 16 | Cash | $ 300 | $ 300 |
| 4 | 17.1 | Chase Bank | $ 2,400 | $ 2,400 |
| 4 | 17.2 | Preferred Bank | N/A | $ 1,119 |
| 4 | 17.3 | Preferred Bank 5911 | N/A | $ 1,037,891 |
| 4 | 17.4 | Preferred Bank 6667 | N/A | $ 518,264 |
| 4 | 17.5 | Capital One Bank | N/A | $ 3,394 |
| 4 | 18 | TD Ameritrade | $ 21,614 | $ 21,614 |
| 4 | 19 | GTJ REIT Inc. | N/A | $ 109,506 |
| 4 | 21 | 401(k) Merrill Lynch Pierce Fenner & Smith Inc. | $ 296,629 | $ 296,629 |
| 4 | 31 | Minnesota Life Life Insurance | $ 226,025 | $ 226,025 |
| 4 | 34 | Legal Malpractice Claim vs. A. Capetola | N/A | $ 18,600,000 |
| **Total Part 4** | | | **$ 546,968** | **$ 20,817,142** |
| 7 | 53 | Home Printer, Scanners | $ 1,000 | $ 1,000 |
| **Total Part 7** | | | **$ 1,000** | **$ 1,000** |
| **Total Schedule A/B** | | | **$ 8,905,018** | **$ 29,218,192** |

RSR analyzed and compared the latest Schedule A/B filed by the Debtor, as amended, and proceeded to compare that information various sources, including the Debtor's MORs, the Debtor's homeowner's policy and other documentation received as part of the investigation.

The single-family home property listed on Schedule A/B was reported at $8,000,000 was later appraised at $6,500,000 in March 2021.  The homeowner's policy renewal of February 4, 2021, indicates dwelling coverage for $17,170,000, which is significantly higher than the scheduled or appraised values.  The difference may partially be explained by the fact that the homeowner's policy also listed home coverage for a house located at 305 Lattingtown Road, Locust Valley, New York, not included in the Debtor's Schedule A/B.  The Debtor stated that this property is owned by his spouse.  The Debtor stated that the property is a cottage located on an adjacent parcel of land to the Debtor's primary residence.  RSR reviewed the deed for this parcel (dated January 17, 2000) that confirmed title is held solely in the name of the Debtor's spouse.  The Debtor also stated that after consulting with his insurance carrier, the dwelling coverage limit increased significantly in recent years as the replacement value for the home increased substantially due to increased prices of lumber, copper and other building products.

The vehicle 2019 BMW X7 was included on the Schedules even though it was a leased vehicle.  This vehicle was involved in an accident and was considered a total loss.  The Debtor's insurance payout ($100,000) was sufficient to pay the amount due on the lease, $77,903 and the remainder, $22,097 was made available to the Debtor.  The values of other vehicles are reported net of outstanding car loans in the MORs and are reflected at Kelly Blue Book value on Schedule A/B.  RSR noted that the 2015 Land Rover Range Rover was not reported on the original Schedule A/B.

The homeowner's policy also lists personal contents ($6,868,000) and itemized items – Fine Arts ($500,000) on the policy.  These amounts are significantly higher than the amounts disclosed in the Schedules and MORs. The Debtor stated that after consulting with his insurance

carrier, these coverages are determined based on a percentage of the dwelling replacement cost. As discussed above, the Debtor stated that the carrier advised the replacement cost increased significantly in recent years as the replacement value for the home increased substantially due to increased prices of lumber, copper and other building products.  The percentage applied in the Debtor's Homeowner's policy is 40%, which the carrier indicated is the minimum coverage level.

There are other items, not itemized or detailed in the homeowner's policy coverage that also show discrepancies when comparing Schedule A/B, the MORs and blanket coverages in the homeowner's insurance policy as shown below.

Total household goods including furnishings, televisions and videos were disclosed as $23,000 in Schedule A/B, however, the Debtor consistently reports household assets of $101,000 in the MORs.

Total clothing, furs, jewelry were disclosed as worth $3,250 in Schedule A/B, however, the Debtor consistently reports these items as worth $11,000 in the MORs.

Total art, paintings, fine arts and collectible were disclosed as worth $2,000 in Schedule A/B; however, the Debtor consistently reports these items as worth $50,000 in the MOR.  Under the Chubb homeowner's insurance policy renewal of February 4, 2021, the Debtor maintains a total blanket coverage amount of $500,000 for valuable articles and fine arts.

RSR believes there is reason to further investigate and discuss with Debtor and Debtor representatives regarding some of these inconsistencies.

## 2. Marital vs. Pre-Marital Assets

As expressed by the UST to the Examiner, other than his personal residence and several high-end automobiles, all of which are significantly leveraged, the Debtor reports personal property on his Bankruptcy Schedules that does not appear to align with his reported prior wealth and lifestyle   As discussed above, the Debtor has reported a total of only $28,250 in household goods and furnishings, televisions and video equipment, paintings, clothing, watches, and jewelry (although the MORs report a total value of approximately $162,000 for these categories of assets) and by contrast, the Debtor's homeowners insurance policy renewal of February 4, 2021 indicates personal content coverage of $6,868,000 and valuable itemized articles coverage relating to Fine Arts of $500,000.

The Debtor and his representatives stated that the Debtor's spouse asserts that she owns certain "pre-marital" personal property and other property that is not subject to any interest of the Debtor and was not required to be disclosed on the Debtor's bankruptcy schedules.

The Debtor's personal residence in Lattingtown, NY consists of two adjoining parcels: 60 Overlook Road, and 305 Lattingtown Road.  Both are covered by a common homeowner's policy with Great Northern Insurance Company.  The deed to 60 Overlook Road (approximately 9,500 sq. ft. main residence) is in the name of the Debtor and his spouse while the deed to 305 Lattingtown Road (approximately 1,100 sq. ft. "cottage") is in the name of his spouse only.  The Examiner was advised by the Debtor that the properties were conveyed to them in this manner upon purchase in 2000.  A review of the Nassau County Land records confirms this.

The Examiner understands that the Bayliner watercraft listed in the insurance policy, is titled to the Debtor's spouse.  The Debtor stated that the boat was reportedly purchased by his spouse approximately two years ago for one of their sons for approximately $7,500.  The Examiner did not search the NYSDMV records regarding the registration of the boat.

From a debtor and creditor perspective, it is the Examiner's understanding that creditors of only one spouse can look only to assets owned in whole or in part by that spouse.  What is actually owned by one spouse versus the other, however, is often unclear.  Given the legal nature of this issue, the Examiner has consulted with counsel.

Counsel has advised that section 541(a) of the Bankruptcy Code provides that a debtor's bankruptcy estate is comprised of property, wherever located and by whomever held, including "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) and that Bankruptcy courts will look to state law when determining the interest of a debtor and non-debtor spouse.

Counsel further advised that New York is a "title" state and thus, during a marriage, and absent any judgment in a divorce action, each spouse retains sole interest in the property to which he or she has title, *Rodgers v. Rodgers*, 98 A.D.2d 386, 391 (2d Dept. 1983) and the question of whether property asserted to be that of the Debtor's spouse is in actuality the Debtor's property (and thus became part of the Debtor's bankruptcy estate) is a factual one with the bankruptcy court having to determine which spouse actually owns the property (*i.e.*, has title to the property) or if the property is jointly owned.

Counsel's research indicated that courts will look to certain circumstances to try to determine which spouse has title to particular property.  For example, in *In re Marciano*, 372 B.R. 211 (Bankr. S.D.N.Y. 2007), the court applied the following factors in determining the ownership of tax refund from a joint income tax return: (i) whether the monthly bills of the debtors are paid out of joint accounts; (ii) whether the debtor considers the responsibility for paying the household bills to be a joint responsibility; (iii) whether the accounts of the debtor and non-debtor spouse have always been held jointly; (iv) whether the debtor and non-debtor spouse have ever held individual accounts at any point during the marriage; (v) whether both husband and wife have equal access to funds in accounts; (vi) whether their joint tax refunds have always been deposited into joint checking accounts with both debtors having full access to the funds; and (vii) the purpose or use to which the tax refunds have traditionally been applied (*e.g.*, for household expenses or educational expenses for their children). 372 B.R. at 217 (*citing In re Hejmowski*, 296 B.R. 645, 650 (Bankr. W.D.N.Y. 2003)).

The Examiner has requested but has not yet received information of the pre-marital assets owned by the Debtor's spouse and thus, the Examiner has not yet had the opportunity to perform diligence with respect to the facts of the pre-marital assets.

## F.  Business Interests

### 1.  Overview

The entities in and through which the Debtor owns his various business interests can be categorized in three main groupings: (i) Real Estate related businesses, (ii) supermarket related businesses, and (iii) other businesses, and include interest in both active entities and inactive entities where the underlying business is reported as no longer operating and/or no longer

owning any assets.  The Debtor also has set up various Trusts which are addressed separately in this report.

A draft "master" organizational chart showing the overall picture of the Debtor's ownership interests is attached as **Exhibit D** and sub-organizational charts by entity are attached as **Exhibit E.**  Also attached as **Exhibit F** is a summary table of key information related to each of the business entities reflecting information know to the Examiner as of the time of this report. The master organizational chart and the summary key information table were prepared by RSR. The sub-organizational charts were provided to the Examiner by the Debtor and present information consistent with that which has been reflected by the Examiner in the master organizational chart.

Except where noted, the summaries of each entity below are based upon documents provided by the Debtor and/or the Debtor's advisors, family members or employees as well as information gathered through interviews.  To the extent possible, the information was traced and/or verified back to source documents including but not necessarily limited to certificates of formation, articles of incorporation, LLC operating agreements, partnership agreements, tax returns, internal books and records, internally prepared financial statements, loan documents, bankruptcy documents or other public information where available.

As previously addresses in this report the Examiner received a significant number of unlabeled files from Rivkin Radler LLP.  The Examiner has not yet had the opportunity to review this significant production of un-labeled electronic files to determine what, if any, additional information related to the Debtor's business interests may be contained therein.

The Debtor has not filed Rule 2015.3 Reports of Financial Information on Entities in Which a Chapter 11 Estate Holds a Controlling or Substantial Interest. The Debtor claims that neither he nor his bankruptcy counsel were aware that these reports were required and the Debtor has indicated his intent to retain an accounting firm to help him get these reports prepared and filed. The source of summary financial information below, unless otherwise noted, is from internally prepared unaudited financial statements contained in the QuickBooks files reflecting the books and records of the applicable entity as provided to the Examiner by the Debtor. The financial information in the summaries is presented as received and no tests or procedures to verify the accuracy of the information provided have been performed to date. Other than the preliminary intercompany transaction analysis and the preliminary analysis of the entity distribution accounts in section in sections IV. F. 4. and IV. F. 5. of this report below, the Examiner has not yet performed any in-depth analyses of the individual business financial statements.

## 2.  List of Entities

To date, the Examiner is aware of twenty-six "active" business entities which the Debtor owns, controls, or has an interest in and nineteen "inactive" entities. The Examiner was advised by the Debtor that there are additional entities throughout the Debtor's career which became inactive many years in the past where the Debtor may no longer have records or recollection of each and every entity.  In consultation with his counsel, the Debtor decided to provide all entities which became inactive in the past three years, reportedly encompassing all that became inactive within two years prior to the Debtor's voluntary Ch. 11 petition.  While the Examiner may have become aware of additional entities which are included below, the Examiner cannot

definitively state that all entities in existence within the past three years have been disclosed

and/or discovered by the Examiner during the course of the Investigation.

| Active Business Entities | Inactive Business Entities |
|---|---|
| a.   Flushing Landmark Realty Mezz LLC | a.   Lucky Star Sullivan LLC |
| b.   Flushing Landmark Realty LLC | b.   HK Property Management Corp. |
| c.   Lucky Star-Deer Park Mezz LLC | c.   New Enterprise Realty, LLC |
| d.   Lucky Star-Deer Park LLC | d.   Wu Landmark Corp. |
| e.   Victoria Towers Development Mezz Corp. | e.   Union International Bank |
| f.   Victoria Towers Development Corp. | f.   Super HK of El Monte Inc. |
| g.   Queen Elizabeth Realty Corp. | g.   Mon Chong Loong Trading Corp. |
| h.   130 Bowery LLC | h.   Hong Kong Supermarket of Elmhurst Inc. |
| i.   Crown Mansion LLC | i.   Hong Kong Food Court of Elmhurst Corp. |
| j.   Victoria Realty Group LLC | j.   Hong Kong Supermarkets of Massachusetts LLC |
| k.   Wu Towers Mezz LLC | k.   Hong Kong Supermarket of East Brunswick Inc. |
| l.   Wu Towers LLC | l.   H.K.S of East Brunswick Realty LLC |
| m.   VWU888 LLC | m.   Hong Kong Spmkts of Cal Inc. |
| n.   WuMac Inc. | n.   Foodmart International Corp. |
| o.   Wu's Enterprises LLC | o.   HK Food Court of Elmhurst Corp. |
| p.   Hong Kong Supermarket of Hester Street Corp. | p.   Supr HK, HG LLC |
| q.   Hong Kong Supermarket of Allston LLC | q.   Hong Kong Supermarket of Monrovia Ltd. |
| r.   Hong Kong Supermarket of Malden LLC | r.   Good Fortune Supermarket of Cerritos LP |
| s.   Hong Kong Management of Allston LLC | s.   Hong Kong Supermarket of Monterey Park Ltd. |
| t.   Hong Kong Distribution Corp. | |
| u.   Hong Kong Supermarket Holding Corp. | |
| v.   Hong Kong Supermarket of Pennsylvania Inc. | |
| w.   Hong Kong Plaza Management Corp. | |
| x.   Super HK Supermarket of Flushing LP | |
| y.   Hong Kong Supermarket of Flushing Inc. | |

## 3.   Summaries of Active Business Entities

Active Real Estate Related Business

**Flushing Landmark, LLC ("Flushing Landmark")**, formed on September 9, 1998,

owns a 100,200 sf. mixed use retail/office building located at 41-60 Main Street in Flushing, NY,

leased to third-party tenants.  A rent roll report as of June 2021 shows the property as 79%

occupied with leases to 53 unique tenants with total annual rent, utilities, and real estate taxes

payable of approximately $6 million ($500k / month).

Flushing Landmark is reported as currently owned 100% by **Flushing Landmark Mezz, LLC ("Landmark Mezz")**, formed on 10/6/17.  A Flushing Landmark operating agreement dated as of May 16, 2001, provided by the Debtor to the Examiner shows the following membership interest and lists Wu Management Corp. as the LLC's Manager.

| Member | Units | Capital Contribution |
|--------|-------|----------------------|
| Jeffrey Wu | 450 | TBD |
| Veronica Wu | 100 | TBD |
| Wu Landmark Corp. | 450 | TBD |
| | **1,000** | **TBD** |

An Amendment to the operating agreement dated as of 5/24/13 was also provided which requires that the Company shall at all times cause there to be at least one independent director so long as those certain loan arrangements in the principal sum of up to $50,000,000.00 by SDF34 FLUSHING SANFORD LLC and SDF34 FLUSHING SANFORD II LLC, or their successors and/or assigns to the Company are outstanding.   The amendment is signed by The Debtor and Veronica Wu as Members (no membership percentages are defined) and by John P. Barber, Jr. as Independent Director.  It is unclear what transpired between 5/16/01 and 5/24/13 such that Wu Landmark Corp. is no longer a Member or the Manager.

Landmark Mezz is reported as owned 50% by the Debtor and 50% by his spouse.  The Examiner has not yet been provided with documentation supporting the ownership of the entity; however, the ownership percentages are consistent with the information reported on Landmark Mezz's 2017-2019 Federal tax returns prepared by Anchin.  The latest tax returns provided to the Examiner are for the 2019 tax year.

The Debtor has indicated that he and his spouse each owned 50% of Flushing Landmark and when Landmark Mezz was created, the interests in Flushing Landmark were transferred to

Landmark Mezz and they each owned 50% of Landmark Mezz.  The Examiner has not yet been provided with copies of the relevant transfer documents.

The Debtor has provided the Examiner with copies of two appraisals for the 41-60 Main Street property dated as of October 12, 2018 and October 19, 2018 indicating values of $120,000,000 and $110,500,000, respectively (average of $115,250,000).   The appraisals were prepared for potential third-party lenders.   The Debtor had indicated an intention to run a sale process for the property at 41-60 Main Street and has advised that 41-60 Main Street LLC as the Mortgage Lender (see below) has made an initial credit bid of $95,000,000.

Flushing Landmark is a co-obligor on a "spreader mortgage" loan from 41-60 Main Street LLC, as Mortgage Lender in the aggregate claimed amount of $143,988,021.20 as of 10/30/20, secured by a first lien on the property and building located at 41-60 Main Street along with (i.) co-obligor Lucky Star-Deer Park LLC, secured by a first lien on commercial / industrial property located 377 Carlls Path, Deer Park, NY, (ii.) co-obligor Victoria Towers Development Corp., secured by a subordinate lien on  in certain residential condominium units at Victoria Towers, commonly known as 133-38 Sanford Avenue, Flushing, NY (Units 5F; 6B; 6F; 7F; 8A; 11E; 13D; 15B; 15D; 15E; 20A; 20B; 20C; 20D and 20E) and (iii.) co-obligor Wu Towers, LLC.

Landmark Mezz is also a co-obligor to Landmark Portfolio Mezz LLC ("Landmark Portfolio") as Mezzanine Lender under a Mezzanine Promissory Note dated December 1, 2017 in the original amount of $15,300,000 along with (i) co-obligor Lucky Star-Deer Park Mezz LLC, (ii) co-obligor Victoria Towers Development Mezz LLC, and (iii) co-obligor Jeffrey Wu, secured by a pledge of his equity interest in Queen Elizabeth Realty Corp.  Landmark Portfolio claims an amount due of $23,948,745.05 as of July 8, 2020.

Both the mortgage loan and the mezzanine loan are jointly and severally guaranteed by the Debtor and his spouse.

Flushing Landmark Summary Financial Information:

| ($ in 000's) | Income Statement | | | | Balance Sheet | | |
|---|---|---|---|---|---|---|---|
| | Annual | Annual | Annual | ($ in 000's) | Year End | Yeaar-End | Year-End |
| | 2018 | 2019 | 2020 | | 12/31/18 | 12/31/19 | 12/31/20 |
| *Rent + Tenant RE Tax Allocation* | 5,784 | 5,535 | 4,414 | Total Current Assets | 688 | 690 | 986 |
| *Real Estate Taxes* | (1,830) | (2,125) | (705) | Total Fixed Assets (Net) | 5,141 | 4,969 | 4,669 |
| *Interest* | (10,905) | (2,106) | (1,178) | Other Assets[1] | 499 | 578 | 572 |
| *Depreciation & Amortization* | (2,986) | (348) | (343) | **Total Assets** | **6,329** | **6,237** | **6,227** |
| *Operating Expenses* | (1,619) | (864) | (1,363) | | | | |
| **Net Income** | **(11,556)** | **93** | **825** | Current Liabilities | - | - | - |
| | | | | Total Debt | 69,405 | 71,529 | 67,990 |
| | Cash Flow | | | Security Deposits | 986 | 1,272 | 1,121 |
| | Annual | Annual | Annual | Other Long Term Liabilities | - | - | - |
| | 2018 | 2019 | 2020 | **Total Liabilities** | **70,391** | **72,801** | **69,111** |
| **Beginning Cash** | **129** | **338** | **290** | | | | |
| Operating Activities | (10,770) | 2,453 | (2,827) | Partner's Contributions/Draws (net) | (16,598) | (19,192) | (16,336) |
| Investing Activities | 31 | 93 | 306 | Retained Earnings | (47,465) | (47,372) | (46,547) |
| Financing Activities[2] | 10,949 | (2,594) | 2,856 | **Total Owner's Equity** | **(64,062)** | **(66,564)** | **(62,884)** |
| Net Cash Flow | 210 | (48) | 334 | | | | |
| **Ending Cash** | **338** | **290** | **624** | **Total Liabilities + Owner's Equity** | **6,329** | **6,237** | **6,227** |

1. Includes $526, $555 & $555 due from Victoria Towers at 12/31/19, 12/31/20 & 6/30/21, respectively.
2. Reflects the net amount of Members' livestments and draws including transfers to/ from affiliated entities as refleted in the Due to/Due From balance sheet acounts.

As of July 2021, Flushing Landmark had 13 employees with a gross bi-weekly payroll of approximately $14.5k.   A review of a recent pay register (6/24/21 – 7/7/21) showed that neither the Debtor nor his spouse nor children were on the payroll of Flushing Landmark.  Richard Tang does appear on the payroll register at a rate of $4,000 / bi-weekly payroll (equal to $50/hour, or $104,000/year).

**Lucky Star-Deer Park, LLC ("Lucky Star"**), formed on 6/4/99, owns a 23.4 acre parcel comprised of mixed zoned residential and industrial parcels located at 377 Carlls Path, Deer Park, NY.  Based on a review of a recent rent roll report, the property is currently 77% vacant, with the 23% rented space leased to one tenant through December 2023 at an annual rent

of $764k.  There are also 15 parties that rent space on the property for parking on a month-to-month basis.  Total annual rent is approximately $1 million.

Lucky Star is reportedly 100% owned by **Lucky Star-Deer Park Mezz, LLC ("Lucky Star Mezz")**, formed on 10/6/17**.**  A Lucky Star Operating Agreement dated 7/21/99 provided by the Debtor to the Examiner does not identify the Members or Manager of the Company.  The Amendment to Articles of Organization of Lucky Star dated 6/4/99 is signed only by The Debtor as Member.  Lucky Star Mezz is reportedly owned 50% by the Debtor and 50% by his spouse.  The Examiner has not yet been provided with documentation supporting the ownership of the entity, however the ownership percentages are consistent with the information reported on Lucky Star Mezz's 2018-2019 Federal tax returns prepared by Anchin.  The latest tax returns provided to the Examiner are for the 2019 tax year.

The Debtor has indicated that he and his spouse each owned 50% of Lucky Star and when Lucky Star Mezz was created, the interests in Lucky Star were transferred to Lucky Star Mezz and they each owned 50% of Lucky Star Mezz.  The Examiner has not yet been provided with copies of the relevant transfer documents.

The Debtor has provided the Examiner with a copy of an appraisal for the 377 Carlls Path property, dated as of 4/7/18 indicating a value of $27,000,000.

As described above, Lucky Star Mezz is a co-obligor on the "spreader mortgage" loan payable to 41-60 Main Street LLC in the aggregate claimed amount of $143,988,021.20, with Lucky Star's obligation secured by a first lien on the property located at 377 Carlls Path, Deer Park, NY.  Lucky Star Mezz is also a co-obligor under a Mezzanine Promissory Note dated 12/1/17 in

the original amount of $15,300,000 payable to Landmark Portfolio.  Landmark Portfolio claims

an amount due of $23,948,745.05 as of July 8, 2020.

Lucky Star Summary Financial Information:

| ($ in 000's) | Income Statement | | | | ($ in 000's) | Balance Sheet | | |
|---|---|---|---|---|---|---|---|---|
| | Annual | Annual | Annual | | | Year End | Yeaar-End | Year-End |
| | 2018 | 2019 | 2020 | | | 12/31/18 | 12/31/19 | 12/31/20 |
| **Rent + Tenant RE Tax Allocation** | 1,126 | 836 | 909 | | Total Current Assets | 5 | 18 | 112 |
| **Real Estate Taxes** | (744) | (321) | (39) | | Total Fixed Assets (Net) | 4,151 | 4,056 | 3,962 |
| **Interest** | (2,560) | (746) | (417) | | Intangibles & Other Assets | 1 | 1 | 1 |
| **Depreciation & Amortization** | (96) | (95) | (94) | | **Total Assets** | **4,157** | **4,075** | **4,075** |
| **Operating Expenses** | (714) | (175) | (232) | | | | | |
| **Net Income** | **(2,987)** | **(501)** | **126** | | Current Liabilities | - | - | - |
| | | | | | Total Debt | 24,595 | 24,595 | 23,439 |
| | Cash Flow | | | | Security Deposits | 43 | 42 | 42 |
| | Annual | Annual | Annual | | Other Long Term Liabilities | - | - | - |
| | 2018 | 2019 | 2020 | | **Total Liabilities** | **24,638** | **24,637** | **23,481** |
| **Beginning Cash** | **5** | **3** | **17** | | | | | |
| Operating Activities | (97) | (501) | (1,194) | | Partner's Contributions/Draws (net) | (11,083) | (10,662) | (9,632) |
| Investing Activities | 96 | 95 | 95 | | Retained Earnings | (9,399) | (9,900) | (9,774) |
| Financing Activities[1] | (1) | 420 | 1,182 | | **Total Owner's Equity** | **(20,481)** | **(20,562)** | **(19,406)** |
| Net Cash Flow | (2) | 14 | 83 | | | | | |
| **Ending Cash** | **3** | **17** | **100** | | **Total Liabilities + Owner's Equity** | **4,157** | **4,075** | **4,075** |

1.  Reflects the net amount of Members' livestments and draws including transfers to/ from affiliated entities as refleted in the Due to/Due From balance sheet acounts.

The Examiner has not yet been provided with any payroll information for Lucky Star.

**Victoria Towers Development Corp. ("Victoria Towers")**, formed on 5/17/02, is the

owner and sponsor of a 99-unit residential condominium tower located at 133-38 Sanford. Ave.,

Flushing NY known as Victoria Towers.  49 of the 99 units remain unsold.

Victoria Towers is reportedly 100% owned by **Victoria Towers Development Mezz**

**Corp. ("Victoria Towers Mezz")**, which is in turn reported as owned 50% by the debtor and

50% by his spouse.  The Examiner has not yet been provided with documentation supporting the

ownership of the entity, however the ownership percentages are consistent with the information

reported on Landmark Mezz's Federal and NY State Tax returns prepared by Anchin.  The latest

tax returns provided to the Examiner are for the 2019 tax year.

The Debtor has indicated that he and his spouse each owned 50% of Victoria Towers and when Victoria Towers Mezz was created, the interests in Victoria Towers were transferred to Victoria Towers Mezz and they each subsequently owned 50% of Victoria Towers Mezz.  The Examiner has not been provided with copies of the relevant transfer documents.  The Debtor did provide an unsigned and undated copy of the Bylaws of Victoria Towers that listed the Debtor and his spouse and the shareholders but did not have the capital contributions or shares owned.

The Debtor has provided the Examiner with a copy of an appraisal dated as of 7/22/19 for 29 of the 49 condominium units (those that were not under contract for sale with W&L Group and Xizhu Bai since 2016).  The 29 units were valued at an aggregate of $33,370,000.  The appraisal was prepared for the Debtor.   Victoria Towers and the Debtor assert that the contracts with W&L Group and Xiizhu Bai are executory and, as a result of the bankruptcy, are now subject to higher and better offers.  The 29 appraised units represent an aggregate of 35,396 square feet, of which four are large penthouse units on the 21st floor.   Under the sales comparison approach, the appraisal estimates a $/sf value of $1,219/sf for the penthouse units and $961 for the rest of the units.  By rough extrapolation, for the other 20 non-penthouse units totaling 21,287 sf, at $961/sf aggregates to $20,456,807, for a total extrapolated value as of 7/22/19 of $53,826,807.   The original offering prices for the 49 unsold units totaled $56,960,100.  The Debtor has indicated a belief that the values have increased substantially since the time of the original offering.

In addition to the unsold units, $3,600,000 in proceeds from prior unit sales is being held in escrow by Certilman Balin Adler & Hyman LLP.  Sanford claims a security interest in the escrowed funds.

Victoria Towers is indebted to Sanford Avenue Partner, LLC ("Sanford") in the aggregate claimed amount of $38,928,607.20 as of 12/28/20 under notes and mortgages secured by a first in priority lien against the 49 remaining unsold residential condominium units.  The Debtor personally guarantees the notes to Sanford.

In addition to the debt owed to Sanford, Victoria Towers is indebted to American Chengyi Investment Management Group, Inc. ("American Chengyi") in the claimed amount of not less than $28,909,720.09, secured by a second in priority lien on 33 of the 49 unsold condominium units. As described above, Victoria Towers is also a co-obligor on the "spreader mortgage" loan payable to 41-60 Main Street LLC in the aggregate claimed amount of $143,988,021.20, secured by a subordinate lien on 33 of the 49 unsold units (5B, 5C, 5D, 6C, 6D, 6G, 7G, 8B, 8C, 8D, 8E, 8F, 8G, 9G, 10A, 10C, 10D, 10E, 10F, 11C, 12C, 12D, 12F, 13C, 13E, 15C, 16C, 16E, 17C, 21H, 21I, 21J, 21K).   The units allegedly securing American Chengyi's loan were not independently verified by the Examiner.

Victoria Towers is also obligated to Xihu Bai for an aggregate claimed amount of $9,003,675.72 pursuant to several judgments entered by Mr. Bai in 2013 and 2018.

Victoria Towers Mezz is also a co-obligor under a Mezzanine Promissory Note dated December 1, 2017 payable to Landmark Portfolio in the original amount of $15,300,000. Landmark Portfolio claims an amount due of $23,948,745.05 as of July 8, 2020.

## Victoria Towers Summary Financial Information

| ($ in 000's) | Income Statement | | |
|---|---|---|---|
| | Annual | Annual | Annual |
| | 2018 | 2019 | 2020 |
| *Rent +Tenant RE Tax Allocation* | 204 | 219 | 194 |
| *Real Estate Taxes* | (26) | (137) | - |
| *Interest* | (778) | - | - |
| *Common Charges - Unsold Units* | (166) | (176) | (152) |
| *Operating Expenses* | (77) | (60) | (5) |
| *Net Income* | (843) | (154) | 36 |

| | Cash Flow | | |
|---|---|---|---|
| | Annual | Annual | Annual |
| | 2018 | 2019 | 2020 |
| **Beginning Cash** | - | - | - |
| Operating Activities | (1,584) | - | 7 |
| Investing Activities | 845 | - | - |
| Financing Activities | 740 | - | - |
| Net Cash Flow | - | - | 7 |
| **Ending Cash** | - | - | 7 |

| ($ in 000's) | Balance Sheet | | |
|---|---|---|---|
| | Year End | Yeaar-End | Year-End |
| | 12/31/18 | 12/31/19 | 12/31/20 |
| Escrow - Certillman | 3,680 | 3,680 | 3,680 |
| Loan Reserves | 967 | 967 | 967 |
| Total Fixed Assets (Net) | 47,033 | 47,033 | 47,033 |
| Intangibles & Other Assets | 19 | 19 | 38 |
| **Total Assets** | 51,700 | 51,700 | 51,719 |
| | | | |
| Inter-co Due To / Due From (Net) | 4,641 | 4,800 | 4,771 |
| Due to Shareholder | 21,196 | 21,191 | 21,203 |
| Loans Payable | 43,506 | 43,506 | 43,506 |
| Other Long Term Liabilities | - | - | - |
| **Total Liabilities** | 69,344 | 69,498 | 69,480 |
| | | | |
| Paid In Capital | 1,339 | 1,339 | 1,339 |
| Retained Earnings | (18,983) | (19,137) | (19,100) |
| **Total Owner's Equity** | (17,644) | (17,798) | (17,761) |
| | | | |
| **Total Liabilities + Owner's Equity** | 51,700 | 51,700 | 51,719 |

**130 Bowery LLC**, formed in 1999, reportedly owns a 100% Bowery SPE LLC which in turn owns 100% of SCP 2004E-020 LLC which holds title to a free-standing retail building located in West Jacksonville, FL is leased to CVS Pharmacy through 2030 with two fixed rate 5-year tenant extension options under an IRS "Section 467" Lease.  Based upon a review of New York City property records, it appears that 130 Bowery entity purchased the property located at 130 Bowery, New York, NY (the Bowery Savings Bank Building) in 2000, sold a 60% interest in 2005 and sold the remaining 40% and the related air rights in 2012 and used the proceeds to acquire five properties leased to CVS through a 1031 exchange transaction (CVS 067 in North Carolina, CVS 038 in Illinois, CVS 005 in Alabama, CVS 048 in Maryland and CVS 020 in Florida).   Two of the locations (CVS 038 & 067) were sold in 2018 for and another two were sold in 2019, leaving the Jacksonville, Fl location as the sole remaining property owned.  A review of the closing statements shows net cash proceeds paid to the seller of approximately $2..0 million form the tow sales in 2018 and $1.6 million from the sales in 2019.

The Section 467 Lease is a tax deferral mechanism.  Under the lease, there is scheduled cash rent payable and allocated rent each month.  The difference between the two is treated as a loan due to / due from between the Landlord to the Tenant, with an amount due to the Landlord expressed as a positive balance and an amount due to the tenant expressed as a negative number.  Under the 130 Bowery LLC / CVS Pharmacy lease, the monthly cash rent payable exceeded the allocated monthly rent by a large amount for the first six years of the lease, then flipped to the cash monthly rent payable being less than the allocated monthly rent on an increasing schedule for the balance of the lease such that the loan balance at the end of the initial lease term returns to zero.  The amount shown as Due to Tenant on Bowery 130's 2020 Federal tax return of $1,339,613 differs slightly from the December 2021 amount reflected in the lease schedules of $1,410,936.  The remaining cash rent payable as of June 30, 2021 through the end of the initial term of the lease is $1,213,363.

## 130 Bowery Summary Financial Information

| ($ in 000's) | Income Statement | | | ($ in 000's) | Balance Sheet | | |
|---|---|---|---|---|---|---|---|
| | Annual | Annual | Annual | | Year End | Yeaar-End | Year-End |
| | 2018 | 2019 | 2020 | | 12/31/18 | 12/31/19 | 12/31/20 |
| *Rent* | 1,145 | 401 | 350 | Total Current Assets | - | - | - |
| *Interest & finance Charges* | (747) | (405) | (155) | Total Fixed Assets (Net) | 5,845 | 2,354 | 2,272 |
| *Depreciation* | (315) | (103) | (82) | Intangibles & Other Assets | - | - | |
| *Net Gaain on Sale [1]* | 3,102 | 2,546 | - | **Total Assets** | **5,845** | **2,354** | **2,272** |
| *Operating Expenses* | (107) | (228) | (92) | | | | |
| **Net Income** | **3,078** | **2,212** | **21** | Current Liabilities | - | - | |
| | | | | Total Debt | 6,811 | 2,681 | 2,468 |
| | Cash Flow | | | Security Deposits | 229 | - | - |
| | Annual | Annual | Annual | Other Long Term Liabilities | 27 | 27 | 27 |
| | 2018 | 2019 | 2020 | **Total Liabilities** | **7,068** | **2,708** | **2,495** |
| **Beginning Cash** | - | - | - | | | | |
| Operating Activities | 3,308 | 1,982 | 21 | Partner's Contributions/Draws (net) | (4,292) | (5,634) | (5,524) |
| Investing Activities | 4,291 | 3,491 | 82 | Retained Earnings | 3,069 | 5,281 | 5,302 |
| Financing Activities[2] | (7,599) | (5,473) | (103) | **Total Owner's Equity** | **(1,223)** | **(353)** | **(222)** |
| Net Cash Flow | - | - | - | | | | |
| **Ending Cash** | - | - | - | **Total Liabilities + Owner's Equity** | **5,845** | **2,354** | **2,272** |

1.  Sold two of five locations in 2018 (CVS 7062 & 7142) and two in 2019 (CVS 222 & 6013).

The Debtor has not provided any payroll information for this entity.  It does not appear to have any employees.

**Crown Mansion LLC ("Crown Mansion")**, formed in 2013, is the owner of an undeveloped parking lot with 60,000 sf residential air rights located at 134-39 Maple Avenue in Flushing, NY adjacent to the Victoria Towers and Flushing Landmark properties.  The Debtor reportedly has a 25% interest in Crown Mansion, with the remaining 75% is held by American Chengyi (71%), Queens Garden Management LLC (3%) and 88 Maple Realty LLC (1%).   The Examiner has not yet received documentation supporting the reported ownership percentages. The 2018 tax returns for Crown Mansion (latest provided) reflect American Chengyi owning 96%, i.e. now owning the 25% reportedly owned by the Debtor).  While the Examiner has not yet received any documentation reflecting this, the proof of claim filed by American Chengyi against the Debtor (Claim 23-1 filed on 12/18/20) asserts that it acquired the Debtor's remaining 25% share via setoff of prior reimbursement obligations owed to American Chengyi on 10/4/14 when the Debtor agreed to sell its remaining 25% interest in Crown Mansion to American Chengyi.  The prior reimbursement obligations arose from the Debtor's guaranty of minimum usable square footage in prior sale of 75% of his interest in Crown Mansion to American Chengyi.  The Debtor disputes the validity of the setoff and transfer of the interest to American Chengyi.

The Examiner did not receive QuickBooks files for Crown Mansion.  As the Debtor is / was not the majority owner, he did not have possession or control of the entity's books .

**Queen Elizabeth Realty Corp. ("QERC"),** formed in 1994, owns a 28,000-sf retail ground floor / basement condominium unit located at 15 Hester Street / 60-80 Elizabeth Street in Manhattan, NY.   QERC filed a voluntary Ch. 11 bankruptcy petition on 11/3/20 (Case No. 8-20-73327-reg).  QERC also filed a voluntary petition in the Southern District of New York on

7/17/13 (Case No. 13-12335-smb).   QERC's prior bankruptcy plan of reorganization was confirmed and declared effective on 1/26/16 and an order of final decree was entered on 2/26/21. Prior to the 2013 bankruptcy, the QERC was owned 1/3 each by the Debtor, Lewis Wu and Philip Wu.  Pursuant to the confirmed Plan, the Debtor and Lewis Wu raised financing to refinance existing secured debt and to buy out Philip Wu's interest, resulting in Jeffrey and Lewis Wu each owning 50% of QERC.  The plan also provided for the signing of a new lease with affiliate Hong Kong Supermarket of Hester Street Corp. (discussed below).

QERC is currently reportedly owned 100% by the Debtor.  The premises are leased to affiliated company Hong Kong Supermarket of Hester Street Corp. which is also reportedly 100% owned by The Debtor.  The Examiner has not yet received documentation supporting the Debtor's ownership interests in either entity.

The Debtor has provided the Examiner with a copy of an appraisal for the property, dated as of February 4, 2019 indicating a value of $35,800,000.

The Debtor is obligated to Bank of America under a January 10, 2018 Loan Agreement in the original amount of $19,850,000, secured by a first mortgage on the Hester Street commercial condominium unit and all assets owned by Hong Kong Supermarket of Hester Street Corp. and Hong Kong Supermarket of Monterey Park, Ltd.  Bank of America claims an amount of not less than $19,978,987.47 owed as of the petition date.

100% of The Debtor's stock in QERC is pledged to Landmark Portfolio Mezz LLC ("Landmark Portfolio") securing a Mezzanine Promissory Note dated 12/1/17 in the original amount of $15,300,000. The Debtor is a co obligor under the mezzanine promissory note as described above.  Landmark Portfolio claims an amount due of $23,948,745 as of July 8, 2020.

QERC reported on its bankruptcy petition and on Schedule D that 41-60 Main Street LLC holds a 2nd mortgage on the commercial condo behind the Bank of America first mortgage, however the Examiner has not received any documents that prove the existence of the second mortgage and 41-60 Main Street LLC did not file a proof of claim against QERC.

## QERC Summary Financial Information

| ($ in 000's) | Income Statement | | | ($ in 000's) | Balance Sheet | | |
|---|---|---|---|---|---|---|---|
| | Annual | Annual | Annual | | Year End | Yeaar-End | Year-End |
| | 2018 | 2019 | 2020 | | 12/31/18 | 12/31/19 | 12/31/20 |
| *Rent + Miscellaneous Income* | 2,005 | 2,069 | 2,002 | Total Current Assets | 2,290 | 1,818 | 1,365 |
| *Real Estate Taxes* | (382) | (384) | (397) | Total Fixed Assets (Net) | 1,685 | 1,563 | 1,441 |
| *Interest & Fees* | (2,116) | (1,119) | (1,034) | Due from Shareholder | 9,257 | 9,431 | 10,225 |
| *Depreciation & Amortization* | (155) | (196) | (196) | Other Assets | 200 | 369 | 295 |
| *Miscellaneous Expense [1]* | (830) | (847) | (882) | **Total Assets** | **13,431** | **13,181** | **13,327** |
| *Other Operating Expenses* | (254) | (181) | (57) | | | | |
| **Net Income** | **(1,732)** | **(656)** | **(563)** | Current Liabilities | 240 | 253 | 195 |
| | | | | Total Debt | 19,507 | 19,899 | 20,667 |
| | Cash Flow | | | Other Long Term Liabilities | - | - | - |
| | Annual | Annual | Annual | **Total Liabilities** | **19,747** | **20,153** | **20,862** |
| | 2018 | 2019 | 2020 | | | | |
| **Beginning Cash** | **5** | **10** | **10** | Additional Paid In Capital | (2,480) | (2,480) | (2,480) |
| Operating Activities | (19,430) | (332) | (965) | Retained Earnings | 1,407 | 1,407 | 1,407 |
| Investing Activities | (72) | (48) | 196 | Capital Stock | (5,242) | (5,899) | (6,462) |
| Financing Activities[2] | 19,507 | 393 | 767 | **Total Owner's Equity** | **(6,315)** | **(6,971)** | **(7,534)** |
| Net Cash Flow | 4 | 13 | (2) | | | | |
| **Ending Cash** | **10** | **23** | **7** | **Total Liabilities + Owner's Equity** | **13,431** | **13,181** | **13,327** |

1. The Debtor was asked for an explanation of the miscellaneous income and expense line items..
2. 2018 Cash form Financing Activities eflects BofA Loan proceeds of $19.5 million used primarily to refinance $16.25 million Bluestone loan.

**Victoria Realty Group, LLC ("Victoria Realty"),** formed in 2004 is reportedly the former real estate management company for Victoria Towers and Flushing Landmark, but the entity stopped providing management services to those two debtor entities upon filing of the bankruptcy petitions and has since been providing management services to Hong Kong Plaza Management Corp. a non-debtor supermarket related entity.  Victoria Realty is reportedly owned 100% by the Debtor.  While the Examiner has not yet received documentation confirming ownership, Victoria Realty's 2017-2020 tax returns reflect the Debtor as the 100% owner.

As of July 2021, Victoria Realty had three employees (two full time one part time) with a total bi-weekly payroll of approximately $4k.  Neither the Debtor nor his spouse are on payroll.

Victoria Realty Summary Financial Information

| | Annual 2018 | Annual 2019 | Annual 2020 | | Year End 12/31/18 | Yeaar-End 12/31/19 | Year-End 12/31/20 |
|---|---|---|---|---|---|---|---|
| *Mgmnt Fee Victoria Towers* | 25 | 35 | 31 | Cash | (15) | 5 | 50 |
| *Mngmnt Fee Flushing Landmark* | - | - | 99 | Accounts Receivable | - | - | - |
| *Sales Comissions & Other Income* | 25 | 4 | 4 | Inventory | - | - | - |
| *Payroll* | (608) | (592) | (86) | Total Fixed Assets (Net) | - | - | - |
| *Insurance* | (6) | (7) | (14) | Intangibles & Other Assets | - | - | - |
| *Comissions Paid* | - | - | (35) | **Total Assets** | **(15)** | **5** | **50** |
| *Other Operating Expenses* | (24) | (18) | (25) | | | | |
| **Net Income** | **(588)** | **(578)** | **(27)** | Accounts Payable | - | - | |
| | | | | SBA EDIL Loan | - | - | 20 |
| | **Cash Flow** | | | Intercompany Due to/ (From) | - | - | |
| | Annual 2018 | Annual 2019 | Annual 2020 | **Total Liabilities** | **-** | **-** | **20** |
| **Beginning Cash** | 49 | (15) | 5 | Partners Contributions | 6,204 | 7,471 | 8,146 |
| Operating Activities | (588) | (578) | (27) | Partners Distributions | (3,465) | (4,134) | (4,757) |
| Investing Activities | 1 | - | - | Retained Earnings | (2,755) | (3,333) | (3,359) |
| Financing Activities | 523 | 598 | 72 | **Total Owner's Equity** | **(15)** | **5** | **31** |
| Net Cash Flow | (64) | 21 | 45 | | | | |
| **Ending Cash** | **(15)** | **5** | **50** | **Total Liabilities + Owner's Equity** | **(15)** | **5** | **50** |

**Wu Towers, LLC,** formed in 2001, previously owned a 76-car parking garage and a 24,000 sf commercial condominium located at 133-38 Sanford Avenue in Flushing.  The property consists of what is referred to as Commercial Unit 1 (Parking Lot) and Commercial Unit 2 (Commercial Unit) on the ground floor of the Victoria Towers building.  On 2/25/2019, under the terms of a Forbearance Agreement, Wu Towers transferred all right title and interest to Commercial Unit 1 and Commercial Unit 2 (therein defined as "Parcel II") to Wu Commercial Owners LLC (therein defined as "Lender Affiliate") in exchange for $5 million reduction in accrued interest on the mortgage loan owed to 41-60 Main Street LLC (referred to above as the "spreader mortgage").

The forbearance agreement also provided for the conveyance of 28,572 unencumbered shares of GTJ REIT, Inc. by the Borrower Entities, defined as Flushing Landmark Realty LLC,

Wu Towers LLC, Lucky Star-Deer Park LLC, Victoria Towers Development Corp. and Queen Elizabeth Realty Corp. (equal to $400,000 at a stated price of $14/share) to Landmark Portfolio Mezz LLC as the Mezz Lender.  The Debtor has advised that the transfer was to be a portion of the interest held by VWU888 LLC in GTJ Realty LP equivalent to 28,272 shares / $400,000 but that the transfer never took place.

Wu Towers is 100% owned by **Wu Towers Mezz LLC,** formed in 2017, which is in turn reportedly owned 50% by The Debtor and 50% by his spouse.  The Examiner has not yet been provided with documentation supporting the ownership of the entity, however the ownership percentages are consistent with the information reported on Lucky Star Mezz's 2018-2019 Federal tax returns prepared by Anchin .  The latest tax returns provided to the Examiner are for the 2019 tax year.

Wu Towers Mezz is also a co-obligor under a Mezzanine Promissory Note dated 12/1/17 in the original amount of $15,300,000.  Landmark Portfolio claims an amount due of $23,948,745.05 as of July 8, 2020.

The Debtor has not yet provided any evidence of value for the transferred Commercial Units relative to the $5 million in debt reduction received.

**Active Supermarket Entities**

**Hong Kong Supermarket of Hester Street Corp.**, **("HKS Hester Street")** formed in 2008, operates an Asian supermarket located at 15 Hester Street, New York, NY (property also known as 60-80 Elizabeth Street, New York, NY) which is leased from Affiliate Queen

Elizabeth Realty Corp.   HKS Hester Street is reportedly 100% owned by the Debtor.  The Examiner has not yet received documentation supporting the reported ownership.  The 2018 and 2019 tax returns provided to the Examiner show the Debtor as the 100% owner.  However, the 2017 Federal Tax returns reflect Hong Kong Supermarket Holding Corp. (also reportedly owned 100% by the Debtor) as the 100% owner.  The Examiner has not yet received documentation regarding the change in ownership structure.

As of July 2021, HKS Hester Street has 21 employees with a gross weekly payroll of approximately $25k.  The Debtor's spouse is on the payroll at a rate of $1,900 / month.

HKS Hester Street Summary Financial Information

| ($ in 000's) | Income Statement | | | | ($ in 000's) | Balance Sheet | | |
|---|---|---|---|---|---|---|---|---|
| | Annual | Annual | Annual | | | Year End | Yeaar-End | Year-End |
| | 2018 | 2019 | 2020 | | | 12/31/18 | 12/31/19 | 12/31/20 |
| Sales | 16,144 | 16,924 | 15,602 | | Cash | 5 | - | (600) |
| Cost of Goods Sold | (10,992) | (11,958) | (11,447) | | Accounts Receivable | - | - | - |
| Payroll | (1,459) | (1,519) | (1,269) | | Inventory | (1,813) | (2,026) | (920) |
| Rent | (1,680) | (878) | (1,680) | | Total Fixed Assets (Net) | 739 | 739 | 739 |
| Utilities | (247) | (263) | (286) | | Other Assets | 447 | - | 170 |
| Merchant Fees | (193) | (267) | (228) | | **Total Assets** | **(621)** | **(1,287)** | **(611)** |
| Management Fee | (946) | (1,078) | - | | | | | |
| Insurance | (91) | (127) | (167) | | Accounts Payable | - | - | - |
| Auto & Truck Expense | (46) | (46) | (43) | | Interco Due to Affiliates | (75) | (151) | (194) |
| Other Operating Expenses | (207) | (679) | (687) | | Loans To/From Affiliates (Net) | - | - | 160 |
| **Net Income** | **284** | **109** | **(204)** | | Security Deposits - Tenants | - | - | 170 |
| | | | | | Sales Tax & Payroll Payable | 1,297 | 1,561 | 683 |
| | Cash Flow | | | | **Total Liabilities** | **1,222** | **1,410** | **819** |
| | Annual | Annual | Annual | | | | | |
| | 2018 | 2019 | 2020 | | Capital Stock | 1,406 | 1,669 | 707 |
| **Beginning Cash** | **(426)** | **305** | **498** | | Distributions | - | - | - |
| Operating Activities | 725 | 264 | 0 | | Retained Earnings | (1,036) | (1,119) | (1,206) |
| Investing Activities | 7 | (71) | 160 | | **Total Owner's Equity** | **369** | **549** | **(498)** |
| Financing Activities | - | - | 0 | | | | | |
| Net Cash Flow | 732 | 193 | 160 | | **Total Liabilities + Owner's Equity** | **1,591** | **1,959** | **320** |
| **Ending Cash** | **305** | **498** | **658** | | | | | |

The 2019 tax returns, the latest filed / provided by the Debtor, report the same revenues and income as the internal books and records.

**Hong Kong Supermarkets of Massachusetts LLC ("HKS Massachusetts")**, formed in 2009, was reportedly closed in 2020 (final tax return filed in 2020).  HKS Massachusetts is

reportedly owned 99% by the Debtor and 1% by the Debtor's spouse.  HKS Massachusetts formerly held minority interests in Hong Kong Supermarkets of Allston LLC (47.9%) & Hong Kong Supermarkets of Malden, LLC (44%).  The Examiner has not yet received documentation of the Debtor's former interest in HKS Massachusetts, but the Federal tax returns filed for 2017-2020 reflect the Debtor holding a 99% interest and the Debtor's spouse holding a 1% interest. The Examiner has not received internally prepared financial statements or copies of the books and records for HKS Massachusetts; however, the information received for HKS Massachusetts' two former subsidiaries HKS Allston & HKS Malden are discussed below.

**Hong Kong Supermarket of Allston LLC, ("HKS Allston"),** formed in 2009, operates an Asian supermarket in Allston, MA.  The space is leased from a third-party landlord.   The Operating Agreement for HKS Allston provided to the Examiner is dated as of September 30, 2019 and shows the Debtor holding a 47.9% interest and JCBD Investment Inc. holding the remaining 52.1%.   The Examiner has been advised that JCBD Investment Inc. is owned by unrelated third parties.  No documentation supporting this has been received (documentation is reportedly not in the control of the Debtor).  The Operating Agreement names the Debtor and Qi Shen as the Managers of the LLC.

As of July 2021, HKS Allston has 31 employees with an approximate weekly payroll of $19.5k. The Debtor appeared on a recent payroll report at the rate of $1,200 / week.

## HKS Allston Summary Financial Information

| ($ in 000's) | Income Statement | | | | ($ in 000's) | Balance Sheet | | |
|---|---|---|---|---|---|---|---|---|
| | Annual | Annual | Annual | | | Year End | Yeaar-End | Year-End |
| | 2018 | 2019 | 2020 | | | 12/31/18 | 12/31/19 | 12/31/20 |
| Sales | 8,850 | 10,368 | 12,117 | | Cash | (695) | (449) | (336) |
| Sub-Lease & Other Income | 1,218 | 1,160 | 576 | | Accounts Receivable | 3 | 5 | 91 |
| Cost of Goods Sold | (5,661) | (6,903) | (8,632) | | Inventory | 798 | 885 | 767 |
| Payroll | (1,002) | (1,095) | (1,110) | | Total Fixed Assets (Net) | 1,950 | 1,740 | 1,507 |
| Rent | (2,429) | (1,971) | (1,950) | | Loan to Boston Food Court | 694 | 510 | 785 |
| Utilities | (380) | (400) | (384) | | Interco Due From Affiliates | 1,078 | 1,078 | 759 |
| Merchant Fees | (186) | (266) | (268) | | Loans to/from Affiliates (Net) | - | 680 | 686 |
| Depreciation & Amortization | (286) | (233) | (233) | | Other Assets | 335 | 264 | 303 |
| Insurance | (23) | (25) | (30) | | Total Assets | 4,163 | 4,713 | 4,563 |
| Auto & Truck Expense | (78) | (85) | (53) | | | | | |
| Other Operating Expenses | (374) | (201) | (185) | | Accounts Payable | 982 | 1,789 | 1,937 |
| Net Income | (351) | 348 | (153) | | Notes Payable | 1,535 | 1,535 | 1,535 |
| | | | | | Sales Tax & Payroll Payable | 3 | 6 | 3 |
| | Cash Flow | | | | Sub-tenant Security Deposit | 213 | 213 | 213 |
| | Annual | Annual | Annual | | Total Liabilities | 2,732 | 3,542 | 3,688 |
| | 2018 | 2019 | 2020 | | | | | |
| Beginning Cash | (394) | (695) | (449) | | Capital Stock | 225 | 225 | 225 |
| Operating Activities | 1,340 | 644 | 23 | | Distributions | 1,184 | 576 | 433 |
| Investing Activities | (1,710) | 210 | 233 | | Retained Earnings | 22 | 369 | 217 |
| Financing Activities[2] | 70 | (608) | (143) | | Total Owner's Equity | 1,430 | 1,170 | 875 |
| Net Cash Flow | (300) | 246 | 113 | | | | | |
| Ending Cash | (695) | (449) | (336) | | Total Liabilities + Owner's Equity | 4,163 | 4,713 | 4,563 |

The Examiner has not yet received bank statements more recent than December 2020. The 2020 tax returns (latest filed / provided) report the same revenues and income as the internal books and records.

**Hong Kong Management of Allston LLC ("HKM Allston")**, formed in 2009, sub-leases space from HKS Allston at the Allston, MA location and manages / subleases space to third party retail tenants in the Allston Food Court (which included the Isshindou Raman shop). HKM Allston is reportedly owned 99% by the Debtor and 1% by the Debtor's spouse. The Examiner has not yet received documentation supporting the ownership percentages; however, the 2019 Federal tax returns reflect the reported ownership percentages. The QuickBooks files received by the Examiner show no revenues or expenses on the P&L for 2018 or 2019 and no revenue and $98k in expenses in 2020. The sub-lease rental income from the food court tenants

appears to be reported on the HKS Allston P&L.  It is unclear if expenses are also run through the HKS Allston P&L.

## HKM Allston Summary Financial Information

| ($ in 000's) | Income Statement | | | ($ in 000's) | Balance Sheet | | |
|---|---|---|---|---|---|---|---|
| | Annual | Annual | Annual | | Year End | Yeaar-End | Year-End |
| | 2018 | 2019 | 2020 | | 12/31/18 | 12/31/19 | 12/31/20 |
| Sub-Lease & Other Income | - | - | | Cash | 1 | 1 | 64 |
| Rent | - | - | (30) | Accounts Receivable | 39 | 37 | 41 |
| Utilities | - | - | (27) | Total Fixed Assets (Net) | 146 | 280 | 280 |
| Legal Fees | - | - | (10) | Loans to Affiliates | 485 | 1,369 | 501 |
| Insurance | - | - | (13) | Total Assets | 671 | 1,688 | 886 |
| Auto & Truck Expense | - | - | (14) | | | | |
| Other Operating Expenses | - | - | (4) | Accounts Payable | 1 | 9 | 13 |
| Net Income | - | - | (98) | Loans From Allston Rent | 531 | 1,540 | 202 |
| | | - | | Loans From Affiliates | - | - | 614 |
| | Cash Flow | | | Sub-tenant Security Deposit | 136 | 136 | 136 |
| | Annual | Annual | Annual | Other Liabilities | - | - | 16 |
| | 2018 | 2019 | 2020 | Total Liabilities | 668 | 1,685 | 981 |
| Beginning Cash | 7 | 1 | 1 | | | | |
| Operating Activities | (372) | 135 | 47 | Distributions | - | - | 0 |
| Investing Activities | 366 | (134) | - | Retained Earnings | 3 | 3 | (95) |
| Financing Activities[2] | - | - | - | Total Owner's Equity | 3 | 3 | (95) |
| Net Cash Flow | (6) | 0 | 47 | | | | |
| Ending Cash | 1 | 1 | 48 | Total Liabilities + Owner's Equity | 671 | 1,688 | 886 |

The 2018 & 2019 tax returns also reflect no reported income or expenses.

**Hong Kong Supermarket of Malden LLC, ("HKS Malden")**, formed in 2009, operates an Asian supermarket in Malden, MA.  The Operating Agreement for HKS Malden provided to the Examiner is dated as of July 18, 2018 and shows the Debtor holding a 44% interest and LH Investment Inc. holding the remaining 56%.   The Operating Agreement names the Debtor and Qi Shen as the LLC Managers.

As of July 2021, HKS Malden has 49 employees with a gross weekly payroll of approximately $34k.  The Debtor is on the payroll at a rate of $1,200 / week.  The Examiner has

not yet received bank statements more recent than December 2020.  The 2020 tax returns (latest filed / provided) report the same revenues and income as the internal books and records.

## HKS Malden Summary Financial Information

| ($ in 000's) | Income Statement | | | ($ in 000's) | Balance Sheet | | |
|---|---|---|---|---|---|---|---|
| | Annual | Annual | Annual | | Year-End | Yearan-End | Year-End |
| | 2018 | 2019 | 2020 | | 12/31/18 | 12/31/19 | 12/31/20 |
| Sales | 11,087 | 11,693 | 14,899 | Cash | (441) | (277) | (339) |
| Cost of Goods Sold | (7,306) | (8,241) | (10,809) | Accounts Receivable (HK Distribution) | - | - | 485 |
| Payroll | (1,397) | (1,504) | (1,684) | Inventory | 863 | 961 | 824 |
| Rent | (959) | (955) | (959) | Total Fixed Assets (Net) | 1,923 | 1,744 | 1,550 |
| Utilities | (403) | (324) | (403) | Investment To/From LH/GF Spmkt (Net) | (200) | (200) | (200) |
| Merchant Fees | (276) | (173) | (276) | Interco Due From Affiliates | 1,712 | 1,723 | 1,701 |
| Depreciation & Amortization | (209) | (207) | (209) | Loans to/from Affiliates (Net) | - | 582 | 856 |
| Insurance | (38) | (26) | (38) | Other Assets | 142 | 142 | 137 |
| Auto & Truck Expense | (20) | (53) | (20) | **Total Assets** | **3,998** | **4,675** | **5,015** |
| Other Operating Expenses | (194) | (298) | (215) | | | | |
| **Net Income** | **285** | **(88)** | **285** | Accounts Payable | 49 | 754 | 951 |
| | | | | Notes Payable (Haymarket Capital) | 1,875 | 1,875 | 1,875 |
| | Cash Flow | | | Sales Tax & Payroll  Payable | 2 | 3 | 3 |
| | Annual | Annual | Annual | **Total Liabilities** | **1,927** | **2,632** | **2,829** |
| | 2018 | 2019 | 2020 | | | | |
| **Beginning Cash** | **(402)** | **(441)** | **(277)** | Capital Stock | 275 | 275 | 275 |
| Operating Activities | (516) | (75) | (118) | Distributions | (2,217) | (2,158) | (2,305) |
| Investing Activities | 187 | 179 | 199 | Retained Earnings | 4,014 | 3,926 | 4,216 |
| Financing Activities | 290 | 59 | (142) | **Total Owner's Equity** | **2,072** | **2,043** | **2,186** |
| Net Cash Flow | (39) | 164 | (62) | | | | |
| **Ending Cash** | **(441)** | **(277)** | **(339)** | **Total Liabilities + Owner's Equity** | **3,998** | **4,675** | **5,015** |

**Hong Kong Distribution Corp. ("HK Distribution")**, formed in 2013, is reportedly a company set up to do bulk purchasers of inventory for various of the Debtor's supermarkets (Allston, Malden, Pennsylvania) when suppliers / distributors have minimum order quantities and/or when bulk purchases offer advantageous pricing.  Goods are received, broken down into smaller quantities and shipped to the various supermarkets.  In addition, as noted in the cash analysis section below, HK Distribution is used by the Debtor as an interface to move cash among his various entities, particularly, but not exclusively, the supermarket entities.  HK Distribution is reportedly owned 100% by the Debtor.  The Examiner has not yet received documentation supporting the Debtor's ownership of HK Distribution, however the 2017-21019 tax returns reflect the Debtor holding a 100% interest.

As of July 2021, HK Distribution had 14 employees with a gross weekly payroll of approximately $9k.   The Debtor appears on a recent payroll report at a weekly salary of $1k. Katherine Wu & Lewis Wu also appear on the payroll report at a weekly salary of $600.

HK Distribution Summary Financial Information

| ($ in 000's) | Income Statement | | | ($ in 000's) | Balance Sheet | | |
|---|---|---|---|---|---|---|---|
| | Annual | Annual | Annual | | Year End | Yeaar-End | Year-End |
| | 2018 | 2019 | 2020 | | 12/31/18 | 12/31/19 | 12/31/20 |
| Sales | 4,691 | 6,884 | 6,435 | Cash | (470) | (225) | (413) |
| Cost of Goods Sold | (4,409) | (6,216) | (5,225) | Accounts Receivable | 2,646 | 4,374 | 3,999 |
| Payroll | - | - | (291) | Inventory | 427 | 252 | 252 |
| Rent / Storage | (96) | (96) | (111) | Total Fixed Assets (Net) | (63) | (77) | (77) |
| Insurance | - | (18) | (120) | Intangibles & Other Assets | 45 | 45 | 56 |
| Auto & Truck Expense | (323) | (232) | (321) | **Total Assets** | **2,586** | **4,368** | **3,816** |
| Other Operating Expenses | (353) | (312) | (460) | | | | |
| **Net Income** | **(490)** | **10** | **(93)** | Accounts Payable | 973 | 1,587 | 792 |
| | | | | Loan From Sharefolder | 5,413 | 6,560 | 6,560 |
| | Cash Flow | | | Intercompany Due to/ (From) | 254 | 0 | 5 |
| | Annual | Annual | Annual | **Total Liabilities** | **6,639** | **8,147** | **7,358** |
| | 2018 | 2019 | 2020 | | | | |
| **Beginning Cash** | **(163)** | **(470)** | **(225)** | Distributions - Personal | 830 | 1,895 | 2,225 |
| Operating Activities | 3,648 | (34) | (519) | Distributions - Corp. | (3,898) | (4,699) | (4,699) |
| Investing Activities | 159 | 14 | - | Retained Earnings | (985) | (975) | (1,068) |
| Financing Activities[2] | (4,114) | 265 | 331 | **Total Owner's Equity** | **(4,054)** | **(3,779)** | **(3,541)** |
| Net Cash Flow | (307) | 245 | (188) | | | | |
| **Ending Cash** | **(470)** | **(225)** | **(413)** | **Total Liabilities + Owner's Equity** | **2,586** | **4,368** | **3,816** |

As discussed in the analyses of intercompany transactions and distributions accounts in Sections IV. F. 4 and IV. F. 5, below, HK Distribution also serves as the centralized "cash concentration" entity for the Debtor's supermarket entities.

**Hong Kong Supermarket Holding Corp. ("HKS Holding")**, formed in 2005, is the holding company which owns 100% of HKS Elmhurst, HKS Pennsylvania and HK Plaza Management and a 51% interest in Super HK Flushing which in turn owns 100% of HKS Flushing. (all as defined below).   The Debtor reportedly owns 100% of HKS Holding.   The Examiner has not yet received documentation supporting the Debtor's ownership of HKS Holding, however the 2017-21019 tax returns reflect the Debtor holding a 100% interest.

The Examiner has not yet received internally prepared financial statements or copies of the internal books and records for HKS Holdings, but the 2019 Federal tax return (the most recent tax return provided) shows a net loss of $1.8MM on gross revenues of $13.0MM. which is an aggregation of pass-through revenue and income/(loss) from the downstream entities. Based upon a review of the tax returns, it appears that the 51% interest in Super HK Flushing was acquired in 2018, as it does not appear on the 2017 tax returns. This appears consistent with the formation of the Super HK Flushing entity in 2017.

**Hong Kong Supermarket of Elmhurst Inc. ("HKS Elmhurst")**, formed in 1995, formerly operated an Asian supermarket in Elmhurst, NY. The Debtor has reported that this supermarket was closed in 2020, but has shown continued expenses but no income since 2018. The Examiner has not yet received any supporting information for HKS Elmhurst other than the NY State Department filing receipt reflecting the date of formation.

Summary Financial Information of HKS Elmhurst

| ($ in 000's) | Income Statement | | | ($ in 000's) | Balance Sheet | | |
|---|---|---|---|---|---|---|---|
| | Annual | Annual | Annual | | Year End | Yeaar-End | Year-End |
| | 2018 | 2019 | 2020 | | 12/31/18 | 12/31/19 | 12/31/20 |
| Sales | - | - | 62 | Cash | (21) | (19) | (10) |
| Cost of Goods Sold | - | - | - | Inventory | - | - | - |
| Coupon Income | 810 | - | 210 | Total Fixed Assets (Net) | 158 | 155 | 155 |
| Payroll | (326) | (390) | (198) | Loans to/from Affiliates (Net) | 267 | 249 | 37 |
| Rent | (787) | (555) | (849) | Security Deposits | 594 | 594 | 594 |
| Utilities | (27) | (22) | - | Other Assets | 28 | 28 | 28 |
| Legal Fees | (40) | (25) | (15) | **Total Assets** | **1,025** | **1,007** | **805** |
| Insurance | (51) | (10) | (11) | | | | |
| Other Operating Expenses | (265) | (314) | (216) | Accounts Payable | 459 | 1,179 | 2,239 |
| **Net Income** | **(686)** | **(1,316)** | **(1,016)** | Interco Due To Affiliates | 9,651 | 10,817 | 10,629 |
| | | | | Loan From Shareholder | 2,556 | 2,556 | 2,556 |
| | Cash Flow | | | Other Liabilities | 603 | 360 | 298 |
| | Annual | Annual | Annual | **Total Liabilities** | **13,268** | **14,912** | **15,721** |
| | 2018 | 2019 | 2020 | | | | |
| **Beginning Cash** | **(22)** | **(21)** | **(19)** | Capital Stock | 879 | 879 | 879 |
| Operating Activities | 303 | 346 | 4 | Distributions | (3,045) | (3,045) | (3,040) |
| Investing Activities | 3 | 3 | - | Retained Earnings | (10,076) | (11,738) | (12,754) |
| Financing Activities | (305) | (347) | 5 | **Total Owner's Equity** | **(12,243)** | **(13,905)** | **(14,916)** |
| Net Cash Flow | 1 | 2 | 9 | | | | |
| **Ending Cash** | **(21)** | **(19)** | **(10)** | **Total Liabilities + Owner's Equity** | **1,025** | **1,007** | **805** |

**Hong Kong Supermarket of Pennsylvania Inc. ("HKS Pennsylvania")**, formed in 1994,

operates an Asian supermarket at 571 Adams Avenue in Philadelphia, PA, leased from a third

party.  HKS Pennsylvania is reportedly owned 100% by HKS Holding.  The Examiner has not

yet received documentation supporting the ownership of the entity; however, the 2017-2019

Federal tax returns show HKS Holding as the 100% owner.    As of July 2021, HKS

Pennsylvania has 33 employees with a gross weekly payroll of approximately $12k.   Jeffrey

Wu, Jr. is on the payroll at a rate of $800 / week.

### HKS Pennsylvania Summary Financial Information

| ($ in 000's) | Income Statement | | | ($ in 000's) | Balance Sheet | | |
|---|---|---|---|---|---|---|---|
| | Annual | Annual | Annual | | Year End | Yearr-End | Year-End |
| | 2018 | 2019 | 2020 | | 12/31/18 | 12/31/19 | 12/31/20 |
| Sales | 13,580 | 13,014 | 11,438 | Cash | (839) | (574) | (530) |
| Rental Income | 284 | 161 | 226 | Accounts Receivable | - | - | - |
| Cost of Goods Sold | (11,019) | (10,115) | (9,143) | Inventory | 1,023 | 1,181 | 1,095 |
| Payroll | (989) | (916) | (758) | Total Fixed Assets (Net) | 447 | 476 | 512 |
| Rent | (621) | (655) | (654) | Other Assets | 19 | 19 | 19 |
| Utilities | (321) | (306) | (302) | **Total Assets** | **650** | **1,103** | **1,096** |
| Merchant Fees | (104) | (114) | (90) | | | | |
| Depreciation & Amortization | (74) | (78) | - | Accounts Payable | 1,297 | 1,561 | 683 |
| Insurance | (243) | (112) | (101) | Interco Due to Affiliates | 1,178 | 1,039 | 727 |
| Auto & Truck Expense | (34) | (34) | 13 | Loans To/From Affiliates (Net) | | 295 | 1,467 |
| Other Operating Expenses | (572) | (728) | (446) | Security Deposits - Tenants | 104 | 104 | 19 |
| **Net Income** | **(112)** | **117** | **182** | Sales Tax & Payroll  Payable | 4 | 4 | 4 |
| | | | | **Total Liabilities** | **2,584** | **3,003** | **2,900** |
| | Cash Flow | | | | | | |
| | Annual | Annual | Annual | Capital Stock | 1,500 | 1,500 | 1,500 |
| | 2018 | 2019 | 2020 | Distributions | (2,622) | (2,706) | (2,706) |
| **Beginning Cash** | **(884)** | **(839)** | **(574)** | Retained Earnings | (812) | (694) | (598) |
| Operating Activities | 554 | 83 | (1,006) | **Total Owner's Equity** | **(1,934)** | **(1,900)** | **(1,804)** |
| Investing Activities | (84) | 266 | 1,135 | | | | |
| Financing Activities | (426) | (83) | (86) | **Total Liabilities + Owner's Equity** | **650** | **1,103** | **1,096** |
| Net Cash Flow | 44 | 266 | 44 | | | | |
| **Ending Cash** | **(839)** | **(574)** | **(530)** | | | | |

**Hong Kong Plaza Management Corp. ("HK Plaza Management")**, formed in

1996, holds the master lease at 37-11 Main Street in Flushing, NY leased from a third party,

which it in turn sub-leases to affiliate Super HK Flushing (as defined below) and various other

non-affiliated retail tenants.  The Examiner has not yet received the master lease or the sub

leases, any tax returns, payroll reports or bank account information for HK Plaza Management.

## HK Plaza Management Summary Financial Information

| ($ in 000's) | Income Statement | | | ($ in 000's) | Balance Sheet | | |
|---|---|---|---|---|---|---|---|
| | Annual | Annual | Annual | | Year End | Yeaar-End | Year-End |
| | 2018 | 2019 | 2020 | | 12/31/18 | 12/31/19 | 12/31/20 |
| Sub-Lease Income | 1,498 | 1,671 | 1,802 | Cash | 120 | 3 | 24 |
| Master Lease Expense | (1,307) | (1,344) | (1,213) | Accounts Receivable | 297 | 419 | 1,092 |
| Insurance | (19) | (24) | (44) | Due From Shareholder | 300 | 729 | 729 |
| Management Fees | (400) | - | (46) | Rent Receivable - HKS Flushing | 272 | - | - |
| Real Estate Taxes | (170) | (191) | (219) | Intangibles & Other Assets | 600 | 600 | 600 |
| Utilities | (10) | (20) | (46) | **Total Assets** | 1,589 | 1,751 | 2,445 |
| Legal Fees | (33) | (35) | (10) | | | | |
| Other Operating Expenses | (8) | (22) | (13) | Accrued Expenses | - | 72 | 577 |
| **Net Income** | **(450)** | **34** | **211** | Security Deposits - Sub-tenants | 306 | 355 | 296 |
| | | | | SBA Loan Payable | - | - | 151 |
| | Cash Flow | | | Intercompany Due to/ (From) | 1,277 | 1,285 | 1,171 |
| | Annual | Annual | Annual | **Total Liabilities** | 1,583 | 1,712 | 2,194 |
| | 2018 | 2019 | 2020 | | | | |
| **Beginning Cash** | **120** | **120** | **3** | Owner Draws | (2,595) | (2,595) | (2,595) |
| Operating Activities | (298) | (125) | (16) | Owner Investements | 2,717 | 2,717 | 2,717 |
| Investing Activities | 297 | 8 | (114) | Retained Earnings | (116) | (82) | 129 |
| Financing Activities | - | | 151 | **Total Owner's Equity** | 5 | 39 | 250 |
| Net Cash Flow | (0) | (117) | 21 | | | | |
| **Ending Cash** | **120** | **3** | **24** | **Total Liabilities + Owner's Equity** | 1,589 | 1,751 | 2,445 |

**Super HK Supermarket of Flushing LP ("Super HK Flushing")**, formed in 2017 owns 100% of HKS Flushing (defined below).  Super HK Flushing is reportedly owned 51% by the Debtor and 49% by other investors.  The Examiner has not yet received documentation supporting the reported ownership percentages of Super HK Flushing; however, the 2019 Federal Tax return shows the following:

| Shareholder | % Ownership |
|---|---|
| Jeffrey Wu | 51% |
| Kuanhe Wu | 11% |
| Ideal Investment | 10% |
| Yinglei Wang | 8% |
| Xia Yin | 8% |
| Junwei Shi | 8% |
| Sun Lin | 4% |
| | 100% |

Super HK Flushing owns 100% of Hong Kong Supermarket of Flushing Inc.  As of July 2021, Super HK Flushing has 49 employees with a total weekly payroll of approximately $36k. The Debtor appears on a recent payroll report at the rate of $1,900 / week.  Two of the Debtor's children, Jefferson and Victoria also appear on the payroll at rates of $500 / week each.

**Hong Kong Supermarket of Flushing Inc. ("HKS Flushing")**, formed in 1996, operates an Asian supermarket at 37-11 Main Street, Flushing, NY in retail space leased from HK Plaza Management.  HKS Flushing is 100% owned by Super HK Flushing.   HKS Flushing's employees are employed by Super HK Flushing.

HKS Flushing Summary Financial Information

| ($ in 000's) | Income Statement | | | ($ in 000's) | Balance Sheet | | |
|---|---|---|---|---|---|---|---|
| | Annual | Annual | Annual | | Year End | Yeaar-End | Year-End |
| | 2018 | 2019 | 2020 | | 12/31/18 | 12/31/19 | 12/31/20 |
| Sales | 19,081 | 18,293 | 16,013 | Cash | (3,638) | (3,966) | (56) |
| Cost of Goods Sold | (14,364) | (13,805) | (10,856) | Accounts Receivable | 26 | 12 | 14 |
| Payroll | (2,577) | (2,409) | (1,754) | Inventory | 598 | 598 | 598 |
| Rent | (1,467) | (1,528) | (1,586) | Interco Due from Affiliates | 1,335 | 13 | 20 |
| Utilities | (310) | (368) | (339) | Total Fixed Assets (Net) | 1,012 | 1,012 | 1,098 |
| Merchant Fees | (187) | (176) | (166) | Other Assets | 155 | 165 | 197 |
| Insurance | (168) | (197) | (179) | **Total Assets** | **(512)** | **(2,166)** | **1,871** |
| Supplies | (178) | (139) | (139) | | | | |
| Other Operating Expenses | (294) | (219) | (322) | Accounts Payable | 1,108 | 1,364 | 3,979 |
| **Net Income** | **(463)** | **(547)** | **672** | Loans To/From Other (Net) | 1,089 | (263) | 440 |
| | | | | Security Deposits - Tenants | | | |
| | Cash Flow | | | Taxes Payable | (30) | (42) | (67) |
| | Annual | Annual | Annual | **Total Liabilities** | **2,166** | **1,060** | **4,352** |
| | 2018 | 2019 | 2020 | | | | |
| **Beginning Cash** | **(1,886)** | **(3,638)** | **(3,956)** | Capital Stock | 620 | 620 | 620 |
| Operating Activities | (1,680) | (317) | 3,956 | Distributions | (107) | (107) | (34) |
| Investing Activities | (6) | (1) | (128) | Retained Earmings | (3,191) | (3,738) | (3,066) |
| Financing Activities | (67) | - | 72 | **Total Owner's Equity** | **(2,678)** | **(3,225)** | **(2,481)** |
| Net Cash Flow | (1,753) | (318) | 3,900 | | | | |
| **Ending Cash** | **(3,638)** | **(3,956)** | **(56)** | **Total Liabilities + Owner's Equity** | **(512)** | **(2,166)** | **1,871** |

Revenues reported in the books and records match the revenues reported in the 2019 Federal tax return (last return filed / provided); however the Federal Tax returns reported a slightly higher net loss ($584k vs. $547k), related partially to lower reported COGS and higher other operating expense deductions.

**Active Other Entities**

**Wu's Enterprises LLC ("Enterprise"),** formed in 2017, owns a 35% interest in two restaurants: HKS Tea LLC and HKS Fried Chicken LLC and a 21.5% interest in Tianjin Bun House LLC.  The restaurants are located in the Allston Food Court.  An operating agreement dated December 29, 2018 lists the membership interests as held 95% by the Debtor and 5% by his spouse.  The 2018-2020 tax returns reflect the same ownership.

The Debtor has not provided QuickBooks files or internally prepared financial statements for Enterprise.   The tax returns show approximately $11k in pass through income from a 35% interest in HKS Tea LLC in 2018, approximately $11k in pass through income from a 35% interest in HKS tea LLC and a 21.5% interest in Tianjin Bun House LLC in 2019, and approximately $20k in pass through income from 35% interests in HKS Tea LLC and HKS Fried Chicken LLC in 2020.

The Debtor did not provide any payroll information for Enterprise, which appears to have no employees.  (The underlying restaurants show w-2 wage expenses.)

**WuMac, Inc. ("WuMac"),** formed in 1991, is reportedly owned 50% by the Debtor and 50% by Allyn Caruso.  The Examiner has not been provided with documentation supporting the ownership percentages, but the 2018 tax return provided for WuMac, Inc. shows the Debtor and Allyn Caruso each as 50% shareholders.   In 2007, the Debtor was approached by Mr. Caruso, then President of Maine Aviation Corp., with an opportunity to acquire three "off-lease" Bombardier CRJ-200 commercial aircraft at an attractive price.  WuMac, Inc. obtained $18 million in financing from Key Bank to acquire the three aircraft.  One of the aircraft was sold to

Lehman brothers just before its collapse in 2008.  The Debtor took one aircraft for his personal use and the third aircraft was renovated with additional loans from Key Bank and was under contract to be sold to a Japanese investor who ultimately backed out of the transaction due to the impact of the 2008 financial crisis.  That aircraft was subsequently leased to the Royal family of Malaysia under a 5-year lease and has subsequently been operated as a charter aircraft.  The Debtor believe the aircraft to be worth between $2.5 and $4.0 million, depending on the current condition and hours but believes the illiquidity of his interest (50% equity interest in WuMac, Inc. - the owner of the aircraft) would put the realizable value at or below the lower end.

The only information provided to the Examiner to date regarding WuMac is a copy of the 2018 tax return which showed approximately $1.1 million in revenues and a net profit (before application of NOL's) of approximately $41k.  The balance sheet showed cash of $608k at 12/31/18, $200k in loans to shareholders and Buildings and Other Depreciable Assets (net of depreciation) of approximately $8.2 million (presumably the aircraft, but not specified).  The tax return also shows approximately $3.7 million in depreciable assets put in service during 2018 under a 7-year depreciation schedule.  Liabilities include a $3.7 million loan payable and $500k in deposits, resulting in a reported Retained Earnings of approximately $4.8 million.

## 4.  Intercompany Account Analysis

The Examiner's initial approach to understanding the historical cash activity between the Debtor's affiliates was to review and analyze the affiliated entities' accounting history maintained on each entity's QuickBooks data file.   As noted above, not all of the entities use QuickBooks for their accounting, so the analysis was limited only to the QuickBooks data files provided.  In addition, the Debtor stated that not all of the entities have bank accounts, and as a

result, the analysis was also limited to entities that reported bank account activity.    The

Examiner limited the review period 2018 through 2021[20].   The Debtor stated that the 2021

activity is still subject to adjustment as it may represent raw data input into the accounting

system and not analyzed by the respective entities or their outside accountants.

Each entity generally reported two types of bank accounts at two or sometimes three

banks over the time period selected for review.  The bank accounts listed in the QuickBooks files

were labelled as "Operating" and "Payroll" for each bank.  For purposes of this initial analysis,

the Examiner focused on the operating bank accounts and an account titled "cash on hand" listed

in the QuickBooks file.  The Examiner did not analyze the payroll or petty cash accounts at this

point.  The payroll account appeared to have relatively small transaction amounts labelled

payroll in the QuickBooks files.  The petty cash accounts had many transactions at small

amounts.  If needed, the Examiner would revisit this activity at a later time.

The Examiner analyzed the cash activity for the following entities during this process:

- Hong Kong Distribution Corporation
- Hong Kong Supermarket of Pennsylvania, LLC
- Hong Kong Supermarket of Malden, LLC
- Super Hong Kong Supermarket of Flushing LP
- Wu Towers LLC
- Victoria Realty Group, LLC
- Queen Elizabeth Realty Corp
- Hong Kong Supermarket of Hester Street, LLC
- Hong Kong Supermarket of Allston, LLC
- Hong Kong Management of Allston, LLC
- Hong Kong Supermarket of Elmhurst, Inc.
- Hong Kong Plaza Management Corp
- Flushing Landmark Realty, LLC

---

[20] For 2021 the QuickBooks files provided activity during part of the year to date, as the Examiner received the files at different times.

RSR created a master database for all the above entities for the operating bank accounts and "cash on hand" account listed in each entity's QuickBooks file.  The database included over 68,000 entries containing data such as payee, payor, amount, date of transaction and description of the transaction relating to the cash accounts and time period referred to above.  After completion of the database, the Examiner sorted and analyzed the cash activity based on what appeared to be affiliates or related parties.  The payee information in most cases was identified in QuickBooks through each transaction entry.  However, the QuickBooks files did not include the names of payors associated with deposits.  That information would most likely be available through bank statements and related wire transfer advices and deposit slips.  The Examiner has requested from the Debtor the additional banking information for all the affiliated entities to determine whether the QuickBooks data files are complete.  The Debtor has provided banking information for many of the affiliated entities and is in the process whether complete information responsive to the request has been received.

As stated above, not all the affiliates utilize QuickBooks for their accounting.  The Examiner requested from the Debtor, but has not yet received the general ledger and accounting reporting for all affiliates that do not use QuickBooks.  Further review of documents and analysis would be needed to form additional observations.

## 5.  Review of Distribution Account

Upon an initial review of the distribution account for the business entities contained in the QuickBooks files for the entities provided, the Examiner noted direct payments (or deemed payments) made to affiliates, the Debtor, relatives of the Debtor, and expenditures to parties that were made on behalf of the Debtor.   Historically, the affiliates record transactions in their

distribution account that they deem payments made to the owner or on behalf of the owner as equity transactions and not debt.  The Examiner noted some entries   reflected in the distribution account as contributions were designated as paid by cash and not through a banking account.

The Examiner reviewed the activity reported in the distribution account from the QuickBooks data files for the period 2018 through 2021.  Attached as **Exhibit H** is a detailed analysis of the activity reported in the distribution accounts of several affiliated entities for the selected period.  The information included in the distribution accounts include payments directly made (or on behalf of) the owner of each entity; transactions with affiliated entities; and journal entry references with vague explanations.

**Observations**

The following includes observations on the summary of data received by the affiliated entity's QuickBooks files as they related to the distribution accounts.  Further review and additional information of the Debtor's and affiliates' books and records would be needed to determine the completeness and veracity of the information provided in the QuickBooks accounting files.

*Hong Kong Distribution Corp*

- The Examiner noted that the Debtor's wholly owned affiliate Hong Kong Distribution Corporation reported transactions in its distribution account with the Debtor's spouse. Total distributions paid to the Debtor's spouse's individual bank account at Capital One Bank (account #6264) during the post-petition period from August 2020   through June

2021 totaled $286,100. The Debtor claims that the payments made to his spouse were repayments for the funds previously advanced by her to this entity.

- The Examiner traced these deposits to the Debtor's spouse's CapitalOne bank statement for account ending #6264. Based on the trail of funding, there is no clear evidence that these funds should have been paid to the Debtor's spouse. Instead, these would appear to be funds of the Debtor's estate and should have been paid to the Debtor.

- During the period July 7, 2020 through September 17, 2020, the Examiner noted deposits totaling $260,000 recorded in the same distribution account, associated with the Debtor's spouse that were reflected as equity contributions. The $260,000 consisted of two payments: $110,000, on July 9, 2020 (the day after the petition date) and $150,000 on September 17, 2020. After further review of the Debtor's spouse's bank statements, it appears that the source of the $110,000 was a wire transfer from WUMAC, Inc (50% owned by the Debtor) made on July 8, 2020 (the Debtor's petition date).

There does not seem to be a basis for attributing these funds either coming from the Debtor's spouse since she was not an owner in either WUMAC, Inc. or Hong Kong Distribution Corporation. Further, if the entity believed this was a repayment of an obligation to the Debtor's spouse, which it does not appear to be the case, it should not be reflected in an equity account, labeled "distributions". The $150,000 deposit made on September 17, 2020 was a return of a deposit from an entity called HYK Properties ("HYK"). The Debtor stated that HYK assisted the Debtor in his search for capital in connection with the Debtor's real estate properties. HYK received a deposit of $150,000

in connection with the search of funding.  Since it could not find available capital, they returned the deposit.  The funds were wired directly to Hong Kong Distribution Corporation and treated as a contribution in the entity's books.  In this instance, the entity associated the contribution with the Debtor's spouse in the quickbooks accounts for Hong Kong Distribution Corporation.  Again, there is no clear support for why this would be deemed an advance associated with a non-owner of the entity.

The payments made to the Debtor's spouse totaling $286,100 from January 2020 through June 2021 matched deposits reflected in her bank account.

**Hong Kong Distribution Corporation - Summary of Distributions to Veronica Wu 2020  - June 2021**
*Source: Quickbooks Data Files*

| Payor/Payee *(1)* | Transaction | Date | Amount | | Note |
|---|---|---|---|---|---|
| **Deposits:** | | | | | |
| IOC HENG IP a/k/a Veronica Wu | Deposit | 07/09/2020 | $ | 110,000 | *(2)* |
| IOC HENG IP a/k/a Veronica Wu | Deposit | 09/17/2020 | | 150,000 | *(3)* |
| **Total Deposits** | | | | **260,000** | |
| | | | | | |
| **Payments:** | | | | | |
| IOC HENG IP a/k/a Veronica Wu | Check | 08/07/2020 | | 100,000 | *(4)* |
| IOC HENG IP a/k/a Veronica Wu | Check | 09/24/2020 | | 20,000 | *(4)* |
| IOC HENG IP a/k/a Veronica Wu | Check | 11/19/2020 | | 19,000 | *(4)* |
| IOC HENG IP a/k/a Veronica Wu | Check | 12/21/2020 | | 20,000 | *(4)* |
| IOC HENG IP a/k/a Veronica Wu | Check | 01/19/2021 | | 15,000 | *(4)* |
| IOC HENG IP a/k/a Veronica Wu | Check | 02/08/2021 | | 20,000 | *(4)* |
| IOC HENG IP a/k/a Veronica Wu | Check | 02/22/2021 | | 30,000 | *(4)* |
| IOC HENG IP a/k/a Veronica Wu | Check | 02/26/2021 | | 30,100 | *(4)* |
| IOC HENG IP a/k/a Veronica Wu | Check | 03/16/2021 | | 10,000 | *(4)* |
| IOC HENG IP a/k/a Veronica Wu | Check | 04/20/2021 | | 22,000 | *(4)* |
| **Total Payments** | | | | **286,100** | |
| **Net** | | | $ | **(26,100)** | |

(1)  Name listed above was name provided in QuickBooks data file.

(2)  Per CapitalOne bank statement (acct#6264) for Veronica Wu, $110,000 wire transfer was deposited from WUMAC Inc. on 7/8/20 (Debtor's petition date).  WUMAC, Inc. is an entity owned by the Debtor.  On 7/9/20, $110,000 was transferred from Veronica Wu's bank account at CapitalOne (acct#6264) to Hong Kong Distribution Corp.

(3)  Per email received from Jeffrey Wu, Jr., this amount related to a refund of a deposit from HYK Properties, an affiliate of Criterion Group LLC.  Mr. Wu, Jr. stated that HYK Properties was assisting the Debtor to obtain financing for the Debtor's real estate entities that never was never completed. The funds were wired directly to Hong Kong Distribution Corporation.  QuickBooks included a reference that the amount related to Veronica Wu.

(4)  Funds were traced to Veronica Wu's bank statements held at CapitalOne Bank (acct #6264).

- Payments totaling $60,012 were reported as paid to Katherine Wu (the Debtor's sister), who the Examiner understands is a sister of the Debtor.  These payments were recorded as distributions in the equity account of this entity and were all made during the post-petition period from July 15, 2020 through October 15, 2020.   The Debtor stated that Ms. Wu advanced the Debtor $70,000 to the Debtor's personal bank account $70,000 in connection with the purchase that the Debtor made for personal protection equipment for his supermarket interests.  The Debtor said the stores were low on cash and he had no other alternative sources for funds to pay for the items.   The Debtor explained the repayments to Katherine Wu from Hong Kong Distribution Corporation as "Capital Distributions to Jeffrey Wu (repayments of personal loan)".  The Examiner requested from the Debtor all supporting documentation relating to the initial receipt and repayment these transactions.  The Debtor stated no formal written arrangement or documentation with Katherine Wu existed.  The Examiner traced a wire transfer deposit was made to the Debtor's bank CapitalOne bank account #7169 in the amount of $70,000 on March 31, 2020 with the reference Katherine Wu listed on the bank statement.  Additionally, the Examiner noted payments made to Katherine Wu from the Debtor's affiliated business entity Hong Kong Supermarket of Hester Street totaling $12,250 during the period April and May 2020.  Those payments were reflected as expenses of the business in that entity rather than distributions.

- A deposit of $50,000 was reported as received from "Hays Trust Account" on August 5, 2020 and recorded as a contribution by the Debtor to Hong Kong Distribution Corp. Since this transaction was reported as an equity contribution and occurred post-petition and it would appear these funds may be deemed property of the Debtor's estate, however

the funds were directed to be paid directly to Hong Kong Distribution Corporation instead of the Debtor.  This amount was not reflected on the Debtor's MORs or included in his bank accounts. The Examiner has requested from the Debtor, but has not yet received an explanation and support for this transaction.

- A deposit was recorded in the distribution account of $80,000 from the Debtor on February 13, 2020.  This transaction was reflected as a payment on the Debtor's February 2020 CapitalOne Bank statement for account #7169 provided by the Debtor.

- Two entries totaling $60,000 were reported as "Cash paid" in Hong Kong Distribution Corporation's general ledger accounts on December 31, 2020.  The two entries were reflected as contributions in an equity account of this entity.  One of the entries stated "Cash from boss" in the memo field in the accounting ledger.  The Debtor stated that these entries represented repayments of existing Hong Kong Distribution Corporation accounts payable and should not have been recorded in distribution account.  The two payments in the amount of $30,000 each were referenced as being made to entities named Tay Shing Corporation and Zhong Bao Produce Group Inc.  However, the reference in the memo field reported in the general ledger indicated "Cash from boss" and "Paid to Zhong Bao".  Further, the amounts were reflected as contributions to Hong Kong Distribution Corp by the Debtor.  The Debtor stated that the descriptions written in the general ledger entries were mistakes and were  contributions and cash paid by the Debtor. The Debtor stated that the transaction related to a third-party paying cash for inventory. The Debtor very recently provided documents that may support these transactions, however, the Examiner has not yet been able to corroborate the documents.

- A deposit was reflected in the distribution account from "The Law Offices of Hayes Young, P.A." on August 6, 2020 in the amount of $200,000.  The reference in the memo field in the QuickBooks file stated, "From Hays trust acct refund to boss family".  This transaction occurred post-petition and it would appear these funds were property of the Debtor's estate, however the funds were directed to be paid directly to Hong Kong Distribution Corporation instead of the Debtor.  This amount was not reflected on the Debtor's MORs or included in his bank accounts. The Examiner requested, but has not yet received, an explanation regarding this transaction.

- Four payments were paid to the law firm Goldberg Weprin Finkel Goldstein LLP during 2021 totaling $170,000.  The Debtor informed us that this related to the loans on one of the Debtor's other businesses.  The payment was made by Hong Kong Distribution Corp directly to the payee as a distribution on behalf of the Debtor.

The Examiner has provided the Debtor with a copy of the Hong Kong Distribution Corp distribution analysis that included all of the transactions noted above and requested explanations and supporting documentation for all the items listed in the schedule.  Very recently, the Debtor provided some documents and explanations for some of the items noted above.  The Examiner has not yet had time to review and corroborate the responses provided.

*Hong Kong Supermarket of Malden, LLC*

- Five payments totaling $160,000 were paid to the Debtor during the period February 2020 through June 2020.   These payments appeared to be reflected in the Debtor's bank

statement for CapitalOne (acct #7169) for the related periods noted in the entity's distribution account.

### Hong Kong Supermarket of Allston, LLC

- Four payments totaling $153,000 were paid to the Debtor during the period January 2020 through May 2020.  These payments appeared to be reflected in the Debtor's bank statement for CapitalOne (acct #7169) for the related periods noted in the entity's distribution account.

The Examiner is in the process of reviewing the information related to these accounts and intends to seek supporting information from the Debtor.

## G.  Other Assets

### 1.  GTJ Realty LP (Real Estate Investment Trust)

On October 8, 1999, an entity called Lighthouse 100 William LLC purchased 100 William Street, a commercial office building in the Manhattan Financial District through.  On May 22, 2001, Lighthouse William 100 LLC transferred its interest in the property to an entity named Wu/Lighthouse 100 William L.L.C.  It is the Examiner's understanding that the Debtor's investment in Wu/Lighthouse 100 William L.L.C. resulted in the Debtor owning 80% of the interests in 100 William Street property.  The 100 William Street property was sold on December 7, 2007 to MFA 100 William LLC (Mitsui Fudosan America, Inc.) and funds were used to purchase a portfolio of 25 industrial properties (referred to as the "Baker Street Portfolio") on April 23, 2008 in a 1031 exchange transaction.

On January 17, 2013, the Baker Street Portfolio was acquired by / merged into the GTJ Realty, LP REIT in exchange for a corresponding ownership interest of GTJ Realty, LP.  Paul Cooper and Luis Anker manage the REIT through GTJ REIT, Inc.  The Examiner has requested but has not yet received documentation regarding the sale of 100 William Street / 1031 Exchange for the Baker Street Portfolio.

As per the 2019 Federal Tax Return, the ownership of GTJ Realty, LP is as follows:

| Partner | Ownership % |
| --- | --- |
| GTJ Realty, Inc. | 64.3% |
| Jeffrey Wu | 22.2% |
| Louis Shienker | 2.3% |
| Wu Family Trust | 2.8% |
| Paul Cooper | 2.1% |
| Jeffrey Ravets | 2.0% |
| Jerome Cooper Trust | 0.2% |
| GTJ GP, LLC | 1.0% |
| Lighthouse 100 William Operating LLC | 2.8% |
| Estate of Sarah Revetz | 0.3% |
| | 100.0% |

The Debtor held his interest in GTJ Realty, LP directly until July 2019 when the interest was transferred to the Debtor's wholly owned entity, VWU888 LLC, to facilitate a pledge of the interest to Zee Bridge Capital LLC in connection with a $5,400,000 loan advanced to VWU888 LLC, guaranteed by Jeffrey & Veronica Wu.   The Debtor's schedules filed with the Court disclosed the Debtor's assets related to the GTJ Realty LP real estate investment trust as follows:

- 100% interest in VMU888 LLC with an unknown value; and

- 22.0733% interest in GTJ Realty LP with and unknown value[21]

---

[21] The 22.0733% GTJ Realty, LP interest was disclosed by the Debtor in his initially filed Schedules, but then was not disclosed in subsequently amended Schedules.

After further review of information provided, it would appear that values related to this investment were available and more detailed disclosure as to the nature of this asset would have been appropriate.

Historically, the REIT had provided significant income to the Debtor through quarterly distributions.  Upon the closing of the loan transaction with Zee Bridge Capital, LLC the distributions were paid by GTJ Realty, LP to Zee Bridge Capital, LLC.  Initially, Zee Bridge Capital, through one of its affiliates, transferred a portion of the distributions it received from GTJ Realty LP to the Debtor's spouse's bank account at Capital One through April 27, 2020. Upon the filing of bankruptcy, the Examiner understands that no further transfers were made to the Debtor or his spouse.   The Examiner noted that the Debtor has not been reporting the distributions paid from GTJ Realty LP to the Zee Bridge Capital as income in its MORs and repayments of the Zee Bridge debt.  No disclosure has been made that discusses these transactions.

The following is a summary of the distributions from 2015 through July 2021 as reported by GTJ REIT, Inc., as manager of GTJ Realty, LP. A detailed report of the distributions is attached to this report as **Exhibit G.**

**GTJ Realty LP Distribution History**

| Year | Jeffrey Wu | Zee Bridge Capital | Total |
|------|-----------:|-------------------:|------:|
| 2015 | $ 1,817,648 | $ - | $ 1,817,648 |
| 2016 | 1,816,023 | - | 1,816,022.64 |
| 2017 | 3,332,898 | - | 3,332,897.98 |
| 2018 | 1,852,449 | - | 1,852,449.01 |
| 2019 | 1,511,163 | 459,822.53 | 1,970,985.84 |
| 2020 | | 2,305,183.27 | 2,305,183.27 |
| YTD 2021 | | 2,319,269.70 | 2,319,269.70 |
| **Total:** | $ 10,330,181 | $ 5,084,276 | $ 15,414,456 |

GTJ REIT, Inc., engages an independent third party to perform a valuation of the properties owned by GTJ Realty, LP. and calculate an estimated Net Asset Value ("NAV")  per share of GTJ REIT, Inc. The estimated NAV per share is based on the estimated value of the assets less the estimated value of the liabilities divided by the number of shares of common stock outstanding on an interpolated basis, calculated as of 12/31/20. At 12/31/20 Duff & Phelps estimated the NAV at a mid-point of $17.52 per share.

The estimated NAV per share was based upon 20,859,182 shares of Common Stock outstanding as of 12/31/20, which was comprised of (i) 13,627,220 actual outstanding shares of the common stock, plus (ii) 7,231,962 interpolated shares of common  stock  into which limited partner interests in GTJ Realty, LP, the Registrant's operating partnership, may be converted. VWU888 LLC's 22.2219% total LP Interest multiplied by the 20,859,182 total interpolated shares outstanding equals 4,629,257 equivalent common shares held by WU888 LLC.

The Debtor's MORs reported the Debtor's interests in GTJ Realty, LP as held by VWU888 LLC.  The MORs reflected the investment as equivalent shares of GTJ REIT, Inc. (the publicly listed REIT shares) and not the actual GTJ Realty, LP interests, which are not publicly listed.  While the estimated value would be the same, this error could lead a reader of the MORs to understand that VW888 LLC actually held public shares in GTJ REIT, Inc. vs. non-public interests in GTJ Realty, LP.

The Debtor's June 2021 MOR, filed July 21, 2021 [Dkt #243] bifurcated the investment amounts based on what the Debtor believed the intent of what was pledged to Zee Bridge Capital

as opposed to what is included in the loan documents.  As a result, the Debtor reported two line items in the schedule of investments relating to the GTJ REIT Inc disclosing Market Values as $13,272,757 for the portion pledged to Zee Bridge Capital and $58,518,178 not pledged to Zee Bridge Capital, totaling $71,790,935.  The Debtor reported a total Net Value of negative ($12,412,427) relating to this investment.

After further review, it appears that the Debtor incorrectly reported the Net Value of the "non-pledged" portion as negative ($22,163,225).  The Debtor incorrectly included the Debtor's share of liabilities on the GTJ Realty LP partnership K-1 of $80,679,403 as additional Debt and deducted that amount from the value of the investment.  The NAV calculation, which is used to determine market value already incorporates the debt held at the GTJ Realty LP level.  The effect of reducing the value of the investment by the partnership debt results in a significant understatement of value of the Debtor's estate.

When the issue was raised by the Examiner, the Debtor responded that the Controller Richard Tang, in preparing the MORs, incorrectly deducted the Debtor's "partner's allocation of qualified non-recourse financing as reported on the GTJ Realty, LP K-1 from the value of the interest based upon the NAV, while Duff & Phelps had already taken the liabilities within GTJ Realty, LP into account in calculating the estimated NAV.  As a result, the aggregate estimated net value of the interests in GTJ Realty, LP held by VWU888 LLC was reports as negative $12,412,427 instead of positive $68,268,976.  Note, this net value also does not reflect the receipt by Zee Bridge Capital of approximately $3.25MM in REIT dividends paid to Zee Bridge Capital since the Debtor's petition date which presumably has been applied to reduce the

outstanding debt owed to Zee Bridge and secured by a pledge of VWU888 LLC's interests in GTJ Realty, LP.

In addition to the 22.1929% interest in GTJ Realty, LP discussed above, the Examiner found that Debtor directly owns 6,944 common shares of GTJ REIT, Inc., worth $109,646 based upon the $15.79 NAV.  This investment was not previously reported in any of the Debtor's filings with the Court.   This Examiner found out about this previously undisclosed investment by requesting from the Debtor the source of the dividend income reported in the Debtor's MOR's.  The Examiner then brought this to the attention of the Debtor.  The Debtor has to date been unable to explain how he came to own the common shares but believes it is related to the original REIT conversion / offering process.   These directly owned shares relate to the previously unexplained receipts of $694.40 in dividend income reported by the Debtor in the MORs and questioned by the U.S. Trustee's office as to the source of the dividends.

## 2.  Trusts

The Examiner was informed by the Debtor that he and his spouse established three irrevocable since 2006 in connection with their estate planning over the years.  These trusts include: Wu Family 2012 Gift Trust (the "Family Trust"); Jeffrey Wu Irrevocable Insurance Trust created in 2006; Veronica Wu Irrevocable Insurance Trust created in 2006.  The following sections discuss the creation and activity of these trusts based on review of information provided and discussions with the Debtor and the trustee of the Family Trust.  A summary of the three trusts based on the Debtor's 2012 Form 709 Gift Tax Return is included in **Exhibit I.**

### a.  **Wu Family 2012 Gift Trust (the "Family Trust")**

The Debtor created the Family Trust as an irrevocable trust on December 28, 2012 in connection with his estate tax planning strategies at that time.   The Examiner received the following documents relating to the Family Trust from the Debtor and his representatives:  (i.) Family Trust instrument, dated December 28, 2012; (ii.) Form 709 United States Gift Tax Return for 2012; (iii.) Form 1041 U.S. Income Tax Return for Estates and Trusts for the Family Trust for the years 2013 through 2019; (iv.) Signature Bank statements for three bank accounts maintained by the Family Trust for 2013 through March 31, 2021; and (v.) correspondence from the trustee to the Trust.

### i.     **Creation, Trustee, and Beneficiaries of the Family Trust**

Pursuant to the trust instrument, the Grantor of the Family Trust was listed as Jeffrey Wu and the Trustee was listed as Gene Greenfest.  Mr. Greenfest is a former partner of the accounting firm, Anchin, and as previously discussed, is currently affiliated with the firm as a consultant.  Mr. Greenfest has historically maintained his role as trustee and lead partner from Anchin for the preparation of tax returns for the Family Trust, the Debtor and his spouse, and the Debtor's various real estate affiliates.  In the event Mr. Greenfest ceases to act as trustee of the Family Trust, the alternates named in the trust instrument include: Fred T. Hung; Lewis Wu (brother of the Debtor) and Josephine Wu (sister of the Debtor).  Mr. Hung was formerly the President of, United International Bank, which the Debtor previously owned.  The trust instrument provides for the Debtor's children (Victoria Wu, Jeffrey Wu, Jr. and Jefferson Wu) as beneficiaries of the Family Trust.

### ii.    Transfers and Assets of the Trust

The Examiner was provided two versions of the Family Trust instrument that included different Schedule of Property attachments to the trust instrument.  These sources included a trust instrument provided by the Debtor's counsel on June 22, 2021 and another version attached to the Debtor's 2012 Form 709 Gift Tax return.  The two versions included the following extracts from the Schedule of Property:

### iii.    2012 Form 709 Gift Tax Return Attachment:

*"An undivided 9.99% membership interest in Lighthouse 100 William II L.L.C. and an undivided membership interest in LH 100 II L.L.C."*

### iv.    Family Trust Instrument received from Debtor on June 22, 2021:

*"An undivided 10.5138% membership interest in Lighthouse 100 William II L.L.C. having a fair market value as of the date hereof of $6,000,000.*

The Examiner requested from the Debtor an explanation and support for which version of the trust instrument Schedule of Property represents the trust instrument currently in force for the Family Trust.  The Debtor stated that the version provided on June 22nd was a superseded version and not in force.

Lighthouse 100 William II L.L.C. and LH 100 II L.L.C. are collectively defined herein as the "Lighthouse Entities".  The Examiner was informed by the Debtor that in 2001, the Debtor purchased an 80% interest in 100 William Street, a commercial office building in the Manhattan Financial District with Lighthouse Real Estate Ventures (Paul Cooper / Luis Anker) holding the

remaining 20%.  100 William Street was sold in 2004 to Mitsui Fudisan and funds were used to purchase a portfolio of 25 industrial properties (referred to as the "Baker Street Portfolio") in a 1031 exchange transaction. The Examiner understands that the Baker Street Portfolio were the primary assets held by the Lighthouse Entities.  The Examiner requested from the Debtor, but has not yet received, all the documents and agreements related to the sale of 100 William Street / 1031 Exchange for the Baker Street Portfolio.

Putting aside the differences in the Schedule of Property noted above, it was unclear if the membership interest percentage represented the Family Trust's direct interest in the Lighthouse Entities.  Mr. Greenfest stated that the Lighthouse Entities membership interest transferred to the Trust represented a portion of the Debtor's membership interest in the Lighthouse Entities, which was approximately 80% at the time.  In other words, the Debtor gifted 9.99% of his approximate 80% interest, for a 7.92% direct interest in the Lighthouse Entities.  The Lighthouse Entities' tax return K-1's for 2013 and 2014 indicated that the Family Trust held a membership interest of 7.992% in each entity.

In 2013 the Baker Street Portfolio was acquired by / merged into the GTJ Realty, LP REIT in exchange for a corresponding ownership interest of GTJ Realty, LP.  As part of this transaction, the Family Trust received an interest GTJ Realty, LP in exchange for the Family Trust's interest in the Lighthouse Entities.  The 2014 GTJ Realty, LP tax return K-1 indicated that the Family Trust held a 2.6632% interest this entity.  The Examiner was not provided a K-1 for GTJ Realty, LP for 2013.    Further, documentation received for the K-1's for the Lighthouse Entities indicated that 2014 was the final year return.

### v.    Cash Activity for the Family Trust

The Family Trust's sole sources of income are derived from distributions received from the GTJ Realty LP[22] and investment income generated from marketable securities invested with Signature Securities Group Corporation ("SSGC"), a broker dealer owned by Signature Bank. The Family Trust has historically maintained three bank accounts at Signature Bank:

Account Ending #5191 – SSGC Brokerage Account

Account Ending #9286 – Checking Account

Account Ending #9294 – Money Market Account

The Signature Bank accounts were opened on April 2013 after receipt of the first quarter distributions from the Lighthouse Entities (totaling $199,028.56).  Thereafter, all receipts into the Family Trust were obtained from GTJ Realty LP distributions.  Historically, GTJ Realty, LP mails quarterly distribution checks made payable to the Family Trust directly to Mr. Greenfest. Mr. Greenfest stated that certain years the Family Trust receives 5 distribution checks instead of quarterly.  Mr. Greenfest then deposits the distribution checks into Account #9294 maintained at Signature Bank.  The funds are then transferred to the brokerage account held at SSGC where the Family Trust earns investment income on securities.  Account #9286 is maintained solely for making disbursements to professionals and bank fees of the Family Trust.

A summary of the distributions deposited in the Family Trust bank accounts relating to investments in partnerships for 2013 through March 2021 is as follows:

---

[22] Prior to the merger with GTJ Realty LP, the Lighthouse Entities paid distributions to the Family Trust in 2013.

| Tax Year | GTJ Realty LP | LH 100 II LLC | Lighthouse 100 William II LLC | Lighthouse Entities Total | Total |
|---|---|---|---|---|---|
| 2013 | 87,393 | 9,951 | 189,077 | 199,028 | 286,421 |
| 2014 | 185,829 | | | - | 185,829 |
| 2015 | 256,570 | | | - | 256,570 |
| 2016 | 268,199 | | | - | 268,199 |
| 2017 | 492,219 | | | - | 492,219 |
| 2018 | 273,579 | | | - | 273,579 |
| 2019 | 280,652 | | | - | 280,652 |
| 2020 | 288,140 | | | - | 288,140 |
| Qtr Ended 3/31/21 | 57,856 | | | - | 57,856 |
| **Total** | **2,190,437** | **9,951** | **189,077** | **199,028** | **2,389,465** |

*Source: Signature Bank account #9294 statements.*

The Examiner reviewed the annual K-1's for 2013 through 2019 from the Lighthouse Entities and GTJ Realty, LP, and with the exception of two years, the distribution amounts reported on the K-1's agreed with the annual deposit amounts in Signature Bank account #9294. The Examiner requested but has not received the 2013 K-1 from GTJ Realty LP for the Family Trust. The Examiner noted differences between the distribution amounts reported on the K-1 and the amounts deposited into the Family Trust bank accounts for the years 2014 and 2017, in the amounts of $5,093 and $50,988, respectively. The Examiner has not yet spoken with representatives of GTJ Realty LP regarding these differences.

After review of the cash activity for the Family Trust obtained from the Signature Bank statements for the period 2013 through March 31, 2021, it appears that the disbursements from Account #9286 have been for the following types of payees: Trustee Fees (Greenfest); Tax Preparation fees (Anchin); legal fees (Schiff Harden LLP); and Signature Bank fees & taxes. In June 2021, the beneficiaries to the Trust requested a distribution of $50,000 each to be used

126

exclusively for college related expenses.  In connection with that distribution, Mr. Greenfest required that the beneficiaries use those funds solely for the following expenses:  Tuition, Room & Board, Books, Other college fees, and student loans.  Mr. Greenfest issued a letter, dated June 28, 2021 to the beneficiaries acknowledging that the funds will be used for the education related purposes stated above.  A copy of the signed acknowledgement letter from the beneficiaries is included in **Exhibit J.**  After receipt of the acknowledgment letter, Mr. Greenfest stated that he distributed $30,000.00 payments to each beneficiary.  Mr. Greenfest intends to distribute the remaining $20,000 to each beneficiary upon additional funds received from the next distribution from GTJ Realty, LP.    The Examiner requested from the Debtor copies of support for where the beneficiaries spent their distribution received from the Family Trust.  Jeffrey Wu, Jr. uploaded documents that indicated that the distributions were either used for education related expenses or still held in their bank account.    Mr. Greenfest stated that with the exception of the recent payments to the beneficiaries he has not issued any payments to anyone else, other than the types of expenses listed above.

Attached as **Exhibit K** is a summary of the Family Trust activity for the period of 2013 through March 31, 2021.

Mr. Greenfest also stated that he does not interact with the Debtor as it relates to the Family Trust and solely discusses Family Trust issues with the beneficiaries.  The Debtor provided a letter from Mr. Greenfest that appeared to be sent on June 4, 2021 via email to the beneficiaries that stated he was not "…aware of any additional transactions between Myint Kyaw and the Trust".   A copy of this letter is attached as **Exhibit L**.

The Examiner consulted with counsel on the legal question of potential claw-back of Family Trust assets to the Debtor's Estate.   Counsel has advised that pre-petition transfers to the Family Trust could be challenged under section 544 of the Bankruptcy Code. *See* 11 U.S.C. § 544(a)-(b) (enabling a trustee to avoid a transfer of "property of the debtor" where a creditor of the debtor would have such a right under state law). Section 544 of the Bankruptcy Code does not contain substantive provisions to determine voidability of pre-petition transfers; instead, it incorporates and makes applicable state law voidable transfer provisions, which in this case would be those contained in former sections of the New York Debtor and Creditor Law ("DCL").

Applicable former sections of the DCL provide a trustee with a number of grounds to set aside a transfer as a fraudulent conveyance, including: (i.) where the transfer was made for less than fair consideration and the debtor was insolvent or rendered insolvent as a result of the transfer (former DCL § 273); (ii.) where the transfer was made for less than fair consideration and the debtor intended to, or believed that he would, incur debts beyond his ability to pay them as they matured (former DCL § 275); and (iii.) where the transfer was made with actual intent to hinder, delay, or defraud either present or future creditors (former DCL § 276).

The Examiner would need to perform further factual analysis to determine if any of these grounds exist to avoid the transfer of assets to the Family Trust as a fraudulent conveyance. Depending on the outcome of that further review and analysis, there is also an issue of whether the statute of limitations may bar any resulting fraudulent transfer action. Counsel has advised that in New York, for transactions which occurred prior to April 4, 2020, the statute of limitations is six years pursuant to New York Civil Practice Law and Rules § 213.  However,

counsel has further advised that in certain circumstances a bankruptcy trustee may unwind transfers beyond normal state and federal statutes of limitations.  For instance, the majority of courts have determined that where the Internal Revenue Service (IRS) had filed a proof of claim in a case, the trustee (or debtor-in-possession) can step into the shoes of the IRS and utilize a longer ten-year statute of limitations accorded to the IRS under 28 U.S.C. § 6502.   As the IRS did file a proof of claim for in this bankruptcy case on November 2, 2020 (claim #9 on the Claims Register), the 10-year lookback period would include December 29, 2012, the date of the initial, and to the Examiner's knowledge, only transfer of assets from the Debtor to the Family Trust.

Lastly, counsel also advised that a bankruptcy trustee may potentially be able to bring a state law declaratory action seeking to declare that the trust is a nullity and permitting invasion into the trust corpus upon judgment. There may be grounds for such declaratory action if, for example, the trust agreement was found to be improperly set up or the Debtor, as the settlor, improperly continued to exert control over the assets in the trust.

The Examiner has not yet discussed the Debtor's involvement or interactions with the management of GTJ Realty, LP over the years with respect to the Family Trust's interests. The result of further discussions with GTJ Realty, LP may impact whether the Family Trust assets may potentially be subject to claw-back to the Debtor's estate.

### b.  **Life Insurance Trusts**

### i.    **2006 Life Insurance Trusts**

The Debtor and his spouse created two irrevocable life insurance trusts entitled: Jeffrey Wu Irrevocable Insurance Trust, dated February 26, 2006 ("Jeffrey Wu Insurance Trust"); and Veronica Wu Irrevocable Insurance Trust, dated February 9, 2007 ("Veronica Wu Insurance Trust").   The Jeffrey Wu Insurance Trust listed Ioc Heng Ip (a/k/a Veronica Wu) and Lewis Wu as trustees.  Whereas the Veronica Wu Insurance Trust listed Myint J. Kyaw (a/k/a Jeffrey Wu) and Lewis Wu as trustees and the alternate trustees were listed as Hayes Young and Gene Greenfest.   Mr. Greenfest informed the Examiner that in 2008, Veronica Wu requested Mr. Greenfest to be added as a co-trustee of her insurance trust.  The Examiner requested but has not yet received a copy of that amendment to the trust instrument.  The beneficiaries listed on the Debtor and spouses gift tax returns for both insurance trusts are Victoria Wu Kyaw (daughter), Jeffrey Jr. Kyaw (son) and Jefferson Kyaw (son).

During 2012 the Debtor cashed in the insurance policies held by the Jeffrey Wu Insurance Trust, totaling more than $2 million in cash surrender value.  The funds were then used by the Debtor to pay down debts related to an airplane owned by the Debtor. At that point all the life insurance policies in the Debtors insurance trust were liquidated.  In connection with those actions, Mr. Greenfest resigned as an alternate trustee of the Veronica Wu Insurance Trust primarily due to a lack of transparency as to the insurance trust.  The Debtor informed the Examiner that during 2013, the Debtor purchased new policies in the name of the Jeffrey Wu Insurance Trust. The Debtor provided copies of the life insurance policies owned by the Jeffrey Wu Insurance Trust.  The policies indicated that the Jeffrey Wu Insurance Trust was the owner.

Following is a summary of the life insurance policies purchased by the Jeffrey Wu Insurance Trust in 2013 that was provided by the Debtor:

| JEFFREY WU | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| SUMMARY OF ACTIVE LIFE INSURANCE POLICIES | | | | | | | | | |
| Company | Insured | Policy# | Issue Date | Face Amount | Premium (A,SA,Q,M) | Plan Type | Beneficiary | Owner | Notes |
| Minnesota Life | Myint Kyaw | ██████422W | 10/3/2014 | $5,000,000 | $17,996 (Q) | GUL | Jeffrey Wu ILIT | Jeffrey Wu ILIT | * Policy Active - CV: $226,025 SV: $122,442 |
| Minnesota Life | Myint Kyaw | ██████117W | 10/3/2014 | $5,000,000 | $5,480 (Q) | 20 Yr Term | Jeffrey Wu ILIT | Jeffrey Wu ILIT | Policy Lapsed on 9/4/2019 |
| Lincoln Financial | Myint Kyaw | ██████8919 | 9/3/2013 | $20,000,000 | $20,411 (M) | GUL | Jeffrey Wu ILIT | Jeffrey Wu ILIT | Policy Lapsed on June 2021 |
| Lincoln Financial | Myint Kyaw | ██████5351 | 4/14/2014 | $5,000,000 | $1,414 (M) | 20 Yr Term | Jeffrey Wu ILIT | Jeffrey Wu ILIT | Policy Active |
| | | | | | | | | | |

## ii.    Cash Activity of Insurance Trusts

With respect to the Jeffrey Wu Insurance Trust, the Debtor historically transferred funds to the trust for purposes of funding the periodic life insurance premiums.  The Examiner reviewed the activity from the trust's bank statements from JP Morgan Chase (Account #14800) for the period 2019 through May 2021.  The Examiner attempted to identify the sources of the deposits into this bank account, however, without supporting deposit records, was unable to determine the source of some of the deposits.  Many of the deposit entries referenced the following terms on the trust's bank statements: "Online transfer from 7710", "Deposit", and "Remote online deposit".   Chase bank account #7710 is owned by Veronica Wu.  Based on review of those bank statements, the payments were made from her bank account.  With the exception of a deposit made on 3/3/21 from account ending #7710, starting January 2021, the

remaining deposits on the bank statements appear to be from the Debtor's DIP account at Capital One.

The payments on the trust bank statement in most instances appeared to correlate to the insurance policy schedule above, however, the Examiner did not receive check copies or deposit documents and could not confirm the payee. The bank statements did identify payments made to Lincoln National Life (policy #5351) in the amount of $1,414.41 per month and those monthly amounts agreed with the above schedule. The Debtor continues to pay those monthly premium amounts through his Debtor in Possession bank account.

The Debtor made a premium payment of $54,289.50 for another Lincoln Life Insurance policy #8919 in March 2021. This appears to be the final payment on this policy as the Debtor informed the Examiner that the policy lapsed in June 2021. Moreover, the life insurance policy for Minnesota Life (policy#117W) lapsed in September 2019 and is not in force. The other remaining life insurance policy from Minnesota Life (policy #422W) appears to have a cash surrender value. The Examiner identified a payment made in May 2019 in the amount of $17,993.76 that was approximately the same amount on the insurance schedule above. Since the Examiner was not provided cancelled checks or premium statements, I could not determine if that payment was for this policy. It appears that was the last payment made on the policy.

Attached as **Exhibit M** is a summary of the bank activity for the trust's bank account.

Since the life insurance policies are owned by the trust and the Debtor's estate has no beneficial interest, the Examiner questions why any premium payments from the Debtor's assets would be allowable during the post-petition period.

With respect to the Veronica Wu Insurance Trust, the Examiner was not provided an insurance schedule or insurance policies for this trust. The Examiner did, however, receive the bank statements for this trust for JP Morgan Chase (account #4883). The Examiner noted three payments of approximately $19,300 each made during 2019; two payments of approximately $21,000 each made during 2020; and a payment of approximately $16,000 made in December 2020. The December 2020 bank statement identified Prudential Insurance as the payee for the December payment. The Examiner noted payments made from Veronica Wu's bank accounts to her insurance trust bank account #4883 to fund insurance payments on a periodic basis. Supporting documents for these payments such as premium statements or copies of cancelled checks have not been provided.

## H. Transactions Between Debtor and Affiliates

The Debtor and his affiliates historically operated as funding sources for one another. When one entity needed money, for whatever reason, funds were transferred from business to business and Debtor to business on an as needed basis. The Debtor had control over his business interests and payments in and out of his affiliates was up to his discretion. This was apparent not only between business to business, but also between the Debtor and his business interests. In reviewing the books for the business interests, there appeared to be inconsistency in how these transfers were accounted for. There appeared to be one or two of the business interests that may have served as the "central" repository or treasury function for the other business interests and

the Debtor.  This was noticeable with how the supermarkets transacted with each other.  The Debtor's wholly owned affiliate, Hong Kong Distribution Corp. served as a central purchasing company of products for supplying to the affiliated group of supermarkets. The affiliated supermarkets would transfer cash to the purchasing company and the purchasing company would supply product to the affiliates.  However, this was not always the case as the purchasing company would also send cash back to the affiliates on an as needed basis.  Further, there affiliates historically did not have any type of formal agreement relating to intercompany transfers.

Moreover, the trail and support for the multitudes of transactions that flowed through each of the affiliated entities was often inconsistent and at times vague and confusing.  The Examiner has only made an initial review of the affiliates' books.  Based on the initial review of a limited amount of accounts, journal entries and descriptions on how transactions were recorded, it is difficult at this time to corroborate amounts transferred, the business purpose or propriety of the transfer, or accounting treatment of the transfer (i.e., intercompany payable/receivable; accounts receivable or accounts payable, or equity distribution or contribution).

Further complicating the analysis is the fact that the Debtor's affiliates will also transfer money through cash and not always a bank account.  The Debtor stated that some of the affiliates would often transact business with vendors using cash to take advantage of discounts with the vendors.  In addition, since the supermarkets are generally a "cash business" with customers, this creates a further challenge in analyzing transactions.   The Examiner noted an account on the

affiliates' books entitled "Cash on Hand" and "Petty Cash" with purportedly represents the accounting for movement of cash transactions for each affiliate.

Richard Tang, the controller for the Debtor's real estate business interests and in prior years for the supermarkets stated that the general accounting practice employed by the affiliates was to reflect transfers made between affiliates as distributions or contributions to or from the owner of the entity instead of reflecting the transfer as an intercompany account (asset or liability).   In reviewing the affiliated entities' QuickBooks accounting files for the years 2018 through 2021, the Examiner noted there were over 50 different forms of intercompany accounts reported on the affiliate entities' balance sheets accounts. The accounts appeared to be intercompany accounts as their account titles included affiliated entity names, or accounts receivable with transactions made to affiliates.  There would appear to be inconsistency in how the entities account for transactions with affiliates.

The Examiner requested but has not yet received from the Debtor a reconciliation of the intercompany balances between each of the affiliates.    On a very high-level test basis, the Examiner attempted to determine if the intercompany accounts reported on each entity agreed with each other.  In other words, if there was a "due from" amount reported on one affiliate's balance sheet at a point in time, was there a corresponding "due to" amount reported on the other affiliate's balance sheet at that same time period.  Due to the myriad of account names that appeared to be related party transactions, the Examiner was unable to determine if potentially corresponding "due to" and "due from" accounts agreed.   Further, since there appeared to be related party transactions included in some of the affiliated entities' general accounts receivable listed in the balance sheet.   It would require additional time to segregate and summarize those

transactions to determine if the balances agreed to the payable on the correlating affiliate's balance sheet. Moreover, the Examiner attempted to reconcile the QuickBooks reporting for intercompany balances on various affiliates balance sheets to the tax returns. The Examiner was unable to align all of the accounts reported in the affiliates' QuickBooks reporting to the tax return.

The Examiner also noted journal entries recorded in the intercompany and distribution accounts at times for large amounts with vague explanations. Some of the explanations appear to relate to proposed journal entries by the outside accounting firm that may relate to year end closing of the entity's books. The Examiner would need additional information, including supporting information to attempt to analyze and report on these items.

## V.   CASH ACTIVITY

### A.   Bank Statement Review and Analysis

In an effort to review and analyze the cash activity for the Debtor, his spouse, the Debtor's business interests and trusts for both the pre-petition and post-petition periods, the Examiner requested all banking documents relating to all bank accounts in existence owned by the Debtor, his spouse, the business entities and all trusts.  The document request was extended to bank statements, copies of cancelled checks, deposit slips, wire and ACH confirmations, and check registers for the period 2018 through year-to-date 2021. Attached as **Exhibit N** is a summary of the banking information received to date listing the bank account name, bank account number (last 4 digits only) and description of information received.

The Examiner received some of this information very recently and the documents are currently be parsed through by the Examiner and RSR to determine completeness of what was received and what remains outstanding.    As a result, the Examiner and RSR has had limited time to fully review all the documents received, however, provided below is a discussion on the preliminary review and analysis performed to date.  As the work is still continuing, this information may change or additional observations and questions may arise.

**B.  Debtor and Spouse Banking Information**

The Debtor and his spouse maintained bank accounts at several banks.  Prior to the petition date, the Debtor maintained two accounts at JP Morgan Chase Bank.  One of these accounts was held jointly with his spouse (account #7978) and the other account was held individually (account #9050).  After the filing for bankruptcy, the Debtor converted account #7978 to an individual account for purposes of maintaining a Debtor in Possession bank account.  The Debtor also maintained a joint account with his spouse at CapitalOne Bank (account #7169) that was closed on July 9, 2020 (the day after the petition was filed).  The Debtor also maintained three bank accounts individually at Preferred Bank (accounts #0122; #5911; #6667).  Account #0122 was a checking account, whereas account #5911 and #6667 were held certificates of deposit.  The CDs were used as collateral for a pledge for financings on one of the Debtor's business entities (Super HK of HG, LLC[23]).

The Debtor's spouse maintains five accounts individually spread over three financial institutions:

~~JP Morgan Ch~~ase Bank (three accounts: #7710; #7000; #9371); CapitalOne Bank

---

[23] Super HK of HG, LLC related to the Debtor's interest in a supermarket, Hawaiian Gardens located in Los Angeles, California.  This store has discontinued operations and the CD's were released to the lender pursuant to Court order.

(one account #6264) and a retirement account at Merrill Lynch Wealth Management (#61143). As mentioned above, the Debtor's spouse held two accounts jointly with the Debtor prior to the petition date (JP Morgan Chase account #7978; and CapitalOne Bank account #1769).

As discussed below, although the Debtor and his spouse maintain individual accounts, there were many transactions in these the individual accounts that related to the business assets and investments that were owned entirely or mostly by the Debtor or personal activity that appeared to impact the Debtor and spouse jointly.  There did not appear to be any consistency as to how many of the bank accounts were utilized.

**Summary of Debtor Bank Accounts**

| Institution | Type | Ownership | Account # | Status |
|---|---|---|---|---|
| JP Morgan Chase | Debtor-In-Posession Checking | Individual (previously joint) | #7978 | Active |
| JP Morgan Chase | Debtor-In-Possession Saving | Individual | #9050 | Active |
| Preferred Bank | Checking | Individual | #0122 | Active |
| Preferred Bank | Certificate of Deposit (Pledge to bank for financing of Super HK, HG LLC) | Individual | #5911 | Active |
| Preferred Bank | Certificate of Deposit (Pledge to bank for financing of Super HK, HG LLC) | Individual | #6667 | Active |
| Capital One | Checking | **Joint** | #1769 | **Closed** |

**Summary of Spouse Bank Accounts**

| Institution | Type | Ownership | Account # | Status |
|---|---|---|---|---|
| JP Morgan Chase | Checking | Individual | #7710 | Active |
| JP Morgan Chase | Saving | Individual | #7000 | Active |
| JP Morgan Chase | Saving | Individual | #9371 | Active |
| Capital One | Checking | Individual | #6264 | Active |
| Capital One | Checking | **Joint** | #11769 | **CLOSED** |

To date, the Debtor has provided many of the bank statements requested, however, there is additional banking information requested that is still needed to complete the analysis. In some cases, the Debtor provided copies of cancelled checks for some accounts, but he did not provide a complete set of all the checks issued.  The Examiner and RSR attempted to analyze the cash transactions for both the Debtor and his spouse over the period 2018 through 2021, year to date based on the bank statements received.  This process would be helpful in creating a picture as to how the Debtor and spouse historically maintained their lifestyle.

In conjunction with this analysis, RSR developed a database in excel that captured all the banking transactions for the accounts owned by both Debtor and his spouse over the period 2018 through 2021 year to date.  The database included over 2,200 transactions including deposits, disbursements and intrabank transfers for 10 bank accounts maintained at three banks.  The bank statements analyzed included accounts held at JP Morgan Chase, Capital One and Preferred Bank.  The database did not include the Debtor's spouse's retirement account maintained at Merrill Lynch or the Debtor's loan accounts at Preferred Bank.  The retirement account included

investments in mutual funds and the activity appeared to be mainly investment income.  The balance in the account ranged from $150,000 to $205,000 throughout 2020 and 2021.

RSR extracted data from the bank statements that included date and dollar amount of each transaction, account name and number, and limited descriptions of certain transactions.  Since the data was obtained from bank statements and not the cancelled check, wire transfer or ACH confirmation or deposit slips, in most cases, the payee or payor information was limited.  Many of the wire transfer transactions listed on the bank statements did include payee and payor names in most cases.

The Examiner requested additional banking information such as copies of cancelled checks, deposit slips and wire and ACH transfer information for every bank account of the Debtor, his spouse, trusts and affiliated interests.  With respect to the Debtor and spouse's bank accounts, the Debtor did not provide a complete set of copies of cancelled checks, deposit slips and wire and ACH transfers relating to the bank statement periods.   In situations where cancelled checks and deposits were provided for two of the Debtor's accounts at Chase and his spouse's account at Capital One Bank, there appeared to be gaps in checks missing.  As a result, there remain many transactions reported on both the Debtor and spouse's bank statements that cannot be explained without further discovery procedures.  Accordingly, the Examiner's analysis and observations are subject to change.

The bank statement database has provided a useful tool for analyzing the Debtor and spouse's flow of funds and historical transactions and assisted in comparing certain transactions in QuickBooks to the bank statements.  As part of the analysis, RSR selected an initial scope of

transactions greater than $10,000.  This provided an initial test basis for examining transactions at a higher threshold.  The data base was then sorted by accounts owned by the Debtor, owned by the Debtor's spouse and owned jointly by both Debtor and spouse.  The data base was adjusted to meet the parameters of the $10,000 transaction threshold.  Through these initial efforts, RSR identified certain transactions that provided a trail for certain items recorded in the Debtor's affiliates' books and has also raised additional questions.  Moreover, the Examiner and RSR identified some names and transactions that might merit further investigation.

Following are some preliminary observations of transactions identified in the Debtor, spouse and joint bank accounts.  This following is not intended to capture all of the transactions that would warrant further analysis.  In most cases, the Examiner and RSR was not provided a complete set (or any) of cancelled checks, deposit support and wire transfer confirmations.  The bank statements provided limited descriptions on wire transfers.   As result, additional information needs to be obtained from the Debtor and additional work still needs to be performed on this analysis.

1.  **Debtor's Bank Account Activity Highlights**

   *CapitalOne Bank (#7169) – closed 7/9/20*

- Five deposits in the CapitalOne account were received from GTJ Realty LP totaling approximately $1.9 million received during 2018 and January 2019 would appear to support the fact that the Debtor's income was receiving distributions of approximately $2 million annually.  After the Debtor obtained financing from Zee Bridge Capital later in 2019, distributions from the GTJ Realty totaling over $1.35 million were made to the Debtor's spouse's individual account at CapitalOne Bank (#6264) during the period

October 2019 through April 2020.  These distributions were paid by an affiliate of Zee Bridge Capital as part of the lending arrangement.

- Several deposits were noted from WUMAC Inc, and a business affiliate of the Debtor in which the Debtor owns 50% of the entity.  Deposit amounts varied at times and ranging in amount from $120,000 to $200,000.

- A wire transfer deposit from Katherine Wu payment of $70k was made on March 31, 2020.  As noted, Katherine Wu is a sister of the Debtor.  The Debtor stated that Katherine Wu advanced the Debtor these funds in connection with the purchase that the Debtor made for personal protection equipment for his supermarket interests.  The Debtor said the stores were low on cash and he had no other alternative sources for funds to pay for the items.  Subsequently, Hong Kong Distribution Corporation paid back Katherine. Wu for her initial advance.  The Examiner identified four installment payments, totaling $60,012, paid out of Hong Kong Distribution Corporation between July 15, 2020 and October 15, 2020 (during the Debtor's post-petition period).  These repayments were reflected as distributions for the benefit of the Debtor on the books of Hong Kong Distribution Corporation.  The Examiner requested from the Debtor all supporting documentation relating to the initial receipt and repayment these transactions.  The Debtor stated no formal written arrangement or documentation with Katherine Wu existed.

### _Preferred Bank (#0122)_

- Four deposits totaling approximately $3.55 million was deposited in the CapitalOne account over the period November 2018 through April 2019.  The Examiner understands

these deposits reflected the proceeds from the sale of four CVS stores owned by one of the Debtor's business affiliates, 130 Bowery, LLC.

- The Examiner noted many transactions in the CapitalOne account #7169 and Preferred Bank account #0122 that appeared to be transfers to and from the Debtor's business affiliates, including Hong Kong Distribution Corporation, Super HK HG LLC and other supermarket investments.  Further, there were several transactions with entities and individuals that may warrant further review.  At this point there is insufficient information to determine what these payments are for.


2. **Spouse's Bank Account Activity Highlights**

   *CapitalOne Bank (#6264)*

- A series of wire transfers from Hong Kong Distribution Corporation, a wholly owned entity of the Debtor, totaling $286,100 were deposited into the Debtor's spouse's account #6264 during the period August 7, 2020 through April 20,2021.  These transfers were recorded as distributions related to the Debtor on the books of Hong Kong Distribution Corporation.  On July 9, 2020, the day after the petition date, the Debtor's spouse wired $110,000 from her bank account #6264 to Hong Kong Distribution Corporation and this transaction was reflected as a distribution for the Debtor on the books of this entity.  Further, On July 8, 2020, the petition date, a $110,000 wire was deposited into the same spouse's bank account (#6264).  The source of that wire came from WUMAC, Inc., an entity owned 50% by the Debtor and 50% by an unrelated third party (the Debtor's spouse has no ownership interest).  The Examiner understands these transactions were not previously disclosed through any of the Debtor's filings.

- As discussed above, during the period October 2019 through April 2020, deposits totaling approximately $1.35 million were made to this account representing distributions from GTJ Realty, entity affiliated with the REIT investment.

- Many of the transactions appeared to relate to monthly credit card, mortgage and real estate tax payments.

### JP Morgan Chase Bank (acct #7710)

- On November 1, 2019, the Debtor's spouse transferred $70,000 to the account of Super HK of El Monte, Inc., a business affiliate of the Debtor.

- Several transfers were noted to the bank accounts owned by the Debtor's (account #4800) and spouse's (account #4883) individual irrevocable insurance trusts during the period 2018 through March 2021.

- Other payments related to monthly credit card payments.

### 3.  Debtor's Business Affiliates and the Trusts

The Debtor has provided bank statements for many of the Debtor's business affiliates and some related bank documents (i.e., cancelled checks, deposit slips).  Based on timing of this preliminary report, the Examiner has elected to initially analyze the personal bank account information for the Debtor and his spouse.  The Examiner will evaluate the next steps as it relates to the affiliates' bank statements.  With respect to the trusts, the Examiner and RSR have reviewed and analyzed the bank statements for the Wu Family 2012 Trust and the Jeffrey Wu Irrevocable Insurance Trust.  The results of that analysis are included in the sections that discuss both trusts within this report.

## VI.    OTHER

### A.  IRS Audit 2015 – 2017

The Debtor provided a copy of an Internal Revenue Service Report of Income Tax Examination Changes (Form 4549-A) relating to the adjustments to the Debtor and spouses joint personal income tax return for the years 2015 through 2017.  The Debtor also provided related correspondence from his tax attorney from the law firm, DLA Piper, that is representing the Debtor in this matter.  The Form 4549-A disclosed additional income taxes and penalties and other and interest through October 2020 assessed by the IRS totaling approximately $14.4 million.  The Examiner briefly reviewed the documents related to this matter, however, has not yet spent considerable time evaluating its impact on the Examination.

### Other Parties (Brother; siblings)

The Examiner identified at least two siblings of the Debtor that were involved in the Debtor's business operations and his personal financial matters.  One party was Katherine Wu, the Debtor's sister, who has been involved in transactions with the Debtor and his affiliated business interests over the past two years.  Some of those transactions identified to date have been discussed previously in this report. The Examiner has not completed a review of all the bank activity for all the Debtor's business affiliates.  As a result, further work needs to be performed in this area.

Another sibling of the Debtor that has been involved in the Debtor's business operations and his personal financial matters is Lewis Wu.  Lewis Wu is the Debtor's brother and has actively been involved with the operations of at least one of the Debtor's supermarkets.  Lewis Wu is also a trustee of both the Jeffrey Wu Irrevocable Insurance Trust and the Veronica Wu

Irrevocable Insurance Trust.  Lewis Wu had responsibility for making payments for premiums and usage of funds for both insurance trusts.  The Examiner has not yet interviewed Lewis Wu relating to his involvement with the business entities, the insurance trusts or any other financial matters involving the Debtor.

The Examiner identified a loan account reflected on the books of one of the Debtor's business entities, Hong Kong Supermarket of Hester Street in the amount of $209,400.  The title of the account was "loan to lewis".  The Debtor stated that this related to Lewis Wu.  The account was reflected as an asset on the balance sheet of the Hester Street entity.    That would indicate that funds or assets were transferred out of this entity to Lewis Wu.

In response to the Examiner requesting an explanation and support for this loan balance, the Debtor provided two documents:  a 1099-Misc. – Miscellaneous Income tax reporting form and two purchase orders, without a company name and handwritten notations that were difficult to discern the relationship with the transaction.  The 1099-Misc. form indicated total income reported as $144,000.  What was further confusing was the fact that the entries reported in the entity's QuickBooks files indicated that there was no cash paid out relating to this loan account. Rather, the entries appeared to be "non cash" impacting sales.   After further review of the cash accounts in the QuickBooks files, the Examiner did not identify any cash payments made to Lewis Wu from the Hester Street bank accounts.   Amounts reported on form 1099-Misc. generally represent cash paid to recipients during a given year.  The Examiner has requested the Debtor to further explain the transactions with Lewis Wu and has yet to receive a response.

The Examiner has not completed a review of all the bank activity for all the Debtor's business affiliates.  As a result, further work needs to be performed relating to transactions with Lewis Wu.

**Dated:** **September 7, 2021**
       **Massapequa, New York**

                    **Respectfully submitted,**

                    */s/ **Robert S. Rosenfeld***

                    _____
                    **Robert S. Rosenfeld**
                    *Examiner*

                    **RSR CONSULTING, LLC**

                    **49 Roy Avenue**
                    **Massapequa, New York, 11758**
                    **Tel:  516-308-3505**
                    **rsrosenfeld@rsrconsultingllc.com**

**VII.    EXHIBITS**

    **A.  Document Tracker**

    **B.  Broderick Responses to UST Questions**

    **C.  Chart of UST Questions / Broderick Responses / RSR Comments**

    **D.  Master Business Entity Organizational Chart**

    **E.  Business Entity Sub-Organizational Charts (prepared by Debtor)**

    **F.  Business Entity Key Information**

    **G.  REIT Distributions**

    **H.  Distribution Account Analysis**

    **I.  2012 Gift Tax Return**

    **J.  Family Trust Beneficiary Acknowledgement Letter**

    **K.  Family Trust Activity 2013 – March 2021**

    **L.  Greenfest Letter Re: No Interaction with Debtor**

    **M. Family Trust Bank Account Activity**

    **N.  Summary of Bank Information Received to Date**

# Exhibit A

## JEFFREY WU (MYINT KYAW) - Case No. 820-72407-REG
## PRELIMINARY DOCUMENT REQUEST LIST
## 8/23/2021

| # | Information Request | Date Requested | Date Received | Status/Comments |
|---|---|---|---|---|
| Note: | *Please note that the following represents a preliminary information request and subsequent requests may be made after a review of the information received* | | | |
| | *Please provide all information requested in electronic format (excel where available)* | | | |
| | | | | |
| **Jeffrey Wu, Debtor** | | | | |
| 1 | All Rule 2015.3 reports prepared for the Debtor or affiliated Debtors' cases since petition date(s) (or if not yet filed or prepared, the information required to be provided in the official form) | 6/25/21 | | |
| 2 | Any available appraisals for real estate and personal property (Art, jewelry, furniture, etc.) | 6/25/21 | 7/1/21 | We've received home appraisal, no other appraisals are available |
| 3 | A list of all personal property (Art, jewelry, furniture, etc.) | 6/25/21 | | |
| 4 | A list of bank accounts (active and inactive) maintained by the debtor and all bank statements related to those accounts for post petition and for 2 years prior to bankruptcy filing. Please include statements on all electronic wallets if available (PayPal, Venmo, etc.). Detailed receipts and disbursement registers including the payee and payor for all transactions (Wire, ACH, etc.). Also, all canceled checks, deposits, reconciliations, and checkbook registers | 7/2/21 | 8/9/21 | Received Bank Statements Chase Acct #7978, 9050 Jan 2018-Jun 2021 Received Quarterly  Investment Reports Etrade Acct#7916 Sep 2018-Jun 2021 Loan Activity Statement Acct# 0929,0849 Time Deposit Activity Statement Acct # 6667,5911 Jan 2019 - July 2021  Acct# 9050 Copies of Deposits June 2018- July 2021 Acct #7978 Copies of Checks Mar 2021- Apr 2021, Jun 2020-Feb 2021, May 2021-July 2021 Acct # 7978 Copies of Deposits |
| 5 | All investments reports - by month, for post petition and for 2 years prior to filing, received from brokers or investment managers (Merrill Lynch 401k, etc.) | 7/2/21 | 7/16/21 | Received all investment reports from  January 2018 - June 2021 for Merrill Lynch CMAM acct 58s-17B26 Received all investment reports from January 2018 - June 2021 for Merrill Lynch IRRA acct 852-16241 Received investment reports from Jan 2018-Feb 2019 for Merrill Lynch IRRA 852-61143 Received investment reports from jan 2018-Jun 2021 for TD Ameritrade 865-686938 |

**JEFFREY WU (MYINT KYAW) - Case No. 820-72407-REG**
**PRELIMINARY DOCUMENT REQUEST LIST**
**8/23/2021**

| # | Information Request | Date Requested | Date Received | Status/Comments |
|---|---|---|---|---|
| 6 | Federal, state and local income tax returns for all jurisdictions for past 6 years prior to the filing and any post petition filings including all forms and schedules and all supporting reports used in the preparation of returns | 7/2/21 | 7/7/2021 7/14/2021 | Received 2014-2019 Federal Tax Returns, Received 2014-2019 State Tax Returns |
| 7 | Provide detailed support for all claimed and unclaimed tax refunds anticipated by the Debtor | 7/2/21 | 8/4/21 | Received State of Massachussets, Alabama, Maryland and New Jersey Income Tax refunds. |
| 8 | Sources and uses of funds over the last 5 years pre bankruptcy to date, rolling forward from asset balances to bankruptcy date | 7/2/21 | | |
| 9 | Copies of all life insurance policies and most recent annual policy statements (Minnesota Life and any other active policies) | 7/2/21 | 7/19/21 | Life Insurance Schedule |
| 10 | Provide list of investments that are generating dividends stated in Part 3 of Official Form 107 | 7/2/21 | 7/19/21 | Related to business interests or GTJ |
| 11 | Details surrounding the claims against Bluestone Capital/Madison Capital. Description of claims, values, and documents evidencing this obligations | 7/2/21 | 7/19/21 | Forbearance Agreement - Exhibit C - Parcel II Deed and Escrow deeds Consolidated Mortgage Consolidated Note Mezzanine Loan agreement and Promissory Note Refinance Settlement Statement for Land and Mezz WT Deed Transfer from Wu Towers, LLC to Wu commercial Owner LLC |
| 12 | List all parties who have an ownership interest in the 60 Overlook Road property as identified in Schedule A/B | 7/2/21 | N/A | Debtor Jeffrey Wu, as stated in Schedule A/B, is the sole owner of the land and structures located at 60 Overlook Road, Lattingtown, NY 11560. |
| 13 | Copies of investment and/or bank statements where funds are held for post petition period and 2 years prior to bankruptcy filing | 7/2/21 | N/A | See bank statements and investment reports on #4 and #5. |
| 14 | Where does the Debtor conduct business affairs? Is there a home office? | 7/2/21 | 6/30/21 | 133-38 Sanford Avenue PHB (Real Estate) and PHA (Supermarkets), covid working from home. |

<table>
<tr><td colspan="5" align="center"><strong>JEFFREY WU (MYINT KYAW) - Case No. 820-72407-REG</strong><br><strong>PRELIMINARY DOCUMENT REQUEST LIST</strong><br><strong>8/23/2021</strong></td></tr>
</table>

| # | Information Request | Date Requested | Date Received | Status/Comments |
|---|---|---|---|---|
| 15 | Copies of settlement agreements (subject to Court approval) or settlement terms being discussed with each creditor | 7/2/21 | 7/19/21 7/19/21 | Bluestone Draft Settlement Agreement Harary Group Executed Settlement<br><br>Marc Pergament emailed Harary Group Settlement. Only executed personal settlement agreement.<br><br>Other agreements (Bluestone, Haymarket, etc.) are under process. Bluestone agreement was drafted and is being finalized. |
| 16 | Provide personal financial statements that have been issued for Debtor over the last 5 years | 7/2/21 | 8/12/21 | |
| | | | | |
| **Veronica Wu, Spouse** | | | | |
| 1 | A list of bank accounts (active and inactive) maintained by the debtor and all bank statements related to those accounts for post petition and for 2 years prior to bankruptcy filing. Please include statements on all electronic wallets if available (PayPal, Venmo, etc.). Detailed receipts and disbursement registers including the payee and payor for all transactions (Wire, ACH, etc.). Also, all canceled checks, deposits, reconciliations, and checkbook registers | 7/2/21 | 8/9/21 | Bank Statements V. Wu Capital One Acct # 6264  7/2018-5/2021 Bank Statements V. Wu Chase Acct # 7710, 7000 7/2018-6/2021 Mar 2018-July 2021 Chase Acct #7710 Copies of Checks July 2019-July 2021 Chase Acct #7710 Copies of Deposits |
| 2 | A list of all personal property (Real Estate, art, jewelry, furniture, etc.) that is separate from the Debtor | 7/2/21 | | |
| 3 | All investment reports - by month, for post petition and for 2 years prior to filing, received from brokers or investment managers | 7/2/21 | 7/16/21 | Received investment reports from Mar 2018-Jun 2021 for Merrill Lynch IRRA 852-61143 |
| 4 | Federal, state and local income tax returns for all jurisdictions for past 6 years prior to the filing and any post petition filings including all forms and schedules and all supporting reports used in the preparation of returns, if separate from Debtors | 7/2/21 | | Complete / RSR reviewing information received for completeness |
| | | | | |
| **Business Interests** | | | | |

## JEFFREY WU (MYINT KYAW) - Case No. 820-72407-REG
## PRELIMINARY DOCUMENT REQUEST LIST
## 8/23/2021

| # | Information Request | Date Requested | Date Received | Status/Comments |
|---|---|---|---|---|
| 1 | Provide any additional entities that may have been excluded on the list (active and inactive) | 6/25/21 | 7/29/21 | Active list provided |
| 2 | An organization chart showing the Debtor's ownership interest in all entities in which the Debtor has an interest or controls either directly or indirectly in owned or partially owned entities or assets. The organization chart should demonstrate how all the businesses roll up/relate to each other through ownership interest. State the income for each individual business. | 6/25/21 | | Org Chart, to update chart to include inactive entities |
| 3 | Partnership/LLC Operating Agreements/Articles of Incorporation, or any corporate formation documents for both active and inactive entities | 6/25/21 | | Refer to Business Interest Request List Tab for the information on provided documentation |
| 4 | Organization documents -filings with Secretary of State; list where and when organized | 7/2/21 | | Refer to Business Interest Request List Tab for the information on provided documentation |
| 5 | Tax returns for past 3 years and all supporting financial reports used in preparation of returns | 7/2/21 | | Refer to Business Interest Request List Tab for the information on provided documentation |
| 6 | Any financial information (monthly and annual) including audited or unaudited financial statements or internally prepared reports (P&L, Balance Sheet, Cash Flow, Budget/Projections, etc.) of each entity's performance for 2021 YTD and prior 3 years | 6/25/21 | | |
| 7 | A list of bank accounts (active and inactive) maintained by each entity and all bank statements related to those accounts for post petition and for 2 years prior to bankruptcy filing. Please include statements on all electronic wallets if available (PayPal, Venmo, etc.). Detailed receipts and disbursement registers including the payee and payor for all transactions (Wire, ACH, etc.). Also, all canceled checks, deposits, reconciliations, and checkbook registers | 7/2/21 | 7/19/2021 | Provided Bank Statements and Bank Ledgers for various entities. More still need to be provided, delay is a result of waiting for statements from bank.

RSR is still reviewing documents for completeness |
| 8 | Valuation reports or indications of value on the entity's assets over the past 3 years | 7/2/21 | 7/16/21 | Complete / RSR reviewing information received for completeness |
| 9 | General Ledger | 7/2/21 | 7/19/2021 8/9/2021 | QuickBooks files |
| 10 | Most recent payroll register | 7/2/21 | 7/13/21 | Refer to Business Interest Request List Tab for the information on provided documentation |

| | | Date | Date | |
|---|---|---|---|---|

<table>
<tr><td colspan="5" align="center">**JEFFREY WU (MYINT KYAW) - Case No. 820-72407-REG**<br>**PRELIMINARY DOCUMENT REQUEST LIST**<br>**8/23/2021**</td></tr>
<tr><td>#</td><td>Information Request</td><td>Date Requested</td><td>Date Received</td><td>Status/Comments</td></tr>
<tr><td>11</td><td>Provide the accounting software used for each entity</td><td>7/2/21</td><td>7/13/21</td><td>Provided name of software</td></tr>
<tr><td>12</td><td>Managers of each entity (Key personnel org chart)</td><td>7/2/21</td><td>7/30/21</td><td>Complete / RSR reviewing information received for completeness</td></tr>
<tr><td>13</td><td>Any financial analysis prepared by third party advisors that was made available to the company for the last 3 years</td><td>7/2/21</td><td>N/A</td><td>No Third Parties were hired to prepare financial analysis for any company's (excluding appraisals).</td></tr>
<tr><td>14</td><td>All documentation (i.e., letters of intent /offers/correspondence) received from buyers related to purchasing the entire business or specific assets of the business</td><td>7/2/21</td><td>N/A</td><td>No LOIs/Offers received from interested third-party purchasers.</td></tr>
<tr><td>15</td><td>All information memorandum(s), valuations(s) or other descriptive memoranda/presentations prepared in connection with a sale or financing transaction over the past 3 years</td><td>7/2/21</td><td></td><td>Sent memoranda / information related to mortgage brokers and refinances.</td></tr>
<tr><td>16</td><td>Presentations made to existing or potential investors post petition and over the 2 years prior to filing for bankruptcy</td><td>7/2/21</td><td>N/A</td><td>No presentations were made for any entities.</td></tr>
<tr><td>17</td><td>Detailed asset listing by type, including but not limited to current assets, PPE, intangible assets, and other assets</td><td>7/2/21</td><td></td><td></td></tr>
<tr><td>18</td><td>Debt /collateral chart for all assets</td><td>7/2/21</td><td></td><td></td></tr>
<tr><td>19</td><td>Listing of transfers made between Debtor and his business interests as well as transfer between each of the entities for the post petition period and the 2 years prior to bankruptcy filing</td><td>7/2/21</td><td></td><td></td></tr>
<tr><td>20</td><td>Copies of settlement agreements (subject to Court approval) or settlement terms being discussed with each creditor</td><td>7/2/21</td><td>N/A</td><td>Complete / RSR reviewing information received for completeness</td></tr>
<tr><td>21</td><td>Schedule of all liens outstanding by property</td><td>7/2/21</td><td>N/A</td><td>Per debtor all is in the petition</td></tr>
<tr><td>22</td><td>Monthly statements for the investment in the REIT for the post petition period and the two years prior to bankruptcy and a listing of cash distributions being withheld relating to REIT at the VWU888 LLC entity by Zee Bridge Capital</td><td>7/2/21</td><td>07/19/21<br><br>07/18/21</td><td>Complete / RSR reviewing information received for completeness</td></tr>
<tr><td>23</td><td>Provide all documentation provided for any PPP Loan applied for each business interest</td><td>7/2/21</td><td>7/19/21</td><td>Complete / RSR reviewing information received for completeness</td></tr>
<tr><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td colspan="5"><u>**Trusts**</u></td></tr>
</table>

**JEFFREY WU (MYINT KYAW) - Case No. 820-72407-REG**

**PRELIMINARY DOCUMENT REQUEST LIST**

**8/23/2021**

| # | Information Request | Date Requested | Date Received | Status/Comments |
|---|---|---|---|---|
| 1 | All financial information including financial statements or internally prepared reports (P&L, Balance Sheet, Cash Flow, etc.), for each Trust in the prior 6 years | 7/2/21 | | 2015-2021 Bank & Tax statements for each trust |
| 2 | All Trust brokerage and investment advisor statements and tax filings from the prior 6 years | 7/2/21 | 7/7/21 | Tax returns 2013-2019 for Fed and State for Gift Trust, GTJ 2014-2019 K1s, LH 100 2013-2014 K-1s, Lighthouse 100 William 2013-2014 K-1s, GTJ 2017 Fed Tax Return |
| 3 | All supporting reports used in the preparation of tax returns for the Trusts | 7/2/21 | N/A | None available by preparer Anchin, Block, Anchin. |
| 4 | Report of all receipts and disbursements detailing contributions, withdrawals, and purpose of withdrawals for the last 6 years (if any) | 7/2/21 | 7/6/21 | 2014-2019 analysis |
| 5 | Signed Distribution Request Letter | 7/15/21 | 7/16/21 | Complete / RSR reviewing information received for completeness |
| | | | | |
| **Follow Up Requests 7/15** | | | | |
| **REIT** | | | | |
| 1 | Documents related to purchase of LH Properties & 100 William Street (2001); and transfer to REIT | 7/15/21 | | |
| 2 | Documentation of agreement to hire / partner with Lighthouse (Paul Cooper / Louis Schienker) to manage the property | 7/15/21 | | |
| 3 | Documentation of the Sale of 100 Willian Street property to [Mitsui?] and 1031 exchange to purchase the Baker Portfolio | 7/15/21 | | |
| 4 | Explanation / documentation re: the ownership structure / entities involved & Jeffrey Wu's interest in each: Lighthouse 100 William II LLC, LH 100II LLC, GTJ Realty LP | 7/15/21 | | |
| 5 | Partnership/Operating Agreement for LH Properties | 7/15/21 | | |
| 6 | Partnership/Operating Agreement for GTJ Realty LP | 7/15/21 | | |
| | | | | |
| **Follow Up Requests** | | | | |
| 1 | Form 4549 - IRS Audit Findings | 7/15/21 | 8/8/21 | Received and updloaded secong tax form 4549 |

| | JEFFREY WU (MYINT KYAW) - Case No. 820-72407-REG |
|---|---|
| | PRELIMINARY DOCUMENT REQUEST LIST |
| | 8/23/2021 |

| # | Information Request | Date Requested | Date Received | Status/Comments |
|---|---|---|---|---|
| 2 | Contact information for Twanmoh, Peng & Assoc, CPAS, Inc., do they perform any other services for any other entities? | 7/15/21 | 7/19/2021 7/26/2021 | Complete / RSR reviewing information received for completeness |
| 3 | Closing documentation for all inactive entities, including any closing statements indicating the transfers of funds | 7/15/21 | 8/11/21 | Lucky Star Elmurst, HKS of Brooklyn, and Wu & Sons Realty Final Tax Return provided |
| 4 | QuickBooks software files for all entities: Real Estate, Supermarkets, and any others | 7/15/21 | | Refer to Business Interest Request List Tab for the information on provided documentation |
| 5 | Chronology/background for Debtor and his interests to be prepared by M. Pergament | 7/15/21 | | |
| 6 | Home insurance policy | 7/15/21 | 7/19/2021 8/10/2021 | Chubb policy overview Chubb policy renewal statement |
| 7 | Historical intercompany activity for all companies to be prepared by Richard Tang | 7/15/21 | | |
| 8 | Summary of Life Insurance Trust cash activity | 7/15/21 | | |
| 9 | List of tenants/rent roll report for both the Flushing Landmark building located at 41-60 Main Street in Flushing and the Lucky Star-Deer Park property located at 377 Carlls Path in Deer Park | 7/21/21 | 7/25/21 | Rent Roll for Lucky Star and Flushing Landmark for 6/01/2021 |
| 10 | List of tenants / rent roll for Victoria Towers. If unavailable a list of maintenance / common charge payments from the owners of the sold units | 7/21/21 | 7/26/21 | Complete / RSR reviewing information received for completeness |
| 11 | Provide list of all 49 unsold units (or all 99 units) in Victoria Towers with sq feet for each unit | 7/22/21 | 7/26/21 | List of Victoria Towers unsold units as of 2.19.21 |
| 12 | Crown Mansion LLC 2018 tax return labeled as red X on debtor information checklist. No file was found in Sharefile. | 7/23/2021 | 7/25/21 | Received Crown Mansion LLC 2018 Tax Return 7/23/2021 |
| 13 | Why was Hong Kong Supermarket of Massachusetts LLC dissolved / final tax returns filed in 2020 ? | 7/23/2021 | 7/26/2021 | Complete / RSR reviewing information received for completeness |

<table>
<tr><td colspan="5" align="center"><strong>JEFFREY WU (MYINT KYAW) - Case No. 820-72407-REG<br>PRELIMINARY DOCUMENT REQUEST LIST<br>8/23/2021</strong></td></tr>
<tr><th>#</th><th>Information Request</th><th>Date Requested</th><th>Date Received</th><th>Status/Comments</th></tr>
<tr><td>14</td><td>Are subsidiaries Hong Kong Supermarket of Allston LLC & Hong Kong Supermarket of Malden LLC still active and does Jeffrey now hold the interests in those entities directly (47.9% of Allston and 44% of Malden).  Both are still listed as active on Entities Chart prepared by JJ.</td><td>7/23/2021</td><td>7/26/2021</td><td>Complete / RSR reviewing information received for completeness</td></tr>
<tr><td>15</td><td>Documentation for transfer of Wu Towers interest / property to 41-60 Main Street LLC in exchange of reduction in debt.</td><td>7/23/2021</td><td>7/25/2021</td><td>Complete / RSR reviewing information received for completeness</td></tr>
<tr><td>16</td><td>Copy of Lease and Mortgage for 130 Bowery LLC property in Jacksonville FL (leased to CVS).</td><td>7/23/2021</td><td>7/25/2021</td><td>Lease and Restated Mortgage for 130 Bowery LLC</td></tr>
<tr><td>17</td><td>Explanation of the $1.3 million "Due to Tenant – Sec. 467" on the 130 Bowery 2020 Federal Tax Return.</td><td>7/23/2021</td><td>7/26/2021</td><td>Complete / RSR reviewing information received for completeness</td></tr>
<tr><td>18</td><td>Explanation of "Repayment of Loan" and "Farm Springs" line items in GTJ realty LP Distribution spreadsheet.</td><td>7/23/2021</td><td>7/26/2021</td><td>Complete / RSR reviewing information received for completeness</td></tr>
<tr><td>19</td><td>Discovery documents Debtor provided in Haray litigation</td><td>7/26/2021</td><td>7/26/2021</td><td>Complete</td></tr>
<tr><td>20</td><td>Wu Family Trust support as to disposition of college related distributions; copies of proof of payment to college and bank statements</td><td>7/26/2021</td><td>8/6/2021</td><td>Discover student loan payment</td></tr>
</table>

<table>
<tr><td colspan="5" style="text-align:center"><strong>JEFFREY WU (MYINT KYAW) - Case No. 820-72407-REG<br>PRELIMINARY DOCUMENT REQUEST LIST<br>8/23/2021</strong></td></tr>
</table>

| # | Information Request | Date Requested | Date Received | Status/Comments |
|---|---|---|---|---|
| 21 | Additional color on payment made by Lewis Wu for insurance; in response to UST assertion that Lewis Wu made payment for Debtor's life insurance ($24k) | 7/26/2021 | N/A | Complete / RSR reviewing information received for completeness |
| 22 | What is Lewis Wu's involvement in the businsess? | 7/26/2021 | N/A | Complete / RSR reviewing information received for completeness |
| 23 | Year to date payroll register for Hester Street. We are looking for payroll for Lewis Wu. | 7/28/2021 | | RSR reviewing documentation provided |
| 24 | Premium notices for the life insurance policies | 7/28/2021 | | |
| 25 | Copy of Lease Agreement between Queen Elizabeth Realty Corp. and Hong Kong Supermarket of Hester Street Corp. | 7/28/2021 | 7/30/2021 | Complete / RSR reviewing information received for completeness |
| 26 | Information regarding the transfer of 28,572 unencumbered shares of GTJ REIT, Inc. by the Borrower Entities also referred to in the February 2019 forbearance agreement. Does Jeffrey hold any interest in the public REIT (rather than just the LLC). | 7/28/2021 | 7/28/2021 | Complete / RSR reviewing information received for completeness |
| 27 | Please provide details on entity SCP E2004-020 LLC, as stated on the lease provided for 130 Bowery. | 7/28/2021 | 7/28/2021 | RSR reviewing documentation provided |
| 28 | Bank Statements for Signature Bank ending 5191, 9286, 9294 (Family Trust Accounts) for December 2012 - December 2014 and April 2021 - June 2021. | 7/28/2021 | 7/30/2021,8 | Received Jan-June 2021 statements for accounts 9294 and 9286 |
| 29 | 2012 gift tax return (Form 709) | 7/30/2021 | 8/2/2021 | Received form 709 Gift Tax Return |
| 30 | The December MORs for Lucky Star, Victoria Towers, and Flushing Landmark are missing the Statements of Operation and Balanse Sheets. Are copies of the MOR available with these items? | 7/30/2021 | N/A | Complete / RSR reviewing information received for completeness |

<table>
<tr><td colspan="5" align="center">**JEFFREY WU (MYINT KYAW) - Case No. 820-72407-REG**<br>**PRELIMINARY DOCUMENT REQUEST LIST**<br>**8/23/2021**</td></tr>
</table>

| # | Information Request | Date Requested | Date Received | Status/Comments |
|---|---|---|---|---|
| 31 | February MOR for Flushing Landmark has January numbers instead. Are February figures available? | 7/30/2021 | | |
| 32 | Per HK Supermarket Hester Street, there are $209,400 in Loan to Lewis account, can you please give additional color on the details of these loans? | 7/30/2021 | N/A | Complete / RSR reviewing information received for completeness |
| 33 | Additional color on Wu Landmark Corp./ how and when ownership transferred to Flushing Landmark Mezz in 2017 | 7/30/2021 | N/A | Complete / RSR reviewing information received for completeness |
| 34 | For Account ending #9286, the first bank statement you sent started with April 16, 2013. Is that the date the account was opened? Since the Trust was started in December 2012, was there no account activity from December 2012 to April 15, 2013? | 8/1/2021 | N/A | Complete / RSR reviewing information received for completeness |
| 35 | For Account ending #9286, only sent two bank statements for 2014: January 2014 & December 2014. Are statements for February 2014 through November 2014 available? | 8/1/2021 | N/A | Complete / RSR reviewing information received for completeness |
| 36 | Does 41-60 have a second mortgage? If so, can the documents be provided, or pointed to where it is in documents already provided | 8/2/2021 | N/A | Complete / RSR reviewing information received for completeness |

## JEFFREY WU (MYINT KYAW) - Case No. 820-72407-REG
## PRELIMINARY DOCUMENT REQUEST LIST
## 8/23/2021

| # | Information Request | Date Requested | Date Received | Status/Comments |
|---|---|---|---|---|
| 37 | Selection of questions from "Quickbooks Questions" tab | 8/2/2021 | | |
| 38 | A listing of salaries from all entities for all family members | 8/3/2021 | N/A | Complete / RSR reviewing information received for completeness |
| 39 | Background on why Form 709 does not have G. Greenfest as Trustee for the 2006 insurance trust. | 8/4/2021 | | Complete / RSR reviewing information received for completeness |
| 40 | In regards to the acquisitions of the 5 CVS properties please list the year acquired, the locations, and year(s) of subsequent sales of the 4 properties | 8/4/2021 | | Complete / RSR reviewing information received for completeness |
| 41 | For 130 Bowery, the QuickBooks balance sheet shows no current assets or current liabilities. Were the CVS properties managed by another entity? | 8/4/2021 | | Complete / RSR reviewing information received for completeness |
| 42 | In regards to #6 above, the home insurance binder is not filled in. Please provide a schedule for the home and contents coverage | 8/5/2021 | | Complete / RSR reviewing information received for completeness |
| 43 | Hong Kong Distribution Corp related to two accounts: Personal Distributions and Corporate Distributions.  Please provide explanations and support for the items included on the schedules. | 8/6/2021 | | |
| 44 | Are any of the following entities related to the Debtor? These are not on the inactive list: Lucky Star Elmhurst LLC  (formed in 2006 in New York) Wu & Sons Realty Corp.( formed in 1987 in New York) Wu & Sons Trading Company (formed on 2/14/20 in Delaware) Hong Kong Supermarket, Inc. (formed in 1993 in New York) Hong Kong Supermarket of Main Street, Inc. (formed in 1997 in New York) Hong Kong Supermarket of Brooklyn, Inc. (formed in New York in 1994) HYK Properties LLC (formed in 2013 in New York) | 8/6/2021 | 8/11/2021 | Entities List |

| JEFFREY WU (MYINT KYAW) - Case No. 820-72407-REG |
|:---:|
| **PRELIMINARY DOCUMENT REQUEST LIST** |
| **8/23/2021** |

| # | Information Request | Date Requested | Date Received | Status/Comments |
|---|---|---|---|---|
| 45 | I noticed the attached documents uploaded to ShareFile this week saved under the "Lewis Wu Loan Account" folder.  The documents included in the folder was a 2020 1099- Misc tax form that indicated issued to Lewis Wu from HK Supermarket of Hester Street and 2 forms that looked like purchase orders with handwritten information on the forms.  The 1099 indicated that a payment or payments totaling $144,000 were made to Lewis Wu from Hester Street during 2020.  Can you explain what this loan account was for?  Are there any documents that support a loan being made to Lewis Wu?  Can you explain how the documents that appear to be purchase orders relate to this loan account? | 8/20/2021 |  |  |

# Exhibit B

# JOSEPH A. BRODERICK, P.C.

CERTIFIED PUBLIC ACCOUNTANT
734 WALT WHITMAN ROAD, SUITE 204
MELVILLE, NEW YORK 11747
TELEPHONE: (631) 462-1779
FACSIMILE: (631) 462-5594
E-MAIL: JABRODERICK2001@YAHOO.COM

July 7, 2021

Robert S. Rosenfeld
RSR Consulting, LLC
1330 Avenue of the Americas Suite 23A
New York, N.Y. 10019

Re: Jeffrey Wu

Dear Bob

On February 24, 2021, I was retained to assist the debtor in maintaining his books and records and to prepare the monthly operating reports. His in-house accountant Rick Tang was my contact with the debtor. Mr. Tang provided me with the documents necessary to prepare the monthly reports. The documents that he provided me were not audited or reviewed by me. I did not analyze the sharing of expenses between the debtor and his spouse or the allocation between interest and principal payments. I did not attempt to analyze the operating reports prepared by Mr. Tang as they were being amended. Attached to this letter are my responses to the UST MOR review. I have numbered each bullet point to coincide with my response. Keep in mind that the inter person adjustments were for the payments that they were jointly responsible for i.e., mortgages. At various times, the debtor or his spouse paid a joint invoice and the inter person account would be charged. The debtor's records do not reflect any cash payments to the spouse.

Sincerely,

Joseph A. Broderick
Certified Public Accountant

**Jeffrey Wu (Myint Kyaw-20-72407)**
**UST MOR Review**
**Periods: July 2020 through March 2021**

**Means Test issues noted:**
Means Test (disclosure statement ex. F, Form 122B) has $22,200.98 as gross wages, salary, etc. Means Test is not signed. Means Test (Form 122B, filed with the Court on 8/11/20, Document #33) signed on 8/11/20 has only $1,900 as Gross wages, salary, etc.

The following is a month-by-month review of the Jeffrey Wu (aka Myint Kyaw) ("the **Debtor**") filed monthly operating report ("**MOR**") for the periods July 2020 through March 2021, along with accompanying issues:

**July 2020**
**From Bank Statements for July 2020**
*1* • Chapter 11 Petition filed on July 8, 2020, but the Chase DIP accounts (checking and savings) had beginning balances as of July 1, 2020. Unclear if these are old accounts that just had the names changed. Debtor's books provided with the Amended July 2020 MOR seem to show that these are new accounts, but the bank statements say otherwise.
*2* • Debtor's Schedule A/B: Property lists 17. Deposits of money to be a Checking account with Chase for $2,400. The aggregate opening balances for the Chase account included in the January MOR exceeds that by approximately $5,300 (not including the $6,000 transfer from the Chase Savings account #9050 to an unknown Savings account #7145).
*3* • Missing bank statements for Preferred Bank CD Accounts #5911 and #6667.
*4* • Listing of all pre-petition accounts (personal and joint) not included to determine beginning balances.
*5* • Unclear if pre-petition accounts are sweeping incoming funds to the "new" DIP accounts.
*6* • Deposit for $2,471.33 on July 17, 2020 is marked as Net Worth in Debtor's books. Unclear if this was a paycheck or transfer of funds from another account that is not DIP.
*7* • Transfers to Unknown savings account #7145 ($7,500 in aggregate) not listed on bank statements provided with MOR.
*8* • Transfer to Ioc Hang Ip account for $2,973.00 for undetermined Household Expenses.

**From Statement of Operations and Balance Sheet for July 2020**
*?* • Distribution income of $7,605.69 was not reported on MOR with any bank statements filed.
*10* • Dividend Income of $694.40. Unclear as to which entity this dividend was paid from.
*11* • Interest income of $656.85 was not fully reported on MOR with any bank statements filed.
*12* • Salary - Gross - HKS of $3,800.00 was only reported on MOR bank statements to total $5,444.01 in aggregate ($2,471.33 from checking acct #7978 and $2,972.68 from savings acct #9050).
*13* • The following Operating Expenses were not reported on the MORs as disbursements and have no record of anyone else paying them for Jeffrey Wu:
  o Finance Charge of $564.89
  o Payroll Taxes for $827.32. Close to the 7.65% contribution for individual and 7.65% contribution for employer. Unclear why Debtor is paying both portions (individual and employer).
  o Professional Fees of $12,077.15. Unclear if this was applied to a retainer. Balance for the Professional Retainer on the balance sheet is $0.00 (same as last month).

Page **1** of **9**

*14* • Household Expenses of $3,273 do not match the $2,973.00 transferred to an account designated as the Ioc Hang Ip account.

*15* • The Debtor's balance sheet lists various entities for the Investment - Partnership (Schedule B) and Investment - Incorporated Companies (Schedule C). When compared to the various entities listed in the Debtor's Schedule A/B: Property on 19. Non-Publicly traded stock and interests in incorporated and unincorporated business, the following entities were missing:
  ○ Hong Kong Supermarket of Monterey Park Ltd.
  ○ GTJ Realty LP
  ○ New Enterprise Realty, LLC
  ○ Hong Kong Supermarket of Monrovia, Ltd.
  ○ Crown Mansion LLC
  ○ Hong Kong Management of Allston LLC

*16* • Due to Insiders - Spouse noted as $2,771.34 on the balance sheet.

*17* • Owner Equity is not broken out and is simply listed as T/B/D. These should have significant balances.

### Conclusion

Based on the inconsistent information presented by the Debtor in the MOR, the United States Trustee's Office is unable to confirm or verify the Debtor's actual monthly income, expenses, assets, or liabilities.

### August 2020

#### From Bank Statements for August 2020

*18* • Transfer to Jeffrey Wu Irrevocable Insurance for $1,400.00. Undetermined what policy this payment is for. 3 Life Insurance Policies are listed in line 31 of the Debtor's schedules (Minnesota Life, Lincoln Financial, Lincoln Financial - Term Policy). Only one has a surrender or refund value listed (Minnesota Life for $226,025).

#### From Statement of Operations and Balance Sheet for August 2020

*19* • Distribution income of $2,517.51 was not reported on MOR with any bank statements filed.

*20* • Interest income of $2,040.40 was not reported on MOR with any bank statements filed. Missing Preferred Bank bank statements. Matches Book documents included.

*21* • Salary - Gross HKS of $9,500.00 was only reported on MOR bank statements to total $7,475.45 in aggregate.

*22* • The following Operating Expenses were not reported on the MORs as disbursements and have no record of anyone else paying them for Jeffrey Wu:
  ○ Auto Insurance for $494.81
  ○ Payroll Taxes for $2,424.55. Unclear as to why Debtor paying more than individual and employer contributions for payroll taxes.
  ○ Interest Mortgage for $4,216.58. No mortgage payments were made this month.
  ○ Professional Fees of $9,494.10. Unclear if this was applied to a retainer. Balance for the Professional Retainer on the balance sheet is $0.00 (same as last month).

*23* • Balance sheet notes Due to Insiders -Spouse as $36,655.09.

*24* • Owner Equity is not broken out and is simply listed as T/B/D. These should have significant balances.

Page **2** of **9**

### September 2020

#### From Bank Statements for September 2020

- Transfer to Jeffrey Wu Irrevocable Insurance for $1,410.00 (see note for August 2020).
- No break-out for paychecks ($6,039.04 in aggregate). Amount is below the amount listed in schedule I ($8,233.33) or the amount listed in the amended schedule I ($8,170.00).

#### From Statement of Operations and Balance Sheet for September 2020

- Distribution income of $10,002.13 was not reported on MOR with any bank statements filed.
- Salary - Gross HKS of $7,600.00 was only reported on MOR bank statements to total $6,039.04 in aggregate.
- The following Operating Expenses were not reported on the MORs as disbursements and have no record of anyone else paying them for Jeffrey Wu:
  - Auto Insurance for $3,161.21
  - Finance Charge of $568.01
  - Home Owners Insurance for $2,447.98
  - Household Expenses for $886.59
  - Payroll Taxes for $1,560.96. Unclear as to why Debtor paying more than individual and employer contributions for payroll taxes.
  - Interest Mortgage for $580.71. No mortgage payments were made this month.
  - No Professional Fees were noted as being paid for September 2020.
- Balance sheet notes Due to Insiders -Spouse as $37,062.33.
- Owner Equity is not broken out and is simply listed as T/B/D. These should have significant balances.

#### *Conclusion*

Based on the inconsistent information presented by the Debtor in the MOR, the United States Trustee's Office is unable to confirm or verify the Debtor's actual monthly income, expenses, assets, or liabilities.

### October 2020

#### From Bank Statements for October 2020

- Salary for Oct 2020 was $7,548.80, in line with the $8,233.33 in schedule I or the amended schedule I amount of $8,170.00.
- Dividend Income of $694.40. Unclear as to which entity this dividend was paid from.
- The Debtor transferred $99.22 from his savings to his checking. Unclear as to the purpose of this in/out funds transfer.
- Transfer to Jeffrey Wu Irrevocable Insurance for $1,420.00 (see note for August 2020).
- $1,935 in aggregate for (PSEG) LIPA. Three different payments of $600 or more, unclear if these were related to multiple homes.
- Only two mortgage payments made, $11,000 for Home Mortgage 5752 and $1,062.55 for Home Mortgage 9807. Missing payment for Home Mortgage 8758. Unclear as to if someone else paid mortgage.

#### From Statement of Operations and Balance Sheet for October 2020

- Distribution income of $6,592.46 was not reported on MOR with any bank statements filed.

Exhibit A

36 • Salary - Gross HKS of $9,500.00 was only reported on MOR bank statements to total $7,548.80 in aggregate.

37 • The following Operating Expenses were not reported on the MORs as disbursements and have no record of anyone else paying them for Jeffrey Wu:
  - o Auto Insurance for $1,775.03
  - o Bank Charges for $13.25
  - o Finance Charge of $475.26
  - o Home Owners Insurance for $2,447.98
  - o Payroll Taxes for $1,951.20. Unclear as to why Debtor paying more than individual and employer contributions for payroll taxes.
  - o Interest Mortgage for $2,914.29. 24.2% of Mortgage payments made for October ($12,062.55).
  - o Professional Fees of $20,035.85. Unclear if this was applied to a retainer. Balance for the Professional Retainer on the balance sheet is $0.00 (same as last month).

38 • Balance sheet notes Due to Insiders -Spouse as $58,386.07.

39 • Owner Equity is not broken out and is simply listed as T/B/D. These should have significant balances.

### Conclusion

Based on the inconsistent information presented by the Debtor in the MOR, the United States Trustee's Office is unable to confirm or verify the Debtor's actual monthly income, expenses, assets, or liabilities.

### November 2020
#### From Bank Statements for November 2020

40 39 • $60,000 received from Isshindou Japanese Ramen Inc. (Ramen restaurant located in the Super 88 Market Food Court in Boston, MA). Marked on the balance sheet as Due to Insiders - Isshindou under Other Current Liabilities. We have no other information on this transaction. Unclear as to if this is a loan or if Debtor will he have to pay interest. Unclear as to how the entity is considered an "Insider". Unclear if the Debtor owns a stake in this restaurant.

41 40 • 2019 MD Tax Refund for $16,808. Unclear if this was for a joint tax return. It looks as though the Debtor only reported half of the amount on his Statement of Operations.

42 41 • Salary for Nov 2020 was $16,230.80, much higher than the $8,233.33 in schedule I or the amended schedule I amount of $8,170.00. Paychecks are coming from new income sources (Paycheck deposits under $900), and they account for the majority of this difference.

43 42 • Wife advanced $850.65 (5 deposits to Chase), not specified if it is a loan but it is probably part of the balance of $25,319.39 for Due to Insiders - Spouse under Other Current Liabilities on the balance sheet. Amount was transferred back to Veronica Wu (spouse) later in the month and is stated that it was used to pay unspecified Household Expenses of $850.65.

44 43 • There were no transfers to the Jeffrey Wu Irrevocable Insurance Trust for this period (November 2020). The Debtor's Counsel has advised the United States Trustee's Office that the Debtor's brother might have been paying the premiums for one or multiple insurance policies.

#### From Statement of Operations and Balance Sheet for November 2020

45 44 • Distribution income of $6,592.46 was not reported on MOR with any bank statements filed.

46 45 • Salary - Gross HKS of $19,500.00 was only reported on MOR bank statements to total $16,230.80 in aggregate.

Page 4 of 9

- State Income Tax Refund of $8,404.00 reported on MOR bank statements to total $16,808. Half of the $16,808 may have gone to wife.
- The following Operating Expenses were not reported on the MORs as disbursements and have no record of anyone else paying them for Jeffrey Wu:
  - Auto Insurance Premium for $2,669.01
  - Finance Charge of $648.29
  - Home Owners Insurance of $2,447.98
  - Utilities of $680.00
  - Payroll Taxes of $3,269.20. Unclear as to why Debtor paying more than individual and employer contributions for payroll taxes.
  - Interest Mortgage for $2,985.74. 9% of Mortgage payments made for November ($33,293.90).
  - Legal Fees - Bankruptcy of $30,227.22. Unclear if this was applied to a retainer. Balance for the Professional Retainer on the balance sheet is $0.00 (same as last month).
- Fuel/Oil for $255.17 is half the $510.34 that was paid out of the Chase account. No accounting for Debtor specifically receiving the other half from his wife as a deposit to any accounts noted.
- Balance sheet notes Due to Insiders -Spouse as $25,319.39 and Due to Insiders - Isshindou as $60,000.00.
- Balance sheet notes the Investment - Partnership (Asian Supermarkets) and Investment - Incorporated Companies (Real Estate) at T/B/D. These should have significant balances.

### Conclusion
Based on the inconsistent information presented by the Debtor in the MOR, the United States Trustee's Office is unable to confirm or verify the Debtor's actual monthly income, expenses, assets, or liabilities.

### December 2020
#### From Bank Statements for December 2020
- $54,300 was paid for Life Insurance Premium for the Jeffrey Wu Irrevocable Insurance Trust. Much more than the past few months payments of around $1,400 (see note for August 2020).
- Payment of $10,189.24 to Property Tax Buster for Property Tax Protest Fees. Does not specify what properties this was for (personal or business).
- Salary for Dec 2020 was $14,721.04, much higher than the $8,233.33 in schedule I or the amended schedule I amount of $8,170.00. Paychecks are coming from new income sources (Paycheck deposits under $900), and they account for the majority of this difference. MOR does not break-out the source of the paychecks received (i.e. which company paid him).
- Insurance claims received for $22,097 from Aco Amor Insurance for an unspecified insurance claim.

#### From Statement of Operations and Balance Sheet for December 2020
- Distribution income of $4,674.46 was not reported on MOR with any bank statements filed.
- Salary of $17,600.00 was only reported on MOR bank statements to total $14,721.04 in aggregate.
- State Income Tax Refund of $4,483.50 reported on MOR bank statements to total $8,967. Half of the $8,967 may have gone to wife.
- The following Operating Expenses were not reported on the MORs as disbursements and have no record of anyone else paying them for Jeffrey Wu:
  - Auto Insurance for $2,040.20

Page **5** of **9**

Exhibit A

- o  Bank Charges for $5.00
- o  Finance Charge of $638.72
- o  Home Owners Insurance for $2,490.65
- o  Utilities for $842.47 was half the payment from the bank statements of $1,684.94 that was paid out of the Chase bank account.
- o  Payroll Taxes for $2,878.96.  Unclear as to why Debtor paying more than individual and employer contributions for payroll taxes.
- o  Interest Mortgage for $2,768.57. 9% of Mortgage payments made for December ($31,380.76), in line with prior month.
- o  Professional Fees of $26,800.  Unclear if this was applied to a retainer.  Balance for the Professional Retainer on the balance sheet is $0.00 (same as last month).

- • State Income Taxes for $369.32 is half of the $738.64 expenses total paid out of Chase account #7978.
- • Balance sheet now notes Professional and US Trustee fees as $0.00 and Amounts Due to Insiders as $164,372.67 and does not break this amount out.  It seems that both accounts were combined for December 2020's balance sheet.
- • Unsecured Debt for $31,697,983.00 was listed on the Balance Sheet as $0.00 in the prior month (November 2020).
- • Capital stock for $(27,606,236.88), Retained Earnings - Post-Petition for $(81,071.41), and Adjustments to Owner Equity for $73,805.78 [$(27,613,502.51) in total was noted as T/B/D in the prior month (November 2020)].

### Conclusion
Based on the inconsistent information presented by the Debtor in the MOR, the United States Trustee's Office is unable to confirm or verify the Debtor's actual monthly income, expenses, assets, or liabilities.

### January 2021
#### From Bank Statements for January 2021
- • State tax refund for $15,637.00 for an unspecified State.
- • Sale of Range Rover for $8,000.  Unclear if this was approved by the Bankruptcy Court.  Does not specify which Range Rover was sold.  Listed on the Schedules as Land Rover-Range Rover 2016 valued at $50,000 or Land Rover-Range Rover 2015 valued at $43,000.
- • Large withdrawal of $15,214.82 for the 2020 Nassau County Property Tax.  Does not specify what property this is for.
- • Salary for Jan 2021 was $16,404.12, much higher than the $8,233.33 in schedule I or the amended schedule I amount of $8,170.00.  Paychecks are coming from new income sources (Paycheck deposits under $900), and they account for the majority of this difference.  MOR does not break-out the source of the paychecks received (i.e. which company paid him).
- • Stimulus payment of $1,200.00 noted as US Economic Payment.
- • Only one mortgage payment made for $21,950.80 for Home Mortgage 5752.  Missing payments for Home Mortgage 9807 and Home Mortgage 8758.  Not sure if someone else paid mortgage.
- • Transfer to Jeffrey Wu Irrevocable Insurance for $1,420.00 (see note for August 2020).

#### From Statement of Operations and Balance Sheet for January 2021
- • Distribution income of $4,674.46 was not reported on MOR with any bank statements filed.
- • Salary of $19,600.00 was only reported on MOR bank statements to total $16,404.12 in aggregate.

Page **6** of 9

Jeffrey Wu (Myint Kyaw-20-72407)
UST Report

Exhibit A

73 • State Tax Refund of $15,637.00 matches what's reported on MOR bank statements and was not split as previous refunds have been.

74 • The following Operating Expenses were not reported on the MORs as disbursements and have no record of anyone else paying them for Jeffrey Wu:
  o Household Expenses for $5,000.00
  o Auto Insurance for $2,015.26
  o Finance Charge of $425.76
  o Utilities for $1,105.71. Differs from payment of $1,389.98 that was paid out of the Chase bank account.
  o Payroll Taxes for $3,195.88. Unclear as to why Debtor paying more than individual and employer contributions for payroll taxes.
  o Interest Mortgage for $1,419.32. 6.5% of Mortgage payment made for January ($21,950.80).
  o Professional Fees of $0.00 for this month. Balance for the Professional Retainer on the balance sheet is $0.00 (same as last month).

75 • Amounts Due to Insiders of $164,372.67 for the prior month (December 2020) is now split into Professional and US Trustee fees ($90,635.22) and Amounts Due to Insiders ($73,737.45). it is unclear if the January 2021 Professional and US Trustee fees of $90,635.22 includes the $60,000 that was Due to Insiders - Isshindou in November. Amounts Due to Insiders for January 2021 noted as $60,537.24.

76 • Unsecured Debt was listed on the Balance Sheet as $31,697,983.00, the same as the prior month (December 2020).

77 • Capital stock for $(27,606,236.88), Retained Earnings - Post-Petition for $(67,512.56), and Adjustments to Owner Equity for $65,746.32.

### Conclusion

Based on the inconsistent information presented by the Debtor in the MOR, the United States Trustee's Office is unable to confirm or verify the Debtor's actual monthly income, expenses, assets, or liabilities.

### February 2021

#### From Bank Statements for February 2021

78 • Salary for Feb 2021 was $22,200.98, much higher than the $8,233.33 in schedule I or the amended schedule I amount of $8,170.00. Paychecks are coming from new income sources (Paycheck deposits under $900), and they account for the majority of this difference. MOR does not break-out the source of the paychecks received (i.e. which company paid him).

79 • Only two mortgage payments made, $1,522.55 for Home Mortgage 9807 and $8,138.00 for Home Mortgage 8758. Missing payment for Home Mortgage 5752. Not sure if someone else paid mortgage. Might be deferred payments from prior month (January 2021).

#### From Statement of Operations and Balance Sheet for February 2021

80 • Distribution income of $4,674.46 was not reported on MOR with any bank statements filed.

81 • Salary of $26,500.00 was only reported on MOR bank statements to total $22,200.98 in aggregate.

82 • The following Operating Expenses were not reported on the MORs as disbursements and have no record of anyone else paying them for Jeffrey Wu:
  o Household Expenses for $2,000.00
  o Auto Insurance for $2,015.26

Exhibit A

- o  Finance Charge of $595.40
- o  Home Owner Insurance for $5,936.40
- o  Utilities for $2,047.45. Differs from payment of $2,340.40 that was paid out of the Chase bank account.
- o  Payroll Taxes for $4,299.02. Unclear as to why Debtor paying more than individual and employer contributions for payroll taxes.
- o  Interest Mortgage for $4,111.94. 42.6% of Mortgage payment made for February ($9,660.55). Mortgage payments may have been deferred from prior month.
- o  Professional Fees of $16,309.08 for this month compared to the $8,000 that was paid to Weinberg, Gross & Pergament LLP from the Chase account. Balance for the Professional Retainer on the balance sheet is $0.00 (same as last month).
- 83 • Professional and US Trustee fees $98,944.30 on Balance sheet.
- 84 • Amounts Due to Insiders $77,479.11 increased from $60,537.24. No accounting for the approximate $17,000 increase.
- 85 • Unsecured Debt was listed on the Balance Sheet as $31,697,983.00, the same as the prior month (December 2020).
- 86 • Capital stock for $(27,606,236.88), Retained Earnings - Post-Petition for $(73,660.62), and Adjustments to Owner Equity for $74,572.83.

### Conclusion

Based on the inconsistent information presented by the Debtor in the MOR, the United States Trustee's Office is unable to confirm or verify the Debtor's actual monthly income, expenses, assets, or liabilities.

### March 2021

#### From Bank Statements for March 2021

- 87  Salary for Mar 2021 was $13,998.58, much higher than the $8,233.33 in schedule I or the amended schedule I amount of $8,170.00. Paychecks are coming from new income sources (Paycheck deposits under $900), and they account for the majority of this difference. MOR does not break-out the source of the paychecks received (i.e. which company paid him).
- 88  Only two mortgage payments made, $1,522.55 for Home Mortgage 9807 and $8,036.27 for Home Mortgage 8758. Missing payment for Home Mortgage 5752. Not sure if someone else paid mortgage.

#### From Statement of Operations and Balance Sheet for March 2021

- 89 • Distribution income of $4,674.46 was not reported on MOR with any bank statements filed.
- 90 • Salary of $16,700.00 was only reported on MOR bank statements to total $13,999.58 in aggregate.
- • The following Operating Expenses were not reported on the MORs as disbursements and have no record of anyone else paying them for Jeffrey Wu:
  - o  Household Expenses for $2,000.00
  - o  Auto Insurance for $2,494.26
  - o  Finance Charge of $565.07
  - o  Home Owner Insurance for $2,639.88
  - o  Utilities for $2,047.45. Differs from payment of $2,340.40 that was paid out of the Chase bank account.
  - o  Payroll Taxes for $2,700.42. Unclear as to why Debtor paying more than individual and employer contributions for payroll taxes.

Page **8** of **9**

Exhibit A

- o Interest Mortgage for $1,318.76. 13.8% of Mortgage payment made for March ($9,558.82).
  - o Professional Fees of $29,397.80. Unclear if this was applied to a retainer. Balance for the Professional Retainer on the balance sheet is $0.00 (same as last month).
- Professional Fees Tax Protest for $1,933.93 is half of the actual payment of $3,867.85 paid from the Chase account.
- Professional and US Trustee fees $128,342.10 on Balance sheet.
- Amounts Due to Insiders $79,632.67 increased from $77,479.11. No accounting for the approximate $2,000 increase.
- Unsecured Debt was listed on the Balance Sheet as $31,697,983.00, the same as the prior month (December 2020).
- Capital stock for $(27,606,236.88), Retained Earnings - Post-Petition for $(97,081.72), and Adjustments to Owner Equity for $81,747.29.

**Conclusion**
Based on the inconsistent information presented by the Debtor in the MOR, the United States Trustee's Office is unable to confirm or verify the Debtor's actual monthly income, expenses, assets, or liabilities.

**Final Conclusion**
Based on the income reported from the Debtor's MORs provided for the periods July 2020 through March 2021, the Debtor's monthly average income is approximately $12,000 or annual income of $144,000. The Debtor might have received other sources of monthly distributions; however, the Debtor has failed to identify or disclose the sources of such payments. Also, the Debtor's reported expenses in its monthly Statement of Operations that were field with the MORs are inconsistent to the distributions reported in the Debtor's Scheduled of Cash Receipts and Disbursements.

**July 2020**

1. It appears that since the Chase Dip accounts had an opening balance (July 1) that the debtor had the names on the account changed to a DIP account. The July MOR shows them as an opening balance and not new accounts.
2. I did not review Schedule A/B.
3. The Preferred Bank CD accounts #5911 and 6667 are attached to the July MOR.
4. The two Chase accounts, three Preferred accounts and One Capital Bank account are included with the July MOR
5. Unclear what he is referring to?
6. Deposit is recorded as a deposit from the debtor's Capital One account which is also listed in the opening balances. Since it was deposited from the debtor's old account it was listed as equity.
7. I believe that the account #7145 is in the wife's name and the funds were transferred on July 7th prior to the MOR period.
8. I have no knowledge of the household expenses.

9. The $7,605.59 was a distribution from Hong Kong Distribution Corp. that paid the following bills directly to the creditors.

   | | |
   |---|---|
   | Audi payment | $2,593.23 |
   | Rolls Royce payment | 2,094.46 |
   | Bentley payment | 2,918.00 |
   | Total | $7,605.69 |

   These payments were applied against principal and interest.

10. Dividend income came from GTJ Reit Inc as reported on the cash receipts/ disbursements.
11. Interest income was $664.31 not $656.85 and was reported in the July MOR.
12. Gross salary was $3,800 less withholding taxes of $827.32 for a net of $2,972.68 which is reported in the July MOR. The $2,471.33 as mentioned above was from the debtor's old Capital One bank account and not payroll.
13. The finance charge is the interest portion of the car payments above. I do not know how he makes the assumption that the debtor was paying both portions of the social security taxes. The $12,077.15 was the July accrual for professional fees. The opening balance sheet showed a prepaid expense of $8,000 at the end of July it shows zero with a liability of $4,077.15. Which means that the $8,000 was applied against the liability leaving a balance of $4,077.15.

14. The household expenses of $3,273 does match $2,973 and the $300 petty cash that was transferred to the Loc Hang Ip account.

15. I did not prepare or review the debtor's petition schedules. However, I have addressed the US Trustee's concerns about these other entities with an attachment to the July MOR.

16. There is nothing due to insiders in the July MOR. The $2,771.34 was included in the debtor's negative equity at the petition date.

17. The owner's equity is broken out on the July MOR.

## JOSEPH A. BRODERICK, P.C.

CERTIFIED PUBLIC ACCOUNTANT

**August 2020**

18. I have no knowledge of this insurance policy.
19. The distribution in August 2020 was $5,012.46 not $2,517.51. The $5,012.46 distribution was from Hong Kong Distribution Corp. and was paid directly to the creditors.

| | |
|---|---|
| Rolls Royce payment | $2,094.46 |
| Bentley payment | 2,918.00 |
| Total | $5,012.46 |

The payments were applied against principal and interest.

20. The interest income of $2,040.40 is reported on the August MOR.
21. The August MOR shows gross payroll of $9,500 and withholding taxes of $2,024.55 which nets down to $7,475.75.
22. The $494.81 is not for automobile insurance. It is for the interest expense portion of the car payments that were made (No 19).
I don't understand his comment about the payroll taxes.
The mortgage interest expense is the debtor's portion of the mortgage payments made by the spouse.
Professional fees. The prior period showed an accrual of $4,077.15 along with the August accrual of $9,494.10. The total accrual per the balance sheet shows $13,571.25.
23. The August 31, balance sheet indicates a balance due to insiders (wife) in the amount of $19,050.17 which is the payments made by the wife for the mortgages.
24. The August balance sheet shows a breakdown of the equity account.

**September 2020**

25. I have no knowledge of this insurance policy.
The September MOR reports the gross salary of $7,600 and withholding of $1,560.96 for a net payroll of $6,039.04.
26. The distribution in September was $10,002.13. The $10,002.13 distribution was from Hong Kong Distribution Corp. and was paid directly to creditors.

| | |
|---|---|
| Rolls Royce payment | $ 2,094.96 |
| Audi payment | 2,580.00 |
| BMW X7 payment | 595.36 |
| BMW X7 payment | 1,814.31 |
| Bentley payment | 2,918.00 |
| Total | $10,002.13 |

The payments were applied against principal and interest.

27. The debtor's gross payroll for September was $7,800, withholding taxes were $1,560.96 for a net of $6,039.04. All was reported correctly on the Cash receipts/disbursement and income statement.

## JOSEPH A. BRODERICK, P.C.
### CERTIFIED PUBLIC ACCOUNTANT

28. The following expenses were paid by the wife as indicated on the MOR

| | |
|---|---|
| Auto insurance | $3,161.21 |
| Homeowners insurance | 2,447.98 |
| PSEGLI | 886.59 |
| Mortgage payment #9807 | 1,067.50 |

The finance charge $568.01 is the interest portion of the automobile loan payments.

Payroll taxes $1,560.96, This is his withholding taxes for Social Security, Medicare, federal and state withholding.

29. The balance due insiders is $26,613.85 which comprises the $19,050.17 from August and the $7,563.68 for September.
30. The September balance sheet shows a breakdown of owner's equity.

**October 2020**

31. Dividend income came from GTJ Reit, Inc.
32. I do not know why this was done.
33. I have no knowledge about this insurance policy.
    I do not know what the three payments were for.
34. The mortgage payment for #8758 in the amount of $4,055.32 was made by the wife and is listed in the MOR
35. The distribution in October 2020 of $6,592.46 was from Hong Kong Distribution Corp. and was paid directly for:

| | |
|---|---|
| Rolls Royce payment | $2,094.46 |
| Audi payment | 2,580.00 |
| Bentley payment | 1,918.00 |
| Total | $6,592.46 |

The payments were applied against principal and interest.

36. The MOR report shows gross payroll of $9,500 less withholding of $1,951.20 for a net of $7,548.80.
37. The following expenses were paid by the wife.

| | |
|---|---|
| Auto insurance | $1,775.03 |
| Homeowner's insurance | 2,447.98 |
| Bank charge is from acct # 7978 | 13.25 |

The mortgage interest is the portion of the payment that was applied to interest. The professional fees of $20,035.85 is an accrual that was added to the prior month's liability and now totals $33,607.20.

The finance charge of $475.26 is the interest portion of the automobile loan payment. Payroll taxes of $1,951.20 is the employee's withholding taxes.

38. The balance sheet shows a liability to Insiders of $34,813.10 which is the $8,199.30 in payments made by the wife added to the prior month's balance of $26,613.85.
39. The owner's equity account is broken out.

## JOSEPH A. BRODERICK, P.C.
### CERTIFIED PUBLIC ACCOUNTANT

**November 2020**

40. I have no information concerning this transaction.
41. The MD refund of $16,808 was deposited into the 7978 DIP account and half $8,404 was recorded as due to the wife.
42. The gross payroll for November was $19,500 with withholding taxes of $3,269.20 for a net of $16,230.80. I do not know the reason for the increase.
43. The $850.65 that was deposited by the wife was booked to the Due to insider account. I don't know the reason for the deposit.
44. I have no knowledge about the insurance policies.
45. The distribution income of $8,059.48 not $6,592.46 was from Hong Kong Distribution Corp. and made the following payments directly to the creditors.

| | |
|---|---|
| Rolls Royce payment | $2,094.46 |
| Audi payment | 2,580.00 |
| Bentley payment | 1,467.02 |
| Bentley payment | 1,918.00 |
| Total | $8,059.48 |

The payments were applied against principal and interest.
46. The gross payroll for November was $19,500 with withholding taxes of $3,269.20 for a net of $16,230.80. I do not know the reason for the increase.
47. See #41
48. The following expenses were paid by the spouse:

| | |
|---|---|
| Homeowners insurance | $2,447.98 |
| Auto insurance | 2,669.01 |
| Petro | (255.17) |
| PSEGLI | 680.00 |
| Mortgage #8758 | (4,379.00) |
| Mortgage #5752 | (10,975.40) |
| Mortgage # 9807 | (1,292.55) |

Finance charge of $648.29 see #45
Payroll taxes of $3,269.20 see #42

The mortgage interest of $2,985.74 is the portion of the mortgage payment that was applied to interest.
Legal fees of $30,227.22 is an accrual and was added to the prior month's liability of $33,607.10 Totaling $63,834.32.
49. See # 48.
50. The due to Insiders (wife) indicates that the amount due the spouse was reduced by $1,850.48. The debtor received $60,000 from Isshindou. I have no other information concerning this transaction.
51. I have no other information as to the value of these other entities.

**December 2020**

52. I have no information concerning the Jeffrey Wu Irrevocable Insurance Trust.
53. I have no information concerning the payment of $10,189.24 to Property Tax Buster Protest Fees.

## JOSEPH A. BRODERICK, P.C.
### CERTIFIED PUBLIC ACCOUNTANT

54. I have no information on the source of the debtor's payroll.
55. I have no information concerning the Aca Amor Insurance claim.
56. The distribution income of $4,674.46 was from Hong Kong Distribution Corp. and made the following payments directly to the creditors.

| | | |
|---|---|---|
| Rolls Royce payment | $2,094.46 | |
| Audi payment | 2,580.00 | |
| Total | $4,674.46 | |

The payments were applied against principal and interest
57. The gross salary of $17,600 less the withholding taxes of $2,878.96 equals $14,721.04.
58. Half of the state refund was applied to the due to insider (wife) as reported in the MOR.
59. The following expenses were paid or reimbursed by the spouse:

| | |
|---|---|
| Auto insurance | $2,180.26 |
| Less insurance rebate | -140.00 |
| Net | $2,040.26 |
| Homeowners insurance | $2,490.65 |
| Petro | (712.22) |
| PSEGLI | (130.24) |

Finance Charge see # 56
Payroll taxes see #57

The mortgage interest of $2,768.57 is the portion of the mortgage payment that was applied to interest.
Professional fees of $26,800.90 is an accrual that was added to the prior month's liability of $63,834.32.

60. State income taxes - the debtor paid the full amount and charged the wife with half thereby reducing the balance due her.
61. The balance sheet shows other current liabilities of:

| | |
|---|---|
| Professional and US Trustee fees | $90,635.22 |
| Amounts due insiders | 21,380.68 |
| Due to Isshindou | 60,000.00 |

62. The unsecured debt of $31,697,983 was recorded on the original operating report and carried over. This balance was reported in every operating report.

63. The Capital stock is the net equity when you add in the unsecured debt and the Investment in companies of $4,604,362.00. These balances was reported in every operating report.

## January 2021

64. State refund - I do not know what state refunded the money.
65. I do not know if the sale was approved by the court. The debtor sold the 2011 Land Rover.
66. I do not know which property the tax payment was for.
67. I am not familiar with schedule 1 and do not know the source of the debtor's payroll.
68. Should be listed as Stimulus payment.
69. I have no knowledge of anyone making another mortgage payment in January.
70. I have no information about the insurance policies.

## JOSEPH A. BRODERICK, P.C.
### CERTIFIED PUBLIC ACCOUNTANT

71. The distribution income of $4,674.46 was from Hong Kong Distribution Corp. and made the following payments directly to the creditors.

| | |
|---|---|
| Rolls Royce payment | $2,094.46 |
| Audi payment | 2,580.00 |
| Total | $4,674.46 |

The payments were applied against principal and interest

72. The monthly cash receipts and disbursements show the gross payroll and the tax withholding which net down to $16,404.12.

73. I do not know why the State tax refund was not split.

74. The following expenses were paid by the wife:

| | |
|---|---|
| Household expenses | $5,000.00 |
| Automobile insurance | 2,015.26 |

Finance charge see # 71.
Utilities difference of $284.27 was charged to the wife.
Payroll taxes - That appears to be the tax withholding on the payroll.
The mortgage interest is the amount of interest that was paid in January.
Professional fees there was no accrual in the month of January.

75. The amount due to insiders reflects the repayment of funds that was previously expended by the wife.

76. No comment.

77. The capital stock of negative $(27,603,472.90) is the same from the petition date. The post-petition income (loss) reconciles to the statement of operations.

**February 2020**

78. I do not have a breakdown of the debtor's payroll.

79. The debtor's wife made the payment for mortgage 5752 in the amount of $9,369.88

80. The distribution income of $4,674.46 was from Hong Kong Distribution Corp. and made the following payments directly to the creditors.

| | |
|---|---|
| Rolls Royce payment | $2,094.46 |
| Audi payment | 2,580.00 |
| Total | $4,674.46 |

The payments were applied against principal and interest

81. The February schedule of cash receipts/disbursement reflects the gross payroll of $26,500 and withholding taxes of $4,299.02 for a net payroll of $22,200.98.

82. The following expenses were paid by the wife:

| | |
|---|---|
| Household expenses | $2,000.00 |
| Automobile insurance | 2,015.26 |
| Homeowners insurance | 5,936.40 |

Utilities of $292.95 were charged to the wife.
Payroll taxes - the withholding taxes are deducted from his gross pay.

# JOSEPH A. BRODERICK, P.C.
### CERTIFIED PUBLIC ACCOUNTANT

Mortgage interest is the portion allocated to interest.
Professional fees - the $16,309.08 is the accrual for the month of February; the $8,000 is the proceeds from the sale of the 2011 Land Rover and was deposited into Mr. Pergament's escrow account.

83. The amount due to professionals the $16,308.98 is an accrual that was added to the previous month balance of $90,635.22.

84. A schedule showing the increase in the amount due insiders can be found in the February 2021 operating report.

85. No comment.

86. Capital stock at the petition date $(27,603,472.90) is still the same. The post-petition earnings (loss) of $(91,539) reconciles to the statement of operations.

**March 2021**

87. I have no information concerning the source of the debtor's wages.
88. The wife did not pay the mortgage for 5752.

89. The distribution income of $4,674.46 was from Hong Kong Distribution Corp. and made the following payments directly to the creditors.

| | |
|---|---|
| Rolls Royce payment | $2,094.46 |
| Audi payment | 2,580.00 |
| Total | $4,674.46 |

The payments were applied against principal and interest

90. The cash receipts/cash disbursement reflect gross payroll of $16,700 and withholding taxes of $2,700.42 that nets to $13,999.58.
91. The following payments were made by the wife:

| | |
|---|---|
| Household expense | $2,000.00 |
| Homeowners insurance | 2,639.88 |
| Automobile insurance | 2,494.26 |

Debtor paid $2,331.91 amount charged to the wife $1,223.83 nets to $1,108.08.
Finance charges see #89
Payroll taxes: No comment
Mortgage interest is the portion allocated to interest.
Professional fees of $29,397.80 is an accrual that was added to the prior period liability which total $136,342.10.
Professional Fees Tax Protest - half of the fee was allocated to the wife.
The amount due insiders is $27,275.74.

**JOSEPH A. BRODERICK, P.C.**

CERTIFIED PUBLIC ACCOUNTANT

# Exhibit C

| Question # | MOR Month | Financial Statement | UST Question | Joseph A. Broderick Answers | RSR Review after Discussion with J. Broderick and Jeffrey Wu, Jeffery Wu, Jr. and Richard Tang | Relevant Open Questions |
|---|---|---|---|---|---|---|
| 1 | July | SCF | Chapter 11 Petition filed on July 8, 2020, but the Chase DIP accounts (checking and savings) had beginning balances as of July 1, 2020. Unclear if these are old accounts that just had the names changed. Debtor's books provided with the Amended July 2020 MOR seem to show that these are new accounts, but the bank statements say otherwise. | It appears that since the Chase Dip accounts had an opening balance (July 1) that the debtor had the names on the account changed to a DIP account. The July MOR shows them as an opening balance and not new accounts. | US Trustee observation seems correct that account existed before, there was a previous balance. RSR has also requested information on Chase accounts #7710 (spouse), #7145 (custodian account for son Jefferson) | RSR requested bank statements, deposits and checks information for account Chase ending #4883 and the status us still pending. |
| 2 | July | SCF | Debtor's Schedule A/B: Property lists 17. Deposits of money to be a Checking account with Chase for $2,400. The aggregate opening balances for the Chase account included in the January MOR exceeds that by approximately $5,300 (not including the $6,000 transfer from the Chase Savings account #9050 to an unknown Savings account #7145). | I did not review Schedule A/B. | As of the petition date, the MOR/account reconciliation indicates a balance of $223 compared to the $2,400 in the schedules, compared to $1,722.92 from the bank statements. There seems to be usage of different starting point depending on report. | |
| 3 | July | SCF | Missing bank statements for Preferred Bank CD Accounts #5911 and #6667. | The Preferred Bank CD accounts #5911 and 6667 are attached to the July MOR. | Responded, but what is attached to the MORs are not technically statements.  Still need to provide statements. | |
| 4 | July | SCF | Listing of all pre-petition accounts (personal and joint) not included to determine beginning balances. | The two Chase accounts, three Preferred accounts and One Capital Bank account are included with the July MOR | Included information regarding disclosed bank accounts, there are still questions about Chase accounts ending #7145 and #7710. | |
| 5 | July | SCF | Unclear if pre-petition accounts are sweeping incoming funds to the "new" DIP accounts. | Unclear what he is referring to? | Debtor explained DIP accounts were joint accounts before filing and he requested the bank to close the joint account and open a DIP account, but the account numbers remained the same.  Balance from the Debtor/spouse joint account #7169 with Capital One was transferred into the DIP account #7978 and account #7169 was closed. | |
| 6 | July | SCF | Deposit for $2,471.33 on July 17, 2020 is marked as Net Worth in Debtor's books. Unclear if this was a paycheck or transfer of funds from another account that is not DIP. | Deposit is recorded as a deposit from the debtor's Capital One account which is also listed in the opening balances. Since it was deposited from the debtor's old account it was listed as equity. | It is a transfer from Capital One account to Chase #7978. | |
| 7 | July | SCF | Transfers to Unknown savings account #7145 ($7,500 in aggregate) not listed on bank statements provided with MOR. | I believe that the account #7145 is in the wife's name and the funds were transferred on July 7th prior to the MOR period. | Chase savings #7145 – RSR requested confirmation if it is the wife's account. | |

| Question # | MOR Month | Financial Statement | UST Question | Joseph A. Broderick Answers | RSR Review after Discussion with J. Broderick and Jeffrey Wu, Jeffery Wu, Jr. and Richard Tang | Relevant Open Questions |
|---|---|---|---|---|---|---|
| 8 | July | SCF | Transfer to Ioc Heng Ip account for $2,973.00 for undetermined Household Expenses. | I have no knowledge of the household expenses. | 7/14/2020 postpetition transfer for $2,973 from Chase #7978 to Chase #7710 IOC Heng IP in bank statement and household expenses in the MOR. | |
| 9 | July | BS/IS | Distribution income of $7,605.69 was not reported on MOR with any bank statements filed. | The $7,605.59 was a distribution from Hong Kong Distribution Corp. that paid the following bills directly to the creditors.\n\nAudi payment: $2,593.23\nRolls Royce payment: $2,094.46\nBentley payment: $2,918.00\nTotal: $7,605.69\n\nThese payments were applied against principal and interest. | JW and JWJR confirmed that car loan payments made postpetition are being made by Hong Kong Distribution Corp. and is being booked as a distribution to JW.\n\nRSR requested confirmation of car loan payments and car loan statements. The debtor provided car loan statements on 8/3/2021. | |
| 10 | July | BS/IS | Dividend Income of $694.40. Unclear as to which entity this dividend was paid from. | Dividend income came from GTJ REIT Inc as reported on the cash receipts/ disbursements | The Debtor recently "discovered" / disclosed that he directly owns 6,944 common shares of GTJ REIT, Inc., worth $109,646 based upon the $15.79. The Debtor is unsure as to how he came to own these additional shares. The $694.40 dividend income reflects the $0.10/share quarterly dividend paid. | |
| 11 | July | BS/IS | Interest income of $656.85 was not fully reported on MOR with any bank statements filed. | Interest income was $664.31 not $656.85 and was reported in the July MOR. | Amount verified in July MOR. | |
| 12 | July | BS/IS | Salary - Gross - HKS of $3,800.00 was only reported on MOR bank statements to total $5,444.01 in aggregate ($2,471.33 from checking acct #7978 and $2,972.68 from savings acct #9050). | Gross salary was $3,800 less withholding taxes of $827.32 for a net of $2,972.68 which is reported in the July MOR. The $2,471.33 as mentioned above was from the debtor's old Capital One bank account and not payroll. | Gross to net calculation includes withholding federal, state and local taxes\n\nThe $2,471.33 is transfer between accounts. | |
| 13 | July | BS/IS | The following Operating Expenses were not reported on the MORs as disbursements and have no record of anyone else paying them for Jeffrey Wu:\n- Finance Charge of $564.89\n- Payroll Taxes for $827.32. Close to the 7.65% contribution for individual and 7.65% contribution for employer. Unclear why Debtor is paying both portions (individual and employer).\n- Professional Fees of $12,077.15. Unclear if this was applied to a retainer. Balance for the Professional Retainer on the balance sheet is $0.00 (same as last month). | The finance charge is the interest portion of the car payments above. I do not know how he makes the assumption that the debtor was paying both portions of the social security taxes. The $12,077.15 was the July accrual for professional fees. The opening balance sheet showed a prepaid expense of $8,000 at the end of July it shows zero with a liability of $4,077.15. Which means that the $8,000 was applied against the liability leaving a balance of $4,077.15. | Regarding payroll, the gross to net calculation includes withholding federal, state and local taxes.\n\nRSR requested confirmation and evidence for the $8,000 retainer, which was provided by the Debtor.\n\nRSR performed a roll forward analysis of due to spouse account and confirmed the balance. | |

| Question # | MOR Month | Financial Statement | UST Question | Joseph A. Broderick Answers | RSR Review after Discussion with J. Broderick and Jeffrey Wu, Jeffery Wu, Jr. and Richard Tang | Relevant Open Questions |
|---|---|---|---|---|---|---|
| 14 | July | BS/IS | Household Expenses of $3,273 do not match the $2,973.00 transferred to an account designated as the Ioc Heng Ip account. | The household expenses of $3,273 does match $2,973 and the $300 petty cash that was transferred to the Ioc Heng Ip account. | Responded. | |
| 15 | July | BS/IS | The Debtor's balance sheet lists various entities for the Investment - Partnership (Schedule B) and Investment - Incorporated Companies (Schedule C). When compared to the various entities listed in the Debtor's Schedule A/B: Property on 19. Non-Publicly traded stock and interests in incorporated and unincorporated business, the following entities were missing: - Hong Kong Supermarket of Monterey Park Ltd. - GTJ Realty LP - New Enterprise Realty, LLC - Hong Kong Supermarket of Monrovia, Ltd. - Crown Mansion LLC - Hong Kong Management of Allston LLC | I did not prepare or review the debtor's petition schedules. However, I have addressed the US Trustee's concerns about these other entities with an attachment to the July MOR. | Reporting is inconsistent with respect to certain entities. | See Examiner's interim report relating to business interests for results of Examiner's diligence relating to active and inactive entities. |
| 16 | July | BS/IS | Due to Insiders - Spouse noted as $2,771.34 on the balance sheet. | There is nothing due to insiders in the July MOR. The $2,771.34 was included in the debtor's negative equity at the petition date. | Responded, amended MOR fixed it | |
| 17 | July | BS/IS | Owner Equity is not broken out and is simply listed as T/B/D. These should have significant balances. | The owner's equity is broken out on the July MOR. | Responded, amended MOR fixed it | |
| 18 | August | SCF | Transfer to Jeffrey Wu Irrevocable Insurance for $1,400.00. Undetermined what policy this payment is for. 3 Life Insurance Policies are listed in line 31 of the Debtor's schedules (Minnesota Life, Lincoln Financial, Lincoln Financial - Term Policy). Only one has a surrender or refund value listed (Minnesota Life for $226,025). | I have no knowledge of this insurance policy. | Regarding the Insurance payments, JWJR explained that the monthly $1,400 payment is an automatic deduction made every month to pay for life insurance premiums. | |
| 19 | August | BS/IS | Distribution income of $2,517.51 was not reported on MOR with any bank statements filed. | The distribution in August 2020 was $5,012.46 not $2,517.51. The $5,012.46 distribution was from Hong Kong Distribution Corp. and was paid directly to the creditors.  Rolls Royce payment:  $2,094.46 Bentley payment:  $2,918.00 Total:  $5,012.46  The payments were applied against principal and interest. | JW and JWJR confirmed that car loan payments made postpetition are being made by Hong Kong Distribution Corp. and is being booked as a distribution to JW.  RSR requested confirmation of car loan payments and car loan statements.  The debtor provided car loan statements on 8/3/2021. | |

| Question # | MOR Month | Financial Statement | UST Question | Joseph A. Broderick Answers | RSR Review after Discussion with J. Broderick and Jeffrey Wu, Jeffery Wu, Jr. and Richard Tang | Relevant Open Questions |
|---|---|---|---|---|---|---|
| 20 | August | BS/IS | Interest income of $2,040.40 was not reported on MOR with any bank statements filed. Missing Preferred Bank bank statements. Matches Book documents included. | The interest income of $2,040.40 is reported on the August MOR. | Ties to interest income of 4 accounts: #5911, #6667, #0122, #7978 | |
| 21 | August | BS/IS | Salary - Gross HKS of $9,500.00 was only reported on MOR bank statements to total $7,475.45 in aggregate. | The August MOR shows gross payroll of $9,500 and withholding taxes of $2,024.55 which nets down to $7,475.75. | Gross to net calculation includes withholding federal, state and local taxes | |
| 22 | August | BS/IS | The following Operating Expenses were not reported on the MORs as disbursements and have no record of anyone else paying them for Jeffrey Wu:<br>- Auto Insurance for $494.81<br>- Payroll Taxes for $2,424.55. Unclear as to why Debtor paying more than individual and employer contributions for payroll taxes.<br>- Interest Mortgage for $4,216.58. No mortgage payments were made this month.<br>- Professional Fees of $9,494.10. Unclear if this was applied to a retainer. Balance for the Professional Retainer on the balance sheet is $0.00 (same as last month). | The $494.81 is not for automobile insurance. It is for the interest expense portion of the car payments that were made (No 19).<br>I don't understand his comment about the payroll taxes.<br>The mortgage interest expense is the debtor's portion of the mortgage payments made by the spouse.<br>Professional fees. The prior period showed an accrual of $4,077.15 along with the August accrual of $9,494.10. The total accrual per the balance sheet shows $13,571.25. | Related to payments made on behalf of the debtor.<br><br>Gross to net calculation includes withholding federal, state and local taxes.<br><br>Pro fees accrual rolls forward correctly after amendment.<br><br>RSR performed a roll forward analysis of due to spouse account and confirmed the balance. | |
| 23 | August | BS/IS | Balance sheet notes Due to Insiders -Spouse as $36,655.09. | The August 31, balance sheet indicates a balance due to insiders (wife) in the amount of $19,050.17 which is the payments made by the wife for the mortgages. | Responded, amended MOR fixed it. | |
| 24 | August | BS/IS | Owner Equity is not broken out and is simply listed as T/B/D. These should have significant balances | The August balance sheet shows a breakdown of the equity account. | Responded, amended MOR fixed it. | |
| 25 | September | SCF | Transfer to Jeffrey Wu Irrevocable Insurance for $1,410.00 (see note for August 2020). | I have no knowledge of this insurance policy. | Regarding the Insurance payments, JWJR explained that the monthly $1,400 payment is an automatic deduction made every month to pay for life insurance premiums. | The Examiner notes that the Debtor's bankruptcy estate is not a beneficiary of and has no interest in the policies held in the Life Insurance Trusts and questions the propriety of the Debtor continuing to make gifts to the Trusts to cover premiums on a post-petition basis, whether $54,300 or $1,400. |
| 25.1 | September | SCF | No break-out for paychecks ($6,039.04 in aggregate). Amount is below the amount listed in schedule I ($8,233.33) or the amount listed in the amended schedule I ($8,170.00). | The September MOR reports the gross salary of $7,600 and ·withholding of $1,560.96 for a net payroll of $6,039.04. | Gross to net calculation includes withholding federal, state and local taxes | |

| Question # | MOR Month | Financial Statement | UST Question | Joseph A. Broderick Answers | RSR Review after Discussion with J. Broderick and Jeffrey Wu, Jeffery Wu, Jr. and Richard Tang | Relevant Open Questions |
|---|---|---|---|---|---|---|
| 26 | September | BS/IS | Distribution income of $10,002.13 was not reported on MOR with any bank statements filed. | The distribution in September was $10,002.13. The $10,002.13 distribution was from Hong Kong Distribution Corp. and was paid directly to creditors.<br><br>Rolls Royce payment: $2,094.96<br>Audi payment: $2,580.00<br>BMW X7 payment: $595.36<br>BMW X7 payment: $1,814.31<br>Bentley payment: $2,918.00<br>Total: $10,002.13<br><br>The payments were applied against principal and interest. | JW and JWJR confirmed that car loan payments made postpetition are being made by Hong Kong Distribution Corp. and is being booked as a distribution to JW.<br><br>RSR requested confirmation of car loan payments and car loan statements. The debtor provided car loan statements on 8/3/2021. | |
| 27 | September | BS/IS | Salary - Gross HKS of $7,600.00 was only reported on MOR bank statements to total $6,039.04 in aggregate. | The debtor's gross payroll for September was $7,800, withholding taxes were $1,560.96 for a net of $6,039.04. All was reported correctly on the Cash receipts/disbursement and income statement. | Gross to net calculation includes withholding federal, state and local taxes | |
| 28 | September | BS/IS | The following Operating Expenses were not reported on the MORs as disbursements and have no record of anyone else paying them for Jeffrey Wu:<br>- Auto Insurance for $3,161.21<br>- Finance Charge of $568.01<br>- Home Owners Insurance for $2,447.98<br>- Household Expenses for $886.59<br>- Payroll Taxes for $1,560.96. Unclear as to why Debtor paying more than individual and employer contributions for payroll taxes.<br>- Interest Mortgage for $580.71. No mortgage payments were made this month.<br>- No Professional Fees were noted as being paid for September 2020. | The following expenses were paid by the wife as indicated on the MOR<br><br>Auto insurance: $3,161.21<br>Homeowners insurance: $2,447.98<br>PSEGLI: $886.59<br>Mortgage payment #9807: $1,067.50<br><br>The finance charge $568.01 is the interest portion of the automobile loan payments. Payroll taxes $1,560.96, This is his withholding taxes for Social Security, Medicare, federal and state withholding. | Related to payments made on behalf of the debtor.<br><br>Gross to net calculation includes withholding federal, state and local taxes.<br><br>Pro fees accrual rolls forward correctly after amendment.<br><br>RSR performed a roll forward analysis of due to spouse account and confirmed the balance. | |
| 29 | September | BS/IS | Balance sheet notes Due to Insiders -Spouse as $37,062.33. | The balance due insiders is $26,613.85 which comprises the $19,050.17 from August and the $7,563.68 for September. | Responded. | |
| 30 | September | BS/IS | Owner Equity is not broken out and is simply listed as T/B/D. These should have significant balances. | The September balance sheet shows a breakdown of owner's equity. | Responded. | |

| Question # | MOR Month | Financial Statement | UST Question | Joseph A. Broderick Answers | RSR Review after Discussion with J. Broderick and Jeffrey Wu, Jeffery Wu, Jr. and Richard Tang | Relevant Open Questions |
|---|---|---|---|---|---|---|
| 31.1 | October | SCF | Salary for Oct 2020 was $7,548.80, in line with the $8,233.33 in schedule I or the amended schedule I amount of $8,170.00. | Agrees with a check mark | Gross to net calculation includes withholding federal, state and local taxes | |
| 31.2 | October | SCF | Dividend Income of $694.40. Unclear as to which entity this dividend was paid from. | Dividend income came from GTJ REIT, Inc. | Responded. | |
| 32 | October | SCF | The Debtor transferred $99.22 from his savings to his checking. Unclear as to the purpose of this in/out funds transfer. | I do not know why this was done. | | |
| 33.1 | October | SCF | Transfer to Jeffrey Wu Irrevocable Insurance for $1,420.00 (see note for August 2020). | I have no knowledge about this insurance policy. | Regarding the Insurance payments, JWJR explained that the monthly $1,400 payment is an automatic deduction made every month to pay for life insurance premiums. | The Examiner notes that the Debtor's bankruptcy estate is not a beneficiary of and has no interest in the policies held in the Life Insurance Trusts and questions the propriety of the Debtor continuing to make gifts to the Trusts to cover premiums on a post-petition basis, whether $54,300 or $1,400. |
| 33.2 | October | SCF | $1,935 in aggregate for (PSEG) LIPA. Three different payments of $600 or more, unclear if these were related to multiple homes. | I do not know what the three payments were for. | | RSR requested copies of the PSEG statements and PSEG statements received so far do not cover the period in question. |
| 34 | October | SCF | Only two mortgage payments made, $11,000 for Home Mortgage 5752 and $1,062.55 for Home Mortgage 9807. Missing payment for Home Mortgage 8758. Unclear as to if someone else paid mortgage. | The mortgage payment for #8758 in the amount of $4,055.32 was made by the wife and is listed in the MOR | | JW and JWJR said mortgage payments are being paid by either the debtor or the spouse (matches the MOR). RSR requested evidence that these payments are being made and mortgage statements for a few months and bank statements from the spouse that confirms these payments are being made The debtor and JWJR explained that each month they decide from which account the mortgage payment will be made based on availability in each account. Further investigation needs to be made regarding the Debtor's mortgages since statements received so far are not sufficient for a thorough analysis. |

| Question # | MOR Month | Financial Statement | UST Question | Joseph A. Broderick Answers | RSR Review after Discussion with J. Broderick and Jeffrey Wu, Jeffery Wu, Jr. and Richard Tang | Relevant Open Questions |
|---|---|---|---|---|---|---|
| 35 | October | BS/IS | Distribution income of $6,592.46 was not reported on MOR with any bank statements filed. | The distribution in October 2020 of $6,592.46 was from Hong Kong Distribution Corp. and was paid directly for:<br><br>Rolls Royce payment:  $2,094.46<br>Audi payment:  $2,580.00<br>Bentley payment:  $1,918.00<br>Total:  $6,592.46<br><br>The payments were applied against principal and interest. | JW and JWJR confirmed that car loan payments made postpetition are being made by Hong Kong Distribution Corp. and is being booked as a distribution to JW.<br><br>RSR requested confirmation of car loan payments and car loan statements.  The debtor provided car loan statements on 8/3/2021. | |
| 36 | October | BS/IS | Salary - Gross HKS of $9,500.00 was only reported on MOR bank statements to total $7,548.80 in aggregate. | The MOR report shows gross payroll of $9,500 less withholding of $1,951.20 for a net of $7,548.80. | Gross to net calculation includes withholding federal, state and local taxes | |
| 37 | October | BS/IS | The following Operating Expenses were not reported on the MORs as disbursements and have no record of anyone else paying them for Jeffrey Wu:<br>- Auto Insurance for $1,775.03<br>- Bank Charges for $13.25<br>- Finance Charge of $475.26<br>- Home Owners Insurance for $2,447.98<br>- Payroll Taxes for $1,951.20. Unclear as to why Debtor paying more than individual and employer contributions for payroll taxes.<br>- Interest Mortgage for $2,914.29. 24.2% of Mortgage payments made for October ($12,062.55).<br>- Professional Fees of $20,035.85. Unclear if this was applied to a retainer. Balance for the Professional Retainer on the balance sheet is $0.00 (same as last month). | The following expenses were paid by the wife.<br><br>Auto insurance:  $1,775.03<br>Homeowner's insurance:  $2,447.98<br>Bank charge is from acct# 7978:  $13.25<br><br>The mortgage interest is the portion of the payment that was applied to interest. The professional fees of $20,035.85 is an accrual that was added to the prior month's liability and now totals $33,607.20.<br><br>The finance charge of $475.26 is the interest portion of the automobile loan payment. Payroll taxes of $1,951.20 is the employee's withholding taxes. | Related to payments made on behalf of the debtor.<br><br>Gross to net calculation includes withholding federal, state and local taxes.<br><br>Pro fees accrual rolls forward correctly after amendment.<br><br>RSR performed a roll forward analysis of due to spouse account and confirmed the balance. | |
| 38 | October | BS/IS | Balance sheet notes Due to Insiders -Spouse as $58,386.07. | The balance sheet shows a liability to Insiders of $34,813.10 which is the $8,199.30 in payments made by the wife added to the prior month's balance of $26,613.85. | The amended MOR fixes the balance sheet.<br><br>RSR performed a roll forward analysis of due to spouse account and confirmed the balance. | |
| 39 | October | BS/IS | Owner Equity is not broken out and is simply listed as T/B/D. These should have significant balances. | The owner's equity account is broken out. | Responded. | |

| Question # | MOR Month | Financial Statement | UST Question | Joseph A. Broderick Answers | RSR Review after Discussion with J. Broderick and Jeffrey Wu, Jeffery Wu, Jr. and Richard Tang | Relevant Open Questions |
|---|---|---|---|---|---|---|
| 40 | November | SCF | $60,000 received from Isshindou Japanese Ramen Inc. (Ramen restaurant located in the Super 88 Market Food Court in Boston, MA). Marked on the balance sheet as Due to Insiders - Isshindou under Other Current Liabilities. We have no other information on this transaction. Unclear as to if this is a loan or if Debtor will he have to pay interest. Unclear as to how the entity is considered an "Insider". Unclear if the Debtor owns a stake in this restaurant. | I have no information concerning this transaction. | | Regarding the $60,000 receipt in November 2020, there was some inconsistency when the debtor and Richard Tang addressed question.<br><br>Richard Tang, the in-house accountant, booked the entry as a low from a "friend" in the amount of $60,000 that needed to be paid back and that's why it was book as a due to insider in the BS. JW owns 40% of the entity that gave him $60,000 - Isshindou.<br><br>Richard Tang further noted that the $60,000 loan from a "friend" was made for the debtor to be able to pay the life insurance amount due of $54,300.<br><br>At this point the debtor interrupted Richard Tang's explanation and pointed out that the $60,000 receipt from the Ramen shop was a payment back to the debtor for payments that the debtor made to the Ramen shop to pay for repairs/maintenance items in order to address inspection and regulatory demands from local authorities ($30,000) and also for loss revenue ($30,000). JW further noted that he agrees that there should not be a liability in the BS for this transaction.<br><br>RSR noted that the two stories are inconsistent and that if it is in fact the case that the $60,000 was a payment back from the Ramen shop in Boston, that it is wrongfully booked in the BS as a due to insider. |
| 41 | November | SCF | 2019 MD Tax Refund for $16,808. Unclear if this was for a joint tax return. It looks as though the Debtor only reported half of the amount on his Statement of Operations. | The MD refund of $16,808 was deposited into the 7978 DIP account and half $8,404 was recorded as due to the wife. | Responded. | |
| 42 | November | SCF | Salary for Nov 2020 was $16,230.80, much higher than the $8,233.33 in schedule I or the amended schedule I amount of $8,170.00. Paychecks are coming from new income sources (Paycheck deposits under $900), and they account for the majority of this difference. | The gross payroll for November was $19,500 with withholding taxes of $3,269.20 for a net of $16,230.80. I do not know the reason for the increase. | JW and JWJR explained that Debtor's salaries increased from ~$7,000 to ~$20,000 because the Debtor decided to increase his own pay.  In the beginning of the Chapter 11 case, the Debtor thought the smaller pay would have been sufficient to support his monthly expenses, but it turned out that it wasn't and he decided to increase his own pay. | |

| Question # | MOR Month | Financial Statement | UST Question | Joseph A. Broderick Answers | RSR Review after Discussion with J. Broderick and Jeffrey Wu, Jeffery Wu, Jr. and Richard Tang | Relevant Open Questions |
|---|---|---|---|---|---|---|
| 43 | November | SCF | Wife advanced $850.65 (5 deposits to Chase), not specified if it is a loan but it is probably part of the balance of $25,319.39 for Due to Insiders - Spouse under Other Current Liabilities on the balance sheet. Amount was transferred back to Veronica Wu (spouse) later in the month and is stated that it was used to pay unspecified Household Expenses of $850.65. | The $850.65 that was deposited by the wife was booked to the Due to insider account. I don't know the reason for the deposit. | Based on explanation provided by the Debtor and his representatives, the spouse provided the Debtor $850.65 as a short term loan to cover for a potential overdraw in the #7978 account. The debtor later returned the funds to the spouse, but instead of settling the short term loan, the fund was given to the spouse to cover household expenses. Because of that, the Due to Insiders - Spouse account increased by that amount. | |
| 44 | November | SCF | There were no transfers to the Jeffrey Wu Irrevocable Insurance Trust for this period (November 2020). The Debtor's Counsel has advised the United States Trustee's Office that the Debtor's brother might have been paying the premiums for one or multiple insurance policies. | I have no knowledge about the insurance policies. | The Debtor said that "that does not reflect reality and Marc Pergament should not have said that." The Examiner notes that Lewis Wu is a Trustee on the Life Insurance Trusts which may be related to Mr. Pergament's statement. | The Examiner notes that the Debtor's bankruptcy estate is not a beneficiary of and has no interest in the policies held in the Life Insurance Trusts and questions the propriety of the Debtor continuing to make gifts to the Trusts to cover premiums on a post-petition basis, whether $54,300 or $1,400. RSR requested policy statements and premium notices and evidence of any cash value to these policies. |
| 45 | November | BS/IS | Distribution income of $6,592.46 was not reported on MOR with any bank statements filed. | The distribution income of $8,059.48 not $6,592.46 was from Hong Kong Distribution Corp. and made the following payments directly to the creditors. Roils Royce payment: $2,094.46 Audi payment: $2,580.00 Bentley payment: $1,467.02 Bentley payment: $1,918.00 Total: $8,059.48 The payments were applied against principal and interest. | JW and JWJR confirmed that car loan payments made postpetition are being made by Hong Kong Distribution Corp. and is being booked as a distribution to JW. RSR requested confirmation of car payments and car loan statements. The debtor provided car loan statements on 8/3/2021. | |
| 46 | November | BS/IS | Salary - Gross HKS of $19,500.00 was only reported on MOR bank statements to total $16,230.80 in aggregate. | The gross payroll for November was $19,500 with withholding taxes of $3,269.20 for a net of $16,230.80. I do not know the reason for the increase. | Gross to net calculation includes withholding federal, state and local taxes | |
| 47 | November | BS/IS | State Income Tax Refund of $8,404.00 reported on MOR bank statements to total $16,808. Half of the $16,808 may have gone to wife. | See #41 | Responded | |

| Question # | MOR Month | Financial Statement | UST Question | Joseph A. Broderick Answers | RSR Review after Discussion with J. Broderick and Jeffrey Wu, Jeffery Wu, Jr. and Richard Tang | Relevant Open Questions |
|---|---|---|---|---|---|---|
| 48 | November | BS/IS | The following Operating Expenses were not reported on the MORs as disbursements and have no record of anyone else paying them for Jeffrey Wu:<br>- Auto Insurance Premium for $2,669.01<br>- Finance Charge of $648.29<br>- Home Owners Insurance of $2,447.98<br>- Utilities of $680.00<br>- Payroll Taxes of $3,269.20. Unclear as to why Debtor paying more than individual and employer contributions for payroll taxes.<br>- Interest Mortgage for $2,985.74. 9% of Mortgage payments made for November ($33,293.90).<br>- Legal Fees - Bankruptcy of $30,227.22. Unclear if this was applied to a retainer. Balance for the Professional Retainer on the balance sheet is $0.00 (same as last month). | The following expenses were paid by the spouse:<br>Homeowners insurance: $2,447.98<br>Auto insurance: $2,669.01<br>Petro: $(255.17)<br>PSEGLI: $680.00<br>Mortgage #8758: $(4,379.00)<br>Mortgage #5752: $(10,975.40)<br>Mortgage# 9807: $(1,292.55)<br><br>Finance charge of $648.29 see #45 Payroll taxes of $3,269.20 see #42<br><br>The mortgage interest of $2,985.74 is the portion of the mortgage payment that was applied to interest.<br>Legal fees of $30,227.22 is an accrual and was added to the prior month's liability of $33,607.10 Totaling $63,834.32. | Related to payments made on behalf of the debtor.<br><br>Gross to net calculation includes withholding federal, state and local taxes.<br><br>Pro fees accrual rolls forward correctly after amendment.<br><br>RSR performed a roll forward analysis of due to spouse account and confirmed the balance. | |
| 49 | November | BS/IS | Fuel/Oil for $255.17 is half the $510.34 that was paid out of the Chase account. No accounting for Debtor specifically receiving the other half from his wife as a deposit to any accounts noted. | See# 48 | Payment made by the Debtor on behalf of both the Debtor and the spouse. The amount is recorded correctly, with 50% allocation to the spouse reducing the due to spouse account in the Debtor's balance sheet. | |
| 50 | November | BS/IS | Balance sheet notes Due to Insiders - Spouse as $25,319.39 and Due to Insiders - Isshindou as $60,000.00. | The due to Insiders (wife) indicates that the amount due the spouse was reduced by $1,850.48. The debtor received $60,000 from Isshindou. I have no other information concerning this transaction. | | See #40 |
| 51 | November | BS/IS | Balance sheet notes the Investment - Partnership (Asian Supermarkets) and Investment - Incorporated Companies (Real Estate) as T/B/D. These should have significant balances. | I have no other information as to the value of these other entities. | Amended MOR fixed it. | |
| 52 | December | SCF | $54,300 was paid for Life Insurance Premium for the Jeffrey Wu Irrevocable Insurance Trust. Much more than the past few months payments of around $1,400 (see note for August 2020). | I have no information concerning the Jeffrey Wu Irrevocable Insurance Trust. | Regarding the $54,300 payment made to life insurance, JW and JWJR explained the payment should not have been made.<br><br>RSR asked about a statement from Marc Pergament, who said life insurance payments were being made by JW's brother Lewis Wu. JWJR said that that does not reflect reality and Marc Pergament should not have said that. | The Examiner notes that the Debtor's bankruptcy estate is not a beneficiary of and has no interest in the policies held in the Life Insurance Trusts and questions the propriety of the Debtor continuing to make gifts to the Trusts to cover premiums on a post-petition basis, whether $54,300 or $1,400.<br><br>RSR requested policy statements and premium notices and evidence of any cash value to these policies. |

| Question # | MOR Month | Financial Statement | UST Question | Joseph A. Broderick Answers | RSR Review after Discussion with J. Broderick and Jeffrey Wu, Jeffery Wu, Jr. and Richard Tang | Relevant Open Questions |
|---|---|---|---|---|---|---|
| 53 | December | SCF | Payment of $10,189.24 to Property Tax Buster for Property Tax Protest Fees. Does not specify what properties this was for (personal or business). | I have no information concerning the payment of $10,189.24 to Property Tax Protest Fees. | The debtor and JWJR said they hired Property Tax Busters Inc. as they have hired them in the past.  The debtor states he did not know this professional service would have to be approved by the Court.  The debtor states the payment was made without Court approval and should not have been made. The debtor explained that these services were provided prepetition. | |
| 54 | December | SCF | Salary for Dec 2020 was $14,721.04, much higher than the $8,233.33 in schedule I or the amended schedule I amount of $8,170.00. Paychecks are coming from new income sources (Paycheck deposits under $900), and they account for the majority of this difference. MOR does not break-out the source of the paychecks received (i.e. which company paid him). | I have no information on the source of the debtor's payroll | JW and JWJR explained that Debtor's salaries increased from ~$7,000 to ~$20,000 because the Debtor decided to increase his own pay.  In the beginning of the Chapter 11 case, the Debtor thought the smaller pay would have been sufficient to support his monthly expenses, but it turned out that it wasn't and he decided to increase his own pay. | |
| 55 | December | SCF | Insurance claims received for $22,097 from Aco Amor Insurance for an unspecified insurance claim. | I have no information concerning the Aca Amor Insurance claim. | When asked about the Insurance claims received for $22,097 from Aco Amor Insurance for an unspecified insurance claim, the debtor explained that this was related to a total loss for a BMW X7 vehicle that the debtor was leasing.  The car was insured for $100,000 and the total loss payoff to BMW Financial Services was $77,903 and the Debtor kept the remainder. | |
| 56 | December | BS/IS | Distribution income of $4,674.46 was not reported on MOR with any bank statements filed. | The distribution income of $4,674.46 was from Hong Kong Distribution Corp. and made the following payments directly to the creditors.<br><br>Rolls Royce payment:  $2,094.46<br>Audi payment:  $2,580.00<br>Total:  $4,674.46<br><br>The payments were applied against principal and interest. | JW and JWJR confirmed that car loan payments made postpetition are being made by Hong Kong Distribution Corp. and is being booked as a distribution to JW.<br><br>RSR requested confirmation of car loan payments and car loan statements.  The debtor provided car loan statements on 8/3/2021. | |
| 57 | December | BS/IS | Salary of $17,600.00 was only reported on MOR bank statements to total $14,721.04 in aggregate. | The gross salary of $17,600 less the withholding taxes of $2,878.96 equals $14,721.04. | Gross to net calculation includes withholding federal, state and local taxes | |
| 58 | December | BS/IS | State Income Tax Refund of $4,483.50 reported on MOR bank statements to total $8,967. Half of the $8,967 may have gone to wife. | Half of the AL state refund was applied to the due to insider (wife) as reported in the MOR. | Responded. | |

| Question # | MOR Month | Financial Statement | UST Question | Joseph A. Broderick Answers | RSR Review after Discussion with J. Broderick and Jeffrey Wu, Jeffery Wu, Jr. and Richard Tang | Relevant Open Questions |
|---|---|---|---|---|---|---|
| 59 | December | BS/IS | The following Operating Expenses were not reported on the MORs as disbursements and have no record of anyone else paying them for Jeffrey Wu:<br>- Auto Insurance for $2,040.20<br>- Bank Charges for $5.00<br>- Finance Charge of $638.72<br>- Home Owners Insurance for $2,490.65<br>- Utilities for $842.47 half the payment from the bank statements of $1,684.94 that was paid out of the Chase bank account.<br>- Payroll Taxes for $2,878.96. Unclear as to why Debtor paying more than individual and employer contributions for payroll taxes.<br>- Interest Mortgage for $2,768.57. 9% of Mortgage payments made for December ($31,380.76), in line with prior month.<br>- Professional Fees of $26,800. Unclear if this was applied to a retainer. Balance for the Professional Retainer on the balance sheet is $0.00 (same as last month). | The following expenses were paid or reimbursed by the spouse:<br><br>Auto insurance:  $$2,180.26<br>Less insurance rebate:  $-140.00<br>Net:  $2,040.26<br>Homeowners insurance:  $2,490.65<br>Petro:  $(712.22)<br>PSEGLI:  $(130.24)<br><br>Finance Charge see# 56 Payroll taxes see #57<br><br>The mortgage interest of $2,768.57 is the portion of the mortgage payment that was applied to interest. ·<br>Professional fees of $26,800.90 is an accrual that was added to the prior month's liability of $63,834.32. | Related to payments made on behalf of the debtor.<br><br>Gross to net calculation includes withholding federal, state and local taxes.<br><br>Pro fees accrual rolls forward correctly after amendment.<br><br>RSR performed a roll forward analysis of due to spouse account and confirmed the balance. | |
| 60 | December | BS/IS | State Income Taxes for $369.32 is half of the $738.64 expenses total paid out of Chase account #7978. | State income taxes - the debtor paid the full amount and charged the wife with half thereby reducing the balance due her. | Responded. | |
| 61 | December | BS/IS | Balance sheet now notes Professional and US Trustee fees as $0.00 and Amounts Due to Insiders as $164,372.67 and does not break this amount out. It seems that both accounts were combined for December 2020's balance sheet. | The balance sheet shows other current liabilities of:<br><br>Professional and US Trustee fees:  $90,635.22<br>Amounts due insiders:  $21,380.68<br>Due to Isshindou:  $60,000.00 | Responded, BS has been corrected. | |
| 62 | December | BS/IS | Unsecured Debt for $31,697,983.00 was listed on the Balance Sheet as $0.00 in the prior month (November 2020). | The unsecured debt of $31,697,983 was recorded on the original operating report and carried over. This balance was reported in every operating report. | Responded, BS has been corrected. | |
| 63 | December | BS/IS | Capital stock for $(27,606,236.88), Retained Earnings - Post-Petition for $(81,071.41), and Adjustments to Owner Equity for $73,805.78 [$(27,613,502.51) in total was noted as T/B/D in the prior month (November 2020)]. | The Capital stock is the net equity when you add in the unsecured debt and the Investment in companies of $4,604,362.00. These balances were reported in every operating report. | Responded, BS has been corrected. | |
| 64 | January | SCF | State tax refund for $15,637.00 for an unspecified State. | State refund - I do not know what state refunded the money. | State tax refund for NJ.  RSR received a copy of the check received | |

| Question # | MOR Month | Financial Statement | UST Question | Joseph A. Broderick Answers | RSR Review after Discussion with J. Broderick and Jeffrey Wu, Jeffery Wu, Jr. and Richard Tang | Relevant Open Questions |
|---|---|---|---|---|---|---|
| 65 | January | SCF | Sale of Range Rover for $8,000. Unclear if this was approved by the Bankruptcy Court. Does not specify which Range Rover was sold. Listed on the Schedules as Land Rover-Range Rover 2016 valued at $50,000 or Land Rover-Range Rover 2015 valued at $43,000. | I do not know if the sale was approved by the court. The debtor sold the 2011 Land Rover. | No answer, but we have received complete list of cars including the sale | |
| 66 | January | SCF | Large withdrawal of $15,214.82 for the 2020 Nassau County Property Tax. Does not specify what property this is for. | I do not know which property the tax payment was for. | Regarding the $15,214.82 payment made for property taxes in January 2021, the debtor explained this is related to the issuance of a bank check, that's why it shows a withdrawal without specification as to property, payee information. | RSR requested information to support this transaction The information provided by the Debtor so far was insufficient to clarify. |
| 67 | January | SCF | Salary for Jan 2021 was $16,404.12, much higher than the $8,233.33 in schedule I or the amended schedule I amount of $8,170.00. Paychecks are coming from new income sources (Paycheck deposits under $900), and they account for the majority of this difference. MOR does not break-out the source of the paychecks received (i.e. which company paid him). | I am not familiar with schedule 1 and do not know the source of the debtor's payroll. | JW and JWJR explained that Debtor's salaries increased from ~$7,000 to ~$20,000 because the Debtor decided to increase his own pay. In the beginning of the Chapter 11 case, the Debtor thought the smaller pay would have been sufficient to support his monthly expenses, but it turned out that it wasn't and he decided to increase his own pay. | |
| 68 | January | SCF | Stimulus payment of $1,200.00 noted as US Economic Payment. | Should be listed as Stimulus payment. | Responded. | |
| 69 | January | SCF | Only one mortgage payment made for $21,950.80 for Home Mortgage 5752. Missing payments for Home Mortgage 9807 and Home Mortgage 8758. Not sure if someone else paid mortgage. | I have no knowledge of anyone making another mortgage payment in January | | JW and JWJR said mortgage payments are being paid by either the debtor or the spouse (matches the MOR). RSR requested evidence that these payments are being made and mortgage statements for a few months and bank statements from the spouse that confirms these payments are being made The debtor and JWJR explained that each month they decide from which account the mortgage payment will be made based on availability in each account. Further investigation needs to be made regarding the Debtor's mortgages since statements received so far are not sufficient for a thorough analysis. |

| Question # | MOR Month | Financial Statement | UST Question | Joseph A. Broderick Answers | RSR Review after Discussion with J. Broderick and Jeffrey Wu, Jeffery Wu, Jr. and Richard Tang | Relevant Open Questions |
|---|---|---|---|---|---|---|
| 70 | January | SCF | Transfer to Jeffrey Wu Irrevocable Insurance for $1,420.00 (see note for August 2020). | I have no information about the insurance policies. | Regarding the Insurance payments, JWJR explained that the monthly $1,400 payment is an automatic deduction made every month to pay for life insurance premiums. | The Examiner notes that the Debtor's bankruptcy estate is not a beneficiary of and has no interest in the policies held in the Life Insurance Trusts and questions the propriety of the Debtor continuing to make gifts to the Trusts to cover premiums on a post-petition basis, whether $54,300 or $1,400. |
| 71 | January | BS/IS | Distribution income of $4,674.46 was not reported on MOR with any bank statements filed. | The distribution income of $4,674.46 was from Hong Kong Distribution Corp. and made the following payments directly to the creditors.<br><br>Rolls Royce payment:  $2,094.46<br>Audi payment:  $2,580.00<br>Total:  $4,674.46<br><br>The payments were applied against principal and interest. | JW and JWJR confirmed that car loan payments made postpetition are being made by Hong Kong Distribution Corp. and is being booked as a distribution to JW.<br><br>RSR requested confirmation of car loan payments and car loan statements.  The debtor provided car loan statements on 8/3/2021. | |
| 72 | January | BS/IS | Salary of $19,600.00 was only reported on MOR bank statements to total $16,404.12 in aggregate. | The monthly cash receipts and disbursements show the gross payroll and the tax withholding which net down to $16,404.12. | Gross to net calculation includes withholding federal, state and local taxes | |
| 73 | January | BS/IS | State Tax Refund of $15,637.00 matches what's reported on MOR bank statements and was not split as previous refunds have been. | I do not know why the State tax refund was not split. | The State tax refund for $15637 was received from NJ and deposited in Jan 2021.  This particular refund was split with the wife in Jun 2021 according to an entry for 50% of the refund amount reducing the balance of the due to spouse account in the balance sheet. | |

| Question # | MOR Month | Financial Statement | UST Question | Joseph A. Broderick Answers | RSR Review after Discussion with J. Broderick and Jeffrey Wu, Jeffery Wu, Jr. and Richard Tang | Relevant Open Questions |
|---|---|---|---|---|---|---|
| 74 | January | BS/IS | The following Operating Expenses were not reported on the MORs as disbursements and have no record of anyone else paying them for Jeffrey Wu:<br>- Household Expenses for $5,000.00<br>- Auto Insurance for $2,015.26<br>- Finance Charge of $425.76<br>- Utilities for $1,105.71. Differs from payment of $1,389.98 that was paid out of the Chase bank account.<br>- Payroll Taxes for $3,195.88. Unclear as to why Debtor paying more than individual and employer contributions for payroll taxes.<br>- Interest Mortgage for $1,419.32. 6.5% of Mortgage payment made for January ($21,950.80).<br>- Professional Fees of $0.00 for this month. Balance for the Professional Retainer on the balance sheet is $0.00 (same as last month). | The following expenses were paid by the wife:<br><br>Household expenses:  $5,000.00<br>Automobile insurance:  $2,015.26<br><br>Finance charge see# 71.<br>Utilities difference of $284.27 was charged to the wife.<br>Payroll taxes - That appears to be the tax withholding on the payroll.<br>The mortgage interest is the amount of interest that was paid in January. Professional fees there was no accrual in the month of January. | Related to payments made on behalf of the debtor.<br><br>Gross to net calculation includes withholding federal, state and local taxes.<br><br>Pro fees accrual rolls forward correctly after amendment.<br><br>RSR performed a roll forward analysis of due to spouse account and confirmed the balance. | |
| 75 | January | BS/IS | Amounts Due to Insiders of $164,372.67 for the prior month (December 2020) is now split into Professional and US Trustee fees ($90,635.22) and Amounts Due to Insiders ($73,737.45). it is unclear if the January 2021 Professional and US Trustee fees of $90,635.22 includes the $60,000 that was Due to Insiders - Isshindou in November. Amounts Due to Insiders for January 2021 noted as $60,537.24. | The amount due to insiders reflects the repayment of funds that was previously expended by the wife. | See #40, the Debtor claims the $60,000 was labeled incorrectly as due to insider.<br><br>RSR performed a roll forward analysis of due to spouse account and confirmed the balance. | |
| 76 | January | BS/IS | Unsecured Debt was listed on the Balance Sheet as $31,697,983.00, the same as the prior month (December 2020). | No comment. | | Need further review. |
| 77 | January | BS/IS | Capital stock for $(27,606,236.88), Retained Earnings - Post-Petition for $(67,512.56), and Adjustments to Owner Equity for $65,746.32. | The capital stock of negative $(27,603,472.90) is the same from the petition date. The post-petition income (loss) reconciles to the statement of operations. | Responded, BS has been corrected. | |
| 78 | February | SCF | Salary for Feb 2021 was $22,200.98, much higher than the $8,233.33 in schedule I or the amended schedule I amount of $8,170.00. Paychecks are coming from new income sources (Paycheck deposits under $900), and they account for the majority of this difference. MOR does not break-out the source of the paychecks received (i.e. which company paid him). | I do not have a breakdown of the debtor's payroll. | JW and JWJR explained that Debtor's salaries increased from ~$7,000 to ~$20,000 because the Debtor decided to increase his own pay.  In the beginning of the Chapter 11 case, the Debtor thought the smaller pay would have been sufficient to support his monthly expenses, but it turned out that it wasn't and he decided to increase his own pay. | |

| Question # | MOR Month | Financial Statement | UST Question | Joseph A. Broderick Answers | RSR Review after Discussion with J. Broderick and Jeffrey Wu, Jeffery Wu, Jr. and Richard Tang | Relevant Open Questions |
|---|---|---|---|---|---|---|
| 79 | February | SCF | Only two mortgage payments made, $1,522.55 for Home Mortgage 9807 and $8,138.00 for Home Mortgage 8758. Missing payment for Home Mortgage 5752. Not sure if someone else paid mortgage. Might be deferred payments from prior month (January 2021). | The debtor's wife made the payment for mortgage 5752 in the amount of $9,369.88 | Responded.

RSR performed a roll forward analysis of due to spouse account and confirmed the balance. | |
| 80 | February | BS/IS | Distribution income of $4,674.46 was not reported on MOR with any bank statements filed. | The distribution income of $4,674.46 was from Hong Kong Distribution Corp. and made the following payments directly to the creditors.

Rolls Royce payment: $2,094.46
Audi payment: $2,580.00
Total: $4,674.46

The payments were applied against principal and interest. | JW and JWJR confirmed that car loan payments made postpetition are being made by Hong Kong Distribution Corp. and is being booked as a distribution to JW.

RSR requested confirmation of car loan payments and car loan statements.  The debtor provided car loan statements on 8/3/2021. | |
| 81 | February | BS/IS | Salary of $26,500.00 was only reported on MOR bank statements to total $22,200.98 in aggregate. | The February schedule of cash receipts/disbursement reflects the gross payroll of $26,500 and withholding taxes of $4,299.02 for a net payroll of $22,200.98. | Gross to net calculation includes withholding federal, state and local taxes | |
| 82 | February | BS/IS | The following Operating Expenses were not reported on the MORs as disbursements and have no record of anyone else paying them for Jeffrey Wu:
- Household Expenses for $2,000.00
- Auto Insurance for $2,015.26
- Finance Charge of $595.40
- Home Owner Insurance for $5,936.40
- Utilities for $2,047.45. Differs from payment of $2,340.40 that was paid out of the Chase bank account.
- Payroll Taxes for $4,299.02. Unclear as to why Debtor paying more than individual and employer contributions for payroll taxes.
- Interest Mortgage for $4,111.94. 42.6% of Mortgage payment made for February ($9,660.55). Mortgage payments may have been deferred from prior month.
- Professional Fees of $16,309.08 for this month compared to the $8,000 that was paid to Weinberg, Gross & Pergament LLP from the Chase bank account. Balance for the Professional Retainer on the balance sheet is $0.00 (same as last month) | The following expenses were paid by the wife:

Household expenses: $2,000.00
Automobile insurance: 2,015.26
Homeowners insurance: 5,936.40

Utilities of $292.95 were charged to the wife. Payroll taxes - the withholding taxes are deducted from his gross pay.

Mortgage interest is the portion allocated to interest.
Professional fees - the $16,309.08 is the accrual for the month of February; the $8,000 is the proceeds from the sale of the 2011 Land Rover and was deposited into Mr. Pergament's escrow account. | Related to payments made on behalf of the debtor.

Gross to net calculation includes withholding federal, state and local taxes.

Pro fees accrual rolls forward correctly after amendment.

RSR performed a roll forward analysis of due to spouse account and confirmed the balance. | |

| Question # | MOR Month | Financial Statement | UST Question | Joseph A. Broderick Answers | RSR Review after Discussion with J. Broderick and Jeffrey Wu, Jeffery Wu, Jr. and Richard Tang | Relevant Open Questions |
|---|---|---|---|---|---|---|
| 83 | February | BS/IS | Professional and US Trustee fees $98,944.30 on Balance sheet. | The amount due to professionals the $16,308.98 is an accrual that was added to the previous month balance of $90,635.22. | Responded. | |
| 84 | February | BS/IS | Amounts Due to Insiders $77,479.11 increased from $60,537.24. No accounting for the approximate $17,000 increase. | A schedule showing the increase in the amount due insiders can be found in the February 2021 operating report. | Responded, BS has been corrected. | |
| 85 | February | BS/IS | Unsecured Debt was listed on the Balance Sheet as $31,697,983.00, the same as the prior month (December 2020). | No comment. | | Need further review and discussion. |
| 86 | February | BS/IS | Capital stock for $(27,606,236.88), Retained Earnings - Post-Petition for $(73,660.62), and Adjustments to Owner Equity for $74,572.83. | Capital stock at the petition date $(27,603,472.90) is still the same. The post-petition earnings (loss) of $(91,539) reconciles to the statement of operations. | Responded, BS has been corrected. | |
| 87 | March | SCF | Salary for Mar 2021 was $13,998.58, much higher than the $8,233.33 in schedule I or the amended schedule I amount of $8,170.00. Paychecks are coming from new income sources (Paycheck deposits under $900), and they account for the majority of this difference. MOR does not break-out the source of the paychecks received (i.e. which company paid him). | I have no information concerning the source of the debtor's wages. | JW and JWJR explained that Debtor's salaries increased from ~$7,000 to ~$20,000 because the Debtor decided to increase his own pay.  In the beginning of the Chapter 11 case, the Debtor thought the smaller pay would have been sufficient to support his monthly expenses, but it turned out that it wasn't and he decided to increase his own pay. | |
| 88 | March | SCF | Only two mortgage payments made, $1,522.55 for Home Mortgage 9807 and $8,036.27 for Home Mortgage 8758. Missing payment for Home Mortgage 5752. Not sure if someone else paid mortgage. | The wife did not pay the mortgage for 5752 | Responded. +F98 | |
| 89 | March | BS/IS | Distribution income of $4,674.46 was not reported on MOR with any bank statements filed. | The distribution income of $4,674.46 was from Hong Kong Distribution Corp. and made the following payments directly to the creditors  Rolls Royce payment:  $2,094.46 Audi payment:  $2,580.00 Total:  $4,674.46  The payments were applied against principal and interest | JW and JWJR confirmed that car loan payments made postpetition are being made by Hong Kong Distribution Corp. and is being booked as a distribution to JW.  RSR requested confirmation of car loan payments and car loan statements.  The debtor provided car loan statements on 8/3/2021. | |

| Question # | MOR Month | Financial Statement | UST Question | Joseph A. Broderick Answers | RSR Review after Discussion with J. Broderick and Jeffrey Wu, Jeffery Wu, Jr. and Richard Tang | Relevant Open Questions |
|---|---|---|---|---|---|---|
| 90 | March | BS/IS | Salary of $16,700.00 was only reported on MOR bank statements to total $13,999.58 in aggregate. | The cash receipts/cash disbursement reflect gross payroll of $16,700 and withholding taxes of $2,700.42 that nets to $13,999.58. | Gross to net calculation includes withholding federal, state and local taxes | |
| 91 | March | BS/IS | The following Operating Expenses were not reported on the MORs as disbursements and have no record of anyone else paying them for Jeffrey Wu:<br>- Household Expenses for $2,000.00<br>- Auto Insurance for $2,494.26<br>- Finance Charge of $565.07<br>- Home Owner Insurance for $2,639.88<br>- Utilities for $2,047.45. Differs from payment of $2,340.40 that was paid out of the Chase bank account.<br>- Payroll Taxes for $2,700.42. Unclear as to why Debtor paying more than individual and employer contributions for payroll taxes.<br>- Interest Mortgage for $1,318.76. 13.8% of Mortgage payment made for March ($9,558.82).<br>- Professional Fees of $29,397.80. Unclear if this was applied to a retainer. Balance for the Professional Retainer on the balance sheet is $0.00 (same as last month). | The following payments were made by the wife:<br><br>Household expense: $2,000.00<br>Homeowners insurance: $2,639.88<br>Automobile insurance: $2,494.26<br><br>Debtor paid $2,331.91 amount charged to the wife $1,223.83 nets to $1,108.08. Finance charges see #89<br>Payroll taxes: No comment<br>Mortgage interest is the portion allocated to interest.<br>Professional fees of $29,397.80 is an accrual that was added to the prior period liability which total $136,342.10.<br>Professional Fees Tax Protest - half of the fee was allocated to the wife.<br>The amount due insiders is $27,275.74. | Related to payments made on behalf of the debtor.<br><br>Gross to net calculation includes withholding federal, state and local taxes.<br><br>Pro fees accrual rolls forward correctly after amendment.<br><br>RSR performed a roll forward analysis of due to spouse account and confirmed the balance. | |
| 92 | March | BS/IS | Professional Fees Tax Protest for $1,933.93 is half of the actual payment of $3,867.85 paid from the Chase account. | | See #53 for information on Property Tax Buster Inc. | |
| 93 | March | BS/IS | Professional and US Trustee fees $128,342.10 on Balance sheet. | | Accrual of professional fees for Debtor professionals, amounts tie between P&L and balance sheet | |
| 94 | March | BS/IS | Amounts Due to Insiders $79,632.67 increased from $77,479.11. No accounting for the approximate $2,000 increase. | | RSR performed a roll forward analysis of due to spouse account and confirmed the balance. | |
| 95 | March | BS/IS | Unsecured Debt was listed on the Balance Sheet as $31,697,983.00, the same as the prior month (December 2020). | | Need further review. | Need further review. |
| 96 | March | BS/IS | Capital stock for $(27,606,236.88), Retained Earnings - Post-Petition for $(97,081.72), and Adjustments to Owner Equity for $81,747.29. | | Need further review. | Need further review. |
| 97-99 | | | Intentionally left blank | | | |

| Question # | MOR Month | Financial Statement | UST Question | Joseph A. Broderick Answers | RSR Review after Discussion with J. Broderick and Jeffrey Wu, Jeffery Wu, Jr. and Richard Tang | Relevant Open Questions |
|---|---|---|---|---|---|---|
| **Additional Questions** | | | | | | |
| 100 | April | SCF | Receipts of $7k labeled as Economic Impact | | The $7,000 receipt labeled Economic impact is related to government stimulus program. Debtor provided a copy of the from the US Treasury for $7,000. | |
| 101 | April | SCF | Disbursed $602.58 to Jeffrey Wu Jr as JJ Advance | | Regarding the $602.58 transaction that goes in/out of the debtor's account #7978 is related to JWJR paycheck that was incorrectly deposited into the debtor's account.  And it was returned the following month to JWJR.  The payment was made from HK Supermarket of Pennsylvania. | |
| 102 | April | SCF | disbursed $1,009,601.33 to Preferred Banks as payment of Guarantee | | Setoff against pledged CDs.  Authorized by the Court | |
| 103 | May | SCF | The May-21 MOR for Lucky Star Deer Park Mezz (20-72403) noted a receipt of $500 noted as Loans and Advance – Insider – Spouse. | | Spouse transferred $500 to each Mezz entity for payment of US Trustee Fees | |
| 103 | May | SCF | The May-21 MOR for Flushing Landmark Realty Mezz LLC (20-72404) noted a receipt of $500 noted as Loans - Insider – Spouse. | | Spouse transferred $500 to each Mezz entity for payment of US Trustee Fees | |
| 103 | May | SCF | The May-21 MOR for Victoria Towers Development Corp Mezz (20-72405) noted a receipt of $500 noted as Advance from Insider – Spouse. | | Spouse transferred $500 to each Mezz entity for payment of US Trustee Fees | |

# Exhibit D





MYINT KYAW a/k/a Jeffrey Wu
Debtor: Case No. 820-72407-reg
100%
Victoria Realty Group LLC
(historically managed properties owned by affiliated entities)
50%
(50% Spouse)
Victoria Towers Development Mezz Corp.
Debtor: Case No: 8-20-72405-reg
100%
Victoria Towers Development Corp.
Debtor: Case No. 8-20-73303-reg
"Victoria Towers"
99 Unit Residential Condo
133-38 Sanford St. Flushing, NY
(49 units remain unsold)
50%
(50% Spouse)
Flushing Landmark Realty Mezz LLC
Debtor: Case No: 8-20-72404-reg
100%
Flushing Landmark Realty LLC
Debtor: Case No: 8-20-73302-reg
100%
100,200 sf retail & office building:
41-60 Main St., Flushing, NY
50%
(50% Spouse)
Lucky Star Deer Park Mezz LLC
Debtor: Case No: 8-20-72403-reg
100%
Lucky Star Deer Park, LLC
Debtor: Case No. 8-20-73301-reg
23.4 acre mixed zoned residential and industrial parcels located at 377 Carlls Path, Deer Park, NY.
(77% vacant)
100%
Queen Elizabeth Realty Corp.
Debtor: Case No. 8-20-73327-reg
100%
Owner of 157 Hester St. / 60-80 Elizabeth St., New York, NY
(Property Leased to Hong Kong Supermarket of Hester St. Corp.)
Lease
100%
Hong Kong Supermarket of Hester Street Corp
Operates Asian Supermarket at 157 Hester Street
Owns various supermarket equipment & inventory
100%
Hong Kong Distribution Corp.
Centralized Purchassing for certain related-party supermarkets
50%
(50% Allyn Caruso)
WuMac Inc.
"Various Aircraft and Equipment"
100%
Hong Kong Supermarket Holding Corp.
100%
Hong Kong Plaza Management Corp.
Holds Master Lease of 37-11 Main St. Flushing, NY
sub-
sub-lease
Other unaffiliated sub-tenants
51%
++
Super HK Supermarket of Flushing, LP
100%
Hong Kong Supermarkets of Flushing, Inc.
100%
Hong Kong Supermarket of Elmhurst Inc.
100%
Hong Kong Supermarket of Pensylvania, Inc.
'++ - Other Owners:
Kuanhe Wu 11%
Ideal Investment 10%
Yinglei Wang 8%
Xia Yin 8%
Junwei Shi 8%
Sun Lin 4%
Debtor claims 100% Ownership Resulting from a March 2020 Capital Call

MYINT KYAW a/k/a Jeffrey Wu
Debtor: Case No. 820-72407-reg
47.9%
52.1 % JCBD
Hong Kong Supermarket of Allston LLC (Holds Master Lease)
44%
56% LH Investme
Hong Kong Supermarket of Malden LLC
Sub leases Food Court Space within Supermarket to HKM Allston
99%
(1% Spouse)
Hong Kong Management of Alston, Inc.
Leases to Third Parties
"Food Court" Manager and Sublessor / sublicensor to retail tenants (includes Isshindu -Raman Shop)
99%
(1% Spouse)
130 Bowery LLC
100%
Bowery SPE LLC
100%
SCP2004E-020 LLC
Commercial Property 5972 University Blvd. W. Jacksonville, FL (Leased to CVS)
95%
(5% Spouse)
Wu's Enterpise, LLC
Three Retail Restaurants:
1. HKS Tea LLC (35%)
2. HKS Fried Chicken LLC (35%)
3. Tianjin Bun House LLC (21.5%)
100%
VWU888 LLC
22.1929%
##
GTJ Realty LP (UP REIT)
48 Commercial Properties in NY, NJ, CT & DE comprising 6,000,000 sf
## - Other Owners:
GTJ Realty, Inc. 64.3033%
Lighthouse 100 William Operating LLC 2.7732%
Other Individuals 10.7306%
25%
**
Crown Mansion, LLC
134-39 Maple Ave, Flushing, NY Undeveloped parking lot with air rights for 60k sf residential (ownership is disputed w/ American Chengyi)
** - Other Owners:
Anereican Chengyi 71%
Queens Garden Management LLC 3%
88 Maple Realty LLC 1%

# Exhibit E

Organizational Chart
Real Estate Entities I



## Organizational Chart
## Real Estate Entity II (130 Bowery LLC)
### As of 07/01/2021



Organizational Chart
Wu's Enterprises LLC



Organizational Chart

WuMac, Inc.



Organizational Chart

Real Estate Entities I

*Ownership contested on basis of 2016 Capital Call by American Chengyi Inv Management Group Inc.*



Organizational Chart
Real Estate Entities II
As of 07/01/2021



Organizational Chart
GTJ REIT Structure
As of 12/31/2020
(Ownership of GTJ Realty LP changes given incentives agreement)

```
+-----------------------------------------+
|                                         |
|              Jeffrey Wu                 |
|                                         |
+-----------------------------------------+
                    |
                  100%
                    |
+-----------------------------------------+
|                                         |
|              VWU888 LLC                 |
|                                         |
+-----------------------------------------+
                    |
               22.1929%
                    |
+-----------------------------------------+
|                                         |
|            GTJ Realty LP                |
|       (Created via 2013 UPREIT Merger)  |
|                                         |
+-----------------------------------------+
```

# Organizational Chart
## Supermarket Entities I (Massachusetts)



Organizational Chart
Supermarket Entities II
As of 07/01/2021



# Exhibit F

Jeffrey Wu
Listing of Entities Identified to Date

| Entity Name | Assets / Operations | Ownership | Status (Active/Inactive) | Debtor / Non-Debtor | Listed On Bankruptcy Schedules ? | 2015.3 Reports Filed? | Disclosed to Examiner ? | State of Registration | Year Formed | Year Closed | Latest Tax Return Provided | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REAL ESTATE ENTITIES** | | | | | | | | | | | | |
| Flushing Landmark Realty Mezz LLC | Owns Flushing Landmark Realty LLC | 50% Jeffrey Wu / 50% Spouse | Active | Debtor | Yes | N/A | Yes | NY | 2017 | N/A | 2019 | |
| Flushing Landmark Realty LLC | 100,200 sf. mixed use retail/office building located at 41-60 Main Street in Flushing, NY leased to third-party tenants | 100% Flushing Landmark Realty Mezz LLC | Active | Debtor | Yes | N/A | Yes | NY | 1998 | N/A | 2017 | |
| Lucky Star-Deer Park Mezz LLC | Owns Lucky-Star-Deer Park LLC | 50% Jeffrey Wu / 50% Spouse | Active | Debtor | Yes | N/A | Yes | NY | 2017 | N/A | 2019 | |
| Lucky Star-Deer Park LLC | 23.4 acre mixed zoned residential and industrial parcels located at 377 Carlls Path, Deer Park, NY. (77% vacant) | 100% lucky Star-Deer Park Mezz LLC | Active | Debtor | Yes | N/A | Yes | NY | 1999 | N/A | 2017 | |
| Victoria Towers Development Mezz Corp. | Owns Victoria Towers Development Corp. | 50% Jeffrey Wu / 50% Spouse | Active | Debtor | Yes | N/A | Yes | NY | 2002 | N/A | 2019 | |
| Victoria Towers Development Corp. | Owner and sponsor of Victoria Towers - 99 unit residential condominium tower located at 133-38 Sanford. Ave., Flushing NY.. (49 unsold units) | 100% Victoria Towers Development Mezz LLC | Active | Debtor | Yes | N/A | Yes | NY | 2017 | N/A | 2017 | |
| Queen Elizabeth Realty Corp. | 28,000 sf of retail condo unit located at 15 Hester Street, New York, NY leased to affiliated company Hong Kong Supermarket of Hester Street Corp. | 100% | Active | Debtor | Yes | N/A | Yes | NY | 1994 | N/A | 2019 | |
| Wu Towers Mezz LLC | Owns Wu Towers LLC | 50% Jeffrey Wu / 50% Spouse | ??? | Non-Debtor | Yes | No | Yes | NY | 2017 | N/A | 2017 | |
| Wu Towers LLC | Previously owned a 76 car parking garage & 24,000 sf commercial condo unit located at 133-38 Sanford Avenue in Flushing (deeded to Mortgage lender in Feb. 2019) | 100% Wu Towers Mezz LLC | ??? | Non-Debtor | Yes | No | Yes | NY | 2001 | N/A | 2017 | |
| 130 Bowery LLC | free-standing retail building located in West Jacksonville, FL, leased to CVS Pharmacy | 99% Jeffrey Wu / 1% Spouse | Active | Non-Debtor | Yes | No | Yes | NY | 1999 | N/A | 2020 | |
| Crown Mansion LLC | Undeveloped parking lot w/ 60,000 sf residential air rights located at 134-39 Maple Avenue in Flushing, NY. | 25% Jeffrey Wu / 71% Anereican Chengyi / 3% Queens Garden  Mgmt LLC / 1% 88 Maple Realty LLC | Active | Non-Debtor | Yes | No | Yes | NY | 2013 | N/A | 2018 | |
| Victoria Realty Group LLC | Property management company for affiliated entities ???? | 100% | Active | Non-Debtor | Yes | No | Yes | | | | | |
| Lucky Star Sullivan LLC | | ??? | Inactive | Non-Debtor | Yes | No /Inactive | Yes | | | | | |
| HK Property Management Corp. | | ??? | Inactive | Non-Debtor | Yes | No /Inactive | Yes | | | | | |
| New Enterprise Realty, LLC | | ??? | ??? | Non-Debtor | Yes | No /Inactive | No | | | | | |
| Wu Landmark Corp. | | ??? | ??? | Non-Debtor | No | No /Inactive | No | | | | | |
| **OTHER BUSINESS ENTITIES** | | | | | | | | | | | | |
| VWU888 LLC | Holds Jeffrey Wu's 22.2% Interest in GTJ Realty, LP REIT | 100% Jeffrey Wu | Active | Non-Debtor | Yes | No | Yes | NY | 2019 | N/A | 2019 | |
| GTJ Realty LP (REIT) | Portfolio of 25 commercial properties located in New York, New Jersey and Connecticut | 22.2% Jeffrey Wu / 64.3% GTJ Realty Inc. / 2.8% Wu Family Trust / 10.7% Others | Active | Non-Debtor | No - Indirect ownership | | Yes | DE | 2012 | N/A | 2019 | |
| WuMac Inc. | Commercial aircraft (passive investment) | 50% Jeffrey Wu / 50% Allyn Caruso | Active | Non-Debtor | Yes | | Yes | | | N/A | | |
| Wu's Enterprises LLC | Holds 35% interest in two retail restaurants: HKS Tea LLC  & HKS Fried Chicken LLC | 95% Jeffrey Wu / 5% Spouse | Active | Non-Debtor | Yes | | Yes | MA | 2017 | N/A | 2020 | |
| Union International Bank | | ??? | Inactive | Non-Debtor | | | Yes | | | | | |
| Super HK of El Monte Inc. | | ??? | Inactive | Non-Debtor | | | Yes | | | | | |
| Mon Chong Loong Trading Corp. | | ??? | Inactive | Non-Debtor | Yes | | Yes | | | | | |

Jeffrey Wu
Listing of Entities Identified to Date

| Entity Name | Assets / Operations | Ownership | Status (Active/Inactive) | Debtor / Non-Debtor | Listed On Bankruptcy Schedules ? | 2015.3 Reports Filed? | Disclosed to Examiner ? | State of Registration | Year Formed | Year Closed | Latest Tax Return Provided | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **TRUSTS** | | | | | | | | | | | | |
| 2012 Wu Family Trust (Descendant's Trust) | Holds 2.8% interest in GTJ Realty, LP REIT and Signature Bank checking, savings and brokerage | N/A - Debtor is Grantor Only | Active | Non-Debtor | | N/A | Yes | | 2012 | N/A | | |
| 2006 Life Insurance Trust - Jeffrey Wu | | ??? | Inactive | Non-Debtor | | N/A | Yes | | | | | |
| 2006 Life Insurance Trust - Veronica Wu | | ??? | Inactive | Non-Debtor | | N/A | Yes | | | | | |
| 2013 Life Insurance Trust - Jeffrey Wu | | ??? | Active | Non-Debtor | | N/A | Yes | | | N/A | | |
| 2013 Life Insurance Trust - Veronica Wu | | ??? | Active | Non-Debtor | | N/A | Yes | | | N/A | | |
| **SUPERMARKET ENTITIES** | | | | | | | | | | | | |
| Hong Kong Supermarket of Hester Street Corp. | Asian Retail Supermarket Operator / leases property from affiliate Queen Elizabeth Realty Corp. | 100% | Active | Non-Debtor | Yes | No | Yes | NY | 2008 | N/A | 2019 | |
| Hong Kong Supermarkets of Massachusetts LLC | Inactive. Former owner of interests in Hong Kong Supermarkets of Allston LLC & Hong Kong Supermarkets of Malden, LLC | 99% Jeffrey Wu / 1% Spouse | Inactive | Non-Debtor | Yes | | Yes | MA | 2009 | 2020 | 2020 (final) | Final tax returns filed in 2020. Intests now owned directly by Jeffrey Wu. |
| Hong Kong Supermarket of Allston LLC | Asian Retail Supermarket Operator | 47.9% Jeffrey Wu / 52.1% JCBD Investment, Inc. | Active | Non-Debtor | indirect sub | | Yes | MA | 2009 | N/A | 2020 (initial) | |
| Hong Kong Supermarket of Malden LLC | Asian Retail Supermarket Operator | 44% Jeffrey Wu / 56% LH Investment, Inc. | Active | Non-Debtor | Indirect sub | | Yes | MA | 2009 | N/A | 2020 (initial) | |
| Hong Kong Management of Allston LLC | Manager and sublessor /sublicensor to retail tenants (within Allston Food Court) | 99% Jeffrey Wu / 1% Spouse | Active | Non-Debtor | Yes | | Yes | MA | 2017 | N/A | 2019 | |
| Hong Kong Distribution Corp. | | 100% | Active | Non-Debtor | Yes | | Yes | CA | 2013 | N/A | 2019 | |
| Hong Kong Supermarket Holding Corp. | Owns 100% interests in the below five entities | 100% | Active | Non-Debtor | Yes | | Yes | NY | 2005 | N/A | 2019 | |
| Hong Kong Supermarket of Pennsylvania Inc. | Asian Retail Supermarket Operator | 100% Hong Kong Supermarket Holding Corp. | Active | Non-Debtor | No - indirect ownership | | Yes | PA | 1994 | N/A | 2019 | |
| Hong Kong Supermarket of Elmhurst Inc. | Asian Retail Supermarket Operator | 100% Hong Kong Supermarket Holding Corp. | ??? | Non-Debtor | Yes | | Yes | NY | 1995 | N/A | None | |
| Hong Kong Plaza Management Corp. | Master Lessee of property at 37-11 Main St. in Flushing, NY; sublets / licenses to Super Hk Supermarket of Flushing LP and other subtenants | 100% Hong Kong Supermarket Holding Corp. | Active | Non-Debtor | No - indirect ownership | | Yes | NY | 1996 | N/A | None | |
| Super HK Supermarket of Flushing LP | Asian Retail Supermarket Operator | 100% Hong Kong Supermarket Holding Corp. | Active | Non-Debtor | No - indirect ownership | | Yes | NY | 2017 | N/A | 2019 | f/k/a Hong Kong Supermarket Landmark, L.P. (name changed in 2017) |
| Hong Kong Supermarket of Flushing Inc. | Asian Retail Supermarket Operator | 100% Hong Kong Supermarket Holding Corp. | Active | Non-Debtor | No - indirect ownership | | Yes | NY | 1995 | N/A | 2019 | |

**Jeffrey Wu**
**Listing of Entities Identified to Date**

| Entity Name | Assets / Operations | Ownership | Status (Active/Inactive) | Debtor / Non-Debtor | Listed On Bankruptcy Schedules ? | 2015.3 Reports Filed? | Disclosed to Examiner ? | State of Registration | Year Formed | Year Closed | Latest Tax Retuern Provided | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Hong Kong Food Court of Elmhurst Corp. | Asian Supermarlket Operator - Closed in 2020 | ??? | Inactive | Non-Debtor | Yes | | Yes | | | | | |
| Hong Kong Supermarket of East Brunswick Inc. | | ??? | Inactive | Non-Debtor | No | | Yes | | | | | |
| H.K.S of East Brunswick Realty LLC | | ??? | Inactive | Non-Debtor | No | | Yes | | | | | |
| Hong Kong Spmkts of Cal Inc. | | ??? | Inactive | Non-Debtor | No | | Yes | | | | | |
| Foodmart International Corp. | | ??? | Inactive | Non-Debtor | No | | Yes | | | | | |
| HK Food Court of Elmhurst Corp. | | ??? | Inactive | Non-Debtor | No | | Yes | | | | | |
| Supr HK, HG LLC | | ??? | Inactive | Non-Debtor | Yes | | Yes | | | | | |
| Hong Kong Supermarket of Monrovia Ltd. | | ??? | Inactive | Non-Debtor | Yes | | Yes | | | | | |
| Good Fortune Supermarket of Cerritos LP | | ??? | Inactive | Non-Debtor | Yes | | Yes | | | | | |
| Hong Kong Supermarket of Monteraty Park Ltd. | | ??? | Inactive | Non-Debtor | Yes | | Yes | | | | | |

**OTHER**

**Intercompany Accounts identified through Quickbooks review**

Isshindou Japanese Raman, Inc. 40% / 5% cousin Bernard Wu / 55% 3rd party.  Bernard manages MA Food Court business

# Exhibit G



**Distributions**
**2015 - 2021 Q2**

| Reference | Payee | Check Date | Check Amount | | Payee | Check Date | Check Amount |
|---|---|---|---|---|---|---|---|
| | Jeffrey Wu | 01/13/15 | $ 321,576.76 | | Wu Family Trust | 01/13/15 | 43,847.92 |
| | Jeffrey Wu | 04/15/15 | $ 362,907.19 | | Wu Family Trust | 04/14/15 | 49,483.44 |
| | Jeffrey Wu | 04/15/15 | $ 362,907.19 | | Wu Family Trust | 04/14/15 | 49,483.44 |
| | Jeffrey Wu | 07/15/15 | $ 335,460.83 | | Wu Family Trust | 07/15/15 | 49,542.49 |
| | Jeffrey Wu | 09/04/15 | $ 91,878.91 | | Wu Family Trust | 09/04/15 | 13,569.13 |
| | Jeffrey Wu | 10/13/15 | $ 342,917.12 | | Wu Family Trust | 10/13/15 | 50,643.70 |
| 2015 Distribution Q4 | Jeffrey Wu | 01/14/16 | $ 343,706.97 | | Wu Family Trust | 01/14/16 | 50,760.35 |
| 2015 Supplemental | Jeffrey Wu | 01/20/16 | $ 343,706.97 | | Wu Family Trust | 01/20/16 | 50,760.35 |
| Q1 2016 Distribution | Jeffrey Wu | 04/14/16 | $ 344,876.91 | | Wu Family Trust | 04/14/16 | 50,933.14 |
| Distribution | Jeffrey Wu | 04/14/16 | $ 93,260.53 | | Wu Family Trust | 04/14/16 | 13,773.18 |
| Q2 2016 Distribution | Jeffrey Wu | 07/14/16 | $ 345,235.63 | | Wu Family Trust | 07/14/16 | 50,986.11 |
| Q3 2016 DISTRIBUTION | Jeffrey Wu | 10/11/16 | $ 345,235.63 | | Wu Family Trust | 10/11/16 | 50,986.11 |
| Q4 2016 DISTRIBUTION | Jeffrey Wu | 01/13/17 | $ 345,248.06 | | Wu Family Trust | 01/13/17 | 50,987.91 |
| Repayment of Loan | Jeffrey Wu | 02/10/17 | $ 1,369,641.25 | | Wu Family Trust | 02/10/17 | 202,275.27 |
| Farm Springs | Jeffrey Wu | 03/07/17 | $ 41,948.65 | | Wu Family Trust | 03/07/17 | 6,195.18 |
| 2016 Supplemental | Jeffrey Wu | 04/12/17 | $ 421,969.85 | | Wu Family Trust | 04/12/17 | 62,318.56 |
| Q1 2017 Distribution | Jeffrey Wu | 04/12/17 | $ 383,608.95 | | Wu Family Trust | 04/12/17 | 56,653.23 |
| Q2 2017 Distribution | Jeffrey Wu | 07/13/17 | $ 385,240.61 | | Wu Family Trust | 07/13/17 | 56,894.20 |
| Q3 2017 Distribution | Jeffrey Wu | 10/13/17 | $ 385,240.61 | | Wu Family Trust | 10/13/17 | 56,894.20 |
| Q4 2017 DISTRIBUTION | Jeffrey Wu | 01/16/18 | $ 385,239.06 | | Wu Family Trust | 01/16/18 | 56,893.97 |
| Q1 2018 DISTRIBUTION | Jeffrey Wu | 04/13/18 | $ 385,238.75 | | Wu Family Trust | 04/13/18 | 56,893.93 |
| 2017 SUPP DIST. | Jeffrey Wu | 04/16/18 | $ 308,191.00 | | Wu Family Trust | 04/16/18 | 45,515.13 |
| Q2 2018 DISTRIBUTION | Jeffrey Wu | 07/16/18 | $ 386,890.10 | | Wu Family Trust | 07/13/18 | 57,137.81 |
| Q3 2018 DISTRIBUTION | Jeffrey Wu | 10/15/18 | $ 386,890.10 | | Wu Family Trust | 10/15/18 | 57,137.81 |
| Q4 2018 DISTRIBUTION | Jeffrey Wu | 01/14/19 | $ 386,890.10 | | Wu Family Trust | 01/14/19 | 57,137.81 |
| 2018 SUPP DIST. | Jeffrey Wu | 04/12/19 | $ 348,201.09 | | Wu Family Trust | 04/12/19 | 51,424.03 |
| Q1 2019 DISTRIBUTION | Jeffrey Wu | 04/15/19 | $ 386,890.10 | | Wu Family Trust | 04/15/19 | 57,137.81 |
| Q2 2019 DISTRIBUTION | Jeffrey Wu | 07/15/19 | $ 389,182.02 | | Wu Family Trust | 07/15/19 | 57,476.29 |
| Q3 2019 DISTRIBUTION | Zee Bridge Capital | 10/22/19 | $ 459,822.53 | | Wu Family Trust | 11/04/19 | 57,476.29 |
| Q4 2019 DISTRIBUTION | Zee Bridge Capital | 01/10/20 | $ 459,822.53 | | Wu Family Trust | 01/10/20 | 57,476.29 |
| 2019 SUPP DIST | Zee Bridge Capital | 04/15/20 | $ 459,822.53 | | Wu Family Trust | 04/16/20 | 57,476.29 |
| Q1 2020 DISTRIBUTION | Zee Bridge Capital | 04/17/20 | $ 459,822.53 | | Wu Family Trust | 04/16/20 | 57,476.29 |
| Q2 2020 DISTRIBUTION | Zee Bridge Capital | 07/10/20 | $ 462,857.84 | | Wu Family Trust | 07/15/20 | 57,855.89 |
| Q3 2020 DISTRIBUTION | Zee Bridge Capital | 10/15/20 | $ 462,857.84 | | Wu Family Trust | 10/15/20 | 57,855.69 |
| Q4 2020 DISTRIBUTION | Zee Bridge Capital | 01/22/21 | $ 462,857.84 | | Wu Family Trust | 01/20/21 | 57,855.69 |
| 2020 SUPP. DIST. | Zee Bridge Capital | 04/16/21 | $ 925,715.69 | | Wu Family Trust | 04/21/21 | 115,711.39 |
| Q1 2021 DISTRIBUTION | Zee Bridge Capital | 04/19/21 | $ 462,857.84 | | Wu Family Trust | 04/21/21 | 57,855.69 |
| Q2 2021 DISTRIBUTION | Zee Bridge Capital | 07/16/21 | $ 467,838.33 | | Wu Family Trust | 07/19/21 | 58,478.29 |
| | | | $ 15,414,456.44 | | | | 2,149,260.30 |

**Jeffrey Wu (through Q2 2019)**                    $   10,330,180.94

**Zee Bidge Capital (Q3 2019 to Present)**          $    5,084,275.50

# Exhibit H

**Jeffrey Wu Affiliates**
**Summary of Distribution Account Activity**
**2018  - June 2021***

**Source: Quickbooks Data Files**

| Key: Deposits (Payments) |
|---|

*\* Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.*

| Payor/ Payee | Deposit/ Payment/ Other | Date | 2021 | 2020 | 2019 | 2018 | total |
|---|---|---|---|---|---|---|---|
| **Hong Kong Distribution Corp** | | | | | | | |
| IOC HENG IP | Deposit | 05/22/2018 | | | | 200,000 | 200,000 |
| IOC HENG IP | Deposit | 05/31/2018 | | | | 30,000 | 30,000 |
| IOC HENG IP | Deposit | 07/09/2020 | | 110,000 | | | 110,000 |
| IOC HENG IP | Check | 08/07/2020 | | (100,000) | | | (100,000) |
| IOC HENG IP | Deposit | 09/17/2020 | | 150,000 | | | 150,000 |
| IOC HENG IP | Check | 09/24/2020 | | (20,000) | | | (20,000) |
| IOC HENG IP | Check | 11/19/2020 | | (19,000) | | | (19,000) |
| IOC HENG IP | Check | 12/21/2020 | | (20,000) | | | (20,000) |
| IOC HENG IP | Check | 01/19/2021 | (15,000) | | | | (15,000) |
| IOC HENG IP | Check | 02/08/2021 | (20,000) | | | | (20,000) |
| IOC HENG IP | Check | 02/22/2021 | (30,000) | | | | (30,000) |
| IOC HENG IP | Check | 02/26/2021 | (30,100) | | | | (30,100) |
| IOC HENG IP | Check | 03/16/2021 | (10,000) | | | | (10,000) |
| IOC HENG IP | Check | 04/20/2021 | (22,000) | | | | (22,000) |
| | | | (127,100) | 101,000 | - | 230,000 | 203,900 |
| KATHERINE WU | Check | 07/15/2020 | | (15,012) | | | (15,012) |
| KATHERINE WU | Check | 08/15/2020 | | (15,000) | | | (15,000) |
| KATHERINE WU | Check | 09/15/2020 | | (15,000) | | | (15,000) |
| KATHERINE WU | Check | 10/15/2020 | | - | | | - |
| KATHERINE WU | Check | 10/15/2020 | | (15,000) | | | (15,000) |
| | | | - | (60,012) | - | - | (60,012) |
| MYINT J KYAW a/k/a Jeffrey Wu | Deposit | 04/25/2018 | | | | 30,000 | 30,000 |
| MYINT J KYAW a/k/a Jeffrey Wu | Deposit | 05/02/2018 | | | | 30,000 | 30,000 |

**Jeffrey Wu Affiliates**
**Summary of Distribution Account Activity**
**2018  - June 2021\***

**Source: Quickbooks Data Files**

Key: Deposits (Payments)

*\* Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.*

| Payor/ Payee | Deposit/ Payment/ Other | Date | 2021 | 2020 | 2019 | 2018 | total |
|---|---|---|---|---|---|---|---|
| MYINT J KYAW a/k/a Jeffrey Wu | Deposit | 05/16/2018 | | | | 30,000 | 30,000 |
| MYINT J KYAW a/k/a Jeffrey Wu | Deposit | 06/26/2018 | | | | 70,000 | 70,000 |
| MYINT J KYAW a/k/a Jeffrey Wu | Deposit | 07/18/2018 | | | | 100,000 | 100,000 |
| MYINT J KYAW a/k/a Jeffrey Wu | Deposit | 08/24/2018 | | | | 30,000 | 30,000 |
| MYINT J KYAW a/k/a Jeffrey Wu | Deposit | 09/11/2018 | | | | 60,000 | 60,000 |
| MYINT J KYAW a/k/a Jeffrey Wu | Deposit | 12/14/2018 | | | | 250,000 | 250,000 |
| MYINT J KYAW a/k/a Jeffrey Wu | Deposit | 01/15/2019 | | | 250,000 | | 250,000 |
| MYINT J KYAW a/k/a Jeffrey Wu | Deposit | 01/23/2019 | | | 100,000 | | 100,000 |
| MYINT J KYAW a/k/a Jeffrey Wu | Deposit | 02/15/2019 | | | 50,000 | | 50,000 |
| MYINT J KYAW a/k/a Jeffrey Wu | Deposit | 02/27/2019 | | | 40,000 | | 40,000 |
| MYINT J KYAW a/k/a Jeffrey Wu | Deposit | 04/15/2019 | | | 50,000 | | 50,000 |
| MYINT J KYAW a/k/a Jeffrey Wu | Deposit | 05/01/2019 | | | 120,000 | | 120,000 |
| MYINT J KYAW a/k/a Jeffrey Wu | Deposit | 05/07/2019 | | | 100,000 | | 100,000 |
| MYINT J KYAW a/k/a Jeffrey Wu | Deposit | 05/09/2019 | | | 100,000 | | 100,000 |
| MYINT J KYAW a/k/a Jeffrey Wu | Deposit | 05/15/2019 | | | 100,000 | | 100,000 |
| MYINT J KYAW a/k/a Jeffrey Wu | Deposit | 06/07/2019 | | | 70,000 | | 70,000 |
| MYINT J KYAW a/k/a Jeffrey Wu | Deposit | 08/26/2019 | | | 100,000 | | 100,000 |
| MYINT J KYAW a/k/a Jeffrey Wu | Deposit | 02/13/2020 | | 80,000 | | | 80,000 |
| MYINT J KYAW a/k/a Jeffrey Wu | Deposit | 08/05/2020 | | 50,000 | | | 50,000 |
| | | | - | 130,000 | 1,080,000 | 600,000 | 1,810,000 |

*Other:*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| TAY SHING CORPORATION | Cash paid | 12/31/2020 | | 30,000 | | | 30,000 |
| ZHONG BAO PRODUCE GROUP INC | Cash Paid | 12/31/2020 | | 30,000 | | | 30,000 |

**Jeffrey Wu Affiliates**
**Summary of Distribution Account Activity**
**2018  - June 2021***

**Source: Quickbooks Data Files**

| Key: Deposits (Payments) |
|---|

*\* Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.*

| Payor/ Payee | Deposit/ Payment/ Other | Date | 2021 | 2020 | 2019 | 2018 | total |
|---|---|---|---|---|---|---|---|
| THE LAW OFFICES OF HAYES YOUNG, P.A. | Deposit | 08/06/2020 | | 200,000 | | | 200,000 |
| GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP | Bill | 01/11/2021 | (50,000) | | | | (50,000) |
| GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP | Check | 03/08/2021 | (40,000) | | | | (40,000) |
| GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP | Check | 05/17/2021 | (40,000) | | | | (40,000) |
| GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP | Check | 06/01/2021 | (40,000) | | | | (40,000) |
| FORTRESS CREDIT CO.LLC | Check | | | (100,000) | | | (100,000) |
| BRIDGE FUNDING INC | Check | 06/07/2019 | | | (15,000) | | (15,000) |

| Hong Kong Supermarket of Allston, LLC |
|---|

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| MYINT J KYAW a/k/a Jeffrey Wu | Deposit | 01/24/2018 | | | | 7,420 | 7,420 |
| MYINT J KYAW a/k/a Jeffrey Wu | Deposit | 01/25/2018 | | | | 5,120 | |
| MYINT J KYAW a/k/a Jeffrey Wu | Check | 01/27/2020 | | (38,000) | | | |
| MYINT J KYAW a/k/a Jeffrey Wu | Check | 02/04/2020 | | (15,000) | | | |
| MYINT J KYAW a/k/a Jeffrey Wu | Check | 05/04/2020 | | (50,000) | | | |
| MYINT J KYAW a/k/a Jeffrey Wu | Check | 05/07/2020 | | (50,000) | | | |
| | | | - | (153,000) | - | 12,540 | 7,420 |

**Jeffrey Wu Affiliates**
**Summary of Distribution Account Activity**
**2018  - June 2021***

**Source: Quickbooks Data Files**

| Key: Deposits (Payments) |
|---|

*\* Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.*

| Payor/ Payee | Deposit/ Payment/ Other | Date | 2021 | 2020 | 2019 | 2018 | total |
|---|---|---|---|---|---|---|---|
| **Hong Kong Supermarket of Hester Street** | | | | | | | |
| MYINT J KYAW a/k/a Jeffrey Wu | Deposit | 01/24/2018 | | | | 7,740 | 7,740 |
| MYINT J KYAW a/k/a Jeffrey Wu | Deposit | 01/25/2018 | | | | 9,260 | 9,260 |
| MYINT J KYAW a/k/a Jeffrey Wu | Check | 01/26/2018 | | | | (10,500) | (10,500) |
| MYINT J KYAW a/k/a Jeffrey Wu | Check | 08/03/2018 | | | | (15,000) | (15,000) |
| MYINT J KYAW a/k/a Jeffrey Wu | Deposit | 12/27/2018 | | | | 100,000 | 100,000 |
| MYINT J KYAW a/k/a Jeffrey Wu | Check | 09/25/2019 | | | (10,000) | | (10,000) |
| MYINT J KYAW a/k/a Jeffrey Wu | Check | 09/26/2019 | | | (11,000) | | (11,000) |
| | | | - | - | (21,000) | 91,500 | 70,500 |
| **Hong Kong Supermarket of Pennsylvania** | | | | | | | |
| MYINT J KYAW a/k/a Jeffrey Wu | Check | 06/19/2018 | | | | (100,000) | (100,000) |
| MYINT J KYAW a/k/a Jeffrey Wu | Check | 09/24/2018 | | | | (25,000) | (25,000) |
| MYINT J KYAW a/k/a Jeffrey Wu | Check | 09/27/2018 | | | | (20,000) | (20,000) |
| MYINT J KYAW a/k/a Jeffrey Wu | Deposit | 10/10/2018 | | | | 35,000 | 35,000 |
| MYINT J KYAW a/k/a Jeffrey Wu | Check | 11/13/2018 | | | | (20,000) | (20,000) |
| MYINT J KYAW a/k/a Jeffrey Wu | Check | 11/23/2018 | | | | (18,000) | (18,000) |
| MYINT J KYAW a/k/a Jeffrey Wu | Check | 12/04/2018 | | | | (100,000) | (100,000) |
| MYINT J KYAW a/k/a Jeffrey Wu | Check | 09/11/2019 | | | (30,000) | | (30,000) |
| MYINT J KYAW a/k/a Jeffrey Wu | Check | 12/02/2019 | | | (35,000) | | (35,000) |
| | | | - | - | (65,000) | (248,000) | (313,000) |

**Jeffrey Wu Affiliates**
**Summary of Distribution Account Activity**
**2018  - June 2021***

**Source: Quickbooks Data Files**

| Key: Deposits (Payments) |
|---|

*\* Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.*

| Payor/ Payee | Deposit/ Payment/ Other | Date | 2021 | 2020 | 2019 | 2018 | total |
|---|---|---|---|---|---|---|---|
| **Hong Kong Supermarket of Malden, LLC** | | | | | | | |
| MYINT J KYAW a/k/a Jeffrey Wu | Deposit | 01/24/2018 | | | | 7,460 | 7,460 |
| MYINT J KYAW a/k/a Jeffrey Wu | Check | 02/10/2020 | | (35,000) | | | (35,000) |
| MYINT J KYAW a/k/a Jeffrey Wu | Check | 03/09/2020 | | (35,000) | | | (35,000) |
| MYINT J KYAW a/k/a Jeffrey Wu | Check | 03/16/2020 | | (40,000) | | | (40,000) |
| MYINT J KYAW a/k/a Jeffrey Wu | Check | 06/09/2020 | | (20,000) | | | (20,000) |
| MYINT J KYAW a/k/a Jeffrey Wu | Check | 06/19/2020 | | (30,000) | | | (30,000) |
| | | | - | (160,000) | - | 7,460 | (152,540) |
| **Lucky Star-Deer Park, LLC** | | | | | | | |
| JEFFREY WU | Check | 06/26/2018 | | | | (50,000) | (50,000) |
| JEFFREY WU | Check | 07/11/2018 | | | | (35,000) | (35,000) |
| | | | - | - | - | (85,000) | (85,000) |

**HK Distribution Corp**
**Personal Distribution Account Analysis**
**Sorted by Payee**
**2018 - June 2021***

*\* Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.*

Source: Quickbooks datafile

| Type | Date | Num | Name | Memo | Split/GL Account | Deposits (Payments) |
|------|------|-----|------|------|------------------|---------------------|
| Check | 06/07/2019 | TT | BRIDGE FUNDING INC | JEFFREY WU | ETB #8768 | $ (15,000.00) |
| Check | 09/06/2017 | CASH | CASH | FOR JEFFREY WU | CASH ON HAND | (500.00) |
| Check | 11/09/2020 | TT | FORTRESS CREDIT CO.LLC | 11/09/2020 | PF 2826 | (100,000.00) |
| Bill | 01/11/2021 | | GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP | legal | Accounts Payable | (50,000.00) |
| Check | 03/08/2021 | TT | GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP | 03/08/2021 | PF 2826 | (40,000.00) |
| Check | 05/17/2021 | TT | GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP | 05/17/2021 | PF 2826 | (40,000.00) |
| Check | 06/01/2021 | TT | GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP | 06/01/2021 | PF 2826 | (40,000.00) |
| Deposit | 05/22/2018 | | IOC HENG IP | Deposit | ETB #8768 | 200,000.00 |
| Deposit | 05/31/2018 | | IOC HENG IP | Deposit | ETB #8768 | 30,000.00 |
| Deposit | 07/09/2020 | | IOC HENG IP | Deposit | PF 2826 | 110,000.00 |
| Check | 08/07/2020 | TT | IOC HENG IP | 08/07/2020 | PF 2826 | (100,000.00) |
| Deposit | 09/17/2020 | | IOC HENG IP | HYK PROPERTIES LLC | PF 2826 | 150,000.00 |
| Check | 09/24/2020 | TT | IOC HENG IP | | PF 2826 | (20,000.00) |
| Check | 11/19/2020 | TT | IOC HENG IP | 11/19/2020 | PF 2826 | (19,000.00) |
| Check | 12/21/2020 | TT | IOC HENG IP | 12/21/2020 | PF 2826 | (20,000.00) |
| Check | 01/19/2021 | TT | IOC HENG IP | 01/19/2021 | PF 2826 | (15,000.00) |
| Check | 02/08/2021 | TT | IOC HENG IP | 02/08/2021 | PF 2826 | (20,000.00) |
| Check | 02/22/2021 | TT | IOC HENG IP | 02/22/2021 | PF 2826 | (30,000.00) |
| Check | 02/26/2021 | TT | IOC HENG IP | 02262021 | PF 2826 | (30,100.00) |
| Check | 03/16/2021 | TT | IOC HENG IP | 03/16/2021 | PF 2826 | (10,000.00) |
| Check | 04/20/2021 | TT | IOC HENG IP | 04/20/2021 | PF 2826 | (22,000.00) |
| Check | 07/15/2020 | 30174 | KATHERINE WU | 07/15/2020 | PF 2826 | (15,012.00) |
| Check | 08/15/2020 | 30167 | KATHERINE WU | 08/15/2020 | PF 2826 | (15,000.00) |
| Check | 09/15/2020 | 30168 | KATHERINE WU | 09/15/2020 | PF 2826 | (15,000.00) |
| Check | 10/15/2020 | 30169 | KATHERINE WU | 10/15/2020 | PF 2826 | - |
| Check | 10/15/2020 | 30342 | KATHERINE WU | 10/15/2020 | PF 2826 | (15,000.00) |
| Deposit | 04/25/2018 | | MYINT J KYAW | Deposit | ETB #8768 | 30,000.00 |
| Deposit | 05/02/2018 | | MYINT J KYAW | Deposit | ETB #8768 | 30,000.00 |
| Deposit | 05/16/2018 | | MYINT J KYAW | Deposit | ETB #8768 | 30,000.00 |
| Deposit | 06/26/2018 | | MYINT J KYAW | Deposit | ETB #8768 | 70,000.00 |
| Deposit | 07/18/2018 | | MYINT J KYAW | Deposit | ETB #8768 | 100,000.00 |
| Deposit | 08/24/2018 | | MYINT J KYAW | Deposit | ETB #8768 | 30,000.00 |
| Deposit | 09/11/2018 | | MYINT J KYAW | Deposit | ETB #8768 | 60,000.00 |
| Deposit | 12/14/2018 | | MYINT J KYAW | Deposit | ETB #8768 | 250,000.00 |
| Deposit | 01/15/2019 | | MYINT J KYAW | Deposit | ETB #8768 | 250,000.00 |
| Deposit | 01/23/2019 | | MYINT J KYAW | Deposit | ETB #8768 | 100,000.00 |
| Deposit | 02/15/2019 | | MYINT J KYAW | Deposit | ETB #8768 | 50,000.00 |

**HK Distribution Corp**
**Personal Distribution Account Analysis**
**Sorted by Payee**
**2018  - June 2021***

*\* Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.*

**Source: Quickbooks datafile**

| Type | Date | Num | Name | Memo | Split/GL Account | Deposits (Payments) |
|------|------|-----|------|------|------------------|---------------------|
| Deposit | 02/27/2019 | | MYINT J KYAW | Deposit | ETB #8768 | 40,000.00 |
| Deposit | 04/15/2019 | | MYINT J KYAW | Deposit | ETB #8768 | 50,000.00 |
| Deposit | 05/01/2019 | | MYINT J KYAW | Deposit | ETB #8768 | 120,000.00 |
| Deposit | 05/07/2019 | | MYINT J KYAW | Deposit | ETB #8768 | 100,000.00 |
| Deposit | 05/09/2019 | | MYINT J KYAW | Deposit | ETB #8768 | 100,000.00 |
| Deposit | 05/15/2019 | | MYINT J KYAW | Deposit | ETB #8768 | 100,000.00 |
| Deposit | 06/07/2019 | | MYINT J KYAW | Deposit | ETB #8768 | 70,000.00 |
| Deposit | 08/26/2019 | | MYINT J KYAW | Deposit | PF 2826 | 100,000.00 |
| Deposit | 02/13/2020 | | MYINT J KYAW | Deposit | PF 2826 | 80,000.00 |
| Deposit | 08/05/2020 | | MYINT J KYAW | WIRE FROM HAYS TRUST ACCOUNT | PF 2826 | 50,000.00 |
| General Jour | 12/31/2020 | Cash pa | TAY SHING CORPORATION | cash from boss | Accounts Payable | 30,000.00 |
| Deposit | 08/06/2020 | | THE LAW OFFICES OF HAYES YOUNG, P.A. | From hays trust acct refund to boss familly | PF 2826 | 200,000.00 |
| General Jour | 12/31/2020 | Cash Pa | ZHONG BAO PRODUCE GROUP INC | PAID TO ZHONG BAO | Accounts Payable | 30,000.00 |
| | | | | | | $   1,928,388.00 |

**HK Distribution Corp**
**Corportate Distribution Account Analysis**
**Sorted by Payee**
**2018  - June 2021***

Source: Quickbooks data file

*Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.*

| Type | Date | Num | Name | Memo | Split/GL Account | Deposits (Payments) |
|------|------|-----|------|------|------------------|---------------------|
| General Journal | 01/01/2019 | adj 2018 | 7108-SUPER HK, HG LLC | adj 11/07/2018 from HG | Accounts Receivable $ | (45,000.00) |
| Deposit | 01/31/2018 | | 7109-SUPER HK MAIN STREET CORP | Deposit | ETB #8768 | 50,000.00 |
| Deposit | 06/03/2019 | 4537 | 7123-SUPER HK SUPERMARKET OF FLUSHING LP | Deposit | ETB #8768 | 16,655.00 |
| Deposit | 06/10/2019 | 4538 | 7123-SUPER HK SUPERMARKET OF FLUSHING LP | Deposit | ETB #8768 | 16,667.00 |
| Deposit | 06/13/2019 | 4539 | 7123-SUPER HK SUPERMARKET OF FLUSHING LP | Deposit | ETB #8768 | 16,678.00 |
| Deposit | 06/21/2019 | 4741 | 7123-SUPER HK SUPERMARKET OF FLUSHING LP | Deposit | ETB #8768 | 16,655.00 |
| Deposit | 07/01/2019 | 4742 | 7123-SUPER HK SUPERMARKET OF FLUSHING LP | Deposit | ETB #8768 | 16,667.00 |
| Deposit | 07/03/2019 | 4743 | 7123-SUPER HK SUPERMARKET OF FLUSHING LP | Deposit | ETB #8768 | 16,678.00 |
| Deposit | 08/02/2019 | 5027 | 7123-SUPER HK SUPERMARKET OF FLUSHING LP | Deposit | ETB #8768 | 33,322.00 |
| Deposit | 08/06/2019 | 5029 | 7123-SUPER HK SUPERMARKET OF FLUSHING LP | Deposit | ETB #8768 | 16,678.00 |
| Check | 03/12/2018 | ACH | AMERICAN EXPRESS | FOR AT&T BILLS <JAN & FEB 2018> | ETB #8768 | (2,207.14) |
| Check | 10/02/2018 | TT | AMERICAN EXPRESS | SEPTEMBER EXPENSE | ETB #8768 | (11,002.86) |
| Check | 11/27/2018 | DEBIT | AMERICAN EXPRESS | OCTOBER 2018 EXPENSE | ETB #8768 | (15,187.18) |
| Check | 12/04/2018 | DEBIT | AMERICAN EXPRESS | NOVEMBER EXPENSE | ETB #8768 | (9,001.00) |
| Check | 12/24/2018 | DEBIT | AMERICAN EXPRESS | EXPENSE | ETB #8768 | (10,011.00) |
| Check | 02/06/2019 | DEBIT | AMERICAN EXPRESS | JANUARY EXPENSE | ETB #8768 | (19,022.21) |
| Check | 04/01/2019 | ACH | AMERICAN EXPRESS | FEBRUARY EXPENSE | ETB #8768 | (10,102.06) |
| Check | 04/08/2019 | ACH | AMERICAN EXPRESS | MARCH EXPENSE | ETB #8768 | (11,003.00) |
| Check | 04/29/2019 | ACH | AMERICAN EXPRESS | APRIL EXPRENSE | ETB #8768 | (20,001.82) |
| Check | 06/10/2019 | ACH | AMERICAN EXPRESS | MAY EXPENSE | ETB #8768 | (12,001.93) |
| Check | 07/23/2019 | ACH | AMERICAN EXPRESS | JUNE EXPENSE | ETB #8768 | (11,001.09) |
| Check | 09/10/2019 | ACH | AMERICAN EXPRESS | EXPENSE | ETB #8768 | (6,008.70) |
| Check | 10/28/2019 | ACH | AMERICAN EXPRESS | EXPENSE | ETB #8768 | (10,000.00) |
| Check | 11/29/2019 | ACH | AMERICAN EXPRESS | EXPENSE | ETB #8768 | (10,890.50) |
| Check | 10/24/2019 | 101280 | CAPITAL ONE BANK (4715) | AC#4154 1784 5748 4715 <FOR EXPENSE> | PF 2826 | (7,000.00) |
| Check | 10/15/2019 | TT | DISCOVER | EXPENSE | ETB #8768 | (198.24) |
| Deposit | 06/21/2018 | | HONG KONG SUPERMARKET(SG) | Interco to HKD from SG | ETB #8768 | 1,500.00 |
| Check | 12/28/2018 | TT | HONG KONG SUPERMARKET(SG) | FUND TRANSFER | ETB #8768 | (15,000.00) |
| Check | 01/08/2018 | DEBIT | LIP ON TRADING LTD | 01/08/2018 | ETB #8768 | (35,006.30) |
| Deposit | 05/01/2018 | | LUCKY STAR DEER PARK LLC | Deposit | ETB #8768 | 60,000.00 |
| Deposit | 07/26/2018 | | SUPER HK OF EL MONTE, INC. | Deposit | ETB #8768 | 30,000.00 |
| Deposit | 11/07/2018 | | SUPER HK, HG LLC | Deposit | ETB #8768 | 45,000.00 |
| General Journal | 12/31/2018 | 2018 CPA | | 2018 | Loan From Shareholder(Myint J K | (5,033,188.67) |
| General Journal | 04/07/2019 | deposit | | CASH ON HAND | | 41,201.00 |
| General Journal | 12/31/2019 | 2019 CPA 4 | | 2019 | Loan From Shareholder(Myint J K | (829,271.24) |
| | | | Total | | $ | (5,744,403.94) |

**Hong Kong Supermarket of Allston, LLC**
**Distribution Account Analysis**
**Sorted by Payee**
**2018  - June 2021***

**Source: Quickbooks datafile**

*\* Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.*

| Type | Date | Num | Name | Memo | Split/GL Account | Deposits (Payments) |
|------|------|-----|------|------|------------------|---------------------|
| Deposit | 04/17/2018 | | HONG KONG MANAGEMENT OF ALLSTON LLC | 04/17/2018 | BROOKLINE _ OPERATING | $     70,000.00 |
| Deposit | 05/21/2018 | | HONG KONG MANAGEMENT OF ALLSTON LLC | 05/21/2018 | BROOKLINE _ OPERATING | 33,500.00 |
| Deposit | 07/20/2018 | | HONG KONG MANAGEMENT OF ALLSTON LLC | 07/20/2018 | BROOKLINE _ OPERATING | 8,000.00 |
| Deposit | 09/13/2018 | TT | HONG KONG MANAGEMENT OF ALLSTON LLC | 09/13/2018 | BROOKLINE _ OPERATING | 50,000.00 |
| Deposit | 01/24/2018 | | Myint J. Kyaw | Deposit | CTB_operating_0820 | 7,420.00 |
| Deposit | 01/25/2018 | | Myint J. Kyaw | Deposit | CTB_operating_0820 | 5,120.00 |
| Check | 01/27/2020 | TT | Myint J. Kyaw | 01/27/2020 | BOA_OPERATING_#2416 | (38,000.00) |
| Check | 02/04/2020 | TT | Myint J. Kyaw | 02/04/2020 | BOA_OPERATING_#2416 | (15,000.00) |
| Check | 05/04/2020 | TT | Myint J. Kyaw | 05/04/2020 | BOA_OPERATING_#2416 | (50,000.00) |
| Check | 05/07/2020 | TT | Myint J. Kyaw | 05/07/2020 | BOA_OPERATING_#2416 | (50,000.00) |
| General Jour | 12/01/2020 | adj | REPUBLIC SERVICES(100811) | boss paid ae#1003 | Accounts Payable | 4,862.60 |
| General Jour | 11/30/2020 | adj | REPUBLIC SERVICES(ORGANICS) | boss paid by AE #1003 | Accounts Payable | 5,213.73 |
| Check | 11/04/2019 | TT | SUPER HK OF EL MONTE,INC | 11/04/2019 | BOA_OPERATING_#2416 | (4,000.00) |
| Deposit | 11/06/2019 | TT | SUPER HK OF EL MONTE,INC | 11/06/2019 | BOA_OPERATING_#2416 | 2,000.00 |
| Deposit | 11/07/2019 | TT | SUPER HK OF EL MONTE,INC | 11/07/2019 | BOA_OPERATING_#2416 | 2,000.00 |
| Deposit | 12/17/2019 | TT | SUPER HK OF EL MONTE,INC | 12/17/2019 | BOA_OPERATING_#2416 | 4,000.00 |
| Bill | 05/25/2018 | | U.S. BANK_BOSS CAR SON | 05/25/2018  ACCT#0000-0515-397-966 | Accounts Payable | (1,152.86) |
| General Jour | 04/30/2018 | sales | | Myint J. Kyaw | Fruit | (1,000.00) |
| General Jour | 12/31/2018 | | | reclass | Interco To/From | (182,503.44) |
| General Jour | 01/01/2019 | ADJ2019 | | adj 2018 | loan to BOSTON food court | (578,083.25) |
| General Jour | 12/31/2019 | ADJ2023 | | Paid for 88 supermarket  when purchase store | Loan to | (33,662.87) |
| | | | | | | $   (761,286.09) |

**Hong Kong Supermarket of Hester Street**
**Distribution Account Analysis**
**Sorted by Payee**
**2018  - June 2021***


Source: Quickbooks datafile


*Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.*

| Type | Date | Num | Name | Memo | Split/GL Account | Deposits (Payments) |
|---|---|---|---|---|---|---|
| General Journal | 12/31/2018 | ADJ | A B C SEAFOOD CO. | PAID BY BOSS CC CRAD | Accounts Payable | $        1,300.00 |
| General Journal | 01/12/2021 | Adj 2022 | A B C SEAFOOD CO. | PAID BY BOOS CC#3523 | Accounts Payable | 3,180.00 |
| Check | 03/23/2018 | TT | BANK OF AMERICA | 03/23/2018  IOC | Chase - operating | (10,000.00) |
| Bill | 08/21/2018 | | CAPITAL ONE BANK | 08/21/2018  ACCT ENDING #4715 | Accounts Payable | (3,664.00) |
| Bill | 08/27/2018 | | CAPITAL ONE BANK | 08/27/2018  ACCT ENDING #4715 | Accounts Payable | (3,900.00) |
| Bill | 08/30/2018 | | CAPITAL ONE BANK | 08/30/2018  ACCT ENDING #4715 | Accounts Payable | (5,000.00) |
| Bill | 09/25/2018 | | CAPITAL ONE BANK | 09/25/2018  ACCT ENDING #4715 | Accounts Payable | (3,000.00) |
| Bill | 11/23/2018 | | CAPITAL ONE BANK | 11/23/2018  ACCT ENDING #4715 | Accounts Payable | (3,000.00) |
| Check | 11/05/2019 | ACH | CHASE CREDIT CARD_JW | 11/05/2019  ACCT ENDING#4116 JW | BOA _OP_2296 | (1,834.55) |
| Bill | 05/20/2020 | 3940295 | DLA PIPER LLP | LEGAL FEE | Accounts Payable | (27,042.50) |
| Deposit | 10/02/2018 | 1646 | FLUSHING LANDMARK REALTY LLC | Deposit | Chase - operating | 17,000.00 |
| Deposit | 01/30/2019 | 11672 | FLUSHING LANDMARK REALTY LLC | Deposit | Chase - operating | 30,000.00 |
| Check | 02/04/2019 | 10767 | FLUSHING LANDMARK REALTY LLC | 02/04/2019 | BOA _OP_2296 | (30,000.00) |
| Deposit | 02/14/2019 | 1716 | FLUSHING LANDMARK REALTY LLC | Deposit | Chase - operating | 30,000.00 |
| Deposit | 02/27/2019 | 1719 | FLUSHING LANDMARK REALTY LLC | Deposit | Chase - operating | 30,000.00 |
| Check | 03/11/2019 | 10883 | FLUSHING LANDMARK REALTY LLC | 03/11/2019 | BOA _OP_2296 | (10,000.00) |
| Check | 03/22/2019 | 10891 | FLUSHING LANDMARK REALTY LLC | 03/22/2019 | BOA _OP_2296 | - |
| Deposit | 03/25/2019 | 1732 | FLUSHING LANDMARK REALTY LLC | Deposit | Chase - operating | 10,000.00 |
| Check | 03/26/2019 | 10894 | FLUSHING LANDMARK REALTY LLC | 03/26/2019 | BOA _OP_2296 | (10,000.00) |
| Deposit | 04/03/2019 | 1652 | FLUSHING LANDMARK REALTY LLC | Deposit | Chase - operating | 30,000.00 |
| Deposit | 04/03/2019 | 1243 | FLUSHING LANDMARK REALTY LLC | Deposit | Chase - operating | 20,000.00 |
| Deposit | 05/31/2019 | 1765 | FLUSHING LANDMARK REALTY LLC | Deposit | Chase - operating | 30,000.00 |
| Deposit | 06/18/2018 | 10314 | HONG KONG PLAZA MANAGEMENT INC | Deposit | Chase - operating | 30,000.00 |
| Deposit | 04/01/2019 | 10382 | HONG KONG PLAZA MANAGEMENT INC | Deposit | Chase - operating | 60,000.00 |
| Deposit | 04/02/2019 | 10297 | HONG KONG PLAZA MANAGEMENT INC | Deposit | Chase - operating | 26,000.00 |
| Deposit | 01/24/2018 | | MYINT J. KYAW | Deposit | CTB_operating_0739 | 7,740.00 |
| Deposit | 01/25/2018 | | MYINT J. KYAW | Deposit | CTB_operating_0739 | 9,260.00 |
| Check | 01/26/2018 | TT | MYINT J. KYAW | 01/26/2018 | Chase - operating | (10,500.00) |

**Hong Kong Supermarket of Hester Street**
**Distribution Account Analysis**
**Sorted by Payee**
**2018 - June 2021***

**Source: Quickbooks datafile**

*\* Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.*

| Type | Date | Num | Name | Memo | Split/GL Account | Deposits (Payments) |
|------|------|-----|------|------|------------------|---------------------|
| Check | 08/03/2018 | TT | MYINT J. KYAW | 08/03/2018 | Chase - operating | (15,000.00) |
| Deposit | 12/27/2018 | | MYINT J. KYAW | FROM BOSS | Chase - operating | 100,000.00 |
| Check | 09/25/2019 | | MYINT J. KYAW | 09/25/2019 | Chase - operating | (10,000.00) |
| Check | 09/26/2019 | TT | MYINT J. KYAW | 09/26/2019 | Chase - operating | (11,000.00) |
| General Journal | 12/31/2018 | ADJ | PA<FISHMARKET> | ADJ HK BILL | Accounts Payable | 5,493.00 |
| Bill | 09/28/2020 | | PETER COREY AT MACCO LAW GROUP | 09/28/2020  RETAINER AGREEMENT #1 | Accounts Payable | (10,000.00) |
| Deposit | 09/20/2019 | 5142 | PETTY CASH - LEWIS WU | -MULTIPLE- | Chase - operating | 9,548.53 |
| Deposit | 12/02/2019 | 6070 | PETTY CASH - LEWIS WU | 12/03/2019 | Chase - operating | 5,285.92 |
| Deposit | 12/31/2019 | 6747 | PETTY CASH - LEWIS WU | 07/05/2019-09/18/2019 | BOA _OP_2296 | 2,524.75 |
| General Journal | 12/31/2018 | ADJ | QUEEN ELIZABETH REALTY CORP | MATCH PAYMENT RECORD | Accounts Payable | 6,249.49 |
| Deposit | 02/11/2019 | TT | QUEEN ELIZABETH REALTY CORP | HESTER TO QE | BOA _OP_2296 | 13,000.00 |
| Deposit | 05/15/2019 | TT | QUEEN ELIZABETH REALTY CORP | Deposit | BOA _OP_2296 | 6,000.00 |
| Deposit | 07/11/2019 | TT | QUEEN ELIZABETH REALTY CORP | Deposit | BOA _OP_2296 | 1,000.00 |
| Deposit | 10/01/2019 | TT | QUEEN ELIZABETH REALTY CORP | 10/01/2019 | BOA _OP_2296 | 1,500.00 |
| Check | 10/11/2019 | TT | QUEEN ELIZABETH REALTY CORP | 10/11/2019 | BOA _OP_2296 | (5,000.00) |
| Deposit | 11/13/2019 | TT | QUEEN ELIZABETH REALTY CORP | 11/13/2019 | BOA _OP_2296 | 10,000.00 |
| General Journal | 01/01/2020 | Rent | QUEEN ELIZABETH REALTY CORP | rent paid 2016-2019 by boss | Accounts Payable | 1,949,007.31 |
| General Journal | 06/30/2020 | Rent | QUEEN ELIZABETH REALTY CORP | rent paid by boss  2020 | Accounts Payable | 442,016.80 |
| General Journal | 12/31/2020 | | QUEEN ELIZABETH REALTY CORP | ADJ 12312020  RENT | Accounts Payable | 145,005.60 |
| Check | 01/09/2018 | TT | SUPER HK ,HG LLC | 01/09/2018 | Chase - operating | (27,000.00) |
| Check | 03/30/2018 | TT | SUPER HK ,HG LLC | 03/30/2018 | Chase - operating | (10,000.00) |
| Check | 04/06/2018 | TT | SUPER HK ,HG LLC | 04/06/2018 | Chase - operating | (14,000.00) |
| Check | 10/02/2018 | TT | SUPER HK ,HG LLC | 10/02/2018 | Chase - operating | (17,000.00) |
| Check | 10/16/2018 | TT | SUPER HK ,HG LLC | 10/16/2018 | Chase - operating | (25,000.00) |
| Check | 10/17/2018 | TT | SUPER HK ,HG LLC | 10/17/2018 | Chase - operating | (11,000.00) |
| Check | 11/27/2018 | TT | SUPER HK ,HG LLC | 11/27/2018 | Chase - operating | (11,000.00) |
| Check | 11/28/2018 | TT | SUPER HK ,HG LLC | 11/28/2018 | Chase - operating | (9,000.00) |
| Check | 01/09/2018 | TT | SUPER HK ,HG LLC | 01/09/2019 | Chase - operating | (5,000.00) |
| Check | 02/06/2019 | TT | SUPER HK ,HG LLC | 02/06/2019 | Chase - operating | (7,000.00) |
| Deposit | 02/08/2019 | 14378 | SUPER HK ,HG LLC | Deposit | Chase - operating | 7,200.00 |
| Check | 02/21/2019 | TT | SUPER HK ,HG LLC | 02/21/2019 | Chase - operating | (14,000.00) |
| Check | 05/17/2019 | TT | SUPER HK ,HG LLC | 05/17/2019 | Chase - operating | (5,000.00) |

**Hong Kong Supermarket of Hester Street**
**Distribution Account Analysis**
**Sorted by Payee**
**2018  - June 2021***

**Source: Quickbooks datafile**

*\* Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.*

| Type | Date | Num | Name | Memo | Split/GL Account | Deposits (Payments) |
|------|------|-----|------|------|------------------|---------------------|
| Check | 06/05/2019 | TT | SUPER HK ,HG LLC | 06/05/2019 | Chase - operating | (2,000.00) |
| Check | 06/12/2019 | TT | SUPER HK ,HG LLC | 06/12/2019 | Chase - operating | (12,000.00) |
| Check | 03/17/2020 | TT | SUPER HK ,HG LLC | 03/17/2020 | Chase - operating | (15,000.00) |
| General Journal | 04/08/2019 | CASH | UNITED VEGETABLE PRODUCE INC. | BOSS PAID UNIT VEGE | Cash On Hand | 10,123.00 |
| General Journal | 02/28/2018 | Sales | | | Grocery | (6,200.00) |
| General Journal | 03/31/2018 | Sales | | | Grocery | (22,000.00) |
| General Journal | 04/30/2018 | Sales | | | Fruit | (18,000.00) |
| General Journal | 05/31/2018 | Sales | | | Fruit | (20,500.00) |
| General Journal | 06/30/2018 | Sales | | | Fruit | (20,000.00) |
| General Journal | 07/31/2018 | Sales | | | Fruit | (22,500.00) |
| General Journal | 08/31/2018 | Sales | | | Fruit | (40,076.80) |
| General Journal | 09/30/2018 | Sales | | | Fruit | (17,000.00) |
| General Journal | 10/31/2018 | Sales | | | Fruit | (17,000.00) |
| General Journal | 11/30/2018 | Sales | | | Fruit | (15,000.00) |
| General Journal | 12/31/2018 | Sales | | sales for Dec,2018 | Fruit | (49,357.50) |
| General Journal | 01/31/2019 | Sales | |  Jan,2019 | Grocery | (19,350.00) |
| General Journal | 02/28/2019 | Sales | | Feb,2019 | Grocery | (48,350.00) |
| General Journal | 03/31/2019 | Sales | | March 2019 | Grocery | (17,500.00) |
| General Journal | 04/30/2019 | Sales | | April 2019 | Grocery | (22,845.00) |
| General Journal | 05/31/2019 | Sales | | May 2019 | Grocery | (23,500.00) |
| General Journal | 06/30/2019 | Sales | | June 2019 | Grocery | (25,500.00) |
| General Journal | 07/31/2019 | Sales | | July 2019 | Grocery | (28,210.57) |
| General Journal | 08/31/2019 | Sales | | Aug 2019 | Grocery | (25,505.00) |
| General Journal | 09/30/2019 | Sales | | Sept 2019 | Grocery | (35,300.00) |
| General Journal | 10/31/2019 | Sales | | OCT' 2019 | Grocery | (18,185.00) |
| General Journal | 11/30/2019 | Sales | | NOV' 2019 | Grocery | (30,100.00) |
| General Journal | 12/31/2019 | Sales | | DEC' 2019 | Grocery | (22,500.00) |
| General Journal | 03/31/2020 | Sales | | boss | Grocery | (4,000.00) |
| General Journal | 12/31/2020 | | | company  closed | NJ | 121,050.00 |
| General Journal | 12/31/2020 | | | company closed | MP | (14,150.00) |

|  |  | $ | 2,233,913.48 |
|--|--|---|--------------|

**Hong Kong Supermarket of Pennsylvania, LLC**
**Distribution Account Analysis**
**Sorted by Payee**
**2018  - June 2021***

Source: Quickbooks datafile

*\* Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.*

| Type | Date | Num | Name | Memo | Deposits (Payments) |
|---|---|---|---|---|---|
| General Journal | 01/12/2021 Adj 2022 | | ABC Seafood | 1/12/21 | $        2,385.00 |
| Check | 05/30/2019 TT | | ACCU DATA PAYROLL | 05/30/2019  <SUPER HK HG LLC> | (7,403.98) |
| Check | 03/06/2019 TT | | AMERICAN EXPRESS | 03/06/2019 | (10,012.56) |
| Check | 09/24/2018 ACH | | BANK OF AMERICA_IOC | 09/24/2018  ACCT ENDING#2617 | (450.00) |
| Check | 10/24/2018 ACH | | BANK OF AMERICA_IOC | 10/24/2018  ACCT ENDING#2617 | (445.00) |
| Check | 11/26/2018 ACH | | BANK OF AMERICA_IOC | 11/26/2018  ACCT ENDING#2617 | (439.00) |
| Check | 12/10/2018 ACH | | BANK OF AMERICA_IOC | 12/10/2018  ACCT ENDING#2617 | (7,501.00) |
| Check | 12/31/2018 ACH | | BANK OF AMERICA_IOC | 12/31/2018  ACCT ENDING#2617 | (5,000.00) |
| Check | 01/24/2019 ACH | | BANK OF AMERICA_IOC | 01/24/2019  ACCT ENDING#2617 | (320.00) |
| Check | 01/25/2019 ACH | | BANK OF AMERICA_IOC | 01/25/2019  ACCT ENDING#2617 | (11,641.28) |
| Check | 06/06/2019 TT | | BANK OF AMERICA_IOC | 06/06/2019  REF:58S-17B26  (MYINT & IOC) | (2,200.00) |
| Bill | 01/01/2018 ACCT#5834 | | BANK OF AMERICA-BOSS CAR | ACCT#5834 | (2,883.47) |
| Bill | 02/01/2018 ACCT#5834 | | BANK OF AMERICA-BOSS CAR | ACCT#5834 | (2,883.47) |
| Bill | 03/01/2018 ACCT#5834 | | BANK OF AMERICA-BOSS CAR | ACCT#5834 | (2,883.47) |
| Bill | 04/01/2018 ACCT#5834 | | BANK OF AMERICA-BOSS CAR | ACCT#5834 | (2,883.47) |
| Bill | 05/01/2018 ACCT#5834 | | BANK OF AMERICA-BOSS CAR | ACCT#5834 | (2,883.47) |
| Bill | 06/01/2018 ACCT#5834 | | BANK OF AMERICA-BOSS CAR | ACCT#5834 | (2,883.47) |
| Bill | 07/01/2018 ACCT#5834 | | BANK OF AMERICA-BOSS CAR | ACCT#5834 | (2,883.47) |
| Bill | 08/01/2018 ACCT#5834 | | BANK OF AMERICA-BOSS CAR | ACCT#5834 | (2,883.47) |
| Bill | 09/01/2018 ACCT#5834 | | BANK OF AMERICA-BOSS CAR | ACCT#5834 | (2,883.47) |
| Bill | 10/01/2018 ACCT#5834 | | BANK OF AMERICA-BOSS CAR | ACCT#5834 | (2,883.47) |
| Bill | 11/01/2018 ACCT#5834 | | BANK OF AMERICA-BOSS CAR | ACCT#5834 | (2,883.47) |
| Bill | 12/01/2018 ACCT#5834 | | BANK OF AMERICA-BOSS CAR | ACCT#5834 | (2,883.47) |
| Bill | 01/01/2019 ACCT#5834 | | BANK OF AMERICA-BOSS CAR | ACCT#5834 | (2,883.47) |
| Bill | 02/01/2019 ACCT#5834 | | BANK OF AMERICA-BOSS CAR | ACCT#5834 | (2,883.47) |
| Bill | 03/01/2019 ACCT#5834 | | BANK OF AMERICA-BOSS CAR | ACCT#5834 | (2,883.47) |
| Bill | 04/01/2019 ACCT#5834 | | BANK OF AMERICA-BOSS CAR | ACCT#5834 | (2,883.47) |
| Bill | 05/01/2019 ACCT#5834 | | BANK OF AMERICA-BOSS CAR | ACCT#5834 | (2,883.47) |
| Bill | 06/01/2019 ACCT#5834 | | BANK OF AMERICA-BOSS CAR | ACCT#5834 | (2,883.47) |
| Bill | 07/01/2019 ACCT#5834 | | BANK OF AMERICA-BOSS CAR | ACCT#5834 | (2,883.47) |
| Bill | 08/01/2019 ACCT#5834 | | BANK OF AMERICA-BOSS CAR | ACCT#5834 | (2,883.47) |
| Bill | 09/01/2019 ACCT#5834 | | BANK OF AMERICA-BOSS CAR | ACCT#5834 | (2,883.47) |
| Bill | 10/01/2019 ACCT#5834 | | BANK OF AMERICA-BOSS CAR | ACCT#5834 | (2,883.47) |
| Bill | 08/27/2018 | | CAPITAL ONE BANK | 08/27/2018  ACCT ENDING #4715 | (3,500.00) |

**Hong Kong Supermarket of Pennsylvania, LLC**
**Distribution Account Analysis**
**Sorted by Payee**
**2018  - June 2021***

**Source: Quickbooks datafile**

*** Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.**

| Type | Date | Num | Name | Memo | Deposits (Payments) |
|------|------|-----|------|------|---------------------|
| Bill | 09/07/2018 | | CAPITAL ONE BANK | 09/07/2018  ACCT ENDING #4715 | (4,000.00) |
| Bill | 11/16/2018 | | CAPITAL ONE BANK | HONEY FLORIST <PHILIP CHEUNG> | (600.00) |
| Bill | 12/21/2018 | | CAPITAL ONE BANK | 12/21/2018  ACCT ENDING #4715 | (3,051.00) |
| Bill | 12/26/2018 | | CAPITAL ONE BANK | 12/26/2018  ACCT ENDING #4715 | (4,018.00) |
| Bill | 01/02/2019 | | CAPITAL ONE BANK | 01/02/2019  ACCT ENDING #4715 | (7,000.00) |
| Bill | 03/06/2019 | | CAPITAL ONE BANK | 03/06/2019  ACCT ENDING #4715 | (3,000.00) |
| Bill | 04/29/2019 | | CAPITAL ONE BANK | 04/29/2019  ACCT ENDING #4715 | (3,000.00) |
| General Journal | 12/31/2019 CPA 2019 | | HONG KONG DISTRIBUTION CORP | | 100,000.04 |
| Check | 06/19/2018 TT | | Myint J. Kyaw | 06/19/2018 | (100,000.00) |
| Check | 09/24/2018 TT | | Myint J. Kyaw | 09/24/2018 | (25,000.00) |
| Check | 09/27/2018 TT | | Myint J. Kyaw | 09/27/2018 | (20,000.00) |
| Deposit | 10/10/2018 TT | | Myint J. Kyaw | 10/10/2018 | 35,000.00 |
| Check | 11/13/2018 TT | | Myint J. Kyaw | 11/13/2018 | (20,000.00) |
| Check | 11/23/2018 TT | | Myint J. Kyaw | 11/23/2018 | (18,000.00) |
| Check | 12/04/2018 TT | | Myint J. Kyaw | 12/04/2018 | (100,000.00) |
| Check | 09/11/2019 TT | | Myint J. Kyaw | 09/11/2019 | (30,000.00) |
| Check | 12/02/2019 TT | | Myint J. Kyaw | 12/02/2019 | (35,000.00) |
| Check | 10/01/2018 1056 | | RIVKIN RADLER LLP | 10/01/2018 | (25,000.00) |
| Check | 10/09/2018 TT | | RIVKIN RADLER LLP | 10/09/2018 | (50,000.00) |
| Check | 03/21/2019 TT | | SGHK SUPERMARKET LTD | 03/21/2019 | (15,000.00) |
| Check | 09/04/2019 TT | | SUPER HK OF EL MONTE,INC | 09/04/2019 | (10,000.00) |
| Deposit | 09/20/2019 5997 | | SUPER HK SUPERMARKET OF FLUSHING, L.P. | 08/06/2019  INV#010037 | 2,772.00 |
| Bill | 01/01/2018 ACCT#3353 | | TD AUTO FINANCE_BOSS CAR | ACCT#3353 | (1,045.82) |
| Bill | 02/01/2018 ACCT#3353 | | TD AUTO FINANCE_BOSS CAR | ACCT#3353 | (1,045.82) |
| Bill | 03/01/2018 ACCT#3353 | | TD AUTO FINANCE_BOSS CAR | ACCT#3353 | (1,045.82) |
| Bill | 04/01/2018 ACCT#3353 | | TD AUTO FINANCE_BOSS CAR | ACCT#3353 | (1,045.82) |
| Bill | 05/01/2018 ACCT#3353 | | TD AUTO FINANCE_BOSS CAR | ACCT#3353 | (1,045.82) |

**Hong Kong Supermarket of Pennsylvania, LLC**
**Distribution Account Analysis**
**Sorted by Payee**
**2018  - June 2021***

**Source: Quickbooks datafile**

*\* Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.*

| Type | Date | Num | Name | Memo | Deposits (Payments) |
|------|------|-----|------|------|---------------------|
| Bill | 06/01/2018 | ACCT#3353 | TD AUTO FINANCE_BOSS CAR | ACCT#3353 | (1,045.82) |
| Bill | 07/01/2018 | ACCT#3353 | TD AUTO FINANCE_BOSS CAR | ACCT#3353 | (1,045.82) |
| Bill | 08/01/2018 | ACCT#3353 | TD AUTO FINANCE_BOSS CAR | ACCT#3353 | (1,045.82) |
| Bill | 09/01/2018 | ACCT#3353 | TD AUTO FINANCE_BOSS CAR | ACCT#3353 | (1,045.82) |
| Bill | 10/01/2018 | ACCT#3353 | TD AUTO FINANCE_BOSS CAR | ACCT#3353 | (1,045.82) |
| Bill | 11/01/2018 | ACCT#3353 | TD AUTO FINANCE_BOSS CAR | ACCT#3353 | (1,045.82) |
| Bill | 12/01/2018 | ACCT#3353 | TD AUTO FINANCE_BOSS CAR | ACCT#3353 | (1,045.82) |
| Bill | 12/13/2018 | ACCT#3353 | TD AUTO FINANCE_BOSS CAR | ACCT#3353 | (1,065.82) |
| Bill | 01/01/2019 | ACCT#3353 | TD AUTO FINANCE_BOSS CAR | ACCT#3353 | (1,045.82) |
| Bill | 02/01/2019 | ACCT#3353 | TD AUTO FINANCE_BOSS CAR | ACCT#3353 | (1,045.82) |
| Bill | 03/01/2019 | ACCT#3353 | TD AUTO FINANCE_BOSS CAR | ACCT#3353 | (1,045.82) |
| Bill | 04/01/2019 | ACCT#3353 | TD AUTO FINANCE_BOSS CAR | ACCT#3353 | (1,045.82) |
| Bill | 05/01/2019 | ACCT#3353 | TD AUTO FINANCE_BOSS CAR | ACCT#3353 | (1,045.82) |
| Bill | 06/01/2019 | ACCT#3353 | TD AUTO FINANCE_BOSS CAR | ACCT#3353 | (1,045.82) |
| Bill | 07/01/2019 | ACCT#3353 | TD AUTO FINANCE_BOSS CAR | ACCT#3353 | (1,045.82) |
| Bill | 08/01/2019 | ACCT#3353 | TD AUTO FINANCE_BOSS CAR | ACCT#3353 | (1,045.82) |
| Bill | 09/01/2019 | ACCT#3353 | TD AUTO FINANCE_BOSS CAR | ACCT#3353 | (1,045.82) |
| Bill | 10/01/2019 | ACCT#3353 | TD AUTO FINANCE_BOSS CAR | ACCT#3353 | (1,045.82) |

**Hong Kong Supermarket of Pennsylvania, LLC**
**Distribution Account Analysis**
**Sorted by Payee**
**2018  - June 2021***

**Source: Quickbooks datafile**

*\* Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.*

| Type | Date | Num | Name | Memo | Deposits (Payments) |
|------|------|-----|------|------|---------------------|
| Bill | 11/01/2019 | ACCT#3353 | TD AUTO FINANCE_BOSS CAR | ACCT#3353 | (1,045.82) |
| General Journal | 02/28/2018 | Sales | | | 24,800.00 |
| General Journal | 05/31/2018 | Sales | | sales for 05/2018 | (20,000.00) |
| General Journal | 06/30/2018 | Sales | | sales for 06/2018 | (10,000.00) |
| General Journal | 07/31/2018 | Sales | | sales for 07/2018 | (16,000.00) |
| General Journal | 12/31/2018 | Sales | | sales for 12/2018 | (5,000.00) |
| General Journal | 08/31/2019 | Sales | | Aug 2019 | (5,000.00) |
| General Journal | 12/31/2019 | Sales | | DEC' 2019 | (6,000.00) |
| | | | | | $  (507,180.80) |

**Hong Kong Supermarket of Malden, LLC**
**Distribution Account Analysis**
**Sorted by Payee**
**2018  - June 2021\***

**Source: Quickbooks datafile**

*\* Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.*

| Type | Date | Num | Name | Memo | Split/GL Account | Deposits (Payments) |
|------|------|-----|------|------|------------------|---------------------|
| General Journal | 01/12/2021 Adj 2021 | A B C SEA FOOD CO, | BOSS CC CARD PAID #3523 | Accounts Payable | $  2,385.00 |
| General Journal | 01/01/2020 Adj 2019 | AMAZON.COM | BOSS PAID BILL | Accounts Payable | 2,413.84 |
| General Journal | 12/31/2018 ADJ | HONG KONG DISTRIBUTION CORPORATION | OFFSET BILL | Accounts Payable | 312,937.96 |
| Deposit | 01/24/2018 | Myint J. Kyaw | Deposit | CTB_operating_0887 | 7,460.00 |
| Check | 02/10/2020 TT | Myint J. Kyaw | 02/10/2020 | BOA_OPERATING_#4853 | (35,000.00) |
| Check | 03/09/2020 TT | Myint J. Kyaw | 03/09/2020 | BOA_OPERATING_#4853 | (35,000.00) |
| Check | 03/16/2020 TT | Myint J. Kyaw | 03/16/2020 | BOA_OPERATING_#4853 | (40,000.00) |
| Check | 06/09/2020 TT | Myint J. Kyaw | 06/09/2020 | BOA_OPERATING_#4853 | (20,000.00) |
| Check | 06/19/2020 TT | Myint J. Kyaw | 06/19/2020 | BOA_OPERATING_#4853 | (30,000.00) |
| General Journal | 12/01/2020 Adj 2020 | REPUBLIC SERVICES (100812) | BOSS PAID | Accounts Payable | 3,843.20 |
| General Journal | 11/27/2020 Adj 2020 | REPUBLIC SERVICES (Organics) | BOSS PAID BILL | Accounts Payable | 6,006.74 |
| Check | 01/15/2019 TT | SUPER HK OF EL MONTE,INC | 01/15/2019 | BOA_OPERATING_#4853 | (22,000.00) |
| Deposit | 01/16/2019 TT | SUPER HK OF EL MONTE,INC | 01/16/2019 | BOA_OPERATING_#4853 | 22,000.00 |
| Check | 08/30/2018 TT | SUPER HK, HG LLC | 08/30/2018 | BROOKLINE _ OPERATING | (30,000.00) |
| General Journal | 12/31/2019 ADJ | | | Inter-company transation | 59,458.33 |
| | | | | | $  204,505.07 |

**Super HK Supermarket of Flushing LP**
**Distribution Account Analysis**
**Sorted by Payee**
**2018  - June 2021***

Source: Quickbooks datafile

*Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.*

| Type | Date | Num | Name | Memo | Split/GL Account | Deposits (Payments) |
|------|------|-----|------|------|------------------|---------------------|
| Check | 01/01/2018 | 13485 | IDEAL CAPITAL, LLC | 01/28/2018 #6 | FL super_OP_2168 | $    (8,052.47) |
| Check | 02/01/2018 | 1008 | IDEAL CAPITAL, LLC | 02/28/2018 #7 | PF_OP_1998 | (8,052.47) |
| Check | 03/01/2018 | 1503 | IDEAL CAPITAL, LLC | 03/28/2018 #8 | PF_OP_1998 | (8,052.47) |
| Check | 04/01/2018 | 1754 | IDEAL CAPITAL, LLC | VOID: 04/28/2018 #9 | PF_OP_1998 | - |
| Check | 12/03/2018 | 3610 void | IDEAL CAPITAL, LLC | 04/28/2018 #9 <REPLACED CK#1754> | PF_OP_1998 | (8,052.47) |
| Check | 12/03/2018 | 3611 void | IDEAL CAPITAL, LLC | 05/28/2018 #10 | PF_OP_1998 | (8,052.47) |
| Check | 12/03/2018 | 3612 void | IDEAL CAPITAL, LLC | 06/28/2018 #11 | PF_OP_1998 | (8,052.47) |
| Check | 12/03/2018 | 3613 void | IDEAL CAPITAL, LLC | 07/28/2018 #12 | PF_OP_1998 | (8,052.47) |
| Check | 12/03/2018 | 3614 void | IDEAL CAPITAL, LLC | 08/28/2018 #13 | PF_OP_1998 | (8,052.47) |
| Check | 12/03/2018 | 3615 void | IDEAL CAPITAL, LLC | 09/28/2018 #14 | PF_OP_1998 | (8,052.47) |
| Check | 12/03/2018 | 3616 void | IDEAL CAPITAL, LLC | 10/28/2018 #15 | PF_OP_1998 | (8,052.47) |
| Check | 12/03/2018 | 3617 void | IDEAL CAPITAL, LLC | 11/28/2018 #16 | PF_OP_1998 | (8,052.47) |
| Check | 12/03/2018 | 3618 void | IDEAL CAPITAL, LLC | 12/28/2018 #17 | PF_OP_1998 | (8,052.47) |
| General Jour | 01/01/2020 | VOID CHEC | IDEAL CAPITAL, LLC | void check #3610' to check #3618 after closing date. | PF_OP_1998 | 72,472.23 |
| Deposit | 07/11/2018 | | Myint J. Kyaw | 07/11/2018 from myint j kyaw | Chase_OP_ 0296 | 30,000.00 |
| General Jour | 07/31/2020 | Sales | | JUL' 2020 | GIFT CARD | 10,000.00 |
| General Jour | 10/31/2020 | Sales | | OCT' 2020 | GIFT CARD | (10,000.00) |
| | | | | | | $    5,842.59 |

**Super HK Supermarket of Elmhurst**
**Distribution Account Analysis**
**Sorted by Payee**
**2018  - June 2021***

**Source: Quickbooks datafile**

*** Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.**

| Type | Date | Num | Name | Memo | Split/GL Account | Deposits (Payments) |
|------|------|-----|------|------|------------------|--------------------:|
| Check | 01/02/2018 | TT | AMERICAN EXPRESS | 01/02/2018 | CTB_operating_0770 | $   (22,677.85) |
| Check | 01/30/2018 | TT | AMERICAN EXPRESS | 01/30/2018 | CTB_operating_0770 | (5,001.00) |
| Check | 02/26/2018 | TT | AMERICAN EXPRESS | | CTB_operating_0770 | (20,018.00) |
| Check | 03/21/2018 | TT | AMERICAN EXPRESS | 03/21/2018 | CTB_operating_0770 | (5,003.00) |
| Check | 03/28/2018 | TT | AMERICAN EXPRESS | 03/28/2018 | CTB_operating_0770 | (5,001.00) |
| Check | 04/05/2018 | TT | AMERICAN EXPRESS | 04/05/2018 | CTB_operating_0770 | (6,012.00) |
| Check | 04/06/2018 | TT | AMERICAN EXPRESS | 04/06/2018 | CTB_operating_0770 | (3,003.00) |
| Check | 05/14/2018 | TT | AMERICAN EXPRESS | 05/14/2018 | CTB_operating_0770 | (9,006.00) |
| Check | 06/11/2018 | TT | AMERICAN EXPRESS | 06/11/2018 | CTB_operating_0770 | (12,003.00) |
| Check | 06/27/2018 | TT | AMERICAN EXPRESS | 06/27/2018 | CTB_operating_0770 | (9,001.02) |
| Check | 06/28/2018 | TT | AMERICAN EXPRESS | 06/28/2018 | CTB_operating_0770 | (10,633.00) |
| Check | 07/09/2018 | TT | AMERICAN EXPRESS | 07/09/2018 | CTB_operating_0770 | (2,011.50) |
| Check | 09/20/2018 | TT | AMERICAN EXPRESS | 09/20/2018 | CTB_operating_0770 | (15,989.99) |
| Check | 02/26/2018 | 12619 | CAPITAL ONE BANK | 02/26/2018  ACCT ENDING#4715 | CTB_operating_0770 | (11,000.00) |
| Check | 03/14/2018 | 12645 | CAPITAL ONE BANK | 03/14/2018  ACCT ENDING#4715 | CTB_operating_0770 | (5,000.00) |
| Check | 06/07/2018 | 12673 | CAPITAL ONE BANK | 06/07/2018  ACCT ENDING#4715 | CTB_operating_0770 | (3,000.00) |
| Check | 08/27/2018 | 12697 | CAPITAL ONE BANK | 08/27/2018  ACCT ENDING#4715 | CTB_operating_0770 | (3,600.00) |
| Check | 01/29/2018 | 12587 | HONG KONG PLAZA MGMT CORP. | 01/29/2018 | CTB_operating_0770 | (50,000.00) |
| Check | 01/29/2018 | 12588 | HONG KONG PLAZA MGMT CORP. | 01/29/2018 #2 | CTB_operating_0770 | (40,000.00) |
| Check | 08/27/2018 | 12698 | HONG KONG PLAZA MGMT CORP. | 08/27/2018 | CTB_operating_0770 | (1,000.00) |
| Check | 01/02/2018 | 12560 | IOC HENG IP | 01/02/2018 | CTB_operating_0770 | (40,000.00) |
| Check | 03/14/2018 | 12646 | IOC HENG IP | 03/14/2018 | CTB_operating_0770 | (6,000.00) |
| Check | 03/23/2018 | 12648 | IOC HENG IP | 03/23/2018 | CTB_operating_0770 | (10,000.00) |
| Check | 03/29/2018 | 12650 | IOC HENG IP | 03/23/2018 | CTB_operating_0770 | (10,000.00) |
| General Journa | 05/01/2020 | Legal fee | THE LAW OFFICES OF HAYES YOUNG, F | Paid legal fee by boss | Accounts Payable | 5,000.00 |

|  |  |  |  |  |  | $   (299,960.36) |

Lucky Star- Deer Park LLC
Distribution Account Analysis
Sorted by Payee
2018 - June 2021*

Source: Quickbooks datafile

*Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.*

| Type | Date | Num | Name | Memo | Split/GL Account | Deposits (Payments) |
|------|------|-----|------|------|------------------|---------------------|
| Check | 12/10/2019 | 10348 | ANCHIN, BLOCK & ANCHIN LLP | JW's Inv#194059 08/08/19 | Capital One DIP Account 8250 | $ (15,000.00) |
| Check | 09/08/2020 | 10197 | ANCHIN, BLOCK & ANCHIN LLP | 2019 Tax Returns, including Mezz | Capital One DIP Account 8250 | (5,500.00) |
| Check | 06/06/2018 | XFER | FLUSHING LANDMARK REALTY LLC | TT TO FLR | Capital One DIP Account 8250 | (60,000.00) |
| Check | 04/30/2020 | 10359 | FLUSHING LANDMARK REALTY LLC | TT TO FLR | Capital One DIP Account 8250 | (15,000.00) |
| Check | 11/03/2020 | XFER | FLUSHING LANDMARK REALTY LLC | TT TO FLR | Capital One DIP Account 8250 | (10,000.00) |
| Check | 05/01/2018 | WIRE | HONG KONG DISTRIBUTION CORP. | 5/1/18 TT TO HK DISTRIBUTION | Capital One DIP Account 8250 | (60,000.00) |
| Check | 06/26/2018 | XFER | JEFFREY WU | 6/26/18 XFER TO JW | Capital One DIP Account 8250 | (50,000.00) |
| Check | 07/11/2018 | XFER | JEFFREY WU | 7/11/18 XFER TO JW | Capital One DIP Account 8250 | (35,000.00) |
| Check | 08/05/2020 | 10376 | LUCKY STAR DEER PARK MEZZ LLC | To Open Mezz DIP A/C | Capital One DIP Account 8250 | (500.00) |
| Check | 03/04/2021 | 20011 | LUCKY STAR DEER PARK MEZZ LLC | TT to LSDPM | Capital One DIP Account 8250 | - |
| Check | 03/15/2019 | ACH | NYS  DEPARTMENT OF FINANCE AND TAXA | 3/15/19 ACH NYS LLC FEE - MEZZ LLC | Capital One DIP Account 8250 | (25.00) |
| Check | 02/27/2020 | ACH | NYS LLC/LLP FEES | 2/27/2020 NYS 2019 LLC FEES- LSDP MEZZ | Capital One DIP Account 8250 | (1,500.00) |
| Check | 09/23/2019 | 10334 | PETER LUGER STEAK HOUSE | Acct #888 Aug/19 | Capital One DIP Account 8250 | (2,202.82) |
| Check | 10/11/2019 | 10336 | PETER LUGER STEAK HOUSE | Acct #888 Inv##2002608 | Capital One DIP Account 8250 | (1,025.00) |
| Check | 11/14/2019 | 10342 | PETER LUGER STEAK HOUSE | Acct #888 10.14.19 | Capital One DIP Account 8250 | (626.08) |
| Check | 11/12/2019 | 10341 | STATE FARM BANK | NYS DOS Corp CBiennial | Capital One DIP Account 8250 | (9.00) |
| Check | 06/23/2020 | 20015 | The Law Offices of Hayes Young, PA | LEGAL FEE | Capital One DIP Account 8250 | (100,000.00) |
| Check | 01/26/2018 | XFER | VICTORIA REALTY GROUP | XFER TO VRG | Capital One DIP Account 8250 | (30,000.00) |
| Check | 12/17/2019 | 10349 | VICTORIA REALTY GROUP | TT to VRG | Capital One DIP Account 8250 | (20,000.00) |
| Check | 04/02/2020 | 10356 | VICTORIA REALTY GROUP | TT to VRG | Capital One DIP Account 8250 | (15,000.00) |
| Check | 04/13/2020 | 10358 | VICTORIA REALTY GROUP | TT to VRG | Capital One DIP Account 8250 | (15,000.00) |
| Check | 11/10/2020 | 10285 | VICTORIA REALTY GROUP | TT to VRG | Capital One DIP Account 8250 | (3,859.00) |
| General Jour | 02/26/2018 | JPEXPRESS | | 2/26/18 RENTAL INCOME - JP EXPRESS - DEPOSIT TO FL ACCOUNT | Rental Income | (43,002.00) |
| General Jour | 03/26/2018 | INTERCO | | -MULTIPLE- | Rental Income | (46,002.00) |
| General Jour | 03/26/2018 | INTERCO | | 3/12/18 RENT - JP EXPRESS - CK 77412 - MAR/18 - DEPOSIT TO FL | Rental Income | 2,564.13 |
| General Jour | 04/06/2018 | RENT | | 4/6/18 LSDP RENT DEP TO FL - EAST COAST AUTO CK 1145 | Rental Income | (1,250.00) |
| General Jour | 04/09/2018 | RENT | | 4/9/18 LSDP RENT DEP TO FL - JP EXPRESS CK77185 | Rental Income | (43,002.00) |
| General Jour | 05/07/2018 | RENT | | 5/7/18 LSDP RENT - MAY/18 - EAST COAST AUTO - DEP TO FL | Rental Income | (1,250.00) |
| General Jour | 05/10/2018 | RENT | | 5/10/18 LSDP RENT- JP EXPRESS- MAY/18 - DEP TO FL | Rental Income | (43,029.17) |
| General Jour | 05/30/2018 | RENT | | 5/30/18 LSDP RENT-JP EXPRESS - RE TAXES | Other Income - R.E. Taxes | (88,000.00) |
| General Jour | 06/01/2018 | INTERCO | | 6/1/18 LSDP RENT-JP EXPRESS - DEPOSIT TO FL | Rental Income | (43,002.00) |
| General Jour | 06/11/2018 | INTERCO | | 6/11/18 RENT - EAST COAST AUTO - DEPOSIT TO FL | Rental Income | (1,250.00) |
| General Jour | 07/16/2018 | INTERCO | | 7/16/18 RENTAL INCOME - JP EXPRESS - DEPOSIT TO FL | Rental Income | (44,401.39) |
| General Jour | 07/23/2018 | INTERCO | | 7/23/18 RENTAL INCOME - LIGHTHOUSE 74 - JUL-AUG/18 CK 1114 | Rental Income | (395.00) |
| General Jour | 08/06/2018 | INTERCO | | 8/6/18 rental income- east coast auto transport jul/18 dep to fl | Rental Income | (1,250.00) |
| General Jour | 08/13/2018 | INTERCO | | 8/13/18 CAM/rental income  jp express Aug/18 dep to fl | Rental Income | (44,524.13) |
| General Jour | 09/10/2018 | INTERCO | | 9/10/18 LSDP RENT/CAM - JP EXPRESS- DEP TO FL | Rental Income | (42,671.98) |
| General Jour | 09/14/2018 | INTERCO | | 9/14/18 LSDP RENTAL INCOME-CAMPOS TRANSPORT - DEP TO VRG | Rental Income | (400.00) |

**Lucky Star- Deer Park LLC**
**Distribution Account Analysis**
**Sorted by Payee**
**2018  - June 2021***

**Source: Quickbooks datafile**

*\* Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.*

| Type | Date | Num | Name | Memo | Split/GL Account | Deposits (Payments) |
|------|------|-----|------|------|------------------|---------------------|
| General Journ | 09/26/2018 | INTERCO | | 9/26/18 LLSDP RENTAL INCOME - LIGHTHOUSE DEP TO VRG. | Rental Income | (400.00) |
| General Journ | 09/26/2018 | INTERCO | | 9/26/18  LSDP RENTAL INCOME - EAST COAST AUTO-DEP TO FL | Rental Income | (2,500.00) |
| General Journ | 10/09/2018 | INTERCO | | 10/9/18 RENTAL INCOME - JP EXPRESS DEP TO FL | -SPLIT- | (42,916.98) |
| General Journ | 10/22/2018 | INTERCO | | 10/22/18 RENTAL INCOME - EAST COAST AUTO OCT/18 DEP TO FL | Rental Income | (1,250.00) |
| General Journ | 11/13/2018 | RENT | | 11/13/18 LSDP RENTAL INCOME - JP EXPRESS DEP TO FL | Rental Income | (44,292.00) |
| General Journ | 12/12/2018 | INTERCO | | 12/12/18 LSDP RENT EAST COAST AUTO/JP DEP TO FL | Rental Income | (45,542.00) |
| General Journ | 12/26/2018 | INTERCO | | 12/26/18 LSDP RENT EAST COAST AUTO DEC/18 DEP TO FL | Rental Income | (1,250.00) |
| General Journ | 12/31/2018 | allocation | | Allocate Bluestone Loan | Loan Payable - MRC - Bluestone | (24,595,026.47) |
| General Journ | 01/11/2019 | DEP | | 1/11/19 LSDP RENTAL INCOME - EAST COAST AUTO - JAN - DEP TO FLR | Rental Income | (1,250.00) |
| General Journ | 01/15/2019 | DEP | | 1/15/19 LSDP RENTAL INCOME - JP EXPRESS - DEP TO FLR | Rental Income | (45,123.71) |
| General Journ | 02/04/2019 | interco | | 2/4/19 LSDP RENTAL INCOME-EAST COAST AUTO-DEP TO LANDMARK | Rental Income | (1,250.00) |
| General Journ | 02/11/2019 | interco | | 2/11/19 LSDP RENTAL INCOME-JP EXPRESS-DEP TO LANDMARK | Rental Income | (58,300.00) |
| General Journ | 03/11/2019 | RENT | | 3/11/19 LSDP RENT - JP EXPRESS DEP TO FLR | Rental Income | (59,683.04) |
| General Journ | 03/11/2019 | INTERCO | | 3/11/19 LSDP RENTAL INCOME - EAST COAST AUTO DEP TO FLR | Rental Income | (1,250.00) |
| General Journ | 04/05/2019 | INTERCO | | 4/5/19 LSDP RENTAL INCOME EAST COAST AUTO DEP TO FL | Rental Income | (1,250.00) |
| General Journ | 04/09/2019 | INTERCO | | 4/9/19 LSDP RENTAL INCOME JP EXPRESS DEP TO FL | Rental Income | (60,987.62) |
| General Journ | 05/13/2019 | INTERCO | | 5/13/19 LSDP RENT - JP EXPRESS DEP TO LANDMARK | Rental Income | (61,202.91) |
| General Journ | 06/10/2019 | RENT | | 6/10/19 LSDP RENT DEP TO FL - JP EXPRESS | Rental Income | (60,987.62) |
| General Journ | 07/10/2019 | RENT | | 7/10/19 RENTAL INCOME - JP EXPRESS - DEP TO FL | Rental Income | (61,041.17) |
| General Journ | 08/05/2019 | RENT | | 8/5/19 LSDP RENT - EAST COAST AUTO - DEP TO FL | Rental Income | (1,500.00) |
| General Journ | 08/05/2019 | RENT | | 8/12/19 LSDP RENT - JP EXPRESS - DEP TO FL | Rental Income | (60,917.48) |
| General Journ | 09/09/2019 | RENT | | 9/9/19 LSDP RENTAL INCOME - JP EXPRESS DEP TO FL | Rental Income | (60,917.48) |
| General Journ | 10/07/2019 | RENT | | 10/7/19 LSDP RENT-JP EXPRESS DEPTO FL | Rental Income | (60,643.68) |
| General Journ | 11/12/2019 | RENT | | 11/12/19 LSDP RENT - JP EXPRESS | Rental Income | (60,377.70) |
| General Journ | 12/09/2019 | RENT | | 12/9/19 LSDP RENTAL INCOME - JP EXPRESS DEP TO FL | Rental Income | (60,000.00) |
| General Journ | 01/14/2020 | RENT | | 1/14/2020 LSDP RENT JP EXPRESS DEP TO FL CK 87349 | Rental Income | (61,800.00) |
| General Journ | 02/10/2020 | RENT | | 2/10/2020 RENTAL INCOME - JP EXPRESS DEP TO LANDMARK | Rental Income | (61,800.00) |
| General Journ | 03/13/2020 | RENT | | 3/13/20 LSDP RENTAL INCOME - JP EXPRESS - DEP TO FL | Rental Income | (38,090.96) |

**Lucky Star- Deer Park LLC**
**Distribution Account Analysis**
**Sorted by Payee**
**2018  - June 2021***

**Source: Quickbooks datafile**

*\* Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.*

| Type | Date | Num | Name | Memo | Split/GL Account | Deposits (Payments) |
|------|------|-----|------|------|------------------|---------------------|
| General Journ | 04/27/2020 | RENT | | 4/27/20 LSDP RENTAL INCOME - JP EXPRESS - DEP TO FL | Rental Income | (61,800.00) |
| General Journ | 05/12/2020 | RENT | | 5/12/20 LSDP RENT JP EXPRESS DEP TO FLR | Rental Income | (61,800.00) |
| General Journ | 06/12/2020 | RENT | | 6/12/20 LSDP RENT - JP EXPRESS DEP TO FL | Rental Income | (61,800.00) |
| General Journ | 07/08/2020 | RENT | | 7/8/20 LSDP RENT DEP TO FLR JP EXPRESS | Rental Income | (61,800.00) |
| General Journ | 08/10/2020 | RENT | | 8/10/20 LSDP RENT DEP TO FLR - JP EXPRESS | Rental Income | (61,800.00) |
| General Journ | 09/10/2020 | RENT | | 9/10/20 Rental Income - JP Express - Deposit to FLR | Rental Income | (59,641.08) |
| General Journ | 10/13/2020 | RENT | | -MULTIPLE- | Rental Income | (70,800.00) |
| General Journ | 11/13/2020 | INTERCO | | 11/13/20 LSDP RENT DEP TO FL - JP EXPRESS | Rental Income | (61,800.00) |
| General Journ | 05/31/2021 | East Coast | | -MULTIPLE- | Rental Income | (4,500.00) |
| | | | | | | $ (26,998,404.34) |

Victoria Realty Group LLC
Distribution Account Analysis
Sorted by Payee
2018  - June 2021*

Source: Quickbooks datafile

* Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.

| Type | Date | Num | Name | Memo | Split/GL Account | Deposits (Payments) |
|------|------|-----|------|------|------------------|---------------------|
| Deposit | 05/02/2019 | 1487 | 678 PHARMACY INC. | 5/2/19 QE RENT - 678 PHARMACY MAY/19 | Capital One | $          9,975.00 |
| Deposit | 07/29/2019 | 1536 | 678 PHARMACY INC. | 7/29/19 QERC RENT DEP TO VRG | Capital One | 9,975.00 |
| Deposit | 04/17/2018 | 2232 | AMERICAN CHENGYI INVESTMENT CO | 4/17/18 VTDC SERVICE INCOME - 20A | Capital One | 100.00 |
| Deposit | 04/24/2018 | 2230 | AMERICAN CHENGYI INVESTMENT CO | 4/24/18 VTDC SERVICE INCOME - 20A | Capital One | 350.00 |
| Deposit | 07/09/2018 | 2307 | AMERICAN CHENGYI INVESTMENT CO | 7/9/18 VTDC 20A REPAIR FEE | Capital One | 475.00 |
| Deposit | 09/14/2018 | 283 | CAMPOS TRANSPORT INC. | 9/14/18 LSDP RENTAL INCOME DEP TO VRG | Capital One | 400.00 |
| Deposit | 10/30/2018 | | CASH | 10/30/18 VTDC SERVICE DEP TO VRG | Capital One | 10.00 |
| Deposit | 01/09/2019 | | CASH | 1/9/19 VTDC PARKING | Capital One | 6,000.00 |
| Deposit | 02/07/2019 | | CASH | 2/7/19 VTDC SERVICE DEP TO VRG | Capital One | 10.00 |
| Deposit | 03/01/2019 | | CASH | 3/1/19 VTDC SERVICE DEP TO VRG | Capital One | 30.00 |
| Deposit | 05/01/2019 | | CASH | 5/1/19 VTDC SERVICE | Capital One | 20.00 |
| Deposit | 09/16/2019 | | CASH | 9/16/19 VTDC SERVICE INCOME | Capital One | 50.00 |
| Deposit | 09/16/2019 | | CASH | 9/16/19 VTDC KEYS 20E 20D | Capital One | - |
| Deposit | 09/20/2019 | | CASH | 9/23/19 VTDC CAM 8TH 10TH FL MAY-AUG/19 CASH | Capital One | 31,380.00 |
| Deposit | 11/13/2019 | | CASH | 11/13/19 VTDC SERVICE INCOME DEP TO VRG | Capital One | 69.00 |
| Deposit | 01/06/2020 | | CASH | 1/6/2020 VTCO CAM 6E JAN/2020 DEP TO VRG | Capital One | 445.13 |
| Deposit | 01/09/2020 | | CASH | 1/6/2020 VTDC CONDO BOOK FEE CASH | Capital One | 300.00 |
| Deposit | 03/17/2020 | | CASH | 3/17/20 VTDC CAM 8TH 10TH FL | Capital One | 7,845.00 |
| Deposit | 05/29/2018 | 181300083 | CON EDISON | 5/29/18 VTDC CON EDISON REFUND | Capital One | 25.90 |
| Deposit | 06/21/2018 | 181590066 | CON EDISON | 6/21/18 VTDC CON ED REFUND 20D | Capital One | 125.59 |
| Deposit | 08/02/2018 | 182050060 | CON EDISON | -MULTIPLE- | Capital One | 67.43 |
| Deposit | 08/29/2018 | 182130067 | CON EDISON | 8/29/18 FL CON ED REFUND 306B - DEPTO VRG | Capital One | 103.94 |
| Deposit | 04/18/2019 | 190950054 | CON EDISON | -MULTIPLE- | Capital One | 315.33 |
| Deposit | 09/14/2018 | | DEPOSIT | 9/14/18 VTDC CAM DEP TO VRG | Capital One | 50.00 |
| Deposit | 01/19/2018 | | Flushing Landmark Realty LLC | 1/19/18 XFER FROM LANDMARK | Capital One | 20,000.00 |
| Deposit | 03/08/2018 | | Flushing Landmark Realty LLC | 3/8/18 TRANSFER FROM LANDMARK | Capital One | 30,000.00 |
| Deposit | 03/15/2018 | | Flushing Landmark Realty LLC | 3/15/18 TRANSFER FROM LANDMARK | Capital One | 10,000.00 |
| Deposit | 03/22/2018 | | Flushing Landmark Realty LLC | 3/22/18 TRANSFER FROM LANDMARK | Capital One | 20,000.00 |
| Deposit | 03/28/2018 | | Flushing Landmark Realty LLC | 3/28/18 TRANSFER FROM LANDMARK | Capital One | 2,000.00 |

**Victoria Realty Group LLC**
**Distribution Account Analysis**
**Sorted by Payee**
**2018  - June 2021***

Source: Quickbooks datafile

* Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.

| Type | Date | Num | Name | Memo | Split/GL Account | Deposits (Payments) |
|------|------|-----|------|------|------------------|---------------------|
| Deposit | 04/06/2018 | | Flushing Landmark Realty LLC | 4/6/18 XFER FROM LANDMARK | Capital One | 60,000.00 |
| Deposit | 05/04/2018 | | Flushing Landmark Realty LLC | 5/4/18 XFER FROM LANDMARK | Capital One | 20,000.00 |
| Deposit | 05/16/2018 | | Flushing Landmark Realty LLC | 5/16/18 XFER FROM LANDMARK | Capital One | 15,000.00 |
| Deposit | 06/01/2018 | | Flushing Landmark Realty LLC | 6/1/18 XFER FROM LANDMARK | Capital One | 25,000.00 |
| Deposit | 06/15/2018 | | Flushing Landmark Realty LLC | 6/15/18 XFER FROM LANDMARK | Capital One | 20,000.00 |
| Deposit | 06/25/2018 | | Flushing Landmark Realty LLC | 6/25/18 XFER FROM LANDMARK | Capital One | 8,000.00 |
| Deposit | 06/29/2018 | | Flushing Landmark Realty LLC | 6/29/18 XFER FROM LANDMARK | Capital One | 45,000.00 |
| Deposit | 07/11/2018 | | Flushing Landmark Realty LLC | 7/11/18 XFER FROM LANDMARK | Capital One | 20,000.00 |
| Deposit | 07/12/2018 | | Flushing Landmark Realty LLC | 7/12/18 XFER FROM LANDMARK | Capital One | 20,000.00 |
| Deposit | 07/27/2018 | | Flushing Landmark Realty LLC | 7/27/18 XFER FROM LANDMARK | Capital One | 20,000.00 |
| Deposit | 08/02/2018 | | Flushing Landmark Realty LLC | 8/2/18 XFER FROM LANDMARK | Capital One | 20,000.00 |
| Deposit | 08/10/2018 | | Flushing Landmark Realty LLC | 8/10/18 XFER FROM LANDMARK | Capital One | 25,000.00 |
| Deposit | 08/23/2018 | | Flushing Landmark Realty LLC | 8/23/18 XFER FROM LANDMARK | Capital One | 25,000.00 |
| Deposit | 09/07/2018 | | Flushing Landmark Realty LLC | 9/7/18 XFER FROM LANDMARK | Capital One | 25,000.00 |
| Deposit | 09/21/2018 | | Flushing Landmark Realty LLC | 9/21/18 XFER FROM LANDMARK | Capital One | 25,000.00 |
| Deposit | 10/04/2018 | | Flushing Landmark Realty LLC | 10/4/18 XFER FROM LANDMARK | Capital One | 30,000.00 |
| Deposit | 10/09/2018 | | Flushing Landmark Realty LLC | 10/9/18 XFER FROM LANDMARK | Capital One | 500.00 |
| Deposit | 10/11/2018 | | Flushing Landmark Realty LLC | 10/11/18 XFER FROM LANDMARK | Capital One | 200.00 |
| Deposit | 10/16/2018 | | Flushing Landmark Realty LLC | 10/16/18 XFER FROM LANDMARK | Capital One | 8,000.00 |
| Deposit | 10/18/2018 | | Flushing Landmark Realty LLC | 10/18/18 XFER FROM LANDMARK | Capital One | 22,000.00 |
| Deposit | 10/23/2018 | | Flushing Landmark Realty LLC | 10/23/18 XFER FROM LANDMARK | Capital One | 13,000.00 |
| Deposit | 10/30/2018 | | Flushing Landmark Realty LLC | 10/30/18 XFER FROM LANDMARK | Capital One | 30,000.00 |
| Deposit | 11/29/2018 | | Flushing Landmark Realty LLC | 11/29/18 xfer from landmark | Capital One | 50,000.00 |
| Deposit | 12/07/2018 | | Flushing Landmark Realty LLC | 12/7/18 XFER FROM LANDMARK | Capital One | 20,000.00 |
| Deposit | 12/13/2018 | | Flushing Landmark Realty LLC | 12/13/18 XFR FROM LANDMARK | Capital One | 20,000.00 |
| Deposit | 12/27/2018 | | Flushing Landmark Realty LLC | 12/27/18 XFER FROM LANDMARK | Capital One | 30,000.00 |
| Deposit | 01/14/2019 | | Flushing Landmark Realty LLC | 1/14/19 XFER FROM LANDMARK | Capital One | 30,000.00 |
| Deposit | 01/25/2019 | | Flushing Landmark Realty LLC | 1/25/19 XFER FROM LANDMARK | Capital One | 30,000.00 |
| Deposit | 02/07/2019 | | Flushing Landmark Realty LLC | 2/7/19 XFER FROM LANDMARK | Capital One | 30,000.00 |
| Deposit | 02/19/2019 | | Flushing Landmark Realty LLC | 2/19/19 XFER FRON LANDMARK | Capital One | 20,000.00 |
| Deposit | 02/22/2019 | | Flushing Landmark Realty LLC | 2/22/19 xfer from landmark | Capital One | 20,000.00 |
| Deposit | 03/07/2019 | | Flushing Landmark Realty LLC | 3/7/19 XFER FROM LANDMARK | Capital One | 30,000.00 |
| Deposit | 03/13/2019 | | Flushing Landmark Realty LLC | 3/13/19 XFER FROM LANDMARK | Capital One | 60,000.00 |
| Deposit | 04/01/2019 | | Flushing Landmark Realty LLC | 4/1/19 xfer from landmark | Capital One | 35,000.00 |

**Victoria Realty Group LLC**
**Distribution Account Analysis**
**Sorted by Payee**
**2018  - June 2021***

Source: Quickbooks datafile

*\* Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.*

| Type | Date | Num | Name | Memo | Split/GL Account | Deposits (Payments) |
|------|------|-----|------|------|------------------|---------------------|
| Deposit | 04/05/2019 | | Flushing Landmark Realty LLC | 4/5/19 xfer from landmark | Capital One | 20,000.00 |
| Deposit | 04/17/2019 | 1673 | Flushing Landmark Realty LLC | 4/17/19 xfer from landmark | Capital One | 100,000.00 |
| Deposit | 05/31/2019 | 1766 | Flushing Landmark Realty LLC | 5/31/19 xfer from LANMARK | Capital One | 50,000.00 |
| Deposit | 06/07/2019 | 1675 | Flushing Landmark Realty LLC | 6/7/19 XFER FROM LANDMARK | Capital One | 180,000.00 |
| Deposit | 06/28/2019 | 1790 | Flushing Landmark Realty LLC | 6/28/19 XFER FROM LANDMARK | Capital One | 30,000.00 |
| Deposit | 07/09/2019 | 1791 | Flushing Landmark Realty LLC | 7/9/19 xfer from landmark | Capital One | 50,000.00 |
| Deposit | 07/31/2019 | 1805 | Flushing Landmark Realty LLC | 7/31/19 xfer from landmark | Capital One | 20,000.00 |
| Deposit | 08/06/2019 | 1817 | Flushing Landmark Realty LLC | 8/6/19 xfer from landmark | Capital One | 60,000.00 |
| Deposit | 08/16/2019 | 1833 | Flushing Landmark Realty LLC | 8/16/19 XFER FROM LANDMARK | Capital One | 40,000.00 |
| Deposit | 08/22/2019 | 1835 | Flushing Landmark Realty LLC | 8/22/19 XFER FROM LANDMARK | Capital One | 40,000.00 |
| Deposit | 09/05/2019 | 1832 | Flushing Landmark Realty LLC | 9/5/19 XFER FROM LANDMARK | Capital One | 30,000.00 |
| Deposit | 09/11/2019 | 1844 | Flushing Landmark Realty LLC | 9/11/19 XFER FROM LANDMARK | Capital One | 45,000.00 |
| Deposit | 09/20/2019 | 1851 | Flushing Landmark Realty LLC | 9/20/19 XFER FROM LANDMARK | Capital One | 40,000.00 |
| Deposit | 11/01/2019 | 1870 | Flushing Landmark Realty LLC | 11/1/19 XFER FROM LANDMARK | Capital One | 25,000.00 |
| Deposit | 11/15/2019 | 1880 | Flushing Landmark Realty LLC | 11/15/19 XFER FROM LANDMARK | Capital One | 30,000.00 |
| Deposit | 12/10/2019 | 1891 | Flushing Landmark Realty LLC | 12/10/19 XFER FROM LANDMARK | Capital One | 40,000.00 |
| Deposit | 12/19/2019 | 1896 | Flushing Landmark Realty LLC | 12/19/19 XFER FROM LANDMARK | Capital One | 40,000.00 |
| Deposit | 01/06/2020 | 1900 | Flushing Landmark Realty LLC | 1/6/2020 XFER FROM LANDMARK | Capital One | 80,000.00 |
| Deposit | 01/10/2020 | 1902 | Flushing Landmark Realty LLC | 1/10/2020 XFER FROM LANDMARK | Capital One | 30,000.00 |
| Deposit | 01/23/2020 | 1907 | Flushing Landmark Realty LLC | 1/23/2020 XFER FROM LANDMARK | Capital One | 30,000.00 |
| Deposit | 02/12/2020 | 1928 | Flushing Landmark Realty LLC | 2/12/2020 XFER FROM LANDMARK | Capital One | 100,000.00 |
| Deposit | 02/25/2020 | 1932 | Flushing Landmark Realty LLC | 2/25/2020 XFER FROM LANDMARK | Capital One | 30,000.00 |
| Deposit | 03/09/2020 | 1934 | Flushing Landmark Realty LLC | 3/9/20 XFER FROM LANDMARK | Capital One | 40,000.00 |
| Deposit | 03/10/2020 | 1935 | Flushing Landmark Realty LLC | 3/10/20 XFER FROM LANDMARK | Capital One | 100,000.00 |
| Deposit | 03/16/2020 | 1937 | Flushing Landmark Realty LLC | 3/16/20 XFER FROM LANDMARK | Capital One | 30,000.00 |
| Deposit | 03/18/2020 | 1938 | Flushing Landmark Realty LLC | 3/18/2020 XFER FROM LANDMARK | Capital One | 85,000.00 |
| Deposit | 05/15/2020 | 1946 | Flushing Landmark Realty LLC | 5/15/20 XFER FROM LANDMARK | Capital One | 10,000.00 |
| Deposit | 05/28/2020 | 1947 | Flushing Landmark Realty LLC | 5/28/20 XFER FROM LANDMARK | Capital One | 24,000.00 |
| Deposit | 06/11/2020 | 1950 | Flushing Landmark Realty LLC | 6/11/20 XFER FROM LANDMARK | Capital One | 20,000.00 |
| Deposit | 07/10/2020 | 1966 | Flushing Landmark Realty LLC | 7/10/20 XFER FROM FLR | Capital One | 80,000.00 |
| Deposit | 05/13/2020 | 1856 | FU XIN PUN 6E | 5/13/20 VTCO CAM 6E MAY/20 | Capital One | 445.13 |
| Deposit | 06/05/2020 | 1857 | FU XIN PUN 6E | 6/5/20 VTCO CAM 6E JUN/20 CK 1857 | Capital One | 445.13 |
| Deposit | 04/20/2018 | | Hong Kong Plaza Mangement Corp. | 4/20/18 XFER FROM HK PLAZA MGMT | Capital One | 20,000.00 |
| Deposit | 05/16/2018 | | Hong Kong Plaza Mangement Corp. | 5/16/18 XFER FROM HK PLAZA | Capital One | 10,000.00 |

**Victoria Realty Group LLC**
**Distribution Account Analysis**
**Sorted by Payee**
**2018  - June 2021***

Source: Quickbooks datafile

*Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.*

| Type | Date | Num | Name | Memo | Split/GL Account | Deposits (Payments) |
|------|------|-----|------|------|------------------|---------------------|
| Deposit | 06/30/2020 | | Hong Kong Plaza Mangement Corp. | 6/30/20 XFER FROM HK PLAZA | Capital One | 30,000.00 |
| Deposit | 01/29/2021 | 10488 | Hong Kong Plaza Mangement Corp. | 1/29/21 TRANSFER FROM HK PLAZA | Capital One | 35,000.00 |
| Deposit | 04/09/2021 | 10496 | Hong Kong Plaza Mangement Corp. | 4/9/21 XFER FROM HKP | Capital One | 20,159.66 |
| Deposit | 05/13/2021 | 10500 | Hong Kong Plaza Mangement Corp. | 5/13/21 XFER FROM HKP | Capital One | 10,000.00 |
| Deposit | 06/04/2021 | 10501 | Hong Kong Plaza Mangement Corp. | 6/4/21 Loan from HKP | Capital One | 20,000.00 |
| Deposit | 10/31/2019 | | K.Pop Beauty IV | -MULTIPLE- | Capital One | 13,394.56 |
| Deposit | 04/13/2018 | 686 | KCT ABSTRACT LLC | 4/13/18 TITLE CO REFUND - ESCROW - VTDC UNIT 19A | Capital One | 193.44 |
| Deposit | 03/21/2019 | 1341 | KCT ABSTRACT LLC | 3/21/19 VRDC ESCROW REFUND 9D RE TAX | Capital One | 169.46 |
| Deposit | 03/21/2019 | 1340 | KCT ABSTRACT LLC | 3/21/19 ESCROW REFUND 19E RE TAX | Capital One | 154.54 |
| Deposit | 03/21/2019 | 1339 | KCT ABSTRACT LLC | 3/21/19 VTDC ESCROW REFUND 12E RE TAX | Capital One | 154.54 |
| Deposit | 03/21/2019 | 1343 | KCT ABSTRACT LLC | 3/21/19 VTDC ESCROW REFUND 13F RE TAX | Capital One | 172.82 |
| Deposit | 03/21/2019 | 1338 | KCT ABSTRACT LLC | 3/21/19 VTDC ESCROW REFUND 10B RE TAX | Capital One | 204.11 |
| Deposit | 03/21/2019 | 1337 | KCT ABSTRACT LLC | 3/21/19 VTDC ESCROW REFUND 19C RE TAX | Capital One | 263.83 |
| Deposit | 03/21/2019 | 1336 | KCT ABSTRACT LLC | 3/21/19 VTDC ESCROW REFUND 19D RE TAX | Capital One | 248.92 |
| Deposit | 03/21/2019 | 1335 | KCT ABSTRACT LLC | 3/21/19 VTDC ESCROW REFUND 19B RE TAX | Capital One | 204.11 |
| Deposit | 12/16/2019 | 144 | KCT ABSTRACT LLC | 12/16/19 VTDC ESCROW REFUND | Capital One | 236.98 |
| Deposit | 04/29/2020 | | KELLY IP #11D | 4/29/20 VTCO CAM 11D MAY-AUG/2020 | Capital One | 2,984.24 |
| Deposit | 07/23/2018 | 1114 | LIFGT HOUSE 74 TRANSPORT INC. | 7/23/18 LSDP RENTAL INCOME - LIGHT HOUSE 74 TRANSPORT INC JUL-AUG/18 | Capital One | 395.00 |
| Deposit | 09/26/2018 | 17821065629 | LIGHTHOUSE | 9/26/18 LSDP LIGHTHOUSE RENT OCT/18 | Capital One | 400.00 |
| Deposit | 01/26/2018 | | Lucky Star Deer Park LLC | 1/26/18 XFER FROM LS DEER PARK | Capital One | 30,000.00 |
| Deposit | 12/19/2019 | 10349 | Lucky Star Deer Park LLC | 12/19/19 XFER FROM DEER PARK | Capital One | 20,000.00 |
| Deposit | 04/02/2020 | 10356 | Lucky Star Deer Park LLC | 4/2/20 xfer from LSDP | Capital One | 15,000.00 |
| Deposit | 04/20/2020 | 10358 | Lucky Star Deer Park LLC | 4/20/20 XFER FROM LSDP | Capital One | 15,000.00 |
| Deposit | 09/10/2018 | 231 | MINGRU LU | 9/10/18 VTDC CONDO BOOK DEP TO VRG | Capital One | 150.00 |

**Victoria Realty Group LLC**
**Distribution Account Analysis**
**Sorted by Payee**
**2018  - June 2021***

**Source: Quickbooks datafile**

*\* Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.*

| Type | Date | Num | Name | Memo | Split/GL Account | Deposits (Payments) |
|---|---|---|---|---|---|---|
| Deposit | 02/05/2018 | | -MULTIPLE- | -MULTIPLE- | Capital One | 7,200.00 |
| Deposit | 10/04/2019 | 1866 | -MULTIPLE- | -MULTIPLE- | Capital One | 44,500.00 |
| Deposit | 11/12/2020 | 1240 | -MULTIPLE- | -MULTIPLE- | Capital One | 8,830.00 |
| Deposit | 07/24/2018 | 45047468 | N.C. Department of Revenue | 7/24/18 130 BOWERY NC 2017 TAX REFUND | Capital One | 357.00 |
| Deposit | 01/28/2020 | 46036742 | N.C. Department of Revenue | 1/28/2020 130 B NC REFUND FOR 2018 | Capital One | 477.32 |
| Deposit | 05/29/2020 | | NC DEPT OF REVENUE | 5/29/20 130 BOWERY NC TAX REFUND | Capital One | 206.00 |
| Deposit | 02/09/2018 | | New Enterprise Realty LLC | 2/9/18 XFER FROM NEW ENTERPRISE | Capital One | 15,000.00 |
| Deposit | 08/14/2019 | 081419 | NYC DEPT OF FINANCE | 8/14/19 NYC DOF REFUND - MCL | Capital One | 713.69 |
| Deposit | 04/30/2020 | 1689 | NYCTL 2018-A TRUST | 4/30/20 VTDC RE TAX REFUND | Capital One | 25,738.69 |
| Deposit | 05/14/2020 | 1794 | NYCTL 2018-A TRUST | 5/14/20 VTDC RE TAX REFUND | Capital One | 100.00 |
| Deposit | 10/01/2020 | 27076957 | NYS DEPT OF TAXATION & FINANCE | 10/01/20 MCL NYS 2019 REFUND | Capital One | 450.00 |
| Deposit | 03/17/2020 | 10497 | QUEEN ELIZABETH REALTY CORP. | 03/17/20 VRG CK 10497DEPOSIT | Capital One | 98,000.00 |
| Deposit | 08/30/2019 | 92861805 | STATE OF ALABAMA | 8/30/19 130 BOWERY - STATE OF ALABAMA REFUND 2016 PRIVILEDGE TAX | Capital One | 1,278.12 |
| Deposit | 02/23/2021 | 12823674 | STATE OF ALABAMA | 2/23/21 130 BOWERY 2019 AL REFUND | Capital One | 391.77 |
| Deposit | 01/31/2018 | TE1156330 | STATE OF ILLINOIS DEPT OF REVENUE | 1/31/18 130 BOWERY ILL REFUND 2016 TAX | Capital One | 108.03 |
| Deposit | 10/02/2020 | 2450 | YI LIN - ATTORNEY AT LAW | 10/2/20 VTDC 17F CONDO DOC FEE | Capital One | 300.00 |
| General Jour | 01/16/2018 | Gas | | Gas - to Scher's office for JD & SuperCare Deposition | Automobile Expense | 50.92 |
| General Jour | 01/19/2018 | Flowers | | Flowers to Ludus Grand Opening | Marketing | 100.00 |
| General Jour | 02/01/2018 | CASH | | AL Feb/18 phone | Telephone | - |
| General Jour | 02/05/2018 | CASH | | Cash Receipt Books | Office | 9.00 |
| General Jour | 02/15/2018 | CASH | | AL RE Salesperson License Renewal | Licenses and Permits | 55.00 |
| General Jour | 02/15/2018 | CASH | | VRG Letterhead Envelopes | Office | 125.20 |
| General Jour | 03/01/2018 | CASH | | AL Mar/18 phone | Telephone | 100.00 |
| General Jour | 03/06/2018 | VT PARKING | | Mar/18 VT Parking Income | Partner One Draw | 3,000.00 |
| General Jour | 03/14/2018 | PAYROLL | | | Postage and Delivery | 19.75 |
| General Jour | 03/20/2018 | CASH | | 3/20/18 Countertop Stone | Office | 419.16 |
| General Jour | 04/06/2018 | VT PARKING | | Apr/18 VT Parking Income | Partner One Draw | 3,000.00 |
| General Jour | 05/07/2018 | VT PARKING | | May/18 VT Parking Income | Partner One Draw | 3,000.00 |
| General Jour | 05/30/2018 | CASH | | VTC#19D 2 ACs - Owner pays 1/2, VTD pays 1/2 | Partner One Draw | 2,231.94 |

**Victoria Realty Group LLC**
**Distribution Account Analysis**
**Sorted by Payee**
**2018  - June 2021***

**Source: Quickbooks datafile**

*\* Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.*

| Type | Date | Num | Name | Memo | Split/GL Account | Deposits (Payments) |
|------|------|-----|------|------|------------------|---------------------|
| General Jour | 06/06/2018 | VT PARKING | | Jun/18 VT Parking Income | Partner One Draw | 3,000.00 |
| General Jour | 06/30/2018 | CASH | | Jun/18 Gas - Lee | Automobile Expense | 38.33 |
| General Jour | 07/01/2018 | CASH | | AL Jul/18 phone | Telephone | 100.00 |
| General Jour | 07/06/2018 | VT PARKING | | Jul/18 VT Parking Income | Partner One Draw | 3,000.00 |
| General Jour | 07/30/2018 | CASH | | Jul/18 Gas - Lee | Automobile Expense | 136.23 |
| General Jour | 08/01/2018 | CASH | | AL Aug/18 phone | Telephone | 100.00 |

**Victoria Realty Group LLC**
**Distribution Account Analysis**
**Sorted by Payee**
**2018  - June 2021***

Source: Quickbooks datafile

* Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.

| Type | Date | Num | Name | Memo | Split/GL Account | Deposits (Payments) |
|---|---|---|---|---|---|---|
| General Jour | 08/31/2018 | CASH | | Aug/18 Gas - Lee | Automobile Expense | 120.00 |
| General Jour | 08/31/2018 | VT PARKING | | Aug/18 VT Parking Income | Partner One Draw | 3,000.00 |
| General Jour | 09/01/2018 | CASH | | AL Sep/18 phone | Telephone | 100.00 |
| General Jour | 09/07/2018 | CASH | | Reimb - Jun-Aug/18 Lunch | Meals | 408.00 |
| General Jour | 09/12/2018 | CASH | | 2 "For Rent" Poster (WT) & Gas | Marketing | 76.46 |
| General Jour | 09/25/2018 | VT PARKING | | Sep/18 VT Parking Income | Partner One Draw | 3,000.00 |
| General Jour | 10/01/2018 | CASH | | AL Oct/18 phone | Telephone | 100.00 |
| General Jour | 10/11/2018 | VT PARKING | | Oct/18 VT Parking Income | Partner One Draw | 3,000.00 |
| General Jour | 11/01/2018 | CASH | | AL Nov/18 phone | Telephone | 100.00 |
| General Jour | 11/13/2018 | VT PARKING | | Nov/18 VT Parking Income | Partner One Draw | 3,000.00 |
| General Jour | 11/15/2018 | CASH | | 11/15/18 Flowers for Philip C. | Marketing | 150.00 |
| General Jour | 12/01/2018 | CASH | | AL Dec/18 phone | Telephone | 100.00 |
| General Jour | 12/05/2018 | 130B Postag | | 130B Postage | Partner One Draw | 26.00 |
| General Jour | 12/05/2018 | CASH | | 130B Mailings | Partner One Draw | 24.70 |
| General Jour | 12/14/2018 | VT PARKING | | Dec/18 VT Parking Income | Partner One Draw | 3,000.00 |
| General Jour | 12/31/2018 | CASH | | 12/31/18 Cash | Meals | 641.98 |
| General Jour | 01/01/2019 | CASH | | AL Jan/19 phone | Telephone | 100.00 |
| General Jour | 01/02/2019 | 130B Postag | | 130 Bowery - mailing to Hayes | Partner One Draw | 28.00 |
| General Jour | 01/02/2019 | Postage Ink | | Postage Ink | Office | 94.81 |
| General Jour | 01/03/2019 | CASH | | VRG Envelopes | Office | 125.21 |
| General Jour | 01/15/2019 | CASH | | 130B Postage | Partner One Draw | 28.00 |
| General Jour | 02/01/2019 | VOIDS | | -MULTIPLE- | Other Income | 29,498.20 |
| General Jour | 02/01/2019 | CASH | | AL Feb/19 phone | Telephone | 100.00 |
| General Jour | 03/01/2019 | CASH | | AL Mar/19 phone | Telephone | 100.00 |
| General Jour | 03/13/2019 | CASH | | 130 Bowery - mailing | Partner One Investments | 8.10 |
| General Jour | 03/13/2019 | CASH | | 130 Bowery - mailing | Partner One Investments | - |
| General Jour | 03/15/2019 | VOIDS | | | Postage and Delivery | 4.05 |
| General Jour | 03/26/2019 | DEP | | | Postage and Delivery | 4.50 |
| General Jour | 04/01/2019 | CASH | | AL Apr/19 phone | Telephone | 100.00 |
| General Jour | 04/09/2019 | Cash | | | Postage and Delivery | 26.00 |
| General Jour | 05/01/2019 | CASH | | AL May/19 phone | Telephone | 100.00 |
| General Jour | 06/01/2019 | CASH | | AL Jun/19 phone | Telephone | 100.00 |
| General Jour | 07/01/2019 | CASH | | AL Jul/19 Phone | Telephone | 100.00 |

**Victoria Realty Group LLC**
**Distribution Account Analysis**
**Sorted by Payee**
**2018  - June 2021***


**Source: Quickbooks datafile**


*\* Date represents quickbooks automated date when file was opened.  Analysis may not include all transactions through the end of June 2021.*

| Type | Date | Num | Name | Memo | Split/GL Account | Deposits (Payments) |
|------|------|-----|------|------|------------------|---------------------|
| General Jour | 07/08/2019 | CASH | | 07/08/19 Ad for WT | Partner One Draw | 1,184.63 |
| General Jour | 07/09/2019 | CASH | | 07/09/19 Mailing for VTD Tax Liens | Partner One Draw | 45.00 |
| General Jour | 08/01/2019 | CASH | | AL Aug/19 Phone | Telephone | 100.00 |
| General Jour | 08/06/2019 | CASH | | 08/06/19 Mailing for VTD Tax Liens | Partner One Draw | 40.00 |
| General Jour | 08/12/2019 | CASH | | 08/12/19 Mailing for VTD Tax Liens | Partner One Draw | 40.00 |
| General Jour | 08/16/2019 | CASH | | 08/16/19 Mailing for VTD Tax Liens | Partner One Draw | 40.00 |
| General Jour | 09/01/2019 | CASH | | AL Sep/19 Phone | Telephone | 100.00 |
| General Jour | 09/16/2019 | CASH | | 9/16/19 VTD 2018 Tax Return Mailing | Partner One Draw | 13.65 |
| General Jour | 09/20/2019 | CASH | | 09.20.19 Staples | Office | 124.15 |
| General Jour | 09/26/2019 | CASH | | 09/29/19 Staples For Rent Sign | Marketing | 126.71 |
| General Jour | 10/01/2019 | CASH | | AL Oct/19 Phone | Telephone | 100.00 |
| General Jour | 11/01/2019 | CASH | | AL Nov/19 Phone | Telephone | 100.00 |
| General Jour | 12/01/2019 | CASH | | AL Dec/19 Phone | Telephone | 100.00 |
| General Jour | 01/31/2020 | PAYROLL | | 1/31/20 Payroll/Tax Allocation | Payroll & Taxes Reimbursement | (42,766.81) |
| General Jour | 01/31/2020 | MGMT FEE | | 1/31/20 MGMT FEE - FLR | Mgt Fee - FLushing Landmark | (18,936.72) |
| General Jour | 02/29/2020 | PAYROLL | | 2/29/20  PAYROLL/TAX ALLOCATION | Payroll & Taxes Reimbursement | (48,950.49) |
| General Jour | 02/29/2020 | MGMT FEE | | 2/29/20 MGMT FEE - FLR | Mgt Fee - FLushing Landmark | (16,227.64) |
| General Jour | 03/31/2020 | PAYROLL | | 3/31/20 PAYROLL/TAX ALLOCATION | Payroll & Taxes Reimbursement | (51,413.33) |
| General Jour | 03/31/2020 | MGMT FEE | | 3/31/20 MGMT FEE - FLR | Mgt Fee - FLushing Landmark | (11,989.28) |
| | | | | | $ | 2,827,528.82 |

# Exhibit I

**Myint Kyaw aka Jeffrey Wu**
**Ioc Heng IP aka Veronica Wu**
**Summary of Transfers Per US Form 709 2012 Gift Tax Return**

*Source: Schedule A - Form 709 Gift Tax Return*

| | | Jeffrey Wu Irrevocable Insurance Trust #1 (EIN:xx-xxx0626) | Wu Family 2012 Gift Trust (EIN: xx-xxx3791) | Jeffrey Wu Irrevocable Insurance Trust (EIN:xx-xxx0626) | Veronica Wu Irrevocable Insurance Trust (EIN:xx-xxx2753) |
|---|---|---|---|---|---|
| Section of Form 709 Return: | | Part 1- Gifts Subject only to Gift Tax | Part 3 - Indirect Skips | Part 3 - Indirect Skips | Part 3 - Indirect Skips |
| Date of Trust | | 2/26/2006 | 12/28/2012 | 2/26/2006 | 2/9/2007 |
| Trustees (s): | | Ioc Heng IP (spouse) Lewis Wu | Gene Greenfest | Ioc Heng IP Lewis Wu | Myint J. Kyaw Lewis Wu Gene Greenfest |
| Beneficiaries : | *(1)* | Victoria Wu Kyaw (Daughter) Jeffrey Jr. Kyaw (Son) Jefferson Kyaw (Son) | Victoria Wu Kyaw (Daughter) Jeffrey Jr. Kyaw (Son) Jefferson Kyaw (Son) | Victoria Wu Kyaw (Daughter) Jeffrey Jr. Kyaw (Son) Jefferson Kyaw (Son) | Victoria Wu Kyaw (Daughter) Jeffrey Jr. Kyaw (Son) Jefferson Kyaw (Son) |
| Description of Transfer | | Cash | 9.99% Partnership interest in: *(3)* - Lighthouse 100 William II LLC; and - LH 100 II LLC | Cash | Cash |
| Date of gift | | 12/31/2012 | 12/28/2012 | 12/31/2012 | 12/31/2012 |
| Value of gift | | $ 5,000.00 | $ 5,000,000 | $ 430,593 | $ 174,961 |
| Split gift allocation | | $ - | $ (2,500,000) | $ (215,297) | $ (87,480) |
| Net transfer | | $ 5,000.00 | $ 2,500,000 | $ 215,296 | $ 87,481 |

(1) Source: Trust instrument.
(2) Gene Greenfest was added as a co-Trustee to the Veronica Wu Irrevocable Insurance Trust in 2008 and resigned in 2013.
(3) Schedule of Property attached to Wu Family 2012 Gift Trust instrument disclosed the following:
   - An undivided 9.99% membership interest in Lighthouse 100 William II L.L.C. and an undivided membership interest in LH 100 II L.L.C.

# Exhibit J

**GENE GREENFEST**
**TRUSTEE FOR THE WU FAMILY 2012 GIFT TRUST**
**C/O ANCHIN, BLOCK & ANCHIN LLP**
**1375 BROADWAY**
**NEW YORK, NY 10018**

June 28, 2021

**BY EMAIL:**
Victoria Wu
wuv@union.edu
Jeffrey Wu, Jr
Jeffreywu519@gmail.com
Jefferson Wu
Jefferson_wu@fa.org

Dear Victoria, JJ and Jefferson:

You have requested a distribution from the Wu Family 2012 Gift Trust (the Trust), for which I am the trustee, of $50,000 each to be used exclusively for college related expenses. These expenses consist of any of the following:

1. Tuition,
2. Room & Board while away at school,
3. Books,
4. Other college imposed fees and/or
5. Pay down of formerly incurred college loans.

For these expenses I approve the distribution. By signing below, you agree that you will use the distribution for these purposes only. I may request and you must provide at any time, documentation as to the use of this distribution for these stated purposes.

Very truly yours,

Gene Greenfest, Trustee

Approved:

Victoria Wu                    Jeffrey Wu Jr.                    Jefferson Wu

373236/Ltr re distribution $50,000  6-26-2021

# Exhibit K

**Wu 2012 Family Gift Trust Analysis**
**April 16, 2013 through March 31, 2021**

| | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | Jan thru March 2021 |
|---|---|---|---|---|---|---|---|---|---|
| **Beginning Balances** | | | | | | | | | |
| Signature Securities Brokerage Acct #5191 | $ - | $ 294,145 | $ 481,144 | $ 693,837 | $ 1,024,959 | $ 1,677,195 | $ 1,774,407 | $ 2,372,960 | $ 2,974,709 |
| Signature Checking Acct #9286 | - | $ 3,000 | $ 3,198 | $ 2,179 | $ - | $ 1,114 | 1,500 | 1,500 | 1,500 |
| Signature insured MMA Acct # 9294 | - | $ 3,597 | $ 4,444 | $ 1,029 | $ 7,678 | $ 9,941 | 11,564 | 2,460 | 5,108 |
| **Total** | $ - | $ 300,741 | $ 488,787 | $ 697,045 | $ 1,032,637 | $ 1,688,251 | $ 1,787,471 | $ 2,376,921 | $ 2,981,316 |
| | | | | | | | | | |
| **Additions** | | | | | | | | | |
| Investment Partnership Distributions[1] | 286,422 | 185,829 | 256,570 | 268,199 | 492,219 | 273,579 | 280,652 | 288,140 | 57,856 |
| Interest / Investment/Dividend Income | 3,850 | 12,543 | 15,623 | 21,658 | 32,113 | 47,740 | 55,549 | 68,570 | 11,166 |
| Investment Gains | 13,457 | 13,200 | - | 78,802 | 170,620 | - | 305,044 | 301,775 | 168,556 |
| Other Misc adjustments | 53 | 160 | 255 | 323 | 562 | 672 | 583 | 643 | 174 |
| **Total Additions** | $ 303,783 | $ 211,732 | $ 272,448 | $ 368,982 | $ 695,512 | $ 321,991 | $ 641,829 | $ 659,128 | $ 237,752 |
| | | | | | | | | | |
| **Subtractions** | | | | | | | | | |
| Investment Losses | | | (37,173) | | | (173,963) | - | - | - |
| Signature Securities Fees & Taxes | (1,041) | (3,885) | (5,999) | (8,628) | (14,012) | (18,193) | (20,604) | (23,722) | (7,371) |
| Trustee Fees - Gene Greenfest | | (19,802) | (18,057) | (23,513) | (25,314) | (28,766) | (24,838) | (27,010) | (29,250) |
| Legal Fees - Schiff Harden LLP | (2,000) | | | | | | | | |
| Accounting Fees - Anchin | - | | (2,962) | (990) | (572) | (1,848) | (6,937) | (4,000) | (4,600) |
| Other reductions (overdraft fees) | | | | (260) | | | | | |
| **Total Subtractions** | $ (3,041) | $ (23,687) | $ (64,190) | $ (33,390) | $ (39,898) | $ (222,770) | $ (52,379) | $ (54,732) | $ (41,221) |
| | | | | | | | | | |
| **Ending Trust Balance** | $ 300,742 | $ 488,786 | $ 697,045 | $ 1,032,637 | $ 1,688,251 | $ 1,787,471 | $ 2,376,921 | $ 2,981,316 | $ 3,177,848 |

*Source: Signature Bank statements for Accounts ending: #5191;#9286; #9294*

1 Source: Signature Bank statements; and Tax Return K-1's where provided

# Exhibit L

**Gene Greenfest**
2220 S. Ocean Blvd.   Apt 1004
Delray Beach, FL 33483

**Via Email to:** Wuv@union.edu; jeffreywu519@gmail.com; Jefferson_wu@fa.org

Victoria Wu, Jeffrey Wu Jr. and Jefferson Wu
Beneficiaries under the Wu Family 2012 Gift Trust

Dear Victoria, Jeffrey and Jefferson:

As beneficiaries of the Wu Family 2012 Gift Trust ("the Trust"), you have asked me, in my capacity as Trustee of the Trust, to provide this letter advising if Myint Kyaw (a/k/a Jeffrey Wu) has had any transactions with the Trust.  I am aware that Myint Kyaw made gifts to the Trust in 2012 of partnership interests in Lighthouse 100 William II LLC and LH 100 II LLC (which merged in January 2013 with GTJ Realty LP), which gifts were reported on gift tax returns for 2012.  Since that time, based solely on the information provided directly to me since inception of the Trust (i) by Signature Bank in the form of monthly checking account statements and money market account statements and (ii) by Signature Securities in the form of monthly securities statements, I am not aware of any additional transactions between Myint Kyaw and the Trust.

Very Truly Yours

Gene Greenfest

# Exhibit M

**Jeffrey Wu Irrevocable Insurance Trust**
**Chase Bank - Acct #14800**
**Bank Activity**
**2019 to 5/27/19**

Bank Statement

| Date of Transaction | Description of Entry from Bank Statement | Deposits | Payments | Other | Balance |
|---|---|---|---|---|---|
| 1/12/2019 | Beginning Balance | | | | $ 175.67 |
| 1/28/2019 | Online trf from Chk 7710 | $ 1,500.00 | | | $ 1,675.67 |
| 1/28/2019 | Lincoln Natlife Premium pmt | | $ 1,414.21 | | $ 261.46 |
| 1/29/2019 | Remote online deposit | $ 25,000.00 | | | $ 25,261.46 |
| 2/4/2019 | ck#9994 | | $ 17,993.76 | | $ 7,267.70 |
| 2/4/2019 | ch#9995 | | $ 5,479.65 | | $ 1,788.05 |
| 2/5/2019 | returned item fee unpaid chk | | | $ (34.00) | $ 1,754.05 |
| 2/6/2019 | Online transfer from 7710 | $ 41,200.00 | | | $ 42,954.05 |
| 2/7/2019 | check #9993 | | $ 40,822.52 | | $ 2,131.53 |
| 2/27/2019 | Lincoln Natlife Premium pmt | | $ 1,414.21 | | $ 717.32 |
| 3/4/2019 | Online transfer from 7710 | $ 20,500.00 | | | $ 21,217.32 |
| 3/7/2019 | ck#9996 | | $ 20,411.26 | | $ 806.06 |
| 3/20/2019 | Online transfer from 7710 | $ 700.00 | | | $ 1,506.06 |
| 3/27/2019 | Lincoln Natlife Premium pmt | | $ 1,414.21 | | $ 91.85 |
| 4/17/2019 | Online transfer from 7710 | $ 22,000.00 | | | $ 22,091.85 |
| 4/22/2019 | ck#9997 | | $ 20,411.26 | | $ 1,680.59 |
| 4/23/2019 | bank fees | | | $ (20.00) | $ 1,660.59 |
| 4/26/2019 | Lincoln Natlife Premium pmt | | $ 1,414.21 | | $ 246.38 |
| 5/10/2019 | Online transfer from 7710 | $ 18,000.00 | | | $ 18,246.38 |
| 5/13/2019 | Online transfer from 7710 | $ 6,800.00 | | | $ 25,046.38 |
| 5/14/2019 | ck#101 | | $ 5,479.65 | | $ 19,566.73 |
| 5/21/2019 | ck#102 | | $ 17,993.76 | | $ 1,572.97 |
| 5/29/2019 | Lincoln Natlife Premium pmt | | $ 1,414.21 | | $ 158.76 |
| 6/20/2019 | Online transfer from 7710 | $ 1,420.00 | | | $ 1,578.76 |
| 6/26/2019 | Lincoln Natlife Premium pmt | | $ 1,414.21 | | $ 164.55 |
| 7/15/2019 | Online transfer from 7710 | $ 1,420.00 | | | $ 1,584.55 |
| 7/22/2019 | Deposit | $ 55,000.00 | | | $ 56,584.55 |
| 7/26/2019 | chk#103 | | $ 53,838.86 | | $ 2,745.69 |
| 7/26/2019 | Lincoln Natlife Premium pmt | | $ 1,414.21 | | $ 1,331.48 |
| 8/9/2019 | Online transfer from 7710 | $ 200.00 | | | $ 1,531.48 |
| 8/28/2019 | Lincoln Natlife Premium pmt | | $ 1,414.21 | | $ 117.27 |
| 9/23/2019 | Online transfer from 7710 | $ 1,430.00 | | | $ 1,547.27 |
| 9/26/2019 | Lincoln Natlife Premium pmt | | $ 1,414.21 | | $ 133.06 |
| 10/28/2019 | Online transfer from 7710 | $ 1,415.00 | | | $ 1,548.06 |
| 10/29/2019 | Lincoln Natlife Premium pmt | | $ 1,414.21 | | $ 133.85 |
| 10/31/2019 | Online transfer from 7710 | $ 60,000.00 | | | $ 60,133.85 |
| 11/1/2019 | online transfer to 7710 | | $ 40,000.00 | | $ 20,133.85 |
| 11/4/2019 | Online transfer from 7710 | $ 40,000.00 | | | $ 60,133.85 |
| 11/4/2019 | ck#104 | | $ 55,000.00 | | $ 5,133.85 |
| 11/29/2019 | Lincoln Natlife Premium pmt | | $ 1,414.21 | | $ 3,719.64 |
| 12/30/2019 | Lincoln Natlife Premium pmt | | $ 1,414.21 | | $ 2,305.43 |
| 1/29/2020 | Lincoln Natlife Premium pmt | | $ 1,414.21 | | $ 891.22 |

**Jeffrey Wu Irrevocable Insurance Trust**
**Chase Bank - Acct #14800**
**Bank Activity**
**2019 to 5/27/19**

| Bank Statement Date of Transaction | Description of Entry from Bank Statement | Deposits | Payments | Other | Balance |
|---|---|---|---|---|---|
| 2/18/2020 | Deposit | $ 55,000.00 | | | $ 55,891.22 |
| 2/27/2020 | ck#105 | | $ 54,050.00 | | $ 1,841.22 |
| 2/27/2020 | Lincoln Natlife Premium pmt | | $ 1,414.21 | | $ 427.01 |
| 3/19/2020 | Online transfer from 7710 | $ 1,220.00 | | | $ 1,647.01 |
| 3/26/2020 | Lincoln Natlife Premium pmt | | $ 1,414.21 | | $ 232.80 |
| 4/24/2020 | Online transfer from 7710 | $ 1,420.00 | | | $ 1,652.80 |
| 4/28/2020 | Lincoln Natlife Premium pmt | | $ 1,414.21 | | $ 238.59 |
| 5/22/2020 | Online transfer from 7710 | $ 55,000.00 | | | $ 55,238.59 |
| 5/22/2020 | Online transfer from 7710 | $ 1,420.00 | | | $ 56,658.59 |
| 5/26/2020 | chk#106 | | $ 54,041.00 | | $ 2,617.59 |
| 5/29/2020 | Lincoln Natlife Premium pmt | | $ 1,414.21 | | $ 1,203.38 |
| 6/23/2020 | Online transfer from 7710 | $ 250.00 | | | $ 1,453.38 |
| 6/26/2020 | Lincoln Natlife Premium pmt | | $ 1,414.21 | | $ 39.17 |
| 7/9/2020 | Online transfer from 7710 | $ 1,430.00 | | | $ 1,469.17 |
| 7/28/2020 | Lincoln Natlife Premium pmt | | $ 1,414.21 | | $ 54.96 |
| 8/18/2020 | Online transfer from 7710 | $ 54,300.00 | | | $ 54,354.96 |
| 8/24/2020 | chk#107 | | $ 54,123.59 | | $ 231.37 |
| 8/25/2020 | Book Transfer credit b/o Myint J Kyaw DIP | $ 1,400.00 | | | $ 1,631.37 |
| 8/26/2020 | Lincoln Natlife Premium pmt | | $ 1,414.21 | | $ 217.16 |
| 9/21/2020 | Book Transfer credit b/o Myint J Kyaw DIP | $ 1,410.00 | | | $ 1,627.16 |
| 9/29/2020 | Lincoln Natlife Premium pmt | | $ 1,414.21 | | $ 212.95 |
| 10/27/2020 | Book Transfer credit b/o Myint J Kyaw DIP | $ 1,420.00 | | | $ 1,632.95 |
| 10/28/2020 | Lincoln Natlife Premium pmt | | $ 1,414.21 | | $ 218.74 |
| 11/27/2020 | Online transfer from 7710 | $ 1,420.00 | | | $ 1,638.74 |
| 11/27/2020 | misc credit | | | $ 0.45 | $ 1,639.19 |
| 11/27/2020 | misc credit | | | $ 0.37 | $ 1,639.56 |
| 11/27/2020 | Lincoln Natlife Premium pmt | | $ 1,414.21 | | $ 225.35 |
| 11/27/2020 | misc. debit | | | $ (0.82) | $ 224.53 |
| 12/4/2020 | External Transfer | $ 54,300.00 | | | $ 54,524.53 |
| 12/8/2020 | Lincoln Natlife Premium pmt | | $ 54,300.00 | | $ 224.53 |
| 12/30/2020 | returned item fee unpaid chk-lincoln Natlife | | | $ (34.00) | $ 190.53 |
| 1/8/21 | Online transfer from 7710 | $ 1,410.00 | | | $ 1,600.53 |
| 1/11/21 | Lincoln Natlife Retry Pymt | | $ 1,414.21 | | $ 186.32 |
| 1/25/21 | Real Time Transfer recd from Myint J Kyaw | $ 1,420.00 | | | $ 1,606.32 |
| 1/28/21 | Lincoln Natlife Premium pmt | | $ 1,414.21 | | $ 192.11 |
| 2/24/21 | Real Time Transfer recd from Myint J Kyaw | $ 1,420.00 | | | $ 1,612.11 |
| 2/26/21 | Lincoln Natlife Premium pmt | | $ 1,414.21 | | $ 197.90 |
| 3/3/21 | Online transfer from 7710 | $ 54,300.00 | | | $ 54,497.90 |
| 3/5/21 | Lincoln Natlife Premium pmt | | $ 54,289.50 | | $ 208.40 |
| 3/25/21 | Real Time Transfer recd from Myint J Kyaw | $ 1,415.00 | | | $ 1,623.40 |
| 3/26/21 | Lincoln Natlife Premium pmt | | $ 1,414.21 | | $ 209.19 |
| 4/26/21 | Real Time Transfer recd from Myint J Kyaw | $ 1,415.00 | | | $ 1,624.19 |
| 4/29/21 | Lincoln Natlife Premium pmt | | $ 1,414.21 | | $ 209.98 |
| 5/25/21 | Real Time Transfer recd from Myint J Kyaw | $ 1,420.00 | | | $ 1,629.98 |
| 5/27/21 | Lincoln Natlife Premium pmt | | $ 1,414.21 | | $ 215.77 |

2

# Exhibit N

Myint J. Kyaw a/k/a Jeffrey Wu
Status of Bank Information Received
As of Aug 20, 2021

| Title | Bank | Account | Bank Statements Received (1) | Checks (Y/N) (1) | Deposits(Y/N) (1) | Wire Transfers / ACH Confirmations (1) | Comments |
|---|---|---|---|---|---|---|---|
| **Debtor:** | | | | | | | |
| MYINT J KYAW DEBTOR-IN-POSESSION 20-72407 | Chase | #7978 | January 2018 - June 2021 | Y | Y | N | Debtor provided check and deposit copies, however there were gaps of checks missing from production. |
| MYINT J KYAW | Chase | #9050 | January 2018 - June 2021 | N | Y | N | Debtor provided deposit copies, however there were gaps of checks missing from production. |
| MYINT J KYAW | Preferred | #0122 | October 2018 - July 2021 | N | N | N | |
| MYINT J KYAW - CD | Preferred | #5911 | January 2018 - June 2021 | N | N | N | |
| MYINT J KYAW - CD | Preferred | #6667 | January 2018 - June 2021 | N | N | N | |
| MYINT J KYAW - Loan Activity Statement | Preferred | #0929 | January 2021 - July 2021 | N | N | N | |
| MYINT J KYAW - Loan Activity Statement | Preferred | #0849 | January 2021 - April 2021 | N | N | N | |
| MYINT J KYAW - High Yield Checking | Capital One | #7169 | February 2018 - July 2020 | N | Y | N | |
| | | | | | | | |
| **Spouse:** | | | | | | | |
| Veronica Wu | Capital One | #6264 | June 2018 - June 2021 | Y | Y | N | Debtor provided check and deposit copies, however there were gaps of checks missing from production. |
| Veronica Wu | Chase | #7710 | June 2018 - June 2021 | Y | Y | N | |
| Veronica Wu | Chase | #7000 | June 2018 - June 2021 | N | N | N | |
| Veronica Wu | Chase | #9371 | June 2018 - June 2021 | N | N | N | |
| Veronica Wu | Merrill Lynch | #1143 | January 2018 - June 2021 | N | N | N | |
| | | | | | | | |
| **Affiliated Business Interests:** | | | | | | | |
| Flushing Landmark Realty Mezz LLC | Capital One | #7749 | July 2020 - June 2021 | TBD | TBD | N | |
| Flushing Landmark Realty LLC - Utility | Capital One | #7896 | January 2021 - June 2021 | TBD | TBD | N | |
| Flushing Landmark Realty LLC | Signature | #8345 | November 2018 - December 2020; February 2021 - June 2021 | TBD | TBD | N | |
| Flushing Landmark Realty LLC - DIP Payroll | Capital One | #7929 | December 2020 - June 2021 | TBD | TBD | N | |
| Flushing Landmark Realty LLC - DIP Operating | Capital One | #0249 | November 2018 - June 2021 | TBD | TBD | N | |
| Flushing Landmark Realty LLC - DIP Escrow | Capital One | #7992 | November 2020 - June 2021 | TBD | TBD | N | |
| Lucky Star Deer Park Mezz | Capital One | #7767 | July 2020 - June 2021 | TBD | TBD | N | |
| Lucky Star Deer Park LLC | Capital One | #8250 | November 2020 - June 2021 | TBD | TBD | N | |
| Lucky Star Deer Park LLC | Capital One | #7995 | November 2020 - June 2021 | TBD | TBD | N | |
| Victoria Towers Development Mezz Corp | Capital One | #7764 | July 2020 - June 2021 | TBD | TBD | N | |
| Victoria Towers Development Corp | Capital One | #7782 | November 2020 - June 2021 | TBD | TBD | N | |
| Queen Elizabeth Realty Corp | Bank of America | #9992 | November 2018 - June 2021 | TBD | TBD | N | |
| Queen Elizabeth Realty Corp | Capital One | #8137 | November 2018 - June 2021 | TBD | TBD | N | |
| Victoria Realty Group LLC | Capital One | #8269 | July 2019 - December 2020 | TBD | TBD | N | |
| Hong Kong Supermarket of Hester Street Corp | Preferred | #4721 | March 2020 - December 2020 | TBD | TBD | N | |
| Hong Kong Supermarket of Hester Street Corp | Chase | #1660 | January 2019 - September 2020; November 2020 - December 2020 | TBD | TBD | N | |

Myint J. Kyaw a/k/a Jeffrey Wu
Status of Bank Information Received
As of Aug 20, 2021

| Title | Bank | Account | Bank Statements Received (1) | Checks (Y/N) (1) | Deposits(Y/N) (1) | Wire Transfers / ACH Confirmations (1) | Comments |
|---|---|---|---|---|---|---|---|
| Hong Kong Supermarket of Hester Street Corp | Bank of America | #2296 | January 2019 - December 2020 | TBD | TBD | N | |
| Hong Kong Supermarket of Hester Street Corp | Chase | #8178 | January 2019 - December 2020 | TBD | TBD | N | |
| Hong Kong Supermarket of Allston LLC | Preferred | #4772 | March 2020 - December 2020 | TBD | TBD | N | |
| Hong Kong Supermarket of Allston LLC | Brookline | #5533 | January 2019 - December 2020 | TBD | TBD | N | |
| Hong Kong Supermarket of Allston LLC | Bank of America | #2416 | January 2019 - December 2020 | TBD | TBD | N | |
| Hong Kong Supermarket of Malden LLC | Preferred | #4756 | March 2020 - December 2020 | TBD | TBD | N | |
| Hong Kong Supermarket of Malden LLC | Brookline | #5517 | January 2019 - December 2020 | TBD | TBD | N | |
| Hong Kong Supermarket of Malden LLC | Bank of America | #4853 | January 2019 - December 2020 | TBD | TBD | N | |
| Hong Kong Management of Allston | Bank of America | #7842 | January 2019 - December 2020 | TBD | TBD | N | |
| Hong Kong Distribution Corp | Preferred | #2826 | August 2019 - December 2020 | TBD | TBD | N | |
| Hong Kong Distribution Corp | Evertrust | #8768 | January 2019 - December 2020 | TBD | TBD | N | |
| Hong Kong Supermarket of Pennsylvania Inc | Preferred | #4799 | March 2020 - December 2020 | TBD | TBD | N | |
| Hong Kong Supermarket of Pennsylvania Inc | PNC | #0761 | January 2019 - December 2020 | TBD | TBD | N | |
| Hong Kong Supermarket of Pennsylvania Inc | Chase | #1631 | January 2019 - December 2020 | TBD | TBD | N | |
| Hong Kong Supermarket of Pennsylvania Inc | Chase | #2811 | January 2019 - December 2020 | TBD | TBD | N | |
| Hong Kong Supermarket of Pennsylvania Inc | Bank of America | #4840 | January 2019 - December 2020 | TBD | TBD | N | |
| Hong Kong Supermarket of Elmhurst Inc. | Chase | #9701 | January 2019 - December 2020 | TBD | TBD | N | |
| Hong Kong Supermarket of Elmhurst Inc. | Chase | #1152 | January 2019 - December 2020 | TBD | TBD | N | |
| Hong Kong Supermarket of Elmhurst Inc. | Chase | #5625 | January 2019 - December 2020 | TBD | TBD | N | |
| Hong Kong Plaza Management Corp | Capital One | #8102 | July 2019 - June 2021 | TBD | TBD | N | |
| Super HK Supermarket of Flushing LP | Chase | #0296 | January 2019 - December 2020 | TBD | TBD | N | |
| Super HK Supermarket of Flushing LP | Chase | #6772 | January 2019 - December 2020 | TBD | TBD | N | |
| Super HK Supermarket of Flushing LP | Chase | #3779 | January 2019 - December 2020 | TBD | TBD | N | |
| Super HK Supermarket of Flushing LP | Preferred | #1998 | January 2019 - December 2020 | TBD | TBD | N | |
| Wu Towers LLC | Preferred | #0033 | July 2019 - June 2021 | TBD | TBD | N | |
| Wu's Enterprises | Preferred | #2028 | July 2019 - June 2021 | TBD | TBD | N | |
| | | | | | | | |
| Other: | | | | | | | |
| Wu Family 2012 Gift Trust, Gene Greenfest Brokerage (annual statements) | Signature Bank | #5191 | Annual Statements for 2018 - March 2021 | TBD | TBD | N | |
| Wu Family 2012 Gift Trust, Gene Greenfest Trustee | Signature Bank | #9286 | January 2018 - March 2021 | TBD | TBD | N | |
| Wu Family 2012 Gift Trust, Gene Greenfest Trustee | Signature Securities | #9294 | January 2018 - March 2021 | TBD | TBD | N | |
| Veronica Wu Irrevocable Life Insurance Trust | Chase | #4883 | January 2018 - June 2021 | TBD | TBD | N | |
| Jeffrey Wu Irrevocable Life Insurance Trust | Chase | #4800 | January 2018 - June 2021 | TBD | TBD | N | |

(1) Debtor provided banking information. RSR is currently reviewing files provided by Debtor for completeness.