**Lori Lapin Jones, Esq., Chapter 11 Trustee**     **Hearing Date: October 25, 2021**
Lori Lapin Jones PLLC                               **Hearing Time: 10:00 a.m.**
98 Cutter Mill Road – Suite 255 South
Great Neck, New York 11021
Telephone: (516) 466-4110

**LaMonica Herbst & Maniscalco, LLP**
Attorneys for Chapter 11 Trustee
3305 Jerusalem Avenue – Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Salvatore LaMonica, Esq.
Holly R. Holecek, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re

                                         Case No. 8-20-72407-reg

MYINT KYAW a/k/a,
JEFFREY WU,                                         Chapter 11

                     Debtor.
-------------------------------------------------------x

## CHAPTER 11 TRUSTEE'S STATUS REPORT

Lori Lapin Jones, Esq., as Chapter 11 Trustee ("Trustee") for Myint Kyaw a/k/a Jeffrey Wu ("Debtor") submits this Status Report in connection with the status conference scheduled for October 25, 2021 and respectfully reports as follows.

### Introduction

The Trustee has been actively engaged in this case since the day she was appointed. The Trustee's work to date falls in the following general categories: (i) general administration; (ii) addressing cash controls and reporting in the Debtor's case; (iii) obtaining reporting from and addressing the monitoring of cash of the entities in which the Debtor has a substantial or controlling interest; (iv) evaluating the Debtor's non-business assets; and (v) evaluating and working on implementing the Debtor's (pre-Trustee) exit strategy. This Status Report addresses each of these areas of work.

1

I.       General Administration

   A. *Appointment*

   1.       The United States Trustee for Region 2 ("US Trustee") appointed the Trustee on September 17, 2021 [ECF No. 270]. That same day, this Court signed an order approving the US Trustee's appointment [ECF No. 271]. The Trustee accepted the appointment [ECF No. 272] and, thereafter, filed the requisite Bond [ECF No. 273].

   B. *Retention of Professionals*

   2.       With this Court's approval, the Trustee retained LaMonica Herbst & Maniscalco, LLP as her attorneys [ECF No. 277] and RK Consultants, LLC as her financial advisors [ECF No. 278]. Both of these firms have been working diligently with the Trustee since her appointment.

   C. *Insurance/Bank Accounts*

   3.       The Trustee reviewed insurance coverage for the Debtor's personal assets and arranged for the Trustee to be listed as an additional insured on the Debtor's insurance policies.

   4.       The Trustee opened estate bank accounts under the exclusive control of the Trustee and, as addressed below, obtained turnover of the Debtor's personal funds.

   D. *Examiner*

   5.       The Trustee reviewed the Examiner's First Interim Report and consulted with the Examiner on his discharge and transition order which order, inter alia, authorized the Examiner to provide information to the Trustee. The Trustee and her financial advisor met with the Examiner and his financial advisor and obtained access to the Examiner's virtual data room.

### E.  Communications With Parties in Interest

6.      The Trustee has had extensive ongoing communications with the Debtor's counsel, the Debtor, Mrs. Wu, and counsel to the single-asset real estate Chapter 11 entities owned or controlled by the Debtor ("SARE Debtors"). The Trustee has also communicated with counsel to various creditors and the US Trustee. As explained in greater detail below, the Trustee has also met with the proposed financier.

II.     Cash: Turnover/Budget/Reporting – Debtor

Preliminarily, the Trustee notes that the Debtor and Mrs. Wu have been fully cooperative, accessible, and prompt in responding to the Trustee's requests.

### A.  Turnover of Personal Funds

7.      At the time of the Trustee's appointment, Debtor's counsel was holding $8,000 in its escrow account representing proceeds from the sale of one of the Debtor's vehicles. Debtor's counsel promptly turned over those funds to the Trustee.

8.      At the Trustee's request, the Debtor turned over to the Trustee $18,951 from the debtor-in-possession account (representing the balance in that account less $5,000 as authorized by the Trustee) and closed that account.

9.      At the Trustee's request, the Debtor turned over to the Trustee funds in three accounts at Preferred Bank totaling $47,027.09 and closed those accounts.

10.     Three paychecks (totaling $3,632.76) received by the Debtor that had not been cashed at the time of the Trustee's appointment were turned over by the Debtor to the Trustee.

### B.  Budget/Cash Controls

11.     The Trustee conducted a meeting by Zoom with the Debtor and Mrs. Wu

to gain an understanding of monthly income and monthly expenses, to explain the requirements of a Chapter 11 debtor, and to set up protocols regarding cash. The following protocols were established by the Trustee.

         a.      All paychecks of the Debtor will be direct deposited in the Trustee's account. To date, the Trustee has received direct deposit of: (i) five net paychecks totaling $6,356.04 for the period ending October 2, 2021; and (ii) five net paychecks totaling $6,367.69 for the period ending October 9, 2021.

         b.      Should the Debtor receive other funds or learn he will be entitled to receive other funds, such funds will either be redirected to the Trustee or turned over by the Debtor to the Trustee.

         c.      In connection with closing the debtor-in-possession account, the Debtor opened a new account at Key Bank. The Trustee authorized the Debtor to retain $5,000 from the debtor-in-possession account (which funds were deposited in the Key Bank account) to be used for daily living expenses. Beginning on November 1, 2021 (and the beginning of each month thereafter), the Trustee expects to send the Debtor the sum of $2,500 to be used towards daily living expenses of the Debtor, which the Trustee expects will be deposited in the Key Bank account.

         d.      To the extent there is available current cash flow, the Trustee anticipates she will pay the insurance premiums on the Debtor's homeowner/umbrella policy, utilities for the Debtor's house, and real estate taxes, upon receipt of bills forwarded by the Debtor or Mrs. Wu.

         12.      The Trustee and the Debtor will revisit these protocols, as needed and

make adjustments as appropriate.[1]

C.  *Reporting*

13.     The Trustee will file monthly operating reports based on receipts and disbursements relating to the accounts under the Trustee's control. The Trustee filed the first of these reports for the period covering September 17, 2021 (date of appointment) through September 30, 2021 [ECF Nos. 287, 288]. Future reports will reflect the $2,500 monthly payment by the Trustee to the Debtor. The Trustee is not currently requiring an accounting for the monthly payments.[2]

14.     It is expected that the Debtor will also file a monthly operating report for the months of September 2021 and October 2021 as the Debtor's pre-Trustee accounts were not closed until the beginning of October 2021.

III.     Cash: Reporting/Monitoring – Debtor Controlled Entities

A.  *Reporting*.

15.     Federal Rule of Bankruptcy Procedure 2015.3 provides, inter alia, for a debtor to file periodic reports at the outset of the case and thereafter, not less frequently than every six months, for entities in which a debtor has a substantial or controlling interest.[3] No such reports were filed by the Debtor.

---

[1]     The difficulties of a trustee developing and administering a budget for an individual in a Chapter 11 case cannot be overstated. The Trustee believes that the protocols and guidelines agreed to by the Debtor strike a practical balance and represent a prudent course going forward. If out of the ordinary course expenses are to be incurred, the Debtor will use best efforts to consult with the Trustee in advance, but does not need to do so for emergency health and safety expenses.

[2]     The Trustee understands that these funds will be used for daily living expenses such as food, household items and repairs, personal care, healthcare, and sundries. The $2,500 disbursement will be part of the disbursements the Trustee includes in her monthly operating reports and upon which the quarterly US Trustee fee will be calculated.

[3]     The presumption, subject to rebuttal, is that an entity in which a debtor controls or owns at least a 20 percent interest is one in which the debtor has a substantial or controlling interest. See FED. R. BANKR. P. 2015.3 (c).

16.     The Trustee, in consultation with her professionals, began the process of determining how to fulfill this reporting requirement and developed the following strategy based on three categories of entities in which the Debtor holds a substantial or controlling interest: (a) Chapter 11 entities owned or controlled by the Debtor; (b) active entities that are not the subject of a bankruptcy case; and (c) inactive entities.

*Entities in Chapter 11 in Which the Debtor Has a Substantial or Controlling Interest*

17.     There are seven entities in which the Debtor has a substantial or controlling interest that are in Chapter 11 as follows:

| | |
|---|---|
| Lucky Star-Deer Park LLC | Case No. 8-20-73301 (reg) |
| Flushing Landmark Realty LLC | Case No. 8-20-73302 (reg) |
| Victoria Towers Development LLC | Case No. 8-20-73303 (reg) |
| Queen Elizabeth Realty Corp. | Case No. 8-20-73327 (reg) |
| Lucky Star-Deer Park Mezz LLC | Case No. 8-20-72403 (reg) |
| Flushing Landmark Realty Mezz LLC | Case No. 8-20-42404 (reg) |
| Victoria Towers Development Mezz Corp. | Case No. 8-20-42405 (reg) |

Reporting under Federal Rules of Bankruptcy Procedure 2015.3 is not required if the entity in which a debtor has a substantial or controlling interest is itself a debtor in a case under title 11. See FED. R. BANK. P. 2015.3 (a). Accordingly, the Trustee will not be filing reports for these entities.

*Active Entities Not in Chapter 11 in Which the Debtor Has a Substantial or Controlling Interest*

18.     According to the Examiner's First Interim Report, the Debtor has a substantial or controlling interest in a number of entities that are not in Chapter 11. By memorandum dated September 28, 2021 from the Trustee to a number of entities,[4] the Trustee addressed the reporting requirements under the Bankruptcy Rules for the non-debtor entities and

---

[4]     The Trustee transmitted the memorandum to the Debtor's counsel as well as a financial professional working for one or more of the entities.

provided a form of the Rule 2015.3 reports (based on the Official Forms) for completion by each

entity. The Trustee's memorandum made clear that the reports would then be filed with the

Court.[5]

19.     Thereafter, two in-house financial professionals transmitted responses to

the Trustee and her professionals. Generally, the financial information provided to the Trustee

includes a balance sheet, statement of income or loss, and a cash flow statement or tax

documents. The Trustee expects to file the financial information she received with the Court. The

Trustee neither prepared, audited nor verified the financial information. The Trustee, along with

her professionals, are first analyzing the entity information.

*Inactive Entities*

20.     With respect to inactive entities, the Trustee's memorandum provided that

if the entity was closed as of July 8, 2020, reporting was not required but the last bank statement

and final tax return should be provided. If the entity was not closed by July 20, 2020, reporting

was required.

B.   *Monitoring Cash*

21.     There are numerous non-debtor entities in which the Debtor has a

substantial or controlling interest that are located in several states (New York, Pennsylvania,

Massachusetts). Most of these entities have multiple bank accounts. The Trustee, in consultation

with her professionals, determined that a prudent first step in understanding and monitoring cash

for the non-debtor entities is for the Trustee to obtain "view only" access to each entity's bank

accounts. The Trustee's request for this access was made in the September 28, 2021

memorandum. The non-debtor entities are cooperating in providing the Trustee with view only

---

[5]     Rule 2015.3 (e) requires 14 days' notice to the reporting entity that the report will be filed with the bankruptcy court. See Fed. R. Bankr. P. 2015.3 (e). The reporting entities have had over 14 days' notice.

access to the bank accounts, but the logistics are time consuming. This initiative involves eight banks holding at least thirty-five bank accounts. For certain bank accounts, the Trustee was provided view only access, but the banks limited that access to a few days with ongoing access requiring a token (which the non-debtor entities have requested for the Trustee). For other bank accounts, a user name and password have been provided to the Trustee, but access requires a token (which the non-debtor entities have requested for the Trustee). The Trustee's financial advisor is working with financial professionals for the non-debtor entities and the banks to complete the process of obtaining view only access for the bank accounts.

IV.    Personal Assets

A. *Debtor's House*

22.    The Debtor and his family reside in a house in Locust Valley, New York. On Schedule A/B to his petition, the Debtor lists the house as being owned by the Debtor and another, but Debtor's counsel has informed the Trustee that the Debtor is the sole owner of the house. The Debtor scheduled the value of the house at $8,000,000 as of the petition date. The Debtor's counsel provided the Trustee with an appraisal reflecting an "as is" value of $6,500,000 as of March 15, 2021. The Debtor's amended Schedule D [ECF No. 108] reflects a first mortgage with a balance of $3,160,182, a home equity loan with a balance of $1,130,355.83, and millions of dollars in judgment liens secured against the house. The Debtor asserted a homestead exemption of $170,825 [ECF No. 151]. The Trustee has ordered a title report for the house.

23.    The Trustee, accompanied by Maltz Auctions, inspected the property on

October 13, 2021.[6] Maltz Auctions took pictures of the house and home furnishings.

### B. *Debtor's Vehicles*

24.      According to the Debtor's amended schedules [ECF No. 249], the Debtor owned eight vehicles as of the petition date. The Trustee is informed that one of those vehicles (2011 Land Rover) was sold by the Debtor post-petition. As reflected above, proceeds from that sale ($8,000) were turned over by the Debtor's counsel to the Trustee. Another vehicle (2019 BMW) was totaled in an October 2020 collision. The Trustee was provided documentation reflecting that the insurance company determined not to repair the vehicle and instead paid off the lien and wired to the Debtor's debtor-in-possession account the sum of $22,097 which, the Trustee confirmed, was reported on the Debtor's December 2020 monthly operating report [ECF No. 160]. A third vehicle (2015 Land Rover/Range Rover), currently situated on the property of the house, is inoperable. The plates have been turned in and the insurance cancelled. Maltz Auctions inspected this vehicle.

25.      The Debtor has five other vehicles: (a) 2009 Porsche Cayenne; (b) 2010 Bentley Continental; (c) 2014 Audi R8; (d) 2015 Rolls Royce Wraith; and (e) 2016 Land Rover/Range Rover. It appears the Debtor primarily uses the 2016 Land Rover/Range Rover for commuting to his out of state businesses. Two of the vehicles (Bentley and Rolls Royce) were garaged at the Debtor's house and Maltz Auctions inspected them. The Trustee is informed that these vehicles are financed and that non-debtor entities are paying for them. The Trustee is informed that two other vehicles (Porsche and Audi) are in California  -- one at the residence of

---

[6]          The Debtor and Mrs. Wu were not at the house when the Trustee conducted her inspection, but they arranged for someone to be at the house to provide access to the Trustee. In addition, a paraprofessional from the Debtor's counsel's office also was present. Separate from the house, there is a structure on the property which the Trustee is informed is owned by Mrs. Wu. The Trustee did not inspect that structure. Mrs. Wu has indicated the Trustee may come back and she will provide access for the inspection of that structure.

the Debtor's former manager of a business the Debtor previously had in California, and one in a repair shop in California. The Debtor and Mrs. Wu provided information on all the vehicles (title, mileage, liens) to the Trustee.

V.    Exit Strategy

A.  *Exit Strategy Preceding the Appointment of the Trustee*

26.    One day after the Examiner's First Interim Report was filed, the Court restored to its calendar an order to show cause why the Debtor's Chapter 11 case should not be converted to a case under Chapter 7 that was heard on September 13, 2021 ("Conversion Hearing"). In a written submission opposing conversion, the Debtor annexed an executed Debt Term Sheet dated September 10, 2021 for financing from Invictus Real Estate Partners ("Invictus Term Sheet") representing the exit strategy for the Debtor and the related Chapter 11 corporate debtors. In filings prior to the Conversion Hearing, creditors opposed conversion of the Debtor's case to Chapter 7. At the Conversion Hearing, the Court made clear that there would be a trustee, but left open whether the Court would direct the appointment of a Chapter 11 trustee or convert the case to Chapter 7 which would result automatically in the appointment of a Chapter 7 trustee. Creditors uniformly preferred a Chapter 11 trustee and opposed conversion. The Debtor indicated he would work with a Chapter 11 trustee. Invictus represented it would work with a Chapter 11 trustee, but would not provide financing if the case converted to Chapter 7. Taking into consideration all of the above, the Court directed the appointment of a Chapter 11 trustee.

B.  *The Trustee's Work on the Invictus Term Sheet*

27.    As the Court observed at the Conversion Hearing, the Invictus Term Sheet appeared, at best, to represent the prospect that Invictus may lend some amount of money at some point in the future. The Trustee shared that view. Accordingly, one of the first items the

Trustee focused on after her appointment was meeting with Invictus so that the Trustee could make a preliminary determination as to how real the financing was and how close Invictus was to making a financing commitment. The Trustee and her professionals met with Invictus on September 22, 2021 by Zoom to address these issues. In the Trustee's view, the meeting was positive as several initial concerns the Trustee had about the Invictus Term Sheet were satisfactorily addressed.

28.     As a result of this preliminary meeting, a working meeting was set up for the following week. The Trustee met with Invictus by Zoom on September 29, 2021 and provided Invictus with detailed comments on the Invictus Term Sheet, all of which Invictus indicated were acceptable. A revised confidential Invictus Term Sheet was sent to the Trustee on October 18, 2021, which the Trustee and her professionals are reviewing.

C.  *Work Going Forward in Connection With Exit Financing*

29.     Even assuming the Invictus financing is achievable, an overarching concern and focus for the Trustee has been feasibility: i.e., does the financing allow for sufficient funds to pay creditors of the Debtor in full (or in agreed to reduced amounts). It appears that considerable work has been done by the Debtor and his counsel and counsel to the SARE Debtors to reach agreements with many creditors. However, the Trustee has focused on feasibility (i.e., will there be sufficient funds to confirm a Chapter 11 plan for the Debtor) and has requested and received some information from Debtor's counsel and counsel for the SARE Debtors to assist her in determining feasibility. The Trustee understands the Debtor and his counsel are also refining their analysis.

30.     In addition, as set forth in the Debtor's Schedules and as explained in the Examiner's First Interim Report, at the time the Debtor filed his Chapter 11 petition, the Debtor

owned a 100% interest in VWU888, LLC, which owned valuable shares in a real estate investment trust ("REIT"). The REIT generated substantial distributions, which the Trustee understands comprised a portion of the Debtor's pre-petition income. The Trustee is informed that, pre-petition, VWU888, LLC, by the Debtor, pledged its interest in the REIT to a secured creditor who has taken the position that it foreclosed on its collateral (i.e., the REIT interest) in the post-petition period. The Trustee and her professionals have been examining these transactions and have engaged in settlement discussions regarding these transactions.

31.     Finally, the Trustee's feasibility analysis includes understanding and addressing the Debtor's tax liabilities and to that end the Trustee has communicated with the Debtor's proposed tax counsel, the Internal Revenue Service, and prospective tax accountants.

32.     The Trustee is mindful that although the Trustee is relatively new to this case, the case is over a year old and creditors have been waiting and are eager to get paid. The Trustee and her professionals have and will continue to work diligently on the Invictus financing, but the Trustee firmly believes that all parties in interest are better off if issues of feasibility are addressed up front.

## **Conclusion**

33.     This Status Report is intended to provide information on the salient aspects of the work performed by the Trustee and her professionals since her appointment on September 17, 2021, but does not cover each and every task the Trustee has worked on. The Trustee will address status at the October 25, 2021 conference and will be available to respond to questions from the Court.

Dated: October 22, 2021

*s/ Lori Lapin Jones, Esq., Chapter 11 Trustee*
Lori Lapin Jones, Esq., Chapter 11 Trustee

Lori Lapin Jones PLLC
98 Cutter Mill Road – Suite 255 South
Great Neck, New York 11021
Telephone: (516) 466-4110

*s/ Holly R. Holecek, Esq.*
Holly R. Holecek, Esq.

LaMonica, Herbst & Maniscalco LLP
Attorneys for Chapter 11 Trustee
3305 Jerusalem Avenue – Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500